## IN THE UNITED STATES DISTRICT COURT
## SOUTHER DISTRICT OF FLORIDA
## MIAMI DIVISION

| | |
|---|---|
| CIELO JEAN GIBSON, CORA SKINNER, VIVIAN KINDLE, ALICIA WHITTEN, ASHLEY VICKERS, DESSIE MITCHESON, DEVIN JUSTINE TAKEGUMA, EVA PEPAJ, JESSICA BURCIAGA, LINA POSADA, MARKETA KAZDOVA, PAOLA CANAS, and TINA QUARLES, <br> Plaintiffs, <br><br> - against - <br><br> BTS NORTH, INC. d/b/a BOOBY TRAP; T.K. PROMOTIONS, INC. d/b/a BOOBY TRAP; P.T.G. ENTERTAINMENT, INC. d/b/a BOOBY TRAP; and BOOBY TRAP, INC. d/b/a BOOBY TRAP, <br> Defendants. | Civil Action No. _____ <br><br> **COMPLAINT** <br> (Jury Trial Demanded) |

## COMPLAINT

COME NOW Plaintiffs CIELO JEAN GIBSON, CORA SKINNER, VIVIAN KINDLE, ALICIA WHITTEN, ASHLEY VICKERS, DESSIE MITCHESON, DEVIN JUSTINE TAKEGUMA, EVA PEPAJ, JESSICA BURCIAGA, LINA POSADA, MARKETA KAZDOVA, PAOLA CANAS, and TINA QUARLES (collectively, "Plaintiffs" or "Models"), by and through undersigned counsel, and for their Complaint against Defendants BTS NORTH, INC. doing business as BOOBY TRAP (herein referred to as "Booby Trap Doral"); T.K. PROMOTIONS, INC. doing business as BOOBY TRAP (herein referred to as "Booby Trap South Miami"); P.T.G. ENTERTAINMENT, INC. doing business as BOOBY TRAP (herein referred to as "Booby Trap Pompano"); and BOOBY TRAP, INC. doing business as BOOBY TRAP (herein referred to as "Booby Trap Pompano") (collectively, "Defendants") state as follows:

## INTRODUCTION

1.      Defendants have pirated the images, likeness and/or identity of each Plaintiff Model for purely self-serving commercial purposes – to advertise, promote and market Defendants' own business interests on social media accounts owned, operated, hosted, or controlled by Defendants.

2.      At all times relevant to this action, Plaintiffs were and are the exclusive owners of all rights, title, and interest to their images, likeness and/or identity unlawfully converted by Defendants for Defendants' benefit.

3.      Defendants are unapologetic, chronic and habitual infringers.

4.      Defendants did not negotiate for or purchase the images.

5.      Defendants did not seek or obtain consent or authority to use Plaintiffs' images for any purpose.

6.      Plaintiffs did not agree, nor would Plaintiffs ever agree, to Defendants' use of their images, likeness and/or identity.

7.      Had Plaintiffs been afforded the opportunity to consider whether to consent and release rights as to the use of their images, Plaintiffs would have promptly and unequivocally declined.

8.      Defendants' conduct is therefore misleading and deceptive by falsely representing that Plaintiffs are somehow affiliated with Defendants, have contracted to perform at and/or participate in events at Defendants' strip clubs, have been hired to promote, advertise, market or endorse the events and other activities offered at Defendants' strip clubs, and/or that Plaintiffs have attended or will attend each event and have participated in or intend to participate in the activities advertised.

9.      Defendants' conduct is also injurious Plaintiffs.

10.     Defendants circumvented the typical arms-length negotiation process entirely and pirated the subject images. In doing so, **Defendants have utterly deprived Plaintiffs the right and ability to say "no."**

11.     Defendants have prevented Plaintiffs from engaging in arms-length negotiations regarding the terms and conditions of use of Plaintiffs' images, including the term of any release, remuneration per use, or the ability to decline the business opportunity entirely. In short, Defendants deprived Plaintiffs the ability to protect their image, brand and reputation.

12.     In the end, Defendants gained an economic windfall by using the images of professional and successful models and actresses for Defendants' own commercial purposes, luring and enticing patrons worldwide to view the images and visit Defendants' strip clubs, without having to compensate Plaintiffs a single penny for such usage. Plaintiffs, however, sustained injury to their images, brand and marketability by shear affiliation with Defendants' strip clubs.

13.     Having operated a business in the adult entertainment and striptease industry, Defendants are well aware of the standard negotiation process over terms of use, conditions of release, licensing issues, and other contractual incidences related to use and exploitation of images for Defendants' commercial benefit.

14.     By defaming and embarrassing Plaintiffs and associating Plaintiffs' image and likeness with Defendants' strip clubs, Defendants' conduct is not merely a misuse in connection with an innocuous brand or events.

## PARTIES

**A.  Plaintiffs**

15.      Given the multitude of violations harming numerous models, and the similarity of misconduct from Defendants harming all models, in the interest of judicial economy, Plaintiffs, through counsel, respectfully consolidate all actionable violations *presently known* into this single collective action on behalf of the following models:

16.      PLAINTIFF Gibson is, and at all times relevant to this action was, a professional model and a resident of Hillsborough County, in the State of Florida.

17.      PLAINTIFF Skinner is, and at all times relevant to this action was, a professional model and resident of Los Angeles County, in the State of California.

18.      PLAINTIFF Kindle is, and at all times relevant to this action was, a professional model and resident of Los Angeles County, in the State of California.

19.      PLAINTIFF Whitten is, and at all times relevant to this action was, a professional model and resident of Ventura County, in the State of California.

20.      PLAINTIFF Vickers is, and at all times relevant to this action was, a professional model and resident of Palm Beach County, in the State of Florida.

21.      PLAINTIFF Mitcheson is, and at all times relevant to this action was, a professional model and resident of Orange County, in the State of California.

22.      PLAINTIFF Takeguma is, and at all times relevant to this action was, a professional model and resident of Ventura County, in the State of California.

23.      PLAINTIFF Pepaj is, and at all times relevant to this action was, a professional model and resident of Los Angeles County, in the State of California.

24.     PLAINTIFF Burciaga is, and at all times relevant to this action was, a professional model and resident of Los Angeles County, in the State of California.

25.     PLAINTIFF Posada is, and at all times relevant to this action was, a professional model and resident of Los Angeles County, in the State of California.

26.     PLAINTIFF Kazdova is, and at all times relevant to this action was, a professional model and resident of Los Angeles County, in the State of California.

27.     PLAINTIFF Canas is, and at all times relevant to this action was, a professional model and resident of Los Angeles County, in the State of California.

28.     PLAINTIFF Quarles is, and at all times relevant to this action was, a professional model and resident of Johnson County, in the State of Kansas.

**B.  Defendant, BTS North, Inc. doing business as Booty Trap**

29.     Based on publicly available records, and further upon information and belief, DEFENDANT BTS North, Inc. doing business as Booty Trap ("Booby Trap Doral") is a corporation organized and existing under the laws of the State of Florida with a principal place of business at 5325 NW 77th Avenue, Miami, Florida 33166.

30.     Booby Trap Doral holds and at all times relevant, has held itself out as a strip club that engages in the business of entertaining its patrons with nude and/or semi-nude dancing and alcohol.

31.     Booby Trap Doral operates https://www.facebook.com/Booby-Trap-Doral-562568280563479/?fref=ts as well as other social media accounts and websites through which it advertises its business, events, and parties. For many of these events, images of one or more of the Models were used to market and promote the events.

**C.  Defendant, T.K. Promotions, Inc. doing business as Booby Trap**

32.     Based on publicly available records, and further upon information and belief, DEFENDANT T.K. Promotions, Inc. doing business as Booty Trap ("Booby Trap South Miami") is a corporation organized and existing under the laws of the State of Florida with a principal place of business at 5922 S. Dixie Highway, South Miami, Florida 33143.

33.     Booby Trap South Miami holds and at all times relevant, has held itself out as a strip club that engages in the business of entertaining its patrons with nude and/or semi-nude dancing and alcohol.

34.     Booby Trap South Miami operates https://www.facebook.com/BTs-South-Miami-812152195566200/?fref=ts as well as other social media accounts and websites through which it advertises its business, events, and parties. For many of these events, images of one or more of the Models were used to market and promote the events.

**D.  Defendant, P.T.G. Entertainment, Inc. doing business as Booby Trap**

35.     Based on publicly available records, and further upon information and belief, DEFENDANT P.T.G Entertainment, Inc. doing business as Booby Trap ("Booby Trap Pompano") is a corporation organized and existing under the laws of the State of Florida with a principal place of business at 2840 Hammondville Road, Pompano Beach, Florida 33069.

36.     Booby Trap Pompano holds and at all times relevant, has held itself out as a strip club that engages in the business of entertaining its patrons with nude and/or semi-nude dancing and alcohol.

37.     Boob Trap Pompano operates https://www.facebook.com/theboobytrap. net/?fref=ts as well as other social media accounts and websites through which it

advertises its business, events, and parties. For many of these events, images of one or more of the Models were used to market and promote the events.

**E.  Defendant, Booby Trap, Inc. doing business as Booby Trap**

38.     Based on publicly available records, and further upon information and belief, DEFENDANT Booby Trap, Inc. doing business as Booby Trap ("Booby Trap Pompano") is a corporation organized and existing under the laws of the State of Florida with a principal place of business at 2840 Hammondville Road, Pompano Beach, Florida 33069.

39.     Booby Trap Pompano holds and at all times relevant, has held itself out as a strip club that engages in the business of entertaining its patrons with nude and/or semi-nude dancing and alcohol.

40.     Boob Trap Pompano operates https://www.facebook.com/theboobytrap. net/?fref=ts as well as other social media accounts and websites through which it advertises its business, events, and parties. For many of these events, images of one or more of the Models were used to market and promote the events.

**JURISDICTION AND VENUE**

41.     This Court has original federal question jurisdiction over the claims in this action pursuant to 28 U.S.C. § 1331 as Plaintiffs have stated a claim under the Lanham Act, 28 U.S.C. § 1125(a)(1). This Court has supplemental jurisdiction over the Florida state law claims alleged herein pursuant to 28 U.S.C. § 1367.

42.     The Court has personal jurisdiction over Defendants based on their contact with the State of Florida, including but not limited to Defendants' registration to conduct business in Florida, their physical locations and principal places of business in Florida,

and upon information and belief, Defendants committed, facilitated, assisted, encouraged or conspired to commit the actions giving rise to the harm and damages alleged herein in the State of Florida.

43.     Venue is proper in the United States District Court for the Southern District of Florida pursuant to 28 U.S.C. §§ 1391(a) and (b) because Booby Trap Doral and Booby Trap South Miami have their principal places of business in Miami-Dade County, Florida and their acts giving rise to some the claims set forth herein occurred or originated in Miami-Dade County, which is in the Southern District of Florida.

## FACTUAL BACKGROUND

**A. <u>Standard and Customary Business Practices in the Modeling and Acting Industry Require Arms-Length Negotiations over the Terms and Conditions of Usage and Remuneration for any Modeling Image</u>**

44.     In the modeling and acting industry, reputation is critical.  Protection of a model or actor's reputation is therefore of paramount importance.

45.     Plaintiffs are professional models and actresses who earn a living by promoting their images and likeness to select clients, commercial brands, media and entertainment outlets, as well as relying on their reputation and own brand for modeling, acting, hosting, and other opportunities.

46.     Plaintiffs' careers in modeling, acting, and private enterprise have value stemming from the goodwill and reputation that they have built, all of which is critical to establishing a brand, being selected for jobs and maximizing earnings.

47.     Plaintiffs have worked to establish themselves as reliable, reputable and professional.

48.     Plaintiffs must necessarily be vigilant in protecting their "brand" from harm, taint, or other diminution.

49.     Any improper or unauthorized use of an image, likeness and/or identity could substantially injure the career and career opportunities of Plaintiffs.

50.     In the modeling and acting industry, models and actors such as Plaintiffs typically do not have a single employer, but rather work as independent contractors for different agents or entities.

51.     Plaintiffs are responsible professionals in the ordinary course. Plaintiffs seeks to control the use and dissemination of their image and, thus, actively participate in vetting and selecting modeling, acting, brand spokesperson, or hosting engagements.

52.     Plaintiffs' vetting and selection of professional engagements involves a multi-tiered assessment, such as, but not limited to:

a.  determining whether the individual or entity seeking a license and release of Plaintiffs' images, likeness and/or identity is reputable, has reputable products or services, and, through affiliation therewith, would either enhance or harm Plaintiffs' stature or reputation;

b.  this reputational information is used in negotiating compensation which typically turns on the work Plaintiffs are hired to do, the time involved, travel and how their images are going to be used – known as "usage" (among other variables);

c.  to protect their reputation and livelihood, Plaintiffs and/or their agents carefully and expressly define the terms and conditions of use;

    d.  the entire negotiated deal is reduced to and memorialized in an integrated, written agreement of limited duration (typically 1-3 years) which defines the parties' relationship. The terms and conditions of the agreement typically, unless otherwise expressly delineated, bind and are applicable to only the parties to that agreement.

53.    Endorsing, promoting, advertising or marketing the "wrong" product, service or corporate venture, or working in or being affiliated with a disreputable industry can severely impact Plaintiffs' careers by limiting or foreclosing future modeling or brand endorsement opportunities. Conversely, association with high-end companies, products, or magazines can enhance and amplify Plaintiffs' earning potential and career opportunities by making Plaintiffs more sought after and desirable.

**B.**  **Defendants Have Misappropriated Plaintiffs' Images, Likeness and/or Identity Without Authority, for Self-Serving Commercial Gain and Without Offering or Paying Compensation to Plaintiffs**

54.    As set forth below, Plaintiffs' images, likeness and/or identity have been misappropriated by or at the direction of Defendants.  Defendants' conduct creates the false and misleading appearance and impression that Plaintiffs either work for Defendants, have appeared and participated or will appear and participate in activities or events at Defendants' strip clubs, and/or have agreed and consented to advertise, promote, market or endorse Defendants' strip clubs or one or more Defendants' events or activities.

*Plaintiff Cielo Jean Gibson*

55.    PLAINTIFF Gibson is an accomplished American model who enjoys great success in her industry. Gibson has over fifty seven thousand (57,000) Instagram

followers[1], has appeared in *FHM Magazine*, and was the *Import Tuner* model search winner. She has a tremendous motor sport following as the Falken Drift Team model and the Short Block Technologies Inc. model. Gibson is also a Top Rank Boxing model who continues to promote and market a number of different companies' sport and fitness equipment.

56.     In all instances of commercial marketing and promotion of her image, likeness and/or identity by third parties, Gibson negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

57.     DEFENDANT Booby Trap Doral, DEFENDANT Booby Trap South Miami, and DEFENDANTS Booby Trap Pompano used stolen Images of PLAINTIFF Gibson to entice the public to visit their strip clubs. On October 28, 2013, Gibson's image was uploaded to Booby Trap Doral, Booby Trap South Miami, and Booby Trap Pompano's Facebook pages to imply that Gibson is a stripper at Booby Trap Doral, Booby Trap South Miami, and Booby Trap Pompano. The image also contained a lecherous caption, "costume idea #3: school girl – hint: bring a paddle." The defamatory caption implied that Gibson conducts sexual acts for money. On December 25, 2013, DEFENDANT Booby Trap Doral, DEFENDANT Booby Trap South Miami, and DEFENDANTS Booby Trap Pompano uploaded another image of Gibson to their Facebook pages to promote their strip clubs. This image was also used to deceive the public into believing that Gibson is a stripper at Booby Trap Doral, Booby Trap South Miami, and Booby Trap Pompano. Specifically, the caption next to Gibson's image

---

[1]     In the world of modeling, the number of online "followers" or "likes" is a strong factor in determining the earning capacity of a model.

provided, "Thank you for your patronage…" This caption insinuated that Gibson was thanking Booby Trap Doral, Booby Trap South Miami, and Booby Trap Pompano's customers for their support and patronage. The images were used without the consent of Gibson and were altered to intentionally give the impression that Gibson is either a stripper working at the strip clubs or that she endorses the strip clubs. *See* images of PLAINTIFF Gibson attached hereto as **Exhibit A** which is incorporated herein by this reference.

58.    Gibson's images, likeness and/or identity in **Exhibit A** are being used by Defendants in various marketing and promotional mediums ("usages") such as advertising and on social media.

59.    Gibson has never been employed by Defendants or contracted with Defendants to participate in events at Defendants' strip clubs.

60.    Gibson has never been hired by Defendants or contracted with Defendants to advertise, promote, market or endorse Defendants' businesses or any Defendants' event.

61.    Defendants never sought permission or authority to use Gibson's images, likeness and/or identity to advertise, promote, market or endorse Defendants' businesses or any Defendants' event.

62.    Gibson never gave permission, or assigned, licensed or otherwise consented to Defendants using her images, likeness and/or identity to advertise, promote, market or endorse Defendants' businesses or any Defendants' event.

63.    At all times relevant to this action, Gibson was and is the exclusive owner of all rights, title, and interest to her images, likeness and/or identity unlawfully converted by Defendants.

64.    Defendants neither offered nor paid any remuneration to Gibson for the unauthorized use of her images, likeness and/or identity.

65.    Defendants' use of Gibson's images, likeness and/or identity in connection with Defendants' strip clubs impugns Gibson's character, embarrasses her, and suggests – falsely – her support for and participation in the adult entertainment and striptease industry.

66.    Upon information and belief, Defendants' improper use of the images described herein permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Gibson's images in their market activities and business. In doing so, Defendants have further damaged Gibson.

### *Plaintiff Cora Skinner*

67.    PLAINTIFF Skinner is a model and actress. Her television show appearances include *The Tonight Show with Jay Leno, Rules of Engagement, QVC, Shark, Las Vegas "White Christmas"*, and *CSI Miami*. She has modeled for name brands such as Sketchers, Nordstrom, Fredricks of Hollywood, Tecate, Skky Vodka, and *Muscle & Fitness*, to name a few. Skinner has even appeared in music videos such as Def Leppard's "Nine Lives". Skinner currently enjoys eighty-six thousand (86,000) Instagram followers.

68.    In all instances of commercial marketing and promotion of her image, likeness and/or identity by third parties, Skinner negotiated and expressly granted

authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

69.     DEFENDANT Booby Trap Doral, DEFENDANT Booby Trap South Miami, and DEFENDANTS Booby Trap Pompano used stolen images of PLAINTIFF Skinner to entice the public to visit their strip clubs. On November 5 and 12, 2013, Booby Trap Pompano and Booby Trap Doral respectively used Skinner's image for the promotion and marketing of Booby Trap Pompano and Booby Trap Doral strip clubs. The image was uploaded to Booby Trap Pompano and Booby Trap Doral's Facebook accounts with the intention of deceiving the viewing public into believing that Skinner is a stripper at Booby Trap Pompano and Booby Trap Doral. The image contained the following salacious caption, "I found the perfect little black dress for the Anniversary Party." The image was also used to promote free alcohol and free food. On July 31, 2015, Booby Trap Doral, Booby Trap South Miami, and Booby Trap Pompano uploaded another image of Skinner to Booby Trap Doral, Booby Trap South Miami, and Booby Trap Pompano's Facebook pages. Next to this image of Skinner, Booby Trap Doral, Booby Trap South Miami, and Booby Trap Pompano inserted a derogatory caption that read, "Have a Happy Fishnet Friday!" The image was undoubtedly used with the intention to promote Booby Trap Doral, Booby Trap South Miami, and Booby Trap Pompano. The images were used without the consent of Skinner and were altered to intentionally give the impression that Skinner is either a stripper working at the strip clubs or that she endorses the strip clubs. *See* images of PLAINTIFF Skinner attached hereto as **Exhibit B** which is incorporated herein by this reference.

70.     Skinner's images, likeness and/or identity in **Exhibit B** are being used by Defendants in various marketing and promotional mediums such as advertising, on social media and for branding purposes.

71.     Skinner has never been employed by Defendants or contracted with Defendants to participate in events at Defendants' strip clubs.

72.     Skinner has never been hired by Defendants or contracted with Defendants to advertise, promote, market or endorse Defendants' businesses or any Defendants' event.

73.     Defendants never sought permission or authority to use Skinner's images, likeness and/or identity to advertise, promote, market or endorse Defendants' businesses or any Defendants' event.

74.     Skinner never gave permission, or assigned, licensed or otherwise consented to Defendants using her images, likeness and/or identity to advertise, promote, market or endorse Defendants' businesses or any Defendants' event.

75.     At all times relevant to this action, Skinner was and is the exclusive owner of all rights, title, and interest to her images, likeness and/or identity unlawfully converted by Defendants.

76.     Defendants neither offered nor paid any remuneration to Skinner for the unauthorized use of her images, likeness and/or identity.

77.     Defendants' use of Skinner's images, likeness and/or identity in connection with Defendants' strip clubs impugns Skinner's character, embarrasses her, and suggests – falsely – her support for and participation in the adult entertainment and striptease industry.

78.     Upon information and belief, Defendants' improper use of the images described herein permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Skinner's images in their market activities and business. In doing so, Defendants have further damaged Skinner.

### Plaintiff Vivian Kindle

79.     PLAINTIFF Kindle started modeling at the age of sixteen (16). Her passion, drive and ambition drove her to a very successful and exciting life. Years of experience, traveling, networking, and moving around from state to state molded her into a very strong, independent, self-made woman. At the age of twenty one (21) Kindle moved to New York City, New York to pursue her modeling career. About two (2) years later, Kindle made the leap to Hollywood, California. Since her move, Kindle has posed for magazines such as *Maxim*, *FHM*, *American Curves*, *Push*, *Esquire*, *GQ*, *World Physique*, and many more. Kindle also starred as an actress in the 2013 film *School Dance*. Shortly after filming the Nick Cannon production, Kindle became an official *WildNOut* girl on MTV2 and had a recurring role on the well-known CBS soap opera, *The Bold & Beautiful.* Kindle currently enjoys over four hundred fifty-three thousand (453,000) Instagram followers, over twenty-five thousand (25,000) Twitter followers and almost sixty thousand (60,000) Facebook followers.

80.     In all instances of commercial marketing and promotion of her image, likeness and/or identity by third parties, Kindle negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

81.     DEFENDANT Booby Trap Doral, DEFENDANT Booby Trap South Miami, and DEFENDANTS Booby Trap Pompano used stolen images of PLAINTIFF Kindle to entice the public to visit their strip clubs. On April 11, 2013, an image of Kindle was uploaded to Booby Trap Doral, Booby Trap South Miami, and Booby Trap Pompano's Facebook pages. Booby Trap Doral, Booby Trap South Miami, and Booby Trap Pompano placed the phrase "do we even have to ask – smash or pass?" directly on Kindle's image thereby implying that Kindle is a stripper at said establishments and that she performs lewd, sexual acts for money. On July 12, 2015, another image of Kindle was uploaded to Booby Trap Doral, Booby Trap South Miami, and Booby Trap Pompano's Facebook pages. The image was used to advertise the said strip clubs and to invite customers to visit the clubs. The image also contained the following caption, "They just don't make service stations like they used to." The images were used without the consent of Kindle and were altered to intentionally give the impression that Kindle is either a stripper working at the strip clubs or that she endorses the strip clubs. *See* images of PLAINTIFF Kindle attached hereto as **Exhibit C** which is incorporated herein by this reference.

82.     Kindle's images, likeness and/or identity in **Exhibit C** are being used by Defendants in various marketing and promotional mediums such as advertising, on social media and for branding purposes.

83.     Kindle has never been employed by Defendants or contracted with Defendants to participate in events at Defendants' strip clubs.

84.     Kindle has never been hired by Defendants or contracted with Defendants to advertise, promote, market or endorse Defendants' businesses or any Defendants' event.

85.     Defendants never sought permission or authority to use Kindle's images, likeness and/or identity to advertise, promote, market or endorse Defendants' businesses or any Defendants' event.

86.     Kindle never gave permission, or assigned, licensed or otherwise consented to Defendants using her images, likeness and/or identity to advertise, promote, market or endorse Defendants' businesses or any Defendants' event.

87.     At all times relevant to this action, Kindle was and is the exclusive owner of all rights, title, and interest to her images, likeness and/or identity unlawfully converted by Defendants.

88.     Defendants neither offered nor paid any remuneration to Kindle for the unauthorized use of her images, likeness and/or identity.

89.     Defendants' use of Kindle's images, likeness and/or identity in connection with Defendants' strip clubs impugns Kindle's character, embarrasses her, and suggests – falsely – her support for and participation in the adult entertainment and striptease industry.

90.     Upon information and belief, Defendants' improper use of the images described herein permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Kindle's images in their market activities and business. In doing so, Defendants have further damaged Kindle.

***Plaintiff Alicia Whitten***

91.    PLAINTIFF Whitten is a professional model, actress, and television host who has worked for such names as Dodge, *Maxim*, *Super Street*, *Modified Magazine*, *DSport, Quad Product Guide, Pasmag, Super Street Bike*, *Horse Magazine,* and countless other editorials. Whitten has appeared in over a dozen calendars and fifteen (15) magazine covers, and has been a spokesmodel for Nos Energy Drink. She has worked nationwide from Miami, Florida and Los Angeles, California to New York, New York and Honolulu, Hawaii. Whitten currently enjoys over forty-two thousand (42,000) Instagram followers, almost sixty-one thousand (61,000) Facebook followers, and over ten thousand (10,000) Twitter followers.

92.    In all instances of commercial marketing and promotion of her image, likeness and/or identity by third parties, Whitten negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

93.    DEFENDANT Booby Trap Doral, DEFENDANT Booby Trap South Miami, and DEFENDANTS Booby Trap Pompano used a stolen image of PLAINTIFF Whitten to entice the public to visit their strip clubs. On September 23, 2014, Booby Trap Doral, Booby Trap South Miami, and Booby Trap Pompano uploaded an image of Whitten to Booby Trap Doral, Booby Trap South Miami, and Booby Trap Pompano's Facebook pages to promote and market their strip clubs. The image insinuated that Whitten is a stripper at Booby Trap Doral, Booby Trap South Miami, and Booby Trap Pompano and is welcoming the viewing public to visit the strip clubs. Specifically, the image contained the following phrase, "top of the Tuesday to ya!" The image was used

without the consent of Whitten and was altered to intentionally give the impression that Whitten is either a stripper working at the strip clubs or that she endorses the strip clubs. *See* image of PLAINTIFF Whitten attached hereto as **Exhibit D** which is incorporated herein by this reference.

94.     Whitten's image, likeness and/or identity in **Exhibit D** is being used by Defendants in various marketing and promotional mediums such as advertising and on social media.

95.     Whitten has never been employed by Defendants or contracted with Defendants to participate in events at Defendants' strip clubs.

96.     Whitten has never been hired by Defendants or contracted with Defendants to advertise, promote, market or endorse Defendants' businesses or any Defendants' event.

97.     Defendants never sought permission or authority to use Whitten's image, likeness and/or identity to advertise, promote, market or endorse Defendants' businesses or any Defendants' event.

98.     Whitten never gave permission, or assigned, licensed or otherwise consented to Defendants using her image, likeness and/or identity to advertise, promote, market or endorse Defendants' businesses or any Defendants' event.

99.     At all times relevant to this action, Whitten was and is the exclusive owner of all rights, title, and interest to her image, likeness and/or identity unlawfully converted by Defendants.

100.     Defendants neither offered nor paid any remuneration to Whitten for the unauthorized use of her image, likeness and/or identity.

101.    Defendants' use of Whitten's image, likeness and/or identity in connection with Defendants' strip clubs impugns Whitten's character, embarrasses her, and suggests – falsely – her support for and participation in the adult entertainment and striptease industry.

102.    Upon information and belief, Defendants' improper use of the image described herein permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Whitten's image in their market activities and business. In doing so, Defendants have further damaged Whitten.

### *Plaintiff Ashley Vickers*

103.    PLAINTIFF Vickers established herself as a model and spokesperson with NASCAR, NHRA, and International Auto shows while completing a degree in communications from the University of Central Florida. After graduation, Vickers began emceeing for the NBA Memphis Grizzlies in the State of Tennessee, where she thrived working in front of the camera alongside nearly ten thousand (10,000) fans at each game. In 2010, Vickers competed in *Maxim*'s "Hometown Hottie Contest," where she made the Top Ten and hosted *WWE: NXT* on SyFy and *WWE: Smackdown* on USA. Vickers most recently appeared in the featured film, *A Fine Step.* As an award winning public speaker for the Future Business Leaders of America and Florida Cattlewomen's Association, Vickers also has extensive motivational speaking experience. Currently, Vickers enjoys over sixteen thousand (16,000) Twitter followers, almost eighty thousand (80,000) Facebook likes, and over four thousand (4,000) Instagram followers.

104.    In all instances of commercial marketing and promotion of her image, likeness and/or identity by third parties, Vickers negotiated and expressly granted

authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

105.     DEFENDANT Booby Trap Doral, DEFENDANT Booby Trap South Miami, and DEFENDANTS Booby Trap Pompano used stolen images of PLAINTIFF Vickers to entice the public to visit their strip clubs. On August 23, 2013, Vickers' image was uploaded to Booby Trap Doral, Booby Trap South Miami, and Booby Trap Pompano's Facebook pages for promotional and marketing purposes. The image contained a caption, "1-10, rate her:." The caption was used to excite the viewing public and to bring them to Booby Trap Doral, Booby Trap South Miami, and Booby Trap Pompano strip clubs in the hopes of meeting Vickers. On January 17, 2014, another image of Vickers was used by Booby Trap Doral and Booby Trap South Miami to promote Booby Trap Doral and Booby Trap South Miami on their Facebook pages. The image contained a heading, "looks like its going to be a great day!" On March 26, 2015, Booby Trap Doral and Booby Trap South Miami uploaded yet another image of Vickers to mislead the viewing public and to imply that Vickers is a stripper at Booby Trap Doral and Booby Trap South Miami strip clubs. The caption next the image provided, "have a great day!" On July 26, 2015, Booby Trap South Miami re-published that same image of Vickers on its Facebook page with a caption, "lingerie that is not appropriate for brunch… but perfect for breakfast in bed." The said caption misleadingly suggested that Vickers participates in lewd, sexual acts and is involved in the adult entertainment porn industry. Booby Trap Doral, Booby Trap South Miami, and Booby Trap Pompano manipulated Vickers' images to imply that Vickers is not only associated with Booby Trap Doral, Booby Trap South Miami, and Booby Trap Pompano strip clubs, but that she

is also the brand and the representative of Booby Trap Doral, Booby Trap South Miami, and Booby Trap Pompano. The images were used without the consent of Vickers and were altered to intentionally give the impression that Vickers is a stripper working at the strip clubs and that she endorses the strip clubs. *See* images of PLAINTIFF Vickers attached hereto as **Exhibit E** which is incorporated herein by this reference.

106.   Vickers' images, likeness and/or identity in **Exhibit E** are being used by Defendants in various marketing and promotional mediums such as advertising, on social media and for branding purposes.

107.   Vickers has never been employed by Defendants or contracted with Defendants to participate in events at Defendants' strip clubs.

108.   Vickers has never been hired by Defendants or contracted with Defendants to advertise, promote, market or endorse Defendants' businesses or any Defendants' event.

109.   Defendants never sought permission or authority to use Vickers' images, likeness and/or identity to advertise, promote, market or endorse Defendants' businesses or any Defendants' event.

110.   Vickers never gave permission, or assigned, licensed or otherwise consented to Defendants using her images, likeness and/or identity to advertise, promote, market or endorse Defendants' businesses or any Defendants' event.

111.   At all times relevant to this action, Vickers was and is the exclusive owner of all rights, title, and interest to her images, likeness and/or identity unlawfully converted by Defendants.

112.    Defendants neither offered nor paid any remuneration to Vickers for the unauthorized use of her images, likeness and/or identity.

113.    Defendants' use of Vickers' images, likeness and/or identity in connection with Defendants' strip clubs impugns Vickers' character, embarrasses her, and suggests – falsely – her support for and participation in the adult entertainment and striptease industry.

114.    Upon information and belief, Defendants' improper use of the images described herein permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Vickers' images in their market activities and business. In doing so, Defendants have further damaged Vickers.

### *Plaintiff Dessie Mitcheson*

115.    PLAINTIFF Mitcheson is a model and actress. She is best known for winning *Maxim's* "Hometown Hottie" contest in 2013. The previous year she was named the Face of the MGM Grand and the Face of *Playboy* Intimates. Mitcheson most recently stood by Floyd Mayweather's side at the biggest fight of the century as the main ring girl. Mitcheson currently has one hundred and sixty thousand (160,000) Instagram followers, almost twenty thousand (20,000) Facebook followers, and almost ten thousand (10,000) Twitter followers.

116.    In all instances of commercial marketing and promotion of her image, likeness and/or identity by third parties, Mitcheson negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

117.    DEFENDANT Booby Trap Doral, DEFENDANT Booby Trap South Miami, and DEFENDANTS Booby Trap Pompano used a stolen image of PLAINTIFF Mitcheson to entice the public to visit their strip clubs. On December 22, 2013, Booby Trap Doral, Booby Trap South Miami, and Booby Trap Pompano uploaded Mitcheson's image to their Facebook pages in order to advertise Booby Trap Doral, Booby Trap South Miami, and Booby Trap Pompano and to invite the public to visit their strip clubs. Next to the image of Mitcheson, the following slogan read, "anyone else suddenly craving candy canes?" The image was used without the consent of Mitcheson and was altered to intentionally give the impression that Mitcheson is either a stripper working at the strip clubs or that she endorses the strip clubs. *See* image of PLAINTIFF Mitcheson attached hereto as **Exhibit F** which is incorporated herein by this reference.

118.    Mitcheson's image, likeness and/or identity in **Exhibit F** is being used by Defendants in various marketing and promotional mediums such as advertising and on social media.

119.    Mitcheson has never been employed by Defendants or contracted with Defendants to participate in events at Defendants' strip clubs.

120.    Mitcheson has never been hired by Defendants or contracted with Defendants to advertise, promote, market or endorse Defendants' businesses or any Defendants' event.

121.    Defendants never sought permission or authority to use Mitcheson's image, likeness and/or identity to advertise, promote, market or endorse Defendants' businesses or any Defendants' event.

122.     Mitcheson never gave permission, or assigned, licensed or otherwise consented to Defendants using her image, likeness and/or identity to advertise, promote, market or endorse Defendants' businesses or any Defendants' event.

123.     At all times relevant to this action, Mitcheson was and is the exclusive owner of all rights, title, and interest to her image, likeness and/or identity unlawfully converted by Defendants.

124.     Defendants neither offered nor paid any remuneration to Mitcheson for the unauthorized use of her image, likeness and/or identity.

125.     Defendants' use of Mitcheson's image, likeness and/or identity in connection with Defendants' strip clubs impugns Mitcheson's character, embarrasses her, and suggests – falsely – her support for and participation in the adult entertainment and striptease industry.

126.     Upon information and belief, Defendants' improper use of the image described herein permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Mitcheson's image in their market activities and business. In doing so, Defendants have further damaged Mitcheson.

### *Plaintiff Devin Justine Takeguma*

127.     PLAINTIFF Takeguma is a model and a single mother. She has been modeling since 2008. Takeguma has worked for various surf, lingerie, swimsuit, athletic apparel, and clothing companies such as Salty Beards, Swell, Pegasus, Classy Sachet, Frankie's Bikinis, Goddess Knits, Posh Pua, Luna Jai, Kate and Lace, and many others. Takeguma currently enjoys almost eleven thousand (11,000) Instagram followers.

128.   In all instances of commercial marketing and promotion of her image, likeness and/or identity by third parties, Takeguma negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

129.   DEFENDANT Booby Trap Doral, DEFENDANT Booby Trap South Miami, and DEFENDANTS Booby Trap Pompano used a stolen image of PLAINTIFF Takeguma to entice the public to visit their strip clubs. On December 28, 2014, Booby Trap Doral, Booby Trap South Miami, and Booby Trap Pompano used Takeguma's image for the promotion of their strip clubs on their Facebook pages. The image implied that Takeguma is a stripper at said strip clubs and conducts salacious acts for money. The caption next to the image provided, "would you mind if she borrowed the t-shirt?" The image was used without the consent of Takeguma and was altered to intentionally give the impression that Takeguma is either a stripper working at the strip clubs or that she endorses the strip clubs. *See* image of PLAINTIFF Takeguma attached hereto as **Exhibit G** which is incorporated herein by this reference.

130.   Takeguma's image, likeness and/or identity in **Exhibit G** is being used by Defendants in various marketing and promotional mediums such as advertising and on social media.

131.   Takeguma has never been employed by Defendants or contracted with Defendants to participate in events at Defendants' strip clubs.

132.   Takeguma has never been hired by Defendants or contracted with Defendants to advertise, promote, market or endorse Defendants' businesses or any Defendants' event.

133.    Defendants never sought permission or authority to use Takeguma's image, likeness and/or identity to advertise, promote, market or endorse Defendants' businesses or any Defendants' event.

134.    Takeguma never gave permission, or assigned, licensed or otherwise consented to Defendants using her image, likeness and/or identity to advertise, promote, market or endorse Defendants' businesses or any Defendants' event.

135.    At all times relevant to this action, Takeguma was and is the exclusive owner of all rights, title, and interest to her image, likeness and/or identity unlawfully converted by Defendants.

136.    Defendants neither offered nor paid any remuneration to Takeguma for the unauthorized use of her image, likeness and/or identity.

137.    Defendants' use of Takeguma's image, likeness and/or identity in connection with Defendants' strip clubs impugns Takeguma's character, embarrasses her, and suggests – falsely – her support for and participation in the adult entertainment and striptease industry.

138.    Upon information and belief, Defendants' improper use of the image described herein permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Takeguma's image in their market activities and business. In doing so, Defendants have further damaged Takeguma.

### *Plaintiff Eva Pepaj*

139.    PLAINTIFF Pepaj is a professional model and actress and her work includes runway walks, high fashion, print, and film. She is known for her roles in the movies *The Hand Off* (2009), *The Romp* (2011), *Leather Bar*, (2013), and *Interior*

(2014). Pepaj was also featured in a national Diet Coke TV commercial. Pepaj currently has over twenty-four thousand (24,000) Instagram followers.

140.    In all instances of commercial marketing and promotion of her image, likeness and/or identity by third parties, Pepaj negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

141.    DEFENDANT Booby Trap Doral and DEFENDANT Booby Trap South Miami used a stolen image of PLAINTIFF Pepaj to entice the public to visit their strip clubs. On March 11, 2015, Pepaj's image was used to promote Booby Trap Doral and Booby Trap South Miami strip clubs on their Facebook pages. The image was also used to promote free alcohol and "St. Patty's VIP Party." The image insinuated that Pepaj was making an appearance at Booby Trap Doral and Booby Trap South Miami's "St. Patty's VIP Party." The image contained the following caption, "KISS US, we're all IRISH tonight!" The image was used without the consent of Pepaj and was altered to intentionally give the impression that Pepaj is either a stripper working Booby Trap Doral and Booby Trap South Miami or that she endorses Booby Trap Doral and Booby Trap South Miami. *See* image of PLAINTIFF Pepaj attached hereto as **Exhibit H** which is incorporated herein by this reference.

142.    Pepaj's image, likeness and/or identity in **Exhibit H** is being used by Defendants in various marketing and promotional mediums such as advertising, on social media and for branding purposes.

143.    Pepaj has never been employed by Defendants or contracted with Defendants to participate in events at Defendants' strip clubs.

144.     Pepaj has never been hired by Defendants or contracted with Defendants to advertise, promote, market or endorse Defendants' businesses or any Defendants' event.

145.     Defendants never sought permission or authority to use Pepaj's image, likeness and/or identity to advertise, promote, market or endorse Defendants' businesses or any Defendants' event.

146.     Pepaj never gave permission, or assigned, licensed or otherwise consented to Defendants using her image, likeness and/or identity to advertise, promote, market or endorse Defendants' businesses or any Defendants' event.

147.     At all times relevant to this action, Pepaj was and is the exclusive owner of all rights, title, and interest to her image, likeness and/or identity unlawfully converted by Defendants.

148.     Defendants neither offered nor paid any remuneration to Pepaj for the unauthorized use of her image, likeness and/or identity.

149.     Defendants' use of Pepaj's image, likeness and/or identity in connection with Defendants' strip clubs impugns Pepaj's character, embarrasses her, and suggests – falsely – her support for and participation in the adult entertainment and striptease industry.

150.     Upon information and belief, Defendants' improper use of the image described herein permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Pepaj's image in their market activities and business. In doing so, Defendants have further damaged Pepaj.

*Plaintiff Jessica Burciaga*

151.   PLAINTIFF Burciaga is a model and a business owner. Burciaga has appeared in various magazines including *Playboy, Maxim, Import Tuner, Modified Mag, Performance Auto & Sound, Show Latina, and Lowrider Magazine*. Burciaga became the "Playmate of the Month" in the February, 2009 issue of *Playboy* and has appeared as herself in several episodes of the reality TV series, *The Girls Next Door*. Recently Burciaga has been focusing on various business ventures including a women's online clothing boutique, www.SailorandSaint.com. She also has a brand of hair extensions on Bellami Hair Extensions. Burciaga's social media reach has hit one million six hundred thousand (1,600,000) followers on Instagram, over two hundred seventy-one thousand (271,000) Facebook likes, and two hundred three thousand (203,000) followers on Twitter.

152.   In all instances of commercial marketing and promotion of her image, likeness and/or identity by third parties, Burciaga negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

153.   DEFENDANT Booby Trap Doral, DEFENDANT Booby Trap South Miami, and DEFENDANTS Booby Trap Pompano used stolen images of PLAINTIFF Burciaga to entice the public to visit their strip clubs. On May 17, 2013, Burciaga's image was uploaded to Booby Trap Doral, Booby Trap South Miami, and Booby Trap Pompano's Facebook pages. The image was used to promote and market Booby Trap Doral, Booby Trap South Miami, and Booby Trap Pompano with the following caption, "what a Friday should look like." On February 7, 2014, another image of Burciaga was

used for advertisement purposes on Booby Trap Doral, Booby Trap South Miami, and Booby Trap Pompano's Facebook pages. This advertisement made it appear as if Burciaga was acting on behalf of Booby Trap Doral, Booby Trap South Miami, and Booby Trap Pompano strip clubs and was wishing the viewing public to "[h]ave a beautiful day!" On August 8, 2014, yet another image of Burciaga appeared on Booby Trap Doral, Booby Trap South Miami, and Booby Trap Pompano's Facebook pages. Booby Trap Doral, Booby Trap South Miami, and Booby Trap Pompano used the image to imply that Burciaga would be appearing at their strip clubs. Precisely, the caption next to the image read, "TGIF with us tonight…" The use of the images implied that Burciaga represents Booby Trap Doral, Booby Trap South Miami, and Booby Trap Pompano strip clubs, that she is the brand of the strip clubs, and that she authorized Booby Trap Doral, Booby Trap South Miami, and Booby Trap Pompano strip clubs to use her images for promotional and marketing purposes. The images were used without the consent of Burciaga and were altered to intentionally give the impression that Burciaga is either a stripper working at the strip clubs or that she endorses the strip clubs. *See* images of PLAINTIFF Burciaga attached hereto as **Exhibit I** which is incorporated herein by this reference.

154.    Burciaga's images, likeness and/or identity in **Exhibit I** are being used by Defendants in various marketing and promotional mediums such as advertising, on social media and for branding purposes.

155.    Burciaga has never been employed by Defendants or contracted with Defendants to participate in events at Defendants' strip clubs.

156.    Burciaga has never been hired by Defendants or contracted with Defendants to advertise, promote, market or endorse Defendants' businesses or any Defendants' event.

157.    Defendants never sought permission or authority to use Burciaga's images, likeness and/or identity to advertise, promote, market or endorse Defendants' businesses or any Defendants' event.

158.    Burciaga never gave permission, or assigned, licensed or otherwise consented to Defendants using her images, likeness and/or identity to advertise, promote, market or endorse Defendants' businesses or any Defendants' event.

159.    At all times relevant to this action, Burciaga was and is the exclusive owner of all rights, title, and interest to her images, likeness and/or identity unlawfully converted by Defendants.

160.    Defendants neither offered nor paid any remuneration to Burciaga for the unauthorized use of her images, likeness and/or identity.

161.    Defendants' use of Burciaga's images, likeness and/or identity in connection with Defendants' strip clubs impugns Burciaga's character, embarrasses her, and suggests – falsely – her support for and participation in the adult entertainment and striptease industry.

162.    Upon information and belief, Defendants' improper use of the images described herein permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Burciaga's images in their market activities and business. In doing so, Defendants have further damaged Burciaga.

*Plaintiff Lina Posada*

163.    PLAINTIFF Posada is a fashion model and a fashion designer. She is best known for her appearances in the Bésame and Espiral lingerie collection photo shoots. Posada has also modeled for Paradizia Swimwear, Babalú Swimwear, Irgus Swimwear, Ujeans, as well as many others. She has over six hundred and thirty-nine thousand (639,000) YouTube views, over five thousand (5,000) Twitter followers, over six thousand (6,000) Facebook likes, and over seventy-four thousand (74,000) Instagram followers.

164.    In all instances of commercial marketing and promotion of her image, likeness and/or identity by third parties, Posada negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

165.    DEFENDANT Booby Trap Doral, DEFENDANT Booby Trap South Miami, and DEFENDANTS Booby Trap Pompano used a stolen image of PLAINTIFF Posada to entice the public to visit their strip clubs. On December 5, 2014, Booby Trap Doral, Booby Trap South Miami, and Booby Trap Pompano used an image of Posada to promote their strip clubs using a salacious caption of "nice racing stripes…" next to the image of Posada. The image was used without the consent of Posada and was altered to intentionally give the impression that Posada is either a stripper working at the strip clubs or that she endorses the strip clubs.  *See* image of PLAINTIFF Posada attached hereto as **Exhibit J** which is incorporated herein by this reference.

166.    Posada's image, likeness and/or identity in **Exhibit J** is being used by Defendants in various marketing and promotional mediums such as advertising and on social media.

167.    Posada has never been employed by Defendants or contracted with Defendants to participate in events at Defendants' strip clubs.

168.    Posada has never been hired by Defendants or contracted with Defendants to advertise, promote, market or endorse Defendants' businesses or any Defendants' event.

169.    Defendants never sought permission or authority to use Posada's image, likeness and/or identity to advertise, promote, market or endorse Defendants' businesses or any Defendants' event.

170.    Posada never gave permission, or assigned, licensed or otherwise consented to Defendants using her image, likeness and/or identity to advertise, promote, market or endorse Defendants' businesses or any Defendants' event.

171.    At all times relevant to this action, Posada was and is the exclusive owner of all rights, title, and interest to her image, likeness and/or identity unlawfully converted by Defendants.

172.    Defendants neither offered nor paid any remuneration to Posada for the unauthorized use of her image, likeness and/or identity.

173.    Defendants' use of Posada's image, likeness and/or identity in connection with Defendants' strip clubs impugns Posada's character, embarrasses her, and suggests – falsely – her support for and participation in the adult entertainment and striptease industry.

174.    Upon information and belief, Defendants' improper use of the image described herein permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Posada's image in their market activities and business. In doing so, Defendants have further damaged Posada.

### *Plaintiff Marketa Kazdova*

175.    PLAINTIFF Kazdova in an international model. She has worked in countries such as China, Japan, United Arab Emirates, Italy, Britain, France, Portugal, Germany, and Austria. Kazdova has appeared in *Elle*, *Style*, *Cosmo Girl*, *Dolce Vita*, *Nylon*, *Prestige Paris*, *Fiasco*, *Composure*, *Formen*, *Modern Salon*, *Viva Glam,* and many other magazines. Since 2011, she has also worked with Nordstrom, Macy's, Tadashi Shoji, Anthony Franco, Alicia Estrada, Mirabella Beauty, MAC, Level 99, Dreamgirl Lingerie, Erka Mare Swimwear, HausofPinkLemonaid Swimwear, Hautelook, Patagonia, and many others. Kazdova currently enjoys almost ten thousand (10,000) Instagram followers and almost two thousand (2,000) Facebook likes.

176.    In all instances of commercial marketing and promotion of her image, likeness and/or identity by third parties, Kazdova negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

177.    DEFENDANT Booby Trap Doral, DEFENDANT Booby Trap South Miami, and DEFENDANTS Booby Trap Pompano used a stolen image of PLAINTIFF Kazdova to entice the public to visit their strip clubs. On April 2, 2015, Kazdova's image was uploaded to Booby Trap Doral, Booby Trap South Miami, and Booby Trap Pompano's Facebook pages to promote and market the said strip clubs. The lascivious

caption next to the image of Kazdova read, "now that's my idea of cleaning service…" The image was used without the consent of Kazdova and was altered to intentionally give the impression that Kazdova is either a stripper working at the strip clubs or that she endorses the strip clubs. *See* image of PLAINTIFF Kazdova attached hereto as **Exhibit K** which is incorporated herein by this reference.

178.   Kazdova's image, likeness and/or identity in **Exhibit K** is being used by Defendants in various marketing and promotional mediums such as advertising and on social media.

179.   Kazdova has never been employed by Defendants or contracted with Defendants to participate in events at Defendants' strip clubs.

180.   Kazdova has never been hired by Defendants or contracted with Defendants to advertise, promote, market or endorse Defendants' businesses or any Defendants' event.

181.   Defendants never sought permission or authority to use Kazdova's image, likeness and/or identity to advertise, promote, market or endorse Defendants' businesses or any Defendants' event.

182.   Kazdova never gave permission, or assigned, licensed or otherwise consented to Defendants using her image, likeness and/or identity to advertise, promote, market or endorse Defendants' businesses or any Defendants' event.

183.   At all times relevant to this action, Kazdova was and is the exclusive owner of all rights, title, and interest to her image, likeness and/or identity unlawfully converted by Defendants.

184.    Defendants neither offered nor paid any remuneration to Kazdova for the unauthorized use of her image, likeness and/or identity.

185.    Defendants' use of Kazdova's image, likeness and/or identity in connection with Defendants' strip clubs impugns Kazdova's character, embarrasses her, and suggests – falsely – her support for and participation in the adult entertainment and striptease industry.

186.    Upon information and belief, Defendants' improper use of the image described herein permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Kazdova's image in their market activities and business. In doing so, Defendants have further damaged Kazdova.

### Plaintiff Paola Canas

187.    PLAINTIFF Canas is a Colombian born model now residing and working in the United States. Canas has been in the industry for over twelve (12) years and has found great success as a model, host, runway model, and actor. She has worked runway shows in her native Colombia, as well as Mexico, Ecuador, and recently in Paris, France. She heads up the international campaign and was a contracted model for Curve and their worldwide lingerie line. Canas was chosen as the face of the Masters Gold Tournament in Dubai, United Arab Emirates and was the image for the "International Surf and Sport Expo" in Orlando, Florida. She has worked for international brands and labels such as SOHO, KISS underwear, Salon International, Zona Rosa, and Esteban Escobar. She has appeared in numerous television shows like *FOX Sports* and on television networks such as Telemundo and TV Azteca. Canas continues to build an impressive profile and is constantly in demand between Miami, Florida, New York, New York and Los Angeles,

California. Canas currently enjoys over two hundred and sixty thousand (260,000) Instagram followers.

188.   In all instances of commercial marketing and promotion of her image, likeness and/or identity by third parties, Canas negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

189.   DEFENDANT Booby Trap Doral, DEFENDANT Booby Trap South Miami, and DEFENDANTS Booby Trap Pompano used a stolen image of PLAINTIFF Canas to entice the public to visit their strip clubs. On August 16, 2013, Booby Trap Doral, Booby Trap South Miami, and Booby Trap Pompano used Canas' image on their Facebook pages to advertise their strip clubs. Further, the image insinuated that Canas is a stripper working at Booby Trap Doral, Booby Trap South Miami, and Booby Trap Pompano strip clubs. The caption next to the image provided, "ready to paint the town pink!" The image was used without the consent of Canas and was altered to intentionally give the impression that Canas is either a stripper working at the strip clubs or that she endorses the strip clubs. *See* image of PLAINTIFF Canas attached hereto as **Exhibit L** which is incorporated herein by this reference.

190.   Canas' image, likeness and/or identity in **Exhibit L** is being used by Defendants in various marketing and promotional mediums such as advertising and on social media.

191.   Canas has never been employed by Defendants or contracted with Defendants to participate in events at Defendants' strip clubs.

192.    Canas has never been hired by Defendants or contracted with Defendants to advertise, promote, market or endorse Defendants' businesses or any Defendants' event.

193.    Defendants never sought permission or authority to use Canas' image, likeness and/or identity to advertise, promote, market or endorse Defendants' businesses or any Defendants' event.

194.    Canas never gave permission, or assigned, licensed or otherwise consented to Defendants using her image, likeness and/or identity to advertise, promote, market or endorse Defendants' businesses or any Defendants' event.

195.    At all times relevant to this action, Canas was and is the exclusive owner of all rights, title, and interest to her image, likeness and/or identity unlawfully converted by Defendants.

196.    Defendants neither offered nor paid any remuneration to Canas for the unauthorized use of her image, likeness and/or identity.

197.    Defendants' use of Canas' image, likeness and/or identity in connection with Defendants' strip clubs impugns Canas' character, embarrasses her, and suggests – falsely – her support for and participation in the adult entertainment and striptease industry.

198.    Upon information and belief, Defendants' improper use of the image described herein permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Canas' image in their market activities and business. In doing so, Defendants have further damaged Canas.

### *Plaintiff Tina Quarles*

199.    PLAINTIFF Quarles is an actress and a model. She originally obtained a degree in Business Administration/Marketing from Pacific University in Forest Grove, Oregon. After college, and some time after working in the financial industry, Quarles obtained her Personal Training Certificate and trained groups and individual in her spare time. She began taking acting courses at the Portland Actors Conservatory where her passion for acting finally blossomed. In 2006, Quarles decided to pursue acting and fitness modeling full time and made the move to Los Angeles, California. She was able to obtain her Screen Actors Guild card within her first year. Quarles has filmed commercials, fitness infomercials, and done body doubling, as well as print work. She has worked with celebrities such as Snoop Dogg and appeared on *CSI: New York*. Quarles is currently a trainer and a director of social media for one of the top physical therapy clinics in Kansas and Missouri.

200.    In all instances of commercial marketing and promotion of her image, likeness and/or identity by third parties, Quarles negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

201.    DEFENDANT Booby Trap Doral, DEFENDANT Booby Trap South Miami, and DEFENDANTS Booby Trap Pompano used a stolen image of PLAINTIFF Quarles to entice the public to visit their strip clubs. On May 19, 2015, Quarles' image appeared on Booby Trap Doral, Booby Trap South Miami, and Booby Trap Pompano's Facebook pages. The image contained the following salacious and lewd caption, "whaddya think cowgirls ride better?" Not only was the image used to promote Booby

Trap Doral, Booby Trap South Miami, and Booby Trap Pompano strip clubs, but it also falsely misrepresented to the public that Quarles performs degrading sexual acts for money. The image was used without the consent of Quarles and was altered to intentionally give the impression that Quarles is either a stripper working at the strip clubs or that she endorses the strip clubs. *See* image of PLAINTIFF Quarles attached hereto as **Exhibit M** which is incorporated herein by this reference.

202.    Quarles' image, likeness and/or identity in **Exhibit M** is being used by Defendants in various marketing and promotional mediums such as advertising and on social media.

203.    Quarles has never been employed by Defendants or contracted with Defendants to participate in events at Defendants' strip clubs.

204.    Quarles has never been hired by Defendants or contracted with Defendants to advertise, promote, market or endorse Defendants' businesses or any Defendants' event.

205.    Defendants never sought permission or authority to use Quarles' image, likeness and/or identity to advertise, promote, market or endorse Defendants' businesses or any Defendants' event.

206.    Quarles never gave permission, or assigned, licensed or otherwise consented to Defendants using her image, likeness and/or identity to advertise, promote, market or endorse Defendants' businesses or any Defendants' event.

207.    At all times relevant to this action, Quarles was and is the exclusive owner of all rights, title, and interest to her image, likeness and/or identity unlawfully converted by Defendants.

208.     Defendants neither offered nor paid any remuneration to Quarles for the unauthorized use of her image, likeness and/or identity.

209.     Defendants' use of Quarles' image, likeness and/or identity in connection with Defendants' strip clubs impugns Quarles' character, embarrasses her, and suggests – falsely – her support for and participation in the adult entertainment and striptease industry.

210.     Upon information and belief, Defendants' improper use of the image described herein permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Quarles' image in their market activities and business. In doing so, Defendants have further damaged Quarles.

## C. Defendants Ignored Plaintiffs' Demand Letter that Notified Defendants of the Potential Claims Should Defendants Fail or Refuse to Comply

211.     On September 18, 2015, Plaintiffs, through counsel, sent Defendants a demand and cease/desist letter ("Demand Letter"), enclosed herein as **Exhibit N**.

212.     The Demand Letter provided Defendants with notice of their wrongful actions and demanded that Defendants immediately cease and desist any further use of the models' images. Appended to the Demand Letter was a Preliminary Expert Report regarding image infringement which provided illustrative examples of the offending images.

213.     The Demand Letter further demanded that Defendants pay $2,697,500 in aggregate compensatory, or actual, single damages to compensate the models for the theft and unauthorized use of their images. The amount demanded was a significantly smaller figure than actual damages, and was equivalent to the valuation of the infringed images. It did not include any demand fee for the tortious damages to the Plaintiffs themselves.

214.    The Demand Letter further demanded that Defendants disclose, pursuant to Section 627.4137, Florida Statutes, all insurance policy coverage information.

215.    Defendants were given thirty (30) days to satisfy the conditions set forth in the Demand Letter.

216.    Defendants failed and refused to compensate Plaintiffs for the unauthorized use of their images.

## CAUSES OF ACTION

### *Plaintiff Cielo Jean Gibson's Causes of Action*

### GIBSON COUNT I
### (Violation of the Lanham Act, 15 U.S.C. § 1125(a):
### False Advertising against all Defendants)

217.    Plaintiff Gibson re-alleges paragraphs 1 through 16, 29 through 66, and 211 through 216 above, and incorporates the same by reference as though fully set forth herein.

218.    Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* applies to Defendants and protects Gibson from the conduct described herein. Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . . ." 15 U.S.C. §1125(a)(1)(B).

219.    At all times relevant to this action, Gibson was and is the exclusive owner of all rights, title, and interest to her images, likeness and/or identity unlawfully converted by Defendants for Defendants' benefit.

220.    Defendants used Gibson's images, likeness and/or identity as described herein without authority in order to create the perception that Gibson worked at or was otherwise affiliated with Defendants' strip clubs, endorsed Defendants' businesses and activities, and/or consented to or authorized Defendants to use her images in order to advertise, promote, and market Defendants' businesses and/or Defendants' events and activities.

221.    Defendants' use of Gibson's images, likeness and/or identity to advertise, promote and market Defendants' businesses and/or Defendants' events and activities as described in this Complaint was false and misleading.

222.    Defendants' unauthorized use of Gibson's images, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Gibson worked at or was otherwise affiliated with Defendants, endorsed Defendants' businesses, or Defendants' events or activities, or consented to or authorized Defendants' usage of her images in order to advertise, promote, and market Defendants' businesses or Defendants' events and activities and/or that Gibson would participate in or appear at the specific events promoted in the advertisements.

223.    Defendants' false advertising described above has the capacity or tendency to confuse consumers, including actual and prospective patrons of Defendants, as to the general quality of attendees and participants of Defendants' strip clubs and in their events, as well as specifically whether Gibson worked at or was otherwise affiliated with Defendants, endorsed Defendants' businesses or Defendants' events or activities, or consented to or authorized Defendants' usage of her images in order to advertise, promote, and market Defendants' businesses or Defendants' events and activities.

224.     Upon information and belief, Defendants' false advertising described above did, in fact, deceive and/or cause consumer confusion as to whether Gibson worked at or was otherwise affiliated with Defendants, endorsed Defendants' businesses or Defendants' events and activities, or consented to or authorized Defendants' usage of her images in order to advertise, promote, and market Defendants' businesses or Defendants' events and activities.   Among other things, upon information and belief, such unauthorized use misled and served to entice consumers and prospective consumers to join Defendants, visit Defendants' strip clubs, and participate in events at Defendants' strip clubs and had a material effect and impact on the decision of members and prospective members and participants to join Defendants, visit Defendants' strip clubs and take part in the events at Defendants' strip clubs.

225.     Defendants' advertisements, promotions and marketing of Defendants' strip clubs and events occur in and are targeted to interstate commerce.   Specifically, Defendants promote their businesses and events through interstate promotions and campaigns to target persons from different states throughout the United States. Defendants principally use the World Wide Web, social media and other vehicles of interstate commerce to advertise, market, promote, and entice or lure membership and attendance at Defendants' events.

226.     Defendants' unauthorized use of Gibson's images, likeness and/or identity as described herein was designed to benefit Defendants' businesses interests by, among other things, promoting Defendants' strip clubs and activities and attracting clientele to Defendants' strip clubs.

227.    Defendants knew or should have known that their unauthorized use of Gibson's images, likeness and/or identity would cause consumer confusion as described in this Complaint.

228.    Defendants' unauthorized use of Gibson's images, likeness and/or identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

229.    As such, the present case is an exceptional case warranting an award of reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

230.    Defendants had actual or constructive knowledge or consciously disregarded the wrongfulness of their conduct, deprived Gibson of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Gibson.

231.    The method and manner in which Defendants used the images of Gibson further evinces that Defendants were aware of or consciously disregarded the fact that Gibson did not consent to Defendants' use of the images to advertise Defendants' businesses.

232.    Defendants have caused irreparable harm to Gibson, her reputation and brand by attributing to Gibson the adult entertainment and striptease lifestyle and activities at Defendants' strip clubs.

233.    Defendants' unauthorized use of Gibson's images, likeness and/or identity directly and proximately caused and continue to cause damage to Gibson in an amount to be determined at trial.

**WHEREFORE**, Gibson respectfully requests that the Court issue a judgment against all Defendants and grant actual, or compensatory, damages in an amount to be

determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

**GIBSON COUNT II**
**(Violation of the Lanham Act, 15 U.S.C. § 1125(a):**
**False Endorsement against all Defendants)**

234.    Plaintiff Gibson re-alleges paragraphs 1 through 16, 29 through 66, and 211 through 216 above, and incorporates the same by reference as though fully set forth herein.

235.    Section 43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(A) applies to Defendants, and protects Gibson from the conduct described herein.

236.    Defendants used Gibson's images in order to create the false impression with the public that Gibson either worked at Defendants' strip clubs, or endorsed Defendants' businesses. This was done to promote and attract clientele to Defendants' strip clubs, and thereby generate revenue for Defendants.

237.    Thus, this was done in furtherance of Defendants' commercial benefit.

238.    Gibson is in the business of commercializing her identity and selling her images to reputable brands and companies for profit. Defendants' customers are the exact demographic that views Gibson's images in magazines and online.

239.    Both Gibson and Defendants' strip clubs compete in the entertainment industry, use similar marketing channels and their respective endeavors overlap. They vie for the same dollars from the same demographic consumer group of men.

240.    As such, an unauthorized use of Gibson's images to promote strip clubs created an undeniable confusion in Defendants consumers' minds, which lead to competitive injury to Gibson.

241.    Defendants' use of Gibson's images, likeness and/or identity constitutes a false designation of the source of origin, sponsorship, approval, or association which has deceived Gibson's fans and present and prospective clients into believing that Defendants' advertisements are endorsed by Gibson, or sponsored, approved or associated with Gibson.

242.    Despite the fact that Defendants were at all times aware that Gibson neither worked at, nor endorsed their strip clubs, nevertheless, they used Gibson's images in order to mislead potential customers as to Gibson's employment at and/or affiliation with Defendants.

243.    Defendants knew that their use of Gibson's images would cause consumer confusion as to Gibson's sponsorship and/or employment at Defendants' strip clubs.

244.    Upon information and belief, Defendants' use of Gibson's images did in fact cause consumer confusion as to Gibson's employment at and/or endorsement of Defendants' businesses, and the goods and services provided by Defendants.

245.    As a direct and proximate result of Defendants' actions, Gibson has no control over the nature and quality of the line of products or services provided by Defendants, the nature of the advertisement depicting Gibson's images, likeness and/or identity, or how Gibson's image, likeness and/or identity is being depicted by Defendants.

246.    Further, any failure, neglect or default by Defendants will reflect adversely on Gibson as the believed source of origin, sponsorship, approval or association thereof, hampering efforts by Gibson to continue to protect her reputation for high quality professional modeling, resulting in loss of sales thereof and the considerable expenditures to promote her personal modeling services to legitimate mainstream media, all to the irreparable harm of Gibson.

247.    Due to Defendants' unauthorized use of Gibson's image, Gibson has been damaged in an amount to be determined at trial.

**WHEREFORE**, Gibson respectfully requests that the Court enter a judgment against Defendants and grant actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

**GIBSON COUNT III**
**(Violation of Fla. Stat. § 540.08: Right of Publicity;**
**Unauthorized Misappropriation of Name/Likeness against all Defendants)**

248.    Plaintiff Gibson re-alleges paragraphs 1 through 16, 29 through 66, and 211 through 216 above, and incorporates the same by reference as though fully set forth herein.

249.    Gibson has a statutory right of publicity under Section 540.08, Florida Statutes.

250.    Section 540.08, Florida Statutes, provides that: "[n]o person shall publish, print, display or otherwise publicly use for purposes of trade or for any commercial or

advertising purpose the name, portrait, photograph, or other likeness of any natural person without the express written or oral consent to such use."

251.    Despite the clear language of Section 540.08, Defendants published Gibson's images, likeness and/or identity on social media outlets, among others, in order to promote, advertise and market Defendants' strip clubs and/or Defendants' events and activities.

252.    At all times relevant to this action, Gibson was and is the exclusive owner of all rights, title, and interest to her images, likeness and/or identity unlawfully converted by Defendants for Defendants' benefit.

253.    Defendants never sought permission or authority to use Gibson's images, likeness and/or identity to advertise, promote, market or endorse Defendants' businesses or any Defendants' event or activity.

254.    Gibson never consented to, permitted, assigned, licensed, or otherwise agreed to Defendants' use of her images, likeness and/or identity to advertise, promote, market or endorse Defendants' businesses or any Defendants' event or activity.

255.    Defendants intentionally or, at a minimum, recklessly published, printed, displayed, or otherwise publicly disseminated or used Gibson's images, likeness and/or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

256.    Defendants had actual or constructive knowledge or consciously disregarded the wrongfulness of their conduct, deprived Gibson of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Gibson.

257.     At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Gibson's rights.

258.     Alternatively, Defendants acted negligently towards Gibson in using and disseminating, without authority, her images, likeness and/or identity on social media outlets in order to promote, advertise and market Defendants' strip clubs and/or Defendants' events and activities.

259.     Defendants have caused irreparable harm to Gibson, her reputation and brand by attributing to Gibson the adult entertainment and striptease lifestyle and activities at Defendants' strip clubs.

260.     Defendants have also damaged Gibson as a direct and proximate result of their unauthorized use of Gibson's images, likeness and/or identity without compensating Gibson.   Defendants' conduct has been despicable and taken in conscious disregard of Gibson's rights. Accordingly, Gibson is entitled to an award of punitive damages against Defendants in an amount sufficient to punish and make an example of Defendants. Therefore, Gibson reserves the right to seek punitive damages according to proof and pursuant to Fla. Stat. §768.72.

**WHEREFORE**, Gibson respectfully requests that the Court issue a judgment against all Defendants for all remedies available under Fla. Stat. §540.08, including but not limited to, both actual loss and damages, costs, interest, royalties, and restitution of Defendants' unlawful proceeds, including Defendants' profits and other relief deemed just and proper by this Court.

### <u>GIBSON COUNT IV</u>
**(Violation of Common Law Right of Publicity;**

**Unauthorized Misappropriation of Name or Likeness against all Defendants**)

261.    Plaintiff Gibson re-alleges paragraphs 1 through 16, 29 through 66, and 211 through 216 above, and incorporates the same by reference as though fully set forth herein.

262.    Gibson has a common law right of publicity.

263.    Defendants may not publish, print, display or publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of Gibson without express written or oral consent to such use.

264.    At all times relevant to this action, Gibson was and is the exclusive owner of all rights, title, and interest to her images, likeness and/or identity unlawfully converted by Defendants for Defendants' benefit.

265.    Defendants published, printed, displayed and/or publicly used Gibson's images, likeness and/or identity on their social media outlets, among others, for purposes of trade and/or commercial advertising including, but not limited to, promoting, advertising and marketing of Defendants and Defendants' events and activities.

266.    Defendants took these actions without Gibson's permission, consent or authority.  In fact, Defendants never sought permission nor authority to use Gibson's images, likeness and/or identity to advertise, promote, market or endorse Defendants' businesses or any Defendants' event or activity.

267.    Gibson never consented to, permitted, assigned, licensed, or otherwise agreed to Defendants' use of her images, likeness and/or identity to advertise, promote, market or endorse Defendants' businesses or any Defendants' event or activity.

268.    Defendants intentionally or, at a minimum, recklessly, published, printed, displayed, or otherwise publicly disseminated or used Gibson's images, likeness and/or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

269.    Defendants had actual or constructive knowledge or consciously disregarded the wrongfulness of their conduct, deprived Gibson of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Gibson.

270.    At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Gibson's rights.

271.    Alternatively, Defendants acted negligently towards Gibson in using and disseminating, without authority, her images, likeness and/or identity on Defendants' social media outlets in order to promote, advertise and market Defendants' strip clubs and Defendants' events and activities.

272.    Defendants have caused irreparable harm to Gibson, her reputation and brand by attributing to Gibson the adult entertainment and striptease lifestyle and activities at Defendants' strip clubs.

273.    Defendants have also damaged Gibson as a direct and proximate result of their unauthorized use of Gibson's images, likeness and/or identity without compensating Gibson.

**WHEREFORE**, Gibson respectfully requests that the Court issue a judgment against all Defendants for all remedies available under a claim of misappropriation including, but not limited to, actual damages, costs, interest, and restitution of

Defendants' unlawful proceeds, including Defendants' profits and other relief deemed just and proper by this Court.

**GIBSON COUNT V**
**(Violation of Fla. Stat. § 812.014 and Fla. Stat. § 772.11:**
**Civil Theft against all Defendants)**

274.     Plaintiff Gibson re-alleges paragraphs 1 through 16, 29 through 66, and 211 through 216 above, and incorporates the same by reference as though fully set forth herein.

275.     Section 772.11, Florida Statutes, creates a private right of action for victims of theft of tangible and intangible personal property, including rights, privileges, interests and claims.

276.     Defendants knowingly appropriated, used and disseminated Gibson's images, likeness and/or identity without authorization or consent.

277.     At all times relevant to this action, Gibson was and is the exclusive owner of all rights, title, and interest to her images, likeness and/or identity unlawfully converted by Defendants for Defendants' benefit.

278.     Defendants' misappropriation of Gibson's images, likeness and/or identity was for Defendants' own use and benefit and to deprive Gibson of certain rights.

279.     Defendants' misconduct detailed in this Complaint denied Gibson the right to engage in arms-length negotiations over the use and dissemination of her images, likeness and/or identity, the right to negotiate over reasonable bargained-for compensation, the right to say "no" to the proposed use by Defendants and the right to otherwise protect her images, likeness and/or identity from harm at the hands of the Defendants.

280.    Defendants' appropriation of Gibson's images, likeness and/or identity as detailed herein without authority violates Sections 772.11 and 812.014, Florida Statutes, and was wrongful.

281.    Defendants had actual or constructive knowledge or consciously disregarded the wrongfulness of their conduct, deprived Gibson of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Gibson.

282.    At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Gibson's rights.

283.    Alternatively, the method and manner in which Defendants used Gibson's images, likeness and/or identity further evinces that Defendants were aware or consciously disregarded the fact that Gibson did not consent to Defendants' use in order to advertise Defendants' businesses.

284.    Defendants' appropriation and use of Gibson's images, likeness or identity without authority directly and proximately caused damage to Gibson in an amount to be determined at trial.

**WHEREFORE**, Gibson respectfully requests that the Court issue a judgment against all Defendants for all remedies available under Fla. Stat. § 772.11(1), including but not limited to, treble the amount of actual damages, costs, interest, and attorneys' fees and other relief deemed just and proper by this Court.

## GIBSON COUNT VI
### (Conversion against all Defendants)

285.    Plaintiff Gibson re-alleges paragraphs 1 through 16, 29 through 66, and 211 through 216 above, and incorporates the same by reference as though fully set forth herein.

286.    Gibson is, and all at relevant times was, the exclusive owner of all rights, title, and interest to her images, likeness and/or identity unlawfully converted by Defendants for Defendants' benefit.

287.    Gibson has, and at all times relevant herein had, an intangible property interest in her images, likeness and/or identity unlawfully converted by Defendants for Defendants' benefit.

288.    By their acts and conduct alleged above, Defendants have converted Gibson's property rights, including without limitation, Gibson's images, likeness and/or identity for Defendants' use and wrongful disposition for financial gain.

289.    Gibson is informed and believes and on such information alleges that Defendants have refused to return Gibson's property to her or pay for the deprivation of Gibson's property.

290.    As a result, Gibson has suffered compensatory, punitive and exemplary damages to be determined according to proof at trial; but Gibson alleges that the same are within the jurisdiction of the Court.

291.    Further, Gibson is informed and believes and thereon alleges that in engaging in the conduct described above, Defendants acted with oppression, fraud, and/or malice. Defendants' conduct has been despicable and taken in conscious disregard of Gibson's rights.

WHEREFORE, Gibson respectfully requests this Court to issue a judgment against all Defendants and for all remedies available under the common law claim for conversion, including but not limited to actual damages, costs, interest, and restitution of Defendants' unlawful proceeds, including Defendants' profits, and/or other relief deemed just and proper.

### GIBSON COUNT VII
**(Unjust Enrichment against all Defendants)**

292.    Plaintiff Gibson re-alleges paragraphs 1 through 16, 29 through 66, and 211 through 216 above, and incorporates the same by reference as though fully set forth herein.

293.    Gibson has conferred a benefit upon Defendants by virtue of Defendants' usage of her images without compensation.

294.    At all times relevant to this action, Gibson was and is the exclusive owner of all rights, title, and interest to her images, likeness and/or identity unlawfully converted by Defendants for Defendants' benefit.

295.    Defendants were aware that Gibson's images, likeness and/or identity were valuable.

296.    Defendants were aware of the resulting benefit from usage of Gibson's images, likeness and/or identity.

297.    Defendants have retained profits and other benefits conferred upon them by using Gibson's images, likeness and/or identity to promote and advertise Defendants' businesses and/or Defendants' events and activities.

It would be inequitable for Defendants to retain the benefits conferred upon them by using Gibson's images, likeness and/or identity without paying fair value for the images.

**WHEREFORE**, Gibson respectfully requests that the Court issue a judgment against all Defendants for damages, including but not limited to actual damages, costs, interest, imposition of a constructive trust, restitution of unlawful proceeds, including Defendants' gross profits and such other and further relief in law or equity as this Court deems just and proper.

### *Plaintiff Cora Skinner's Causes of Action*

### SKINNER COUNT I
### (Violation of the Lanham Act, 15 U.S.C. § 1125(a):
### False Advertising against all Defendants)

298.     Plaintiff Skinner re-alleges paragraphs 1 through 15, 17, 29 through 54, 67 through 78, and 211 through 216 above, and incorporates the same by reference as though fully set forth herein.

299.     Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* applies to Defendants and protects Skinner from the conduct described herein. Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . . ."   15 U.S.C. §1125(a)(1)(B).

300.     At all times relevant to this action, Skinner was and is the exclusive owner of all rights, title, and interest to her images, likeness and/or identity unlawfully converted by Defendants for Defendants' benefit.

301.    Defendants used Skinner's images, likeness and/or identity as described herein without authority in order to create the perception that Skinner worked at or was otherwise affiliated with Defendants' strip clubs, endorsed Defendants' businesses and activities, and/or consented to or authorized Defendants to use her images in order to advertise, promote, and market Defendants' businesses and/or Defendants' events and activities.

302.    Defendants' use of Skinner's images, likeness and/or identity to advertise, promote and market Defendants' businesses and/or Defendants' events and activities as described in this Complaint was false and misleading.

303.    Defendants' unauthorized use of Skinner's images, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Skinner worked at or was otherwise affiliated with Defendants, endorsed Defendants' businesses, or Defendants' events or activities, or consented to or authorized Defendants' usage of her images in order to advertise, promote, and market Defendants' businesses or Defendants' events and activities and/or that Skinner would participate in or appear at the specific events promoted in the advertisements.

304.    Defendants' false advertising described above has the capacity or tendency to confuse consumers, including actual and prospective patrons of Defendants, as to the general quality of attendees and participants of Defendants' strip clubs and in their events, as well as specifically whether Skinner worked at or was otherwise affiliated with Defendants, endorsed Defendants' businesses or Defendants' events or activities, or

consented to or authorized Defendants' usage of her images in order to advertise, promote, and market Defendants' businesses or Defendants' events and activities.

305.   Upon information and belief, Defendants' false advertising described above did, in fact, deceive and/or cause consumer confusion as to whether Skinner worked at or was otherwise affiliated with Defendants, endorsed Defendants' businesses or Defendants' events and activities, or consented to or authorized Defendants' usage of her images in order to advertise, promote, and market Defendants' businesses or Defendants' events and activities.   Among other things, upon information and belief, such unauthorized use misled and served to entice consumers and prospective consumers to join Defendants, visit Defendants' strip clubs, and participate in events at Defendants' strip clubs and had a material effect and impact on the decision of members and prospective members and participants to join Defendants, visit Defendants' strip clubs and take part in the events at Defendants' strip clubs.

306.   Defendants' advertisements, promotions and marketing of Defendants' strip clubs and events occur in and are targeted to interstate commerce.   Specifically, Defendants promote their businesses and events through interstate promotions and campaigns to target persons from different states throughout the United States. Defendants principally use the World Wide Web, social media and other vehicles of interstate commerce to advertise, market, promote, and entice or lure membership and attendance at Defendants' events.

307.   Defendants' unauthorized use of Skinner's images, likeness and/or identity as described herein was designed to benefit Defendants' businesses interests by,

among other things, promoting Defendants' strip clubs and activities and attracting clientele to Defendants' strip clubs.

308.    Defendants knew or should have known that their unauthorized use of Skinner's images, likeness and/or identity would cause consumer confusion as described in this Complaint.

309.    Defendants' unauthorized use of Skinner's images, likeness and/or identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

310.    As such, the present case is an exceptional case warranting an award of reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

311.    Defendants had actual or constructive knowledge or consciously disregarded the wrongfulness of their conduct, deprived Skinner of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Skinner.

312.    The method and manner in which Defendants used the images of Skinner further evinces that Defendants were aware of or consciously disregarded the fact that Skinner did not consent to Defendants' use of the images to advertise Defendants' businesses.

313.    Defendants have caused irreparable harm to Skinner, her reputation and brand by attributing to Skinner the adult entertainment and striptease lifestyle and activities at Defendants' strip clubs.

314.    Defendants' unauthorized use of Skinner's images, likeness and/or identity directly and proximately caused and continue to cause damage to Skinner in an amount to be determined at trial.

**WHEREFORE**, Skinner respectfully requests that the Court issue a judgment against all Defendants and grant actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

<u>**SKINNER COUNT II**</u>
**(Violation of the Lanham Act, 15 U.S.C. § 1125(a):
False Endorsement against all Defendants)**

315.    Plaintiff Skinner re-alleges paragraphs 1 through 15, 17, 29 through 54, 67 through 78, and 211 through 216 above, and incorporates the same by reference as though fully set forth herein.

316.    Section 43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(A) applies to Defendants, and protects Skinner from the conduct described herein.

317.    Defendants used Skinner's images in order to create the false impression with the public that Skinner either worked at Defendants' strip clubs, or endorsed Defendants' businesses. This was done to promote and attract clientele to Defendants' strip clubs, and thereby generate revenue for Defendants.

318.    Thus, this was done in furtherance of Defendants' commercial benefit.

319.    Skinner is in the business of commercializing her identity and selling her images to reputable brands and companies for profit. Defendants' customers are the exact demographic that views Skinner's images in magazines and online.

320.    Both Skinner and Defendants' strip clubs compete in the entertainment industry, use similar marketing channels and their respective endeavors overlap. They vie for the same dollars from the same demographic consumer group of men.

321.    As such, an unauthorized use of Skinner's images to promote strip clubs created an undeniable confusion in Defendants consumers' minds, which lead to competitive injury to Skinner.

322.    Defendants' use of Skinner's images, likeness and/or identity constitutes a false designation of the source of origin, sponsorship, approval, or association which has deceived Skinner's fans and present and prospective clients into believing that Defendants' advertisements are endorsed by Skinner, or sponsored, approved or associated with Skinner.

323.    Despite the fact that Defendants were at all times aware that Skinner neither worked at, nor endorsed their strip clubs, nevertheless, they used Skinner's images in order to mislead potential customers as to Skinner's employment at and/or affiliation with Defendants.

324.    Defendants knew that their use of Skinner's images would cause consumer confusion as to Skinner's sponsorship and/or employment at Defendants' strip clubs.

325.    Upon information and belief, Defendants' use of Skinner's images did in fact cause consumer confusion as to Skinner's employment at and/or endorsement of Defendants' businesses, and the goods and services provided by Defendants.

326.    As a direct and proximate result of Defendants' actions, Skinner has no control over the nature and quality of the line of products or services provided by Defendants, the nature of the advertisement depicting Skinner's images, likeness and/or identity, or how Skinner's image, likeness and/or identity is being depicted by Defendants.

327.   Further, any failure, neglect or default by Defendants will reflect adversely on Skinner as the believed source of origin, sponsorship, approval or association thereof, hampering efforts by Skinner to continue to protect her reputation for high quality professional modeling, resulting in loss of sales thereof and the considerable expenditures to promote her personal modeling services to legitimate mainstream media, all to the irreparable harm of Skinner.

328.   Due to Defendants' unauthorized use of Skinner's image, Skinner has been damaged in an amount to be determined at trial.

**WHEREFORE**, Skinner respectfully requests that the Court enter a judgment against Defendants and grant actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

### SKINNER COUNT III
**(Violation of Fla. Stat. § 540.08: Right of Publicity;**
**Unauthorized Misappropriation of Name/Likeness against all Defendants)**

329.   Plaintiff Skinner re-alleges paragraphs 1 through 15, 17, 29 through 54, 67 through 78, and 211 through 216 above, and incorporates the same by reference as though fully set forth herein.

330.   Skinner has a statutory right of publicity under Section 540.08, Florida Statutes.

331.   Section 540.08, Florida Statutes, provides that: "[n]o person shall publish, print, display or otherwise publicly use for purposes of trade or for any commercial or

advertising purpose the name, portrait, photograph, or other likeness of any natural person without the express written or oral consent to such use."

332.    Despite the clear language of Section 540.08, Defendants published Skinner's images, likeness and/or identity on social media outlets, among others, in order to promote, advertise and market Defendants' strip clubs and/or Defendants' events and activities.

333.    At all times relevant to this action, Skinner was and is the exclusive owner of all rights, title, and interest to her images, likeness and/or identity unlawfully converted by Defendants for Defendants' benefit.

334.    Defendants never sought permission or authority to use Skinner's images, likeness and/or identity to advertise, promote, market or endorse Defendants' businesses or any Defendants' event or activity.

335.    Skinner never consented to, permitted, assigned, licensed, or otherwise agreed to Defendants' use of her images, likeness and/or identity to advertise, promote, market or endorse Defendants' businesses or any Defendants' event or activity.

336.    Defendants intentionally or, at a minimum, recklessly published, printed, displayed, or otherwise publicly disseminated or used Skinner's images, likeness and/or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

337.    Defendants had actual or constructive knowledge or consciously disregarded the wrongfulness of their conduct, deprived Skinner of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Skinner.

338.    At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Skinner's rights.

339.    Alternatively, Defendants acted negligently towards Skinner in using and disseminating, without authority, her images, likeness and/or identity on social media outlets in order to promote, advertise and market Defendants' strip clubs and/or Defendants' events and activities.

340.    Defendants have caused irreparable harm to Skinner, her reputation and brand by attributing to Skinner the adult entertainment and striptease lifestyle and activities at Defendants' strip clubs.

341.    Defendants have also damaged Skinner as a direct and proximate result of their unauthorized use of Skinner's images, likeness and/or identity without compensating Skinner.   Defendants' conduct has been despicable and taken in conscious disregard of Skinner's rights.

**WHEREFORE**, Skinner respectfully requests that the Court issue a judgment against all Defendants for all remedies available under Fla. Stat. §540.08, including but not limited to, both actual loss and damages, costs, interest, royalties, and restitution of Defendants' unlawful proceeds, including Defendants' profits and other relief deemed just and proper by this Court.

<u>**SKINNER COUNT IV**</u>
**(Violation of Common Law Right of Publicity;**
**Unauthorized Misappropriation of Name or Likeness against all Defendants)**

342.    Plaintiff Skinner re-alleges paragraphs 1 through 15, 17, 29 through 54, 67 through 78, and 211 through 216 above, and incorporates the same by reference as though fully set forth herein.

343.    Skinner has a common law right of publicity.

344.    Defendants may not publish, print, display or publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of Skinner without express written or oral consent to such use.

345.    At all times relevant to this action, Skinner was and is the exclusive owner of all rights, title, and interest to her images, likeness and/or identity unlawfully converted by Defendants for Defendants' benefit.

346.    Defendants published, printed, displayed and/or publicly used Skinner's images, likeness and/or identity on their social media outlets, among others, for purposes of trade and/or commercial advertising including, but not limited to, promoting, advertising and marketing of Defendants and Defendants' events and activities.

347.    Defendants took these actions without Skinner's permission, consent or authority.  In fact, Defendants never sought permission nor authority to use Skinner's images, likeness and/or identity to advertise, promote, market or endorse Defendants' businesses or any Defendants' event or activity.

348.    Skinner never consented to, permitted, assigned, licensed, or otherwise agreed to Defendants' use of her images, likeness and/or identity to advertise, promote, market or endorse Defendants' businesses or any Defendants' event or activity.

349.    Defendants intentionally or, at a minimum, recklessly, published, printed, displayed, or otherwise publicly disseminated or used Skinner's images, likeness and/or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

350. Defendants had actual or constructive knowledge or consciously disregarded the wrongfulness of their conduct, deprived Skinner of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Skinner.

351. At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Skinner's rights.

352. Alternatively, Defendants acted negligently towards Skinner in using and disseminating, without authority, her images, likeness and/or identity on Defendants' social media outlets in order to promote, advertise and market Defendants' strip clubs and Defendants' events and activities.

353. Defendants have caused irreparable harm to Skinner, her reputation and brand by attributing to Skinner the adult entertainment and striptease lifestyle and activities at Defendants' strip clubs.

354. Defendants have also damaged Skinner as a direct and proximate result of their unauthorized use of Skinner's images, likeness and/or identity without compensating Skinner.

**WHEREFORE**, Skinner respectfully requests that the Court issue a judgment against all Defendants for all remedies available under a claim of misappropriation including, but not limited to, actual damages, costs, interest, and restitution of Defendants' unlawful proceeds, including Defendants' profits and other relief deemed just and proper by this Court.

## SKINNER COUNT V
### (Violation of Fla. Stat. § 812.014 and Fla. Stat. § 772.11: Civil Theft against all Defendants)

The Casas Law Firm, P.C.
Brickell Bayview Center 80 S.W. 8th Street, Suite 2000, Miami, FL 33130

355.    Plaintiff Skinner re-alleges paragraphs 1 through 15, 17, 29 through 54, 67 through 78, and 211 through 216 above, and incorporates the same by reference as though fully set forth herein.

356.    Section 772.11, Florida Statutes, creates a private right of action for victims of theft of tangible and intangible personal property, including rights, privileges, interests and claims.

357.    Defendants knowingly appropriated, used and disseminated Skinner's images, likeness and/or identity without authorization or consent.

358.    At all times relevant to this action, Skinner was and is the exclusive owner of all rights, title, and interest to her images, likeness and/or identity unlawfully converted by Defendants for Defendants' benefit.

359.    Defendants' misappropriation of Skinner's images, likeness and/or identity was for Defendants' own use and benefit and to deprive Skinner of certain rights.

360.    Defendants' misconduct detailed in this Complaint denied Skinner the right to engage in arms-length negotiations over the use and dissemination of her images, likeness and/or identity, the right to negotiate over reasonable bargained-for compensation, the right to say "no" to the proposed use by Defendants and the right to otherwise protect her images, likeness and/or identity from harm at the hands of the Defendants.

361.    Defendants' appropriation of Skinner's images, likeness and/or identity as detailed herein without authority violates Sections 772.11 and 812.014, Florida Statutes, and was wrongful.

362.    Defendants had actual or constructive knowledge or consciously disregarded the wrongfulness of their conduct, deprived Skinner of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Skinner.

363.    At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Skinner's rights.

364.    Alternatively, the method and manner in which Defendants used Skinner's images, likeness and/or identity further evinces that Defendants were aware or consciously disregarded the fact that Skinner did not consent to Defendants' use in order to advertise Defendants' businesses.

365.    Defendants' appropriation and use of Skinner's images, likeness or identity without authority directly and proximately caused damage to Skinner in an amount to be determined at trial.

**WHEREFORE**, Skinner respectfully requests that the Court issue a judgment against all Defendants for all remedies available under Fla. Stat. § 772.11(1), including but not limited to, treble the amount of actual damages, costs, interest, and attorneys' fees and other relief deemed just and proper by this Court.

## SKINNER COUNT VI
### (Conversion against all Defendants)

366.    Plaintiff Skinner re-alleges paragraphs 1 through 15, 17, 29 through 54, 67 through 78, and 211 through 216 above, and incorporates the same by reference as though fully set forth herein.

367.    Skinner is, and all at relevant times was, the exclusive owner of all rights, title, and interest to her images, likeness and/or identity unlawfully converted by Defendants for Defendants' benefit.

368.    Skinner has, and at all times relevant herein had, an intangible property interest in her images, likeness and/or identity unlawfully converted by Defendants for Defendants' benefit.

369.    By their acts and conduct alleged above, Defendants have converted Skinner's property rights, including without limitation, Skinner's images, likeness and/or identity for Defendants' use and wrongful disposition for financial gain.

370.    Skinner is informed and believes and on such information alleges that Defendants have refused to return Skinner's property to her or pay for the deprivation of Skinner's property.

371.    As a result, Skinner has suffered compensatory, punitive and exemplary damages to be determined according to proof at trial; but Skinner alleges that the same are within the jurisdiction of the Court.

372.    Further, Skinner is informed and believes and thereon alleges that in engaging in the conduct described above, Defendants acted with oppression, fraud, and/or malice. Defendants' conduct has been despicable and taken in conscious disregard of Skinner's rights.

**WHEREFORE**, Skinner respectfully requests this Court to issue a judgment against all Defendants and for all remedies available under the common law claim for conversion, including but not limited to actual damages, costs, interest, and restitution of

Defendants' unlawful proceeds, including Defendants' profits, and/or other relief deemed just and proper.

## SKINNER COUNT VII
### (Unjust Enrichment against all Defendants)

373.     Plaintiff Skinner re-alleges paragraphs 1 through 15, 17, 29 through 54, 67 through 78, and 211 through 216 above, and incorporates the same by reference as though fully set forth herein.

374.     Skinner has conferred a benefit upon Defendants by virtue of Defendants' usage of her images without compensation.

375.     At all times relevant to this action, Skinner was and is the exclusive owner of all rights, title, and interest to her images, likeness and/or identity unlawfully converted by Defendants for Defendants' benefit.

376.     Defendants were aware that Skinner's images, likeness and/or identity were valuable.

377.     Defendants were aware of the resulting benefit from usage of Skinner's images, likeness and/or identity.

378.     Defendants have retained profits and other benefits conferred upon them by using Skinner's images, likeness and/or identity to promote and advertise Defendants' businesses and/or Defendants' events and activities.

379.     It would be inequitable for Defendants to retain the benefits conferred upon them by using Skinner's images, likeness and/or identity without paying fair value for the images.

**WHEREFORE**, Skinner respectfully requests that the Court issue a judgment against all Defendants for damages, including but not limited to actual damages, costs,

interest, imposition of a constructive trust, restitution of unlawful proceeds, including Defendants' gross profits and such other and further relief in law or equity as this Court deems just and proper.

### *Plaintiff Vivian Kindle's Causes of Action*

### KINDLE COUNT I
### (Violation of the Lanham Act, 15 U.S.C. § 1125(a): False Advertising against all Defendants)

380.    Plaintiff Kindle re-alleges paragraphs 1 through 15, 18, 29 through 54, 79 through 90, and 211 through 216 above, and incorporates the same by reference as though fully set forth herein.

381.    Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* applies to Defendants and protects Kindle from the conduct described herein. Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . . ."   15 U.S.C. §1125(a)(1)(B).

382.    At all times relevant to this action, Kindle was and is the exclusive owner of all rights, title, and interest to her images, likeness and/or identity unlawfully converted by Defendants for Defendants' benefit.

383.    Defendants used Kindle's images, likeness and/or identity as described herein without authority in order to create the perception that Kindle worked at or was otherwise affiliated with Defendants' strip clubs, endorsed Defendants' businesses and activities, and/or consented to or authorized Defendants to use her images in order to

advertise, promote, and market Defendants' businesses and/or Defendants' events and activities.

384.   Defendants' use of Kindle's images, likeness and/or identity to advertise, promote and market Defendants' businesses and/or Defendants' events and activities as described in this Complaint was false and misleading.

385.   Defendants' unauthorized use of Kindle's images, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Kindle worked at or was otherwise affiliated with Defendants, endorsed Defendants' businesses, or Defendants' events or activities, or consented to or authorized Defendants' usage of her images in order to advertise, promote, and market Defendants' businesses or Defendants' events and activities and/or that Kindle would participate in or appear at the specific events promoted in the advertisements.

386.   Defendants' false advertising described above has the capacity or tendency to confuse consumers, including actual and prospective patrons of Defendants, as to the general quality of attendees and participants of Defendants' strip clubs and in their events, as well as specifically whether Kindle worked at or was otherwise affiliated with Defendants, endorsed Defendants' businesses or Defendants' events or activities, or consented to or authorized Defendants' usage of her images in order to advertise, promote, and market Defendants' businesses or Defendants' events and activities.

387.   Upon information and belief, Defendants' false advertising described above did, in fact, deceive and/or cause consumer confusion as to whether Kindle worked at or was otherwise affiliated with Defendants, endorsed Defendants' businesses or Defendants' events and activities, or consented to or authorized Defendants' usage of her

images in order to advertise, promote, and market Defendants' businesses or Defendants' events and activities.   Among other things, upon information and belief, such unauthorized use misled and served to entice consumers and prospective consumers to join Defendants, visit Defendants' strip clubs, and participate in events at Defendants' strip clubs and had a material effect and impact on the decision of members and prospective members and participants to join Defendants, visit Defendants' strip clubs and take part in the events at Defendants' strip clubs.

388.   Defendants' advertisements, promotions and marketing of Defendants' strip clubs and events occur in and are targeted to interstate commerce.   Specifically, Defendants promote their businesses and events through interstate promotions and campaigns to target persons from different states throughout the United States. Defendants principally use the World Wide Web, social media and other vehicles of interstate commerce to advertise, market, promote, and entice or lure membership and attendance at Defendants' events.

389.   Defendants' unauthorized use of Kindle's images, likeness and/or identity as described herein was designed to benefit Defendants' businesses interests by, among other things, promoting Defendants' strip clubs and activities and attracting clientele to Defendants' strip clubs.

390.   Defendants knew or should have known that their unauthorized use of Kindle's images, likeness and/or identity would cause consumer confusion as described in this Complaint.

391.   Defendants' unauthorized use of Kindle's images, likeness and/or identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

392.    As such, the present case is an exceptional case warranting an award of reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

393.    Defendants had actual or constructive knowledge or consciously disregarded the wrongfulness of their conduct, deprived Kindle of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Kindle.

394.    The method and manner in which Defendants used the images of Kindle further evinces that Defendants were aware of or consciously disregarded the fact that Kindle did not consent to Defendants' use of the images to advertise Defendants' businesses.

395.    Defendants have caused irreparable harm to Kindle, her reputation and brand by attributing to Kindle the adult entertainment and striptease lifestyle and activities at Defendants' strip clubs.

396.    Defendants' unauthorized use of Kindle's images, likeness and/or identity directly and proximately caused and continue to cause damage to Kindle in an amount to be determined at trial.

**WHEREFORE**, Kindle respectfully requests that the Court issue a judgment against all Defendants and grant actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

<u>**KINDLE COUNT II**</u>
**(Violation of the Lanham Act, 15 U.S.C. § 1125(a):**
**False Endorsement against all Defendants**)

397.   Plaintiff Kindle re-alleges paragraphs 1 through 15, 18, 29 through 54, 79 through 90, and 211 through 216 above, and incorporates the same by reference as though fully set forth herein.

398.   Section 43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(A) applies to Defendants, and protects Kindle from the conduct described herein.

399.   Defendants used Kindle's images in order to create the false impression with the public that Kindle either worked at Defendants' strip clubs, or endorsed Defendants' businesses. This was done to promote and attract clientele to Defendants' strip clubs, and thereby generate revenue for Defendants.

400.   Thus, this was done in furtherance of Defendants' commercial benefit.

401.   Kindle is in the business of commercializing her identity and selling her images to reputable brands and companies for profit. Defendants' customers are the exact demographic that views Kindle's images in magazines and online.

402.   Both Kindle and Defendants' strip clubs compete in the entertainment industry, use similar marketing channels and their respective endeavors overlap. They vie for the same dollars from the same demographic consumer group of men.

403.   As such, an unauthorized use of Kindle's images to promote strip clubs created an undeniable confusion in Defendants consumers' minds, which lead to competitive injury to Kindle.

404.   Defendants' use of Kindle's images, likeness and/or identity constitutes a false designation of the source of origin, sponsorship, approval, or association which has deceived Kindle's fans and present and prospective clients into believing that

Defendants' advertisements are endorsed by Kindle, or sponsored, approved or associated with Kindle.

405.    Despite the fact that Defendants were at all times aware that Kindle neither worked at, nor endorsed their strip clubs, nevertheless, they used Kindle's images in order to mislead potential customers as to Kindle's employment at and/or affiliation with Defendants.

406.    Defendants knew that their use of Kindle's images would cause consumer confusion as to Kindle's sponsorship and/or employment at Defendants' strip clubs.

407.    Upon information and belief, Defendants' use of Kindle's images did in fact cause consumer confusion as to Kindle's employment at and/or endorsement of Defendants' businesses, and the goods and services provided by Defendants.

408.    As a direct and proximate result of Defendants' actions, Kindle has no control over the nature and quality of the line of products or services provided by Defendants, the nature of the advertisement depicting Kindle's images, likeness and/or identity, or how Kindle's image, likeness and/or identity is being depicted by Defendants.

409.    Further, any failure, neglect or default by Defendants will reflect adversely on Kindle as the believed source of origin, sponsorship, approval or association thereof, hampering efforts by Kindle to continue to protect her reputation for high quality professional modeling, resulting in loss of sales thereof and the considerable expenditures to promote her personal modeling services to legitimate mainstream media, all to the irreparable harm of Kindle.

410.    Due to Defendants' unauthorized use of Kindle's image, Kindle has been damaged in an amount to be determined at trial.

**WHEREFORE**, Kindle respectfully requests that the Court enter a judgment against Defendants and grant actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

<u>**KINDLE COUNT III**</u>
**(Violation of Fla. Stat. § 540.08: Right of Publicity;
Unauthorized Misappropriation of Name/Likeness against all Defendants)**

411.    Plaintiff Kindle re-alleges paragraphs 1 through 15, 18, 29 through 54, 79 through 90, and 211 through 216 above, and incorporates the same by reference as though fully set forth herein.

412.    Kindle has a statutory right of publicity under Section 540.08, Florida Statutes.

413.    Section 540.08, Florida Statutes, provides that: "[n]o person shall publish, print, display or otherwise publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of any natural person without the express written or oral consent to such use."

414.    Despite the clear language of Section 540.08, Defendants published Kindle's images, likeness and/or identity on social media outlets, among others, in order to promote, advertise and market Defendants' strip clubs and/or Defendants' events and activities.

415.    At all times relevant to this action, Kindle was and is the exclusive owner of all rights, title, and interest to her images, likeness and/or identity unlawfully converted by Defendants for Defendants' benefit.

416.    Defendants never sought permission or authority to use Kindle's images, likeness and/or identity to advertise, promote, market or endorse Defendants' businesses or any Defendants' event or activity.

417.    Kindle never consented to, permitted, assigned, licensed, or otherwise agreed to Defendants' use of her images, likeness and/or identity to advertise, promote, market or endorse Defendants' businesses or any Defendants' event or activity.

418.    Defendants intentionally or, at a minimum, recklessly published, printed, displayed, or otherwise publicly disseminated or used Kindle's images, likeness and/or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

419.    Defendants had actual or constructive knowledge or consciously disregarded the wrongfulness of their conduct, deprived Kindle of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Kindle.

420.    At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Kindle's rights.

421.    Alternatively, Defendants acted negligently towards Kindle in using and disseminating, without authority, her images, likeness and/or identity on social media outlets in order to promote, advertise and market Defendants' strip clubs and/or Defendants' events and activities.

422.    Defendants have caused irreparable harm to Kindle, her reputation and brand by attributing to Kindle the adult entertainment and striptease lifestyle and activities at Defendants' strip clubs.

423.    Defendants have also damaged Kindle as a direct and proximate result of their unauthorized use of Kindle's images, likeness and/or identity without compensating Kindle. Defendants' conduct has been despicable and taken in conscious disregard of Kindle's rights.

**WHEREFORE**, Kindle respectfully requests that the Court issue a judgment against all Defendants for all remedies available under Fla. Stat. §540.08, including but not limited to, both actual loss and damages, costs, interest, royalties, and restitution of Defendants' unlawful proceeds, including Defendants' profits and other relief deemed just and proper by this Court.

### **KINDLE COUNT IV**
**(Violation of Common Law Right of Publicity;**
**Unauthorized Misappropriation of Name or Likeness against all Defendants)**

424.    Plaintiff Kindle re-alleges paragraphs 1 through 15, 18, 29 through 54, 79 through 90, and 211 through 216 above, and incorporates the same by reference as though fully set forth herein.

425.    Kindle has a common law right of publicity.

426.    Defendants may not publish, print, display or publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of Kindle without express written or oral consent to such use.

427.    At all times relevant to this action, Kindle was and is the exclusive owner of all rights, title, and interest to her images, likeness and/or identity unlawfully converted by Defendants for Defendants' benefit.

428.    Defendants published, printed, displayed and/or publicly used Kindle's images, likeness and/or identity on their social media outlets, among others, for purposes

of trade and/or commercial advertising including, but not limited to, promoting, advertising and marketing of Defendants and Defendants' events and activities.

429.    Defendants took these actions without Kindle's permission, consent or authority.   In fact, Defendants never sought permission nor authority to use Kindle's images, likeness and/or identity to advertise, promote, market or endorse Defendants' businesses or any Defendants' event or activity.

430.    Kindle never consented to, permitted, assigned, licensed, or otherwise agreed to Defendants' use of her images, likeness and/or identity to advertise, promote, market or endorse Defendants' businesses or any Defendants' event or activity.

431.    Defendants intentionally or, at a minimum, recklessly, published, printed, displayed, or otherwise publicly disseminated or used Kindle's images, likeness and/or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

432.    Defendants had actual or constructive knowledge or consciously disregarded the wrongfulness of their conduct, deprived Kindle of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Kindle.

433.    At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Kindle's rights.

434.    Alternatively, Defendants acted negligently towards Kindle in using and disseminating, without authority, her images, likeness and/or identity on Defendants' social media outlets in order to promote, advertise and market Defendants' strip clubs and Defendants' events and activities.

435.    Defendants have caused irreparable harm to Kindle, her reputation and brand by attributing to Kindle the adult entertainment and striptease lifestyle and activities at Defendants' strip clubs.

436.    Defendants have also damaged Kindle as a direct and proximate result of their unauthorized use of Kindle's images, likeness and/or identity without compensating Kindle.

**WHEREFORE**, Kindle respectfully requests that the Court issue a judgment against all Defendants for all remedies available under a claim of misappropriation including, but not limited to, actual damages, costs, interest, and restitution of Defendants' unlawful proceeds, including Defendants' profits and other relief deemed just and proper by this Court.

### KINDLE COUNT V
**(Violation of Fla. Stat. § 812.014 and Fla. Stat. § 772.11:
Civil Theft against all Defendants)**

437.    Plaintiff Kindle re-alleges paragraphs 1 through 15, 18, 29 through 54, 79 through 90, and 211 through 216 above, and incorporates the same by reference as though fully set forth herein.

438.    Section 772.11, Florida Statutes, creates a private right of action for victims of theft of tangible and intangible personal property, including rights, privileges, interests and claims.

439.    Defendants knowingly appropriated, used and disseminated Kindle's images, likeness and/or identity without authorization or consent.

440.    At all times relevant to this action, Kindle was and is the exclusive owner of all rights, title, and interest to her images, likeness and/or identity unlawfully converted by Defendants for Defendants' benefit.

441.    Defendants' misappropriation of Kindle's images, likeness and/or identity was for Defendants' own use and benefit and to deprive Kindle of certain rights.

442.    Defendants' misconduct detailed in this Complaint denied Kindle the right to engage in arms-length negotiations over the use and dissemination of her images, likeness and/or identity, the right to negotiate over reasonable bargained-for compensation, the right to say "no" to the proposed use by Defendants and the right to otherwise protect her images, likeness and/or identity from harm at the hands of the Defendants.

443.    Defendants' appropriation of Kindle's images, likeness and/or identity as detailed herein without authority violates Sections 772.11 and 812.014, Florida Statutes, and was wrongful.

444.    Defendants had actual or constructive knowledge or consciously disregarded the wrongfulness of their conduct, deprived Kindle of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Kindle.

445.    At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Kindle's rights.

446.    Alternatively, the method and manner in which Defendants used Kindle's images, likeness and/or identity further evinces that Defendants were aware or

consciously disregarded the fact that Kindle did not consent to Defendants' use in order to advertise Defendants' businesses.

447.    Defendants' appropriation and use of Kindle's images, likeness or identity without authority directly and proximately caused damage to Kindle in an amount to be determined at trial.

**WHEREFORE**, Kindle respectfully requests that the Court issue a judgment against all Defendants for all remedies available under Fla. Stat. § 772.11(1), including but not limited to, treble the amount of actual damages, costs, interest, and attorneys' fees and other relief deemed just and proper by this Court.

## KINDLE COUNT VI
### (Conversion against all Defendants)

448.    Plaintiff Kindle re-alleges paragraphs 1 through 15, 18, 29 through 54, 79 through 90, and 211 through 216 above, and incorporates the same by reference as though fully set forth herein.

449.    Kindle is, and all at relevant times was, the exclusive owner of all rights, title, and interest to her images, likeness and/or identity unlawfully converted by Defendants for Defendants' benefit.

450.    Kindle has, and at all times relevant herein had, an intangible property interest in her images, likeness and/or identity unlawfully converted by Defendants for Defendants' benefit.

451.    By their acts and conduct alleged above, Defendants have converted Kindle's property rights, including without limitation, Kindle's images, likeness and/or identity for Defendants' use and wrongful disposition for financial gain.

452.   Kindle is informed and believes and on such information alleges that Defendants have refused to return Kindle's property to her or pay for the deprivation of Kindle's property.

453.   As a result, Kindle has suffered compensatory, punitive and exemplary damages to be determined according to proof at trial; but Kindle alleges that the same are within the jurisdiction of the Court.

454.   Further, Kindle is informed and believes and thereon alleges that in engaging in the conduct described above, Defendants acted with oppression, fraud, and/or malice. Defendants' conduct has been despicable and taken in conscious disregard of Kindle's rights.

**WHEREFORE**, Kindle respectfully requests this Court to issue a judgment against all Defendants and for all remedies available under the common law claim for conversion, including but not limited to actual damages, costs, interest, and restitution of Defendants' unlawful proceeds, including Defendants' profits, and/or other relief deemed just and proper.

## KINDLE COUNT VII
### (Unjust Enrichment against all Defendants)

455.   Plaintiff Kindle re-alleges paragraphs 1 through 15, 18, 29 through 54, 79 through 90, and 211 through 216 above, and incorporates the same by reference as though fully set forth herein.

456.   Kindle has conferred a benefit upon Defendants by virtue of Defendants' usage of her images without compensation.

457.    At all times relevant to this action, Kindle was and is the exclusive owner of all rights, title, and interest to her images, likeness and/or identity unlawfully converted by Defendants for Defendants' benefit.

458.    Defendants were aware that Kindle's images, likeness and/or identity were valuable.

459.    Defendants were aware of the resulting benefit from usage of Kindle's images, likeness and/or identity.

460.    Defendants have retained profits and other benefits conferred upon them by using Kindle's images, likeness and/or identity to promote and advertise Defendants' businesses and/or Defendants' events and activities.

461.    It would be inequitable for Defendants to retain the benefits conferred upon them by using Kindle's images, likeness and/or identity without paying fair value for the images.

**WHEREFORE**, Kindle respectfully requests that the Court issue a judgment against all Defendants for damages, including but not limited to actual damages, costs, interest, imposition of a constructive trust, restitution of unlawful proceeds, including Defendants' gross profits and such other and further relief in law or equity as this Court deems just and proper.

*Plaintiff Alicia Whitten's Causes of Action*

**WHITTEN COUNT I**
**(Violation of the Lanham Act, 15 U.S.C. § 1125(a):**
**False Advertising against all Defendants)**

462.    Plaintiff Whitten re-alleges paragraphs 1 through 15, 19, 29 through 54, 91 through 102, and 211 through 216 above, and incorporates the same by reference as though fully set forth herein.

463.    Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* applies to Defendants and protects Whitten from the conduct described herein. Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . . ." 15 U.S.C. §1125(a)(1)(B).

464.    At all times relevant to this action, Whitten was and is the exclusive owner of all rights, title, and interest to her image, likeness and/or identity unlawfully converted by Defendants for Defendants' benefit.

465.    Defendants used Whitten's image, likeness and/or identity as described herein without authority in order to create the perception that Whitten worked at or was otherwise affiliated with Defendants' strip clubs, endorsed Defendants' businesses and activities, and/or consented to or authorized Defendants to use her image in order to advertise, promote, and market Defendants' businesses and/or Defendants' events and activities.

466.    Defendants' use of Whitten's image, likeness and/or identity to advertise, promote and market Defendants' businesses and/or Defendants' events and activities as described in this Complaint was false and misleading.

467.    Defendants' unauthorized use of Whitten's image, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying,

among other things, that Whitten worked at or was otherwise affiliated with Defendants, endorsed Defendants' businesses, or Defendants' events or activities, or consented to or authorized Defendants' usage of her image in order to advertise, promote, and market Defendants' businesses or Defendants' events and activities and/or that Whitten would participate in or appear at the specific events promoted in the advertisements.

468.   Defendants' false advertising described above has the capacity or tendency to confuse consumers, including actual and prospective patrons of Defendants, as to the general quality of attendees and participants of Defendants' strip clubs and in their events, as well as specifically whether Whitten worked at or was otherwise affiliated with Defendants, endorsed Defendants' businesses or Defendants' events or activities, or consented to or authorized Defendants' usage of her image in order to advertise, promote, and market Defendants' businesses or Defendants' events and activities.

469.   Upon information and belief, Defendants' false advertising described above did, in fact, deceive and/or cause consumer confusion as to whether Whitten worked at or was otherwise affiliated with Defendants, endorsed Defendants' businesses or Defendants' events and activities, or consented to or authorized Defendants' usage of her image in order to advertise, promote, and market Defendants' businesses or Defendants' events and activities.   Among other things, upon information and belief, such unauthorized use misled and served to entice consumers and prospective consumers to join Defendants, visit Defendants' strip clubs, and participate in events at Defendants' strip clubs and had a material effect and impact on the decision of members and prospective members and participants to join Defendants, visit Defendants' strip clubs and take part in the events at Defendants' strip clubs.

470.     Defendants' advertisements, promotions and marketing of Defendants' strip clubs and events occur in and are targeted to interstate commerce.   Specifically, Defendants promote their businesses and events through interstate promotions and campaigns to target persons from different states throughout the United States. Defendants principally use the World Wide Web, social media and other vehicles of interstate commerce to advertise, market, promote, and entice or lure membership and attendance at Defendants' events.

471.     Defendants' unauthorized use of Whitten's image, likeness and/or identity as described herein was designed to benefit Defendants' businesses interests by, among other things, promoting Defendants' strip clubs and activities and attracting clientele to Defendants' strip clubs.

472.     Defendants knew or should have known that their unauthorized use of Whitten's image, likeness and/or identity would cause consumer confusion as described in this Complaint.

473.     Defendants' unauthorized use of Whitten's image, likeness and/or identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

474.     As such, the present case is an exceptional case warranting an award of reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

475.     Defendants had actual or constructive knowledge or consciously disregarded the wrongfulness of their conduct, deprived Whitten of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Whitten.

476.    The method and manner in which Defendants used the image of Whitten further evinces that Defendants were aware of or consciously disregarded the fact that Whitten did not consent to Defendants' use of the image to advertise Defendants' businesses.

477.    Defendants have caused irreparable harm to Whitten, her reputation and brand by attributing to Whitten the adult entertainment and striptease lifestyle and activities at Defendants' strip clubs.

478.    Defendants' unauthorized use of Whitten's image, likeness and/or identity directly and proximately caused and continue to cause damage to Whitten in an amount to be determined at trial.

**WHEREFORE**, Whitten respectfully requests that the Court issue a judgment against all Defendants and grant actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

## WHITTEN COUNT II
### (Violation of the Lanham Act, 15 U.S.C. § 1125(a):
### False Endorsement against all Defendants)

479.    Plaintiff Whitten re-alleges paragraphs 1 through 15, 19, 29 through 54, 91 through 102, and 211 through 216 above, and incorporates the same by reference as though fully set forth herein.

480.    Section 43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(A) applies to Defendants, and protects Whitten from the conduct described herein.

481.    Defendants used Whitten's image in order to create the false impression with the public that Whitten either worked at Defendants' strip clubs, or endorsed Defendants' businesses. This was done to promote and attract clientele to Defendants' strip clubs, and thereby generate revenue for Defendants.

482.    Thus, this was done in furtherance of Defendants' commercial benefit.

483.    Whitten is in the business of commercializing her identity and selling her images to reputable brands and companies for profit. Defendants' customers are the exact demographic that views Whitten's images in magazines and online.

484.    Both Whitten and Defendants' strip clubs compete in the entertainment industry, use similar marketing channels and their respective endeavors overlap. They vie for the same dollars from the same demographic consumer group of men.

485.    As such, an unauthorized use of Whitten's image to promote strip clubs created an undeniable confusion in Defendants consumers' minds, which lead to competitive injury to Whitten.

486.    Defendants' use of Whitten's image, likeness and/or identity constitutes a false designation of the source of origin, sponsorship, approval, or association which has deceived Whitten's fans and present and prospective clients into believing that Defendants' advertisements are endorsed by Whitten, or sponsored, approved or associated with Whitten.

487.    Despite the fact that Defendants were at all times aware that Whitten neither worked at, nor endorsed their strip clubs, nevertheless, they used Whitten's image in order to mislead potential customers as to Whitten's employment at and/or affiliation with Defendants.

488.    Defendants knew that their use of Whitten's image would cause consumer confusion as to Whitten's sponsorship and/or employment at Defendants' strip clubs.

489.    Upon information and belief, Defendants' use of Whitten's image did in fact cause consumer confusion as to Whitten's employment at and/or endorsement of Defendants' businesses, and the goods and services provided by Defendants.

490.    As a direct and proximate result of Defendants' actions, Whitten has no control over the nature and quality of the line of products or services provided by Defendants, the nature of the advertisement depicting Whitten's image, likeness and/or identity, or how Whitten's image, likeness and/or identity is being depicted by Defendants.

491.    Further, any failure, neglect or default by Defendants will reflect adversely on Whitten as the believed source of origin, sponsorship, approval or association thereof, hampering efforts by Whitten to continue to protect her reputation for high quality professional modeling, resulting in loss of sales thereof and the considerable expenditures to promote her personal modeling services to legitimate mainstream media, all to the irreparable harm of Whitten.

492.    Due to Defendants' unauthorized use of Whitten's image, Whitten has been damaged in an amount to be determined at trial.

**WHEREFORE**, Whitten respectfully requests that the Court enter a judgment against Defendants and grant actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

## WHITTEN COUNT III
### (Violation of Fla. Stat. § 540.08: Right of Publicity;
### Unauthorized Misappropriation of Name/Likeness against all Defendants)

493.    Plaintiff Whitten re-alleges paragraphs 1 through 15, 19, 29 through 54, 91 through 102, and 211 through 216 above, and incorporates the same by reference as though fully set forth herein.

494.    Whitten has a statutory right of publicity under Section 540.08, Florida Statutes.

495.    Section 540.08, Florida Statutes, provides that: "[n]o person shall publish, print, display or otherwise publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of any natural person without the express written or oral consent to such use."

496.    Despite the clear language of Section 540.08, Defendants published Whitten's image, likeness and/or identity on social media outlets, among others, in order to promote, advertise and market Defendants' strip clubs and/or Defendants' events and activities.

497.    At all times relevant to this action, Whitten was and is the exclusive owner of all rights, title, and interest to her image, likeness and/or identity unlawfully converted by Defendants for Defendants' benefit.

498.    Defendants never sought permission or authority to use Whitten's image, likeness and/or identity to advertise, promote, market or endorse Defendants' businesses or any Defendants' event or activity.

499.    Whitten never consented to, permitted, assigned, licensed, or otherwise agreed to Defendants' use of her image, likeness and/or identity to advertise, promote, market or endorse Defendants' businesses or any Defendants' event or activity.

500.    Defendants intentionally or, at a minimum, recklessly published, printed, displayed, or otherwise publicly disseminated or used Whitten's image, likeness and/or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

501.    Defendants had actual or constructive knowledge or consciously disregarded the wrongfulness of their conduct, deprived Whitten of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Whitten.

502.    At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Whitten's rights.

503.    Alternatively, Defendants acted negligently towards Whitten in using and disseminating, without authority, her image, likeness and/or identity on social media outlets in order to promote, advertise and market Defendants' strip clubs and/or Defendants' events and activities.

504.    Defendants have caused irreparable harm to Whitten, her reputation and brand by attributing to Whitten the adult entertainment and striptease lifestyle and activities at Defendants' strip clubs.

505.    Defendants have also damaged Whitten as a direct and proximate result of their unauthorized use of Whitten's image, likeness and/or identity without compensating

Whitten. Defendants' conduct has been despicable and taken in conscious disregard of Whitten's rights.

**WHEREFORE**, Whitten respectfully requests that the Court issue a judgment against all Defendants for all remedies available under Fla. Stat. §540.08, including but not limited to, both actual loss and damages, punitive damages according to proof, costs, interest, royalties, and restitution of Defendants' unlawful proceeds, including Defendants' profits and other relief deemed just and proper by this Court.

<u>**WHITTEN COUNT IV**</u>
**(Violation of Common Law Right of Publicity;**
**Unauthorized Misappropriation of Name or Likeness against all Defendants)**

506.    Plaintiff Whitten re-alleges paragraphs 1 through 15, 19, 29 through 54, 91 through 102, and 211 through 216 above, and incorporates the same by reference as though fully set forth herein.

507.    Whitten has a common law right of publicity.

508.    Defendants may not publish, print, display or publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of Whitten without express written or oral consent to such use.

509.    At all times relevant to this action, Whitten was and is the exclusive owner of all rights, title, and interest to her image, likeness and/or identity unlawfully converted by Defendants for Defendants' benefit.

510.    Defendants published, printed, displayed and/or publicly used Whitten's image, likeness and/or identity on their social media outlets, among others, for purposes of trade and/or commercial advertising including, but not limited to, promoting, advertising and marketing of Defendants and Defendants' events and activities.

511.    Defendants took these actions without Whitten's permission, consent or authority.  In fact, Defendants never sought permission nor authority to use Whitten's image, likeness and/or identity to advertise, promote, market or endorse Defendants' businesses or any Defendants' event or activity.

512.    Whitten never consented to, permitted, assigned, licensed, or otherwise agreed to Defendants' use of her image, likeness and/or identity to advertise, promote, market or endorse Defendants' businesses or any Defendants' event or activity.

513.    Defendants intentionally or, at a minimum, recklessly, published, printed, displayed, or otherwise publicly disseminated or used Whitten's image, likeness and/or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

514.    Defendants had actual or constructive knowledge or consciously disregarded the wrongfulness of their conduct, deprived Whitten of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Whitten.

515.    At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Whitten's rights.

516.    Alternatively, Defendants acted negligently towards Whitten in using and disseminating, without authority, her image, likeness and/or identity on Defendants' social media outlets in order to promote, advertise and market Defendants' strip clubs and Defendants' events and activities.

517.    Defendants have caused irreparable harm to Whitten, her reputation and brand by attributing to Whitten the adult entertainment and striptease lifestyle and activities at Defendants' strip clubs.

518.    Defendants have also damaged Whitten as a direct and proximate result of their unauthorized use of Whitten's image, likeness and/or identity without compensating Whitten.

**WHEREFORE**, Whitten respectfully requests that the Court issue a judgment against all Defendants for all remedies available under a claim of misappropriation including, but not limited to, actual damages, costs, interest, and restitution of Defendants' unlawful proceeds, including Defendants' profits and other relief deemed just and proper by this Court.

### WHITTEN COUNT V
### (Violation of Fla. Stat. § 812.014 and Fla. Stat. § 772.11:
### Civil Theft against all Defendants)

519.    Plaintiff Whitten re-alleges paragraphs 1 through 15, 19, 29 through 54, 91 through 102, and 211 through 216 above, and incorporates the same by reference as though fully set forth herein.

520.    Section 772.11, Florida Statutes, creates a private right of action for victims of theft of tangible and intangible personal property, including rights, privileges, interests and claims.

521.    Defendants knowingly appropriated, used and disseminated Whitten's image, likeness and/or identity without authorization or consent.

522.    At all times relevant to this action, Whitten was and is the exclusive owner of all rights, title, and interest to her image, likeness and/or identity unlawfully converted by Defendants for Defendants' benefit.

523.    Defendants' misappropriation of Whitten's image, likeness and/or identity was for Defendants' own use and benefit and to deprive Whitten of certain rights.

524.    Defendants' misconduct detailed in this Complaint denied Whitten the right to engage in arms-length negotiations over the use and dissemination of her image, likeness and/or identity, the right to negotiate over reasonable bargained-for compensation, the right to say "no" to the proposed use by Defendants and the right to otherwise protect her image, likeness and/or identity from harm at the hands of the Defendants.

525.    Defendants' appropriation of Whitten's image, likeness and/or identity as detailed herein without authority violates Sections 772.11 and 812.014, Florida Statutes, and was wrongful.

526.    Defendants had actual or constructive knowledge or consciously disregarded the wrongfulness of their conduct, deprived Whitten of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Whitten.

527.    At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Whitten's rights.

528.    Alternatively, the method and manner in which Defendants used Whitten's image, likeness and/or identity further evinces that Defendants were aware or consciously

disregarded the fact that Whitten did not consent to Defendants' use in order to advertise Defendants' businesses.

529.    Defendants' appropriation and use of Whitten's image, likeness or identity without authority directly and proximately caused damage to Whitten in an amount to be determined at trial.

**WHEREFORE**, Whitten respectfully requests that the Court issue a judgment against all Defendants for all remedies available under Fla. Stat. § 772.11(1), including but not limited to, treble the amount of actual damages, costs, interest, and attorneys' fees and other relief deemed just and proper by this Court.

## WHITTEN COUNT VI
### (Conversion against all Defendants)

530.    Plaintiff Whitten re-alleges paragraphs 1 through 15, 19, 29 through 54, 91 through 102, and 211 through 216 above, and incorporates the same by reference as though fully set forth herein.

531.    Whitten is, and all at relevant times was, the exclusive owner of all rights, title, and interest to her image, likeness and/or identity unlawfully converted by Defendants for Defendants' benefit.

532.    Whitten has, and at all times relevant herein had, an intangible property interest in her image, likeness and/or identity unlawfully converted by Defendants for Defendants' benefit.

533.    By their acts and conduct alleged above, Defendants have converted Whitten's property rights, including without limitation, Whitten's image, likeness and/or identity for Defendants' use and wrongful disposition for financial gain.

534.    Whitten is informed and believes and on such information alleges that Defendants have refused to return Whitten's property to her or pay for the deprivation of Whitten's property.

535.    As a result, Whitten has suffered compensatory, punitive and exemplary damages to be determined according to proof at trial; but Whitten alleges that the same are within the jurisdiction of the Court.

536.    Further, Whitten is informed and believes and thereon alleges that in engaging in the conduct described above, Defendants acted with oppression, fraud, and/or malice. Defendants' conduct has been despicable and taken in conscious disregard of Whitten's rights.

**WHEREFORE**, Whitten respectfully requests this Court to issue a judgment against all Defendants and for all remedies available under the common law claim for conversion, including but not limited to actual damages, costs, interest, and restitution of Defendants' unlawful proceeds, including Defendants' profits, and/or other relief deemed just and proper.

## <u>WHITTEN COUNT VII</u>
### (Unjust Enrichment against all Defendants)

537.    Plaintiff Whitten re-alleges paragraphs 1 through 15, 19, 29 through 54, 91 through 102, and 211 through 216 above, and incorporates the same by reference as though fully set forth herein.

538.    Whitten has conferred a benefit upon Defendants by virtue of Defendants' usage of her image without compensation.

539.     At all times relevant to this action, Whitten was and is the exclusive owner of all rights, title, and interest to her image, likeness and/or identity unlawfully converted by Defendants for Defendants' benefit.

540.     Defendants were aware that Whitten's image, likeness and/or identity were valuable.

541.     Defendants were aware of the resulting benefit from usage of Whitten's image, likeness and/or identity.

542.     Defendants have retained profits and other benefits conferred upon them by using Whitten's image, likeness and/or identity to promote and advertise Defendants' businesses and/or Defendants' events and activities.

543.     It would be inequitable for Defendants to retain the benefits conferred upon them by using Whitten's image, likeness and/or identity without paying fair value for the image.

**WHEREFORE**, Whitten respectfully requests that the Court issue a judgment against all Defendants for damages, including but not limited to actual damages, costs, interest, imposition of a constructive trust, restitution of unlawful proceeds, including Defendants' gross profits and such other and further relief in law or equity as this Court deems just and proper.

*Plaintiff Ashley Vickers' Causes of Action*

<u>**VICKERS COUNT I**</u>
**(Violation of the Lanham Act, 15 U.S.C. § 1125(a):**
**False Advertising against all Defendants)**

544.    Plaintiff Vickers re-alleges paragraphs 1 through 15, 20, 29 through 54, 103 through 114, and 211 through 216 above, and incorporates the same by reference as though fully set forth herein.

545.    Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* applies to Defendants and protects Vickers from the conduct described herein. Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . . ." 15 U.S.C. §1125(a)(1)(B).

546.    At all times relevant to this action, Vickers was and is the exclusive owner of all rights, title, and interest to her images, likeness and/or identity unlawfully converted by Defendants for Defendants' benefit.

547.    Defendants used Vickers' images, likeness and/or identity as described herein without authority in order to create the perception that Vickers worked at or was otherwise affiliated with Defendants' strip clubs, endorsed Defendants' businesses and activities, and/or consented to or authorized Defendants to use her images in order to advertise, promote, and market Defendants' businesses and/or Defendants' events and activities.

548.    Defendants' use of Vickers' images, likeness and/or identity to advertise, promote and market Defendants' businesses and/or Defendants' events and activities as described in this Complaint was false and misleading.

549.    Defendants' unauthorized use of Vickers' images, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying,

among other things, that Vickers worked at or was otherwise affiliated with Defendants, endorsed Defendants' businesses, or Defendants' events or activities, or consented to or authorized Defendants' usage of her images in order to advertise, promote, and market Defendants' businesses or Defendants' events and activities and/or that Vickers would participate in or appear at the specific events promoted in the advertisements.

550.   Defendants' false advertising described above has the capacity or tendency to confuse consumers, including actual and prospective patrons of Defendants, as to the general quality of attendees and participants of Defendants' strip clubs and in their events, as well as specifically whether Vickers worked at or was otherwise affiliated with Defendants, endorsed Defendants' businesses or Defendants' events or activities, or consented to or authorized Defendants' usage of her images in order to advertise, promote, and market Defendants' businesses or Defendants' events and activities.

551.   Upon information and belief, Defendants' false advertising described above did, in fact, deceive and/or cause consumer confusion as to whether Vickers worked at or was otherwise affiliated with Defendants, endorsed Defendants' businesses or Defendants' events and activities, or consented to or authorized Defendants' usage of her images in order to advertise, promote, and market Defendants' businesses or Defendants' events and activities.  Among other things, upon information and belief, such unauthorized use misled and served to entice consumers and prospective consumers to join Defendants, visit Defendants' strip clubs, and participate in events at Defendants' strip clubs and had a material effect and impact on the decision of members and prospective members and participants to join Defendants, visit Defendants' strip clubs and take part in the events at Defendants' strip clubs.

552.     Defendants' advertisements, promotions and marketing of Defendants' strip clubs and events occur in and are targeted to interstate commerce.  Specifically, Defendants promote their businesses and events through interstate promotions and campaigns to target persons from different states throughout the United States. Defendants principally use the World Wide Web, social media and other vehicles of interstate commerce to advertise, market, promote, and entice or lure membership and attendance at Defendants' events.

553.     Defendants' unauthorized use of Vickers' images, likeness and/or identity as described herein was designed to benefit Defendants' businesses interests by, among other things, promoting Defendants' strip clubs and activities and attracting clientele to Defendants' strip clubs.

554.     Defendants knew or should have known that their unauthorized use of Vickers' images, likeness and/or identity would cause consumer confusion as described in this Complaint.

555.     Defendants' unauthorized use of Vickers' images, likeness and/or identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

556.     As such, the present case is an exceptional case warranting an award of reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

557.     Defendants had actual or constructive knowledge or consciously disregarded the wrongfulness of their conduct, deprived Vickers of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Vickers.

558.    The method and manner in which Defendants used the images of Vickers further evinces that Defendants were aware of or consciously disregarded the fact that Vickers did not consent to Defendants' use of the images to advertise Defendants' businesses.

559.    Defendants have caused irreparable harm to Vickers, her reputation and brand by attributing to Vickers the adult entertainment and striptease lifestyle and activities at Defendants' strip clubs.

560.    Defendants' unauthorized use of Vickers' images, likeness and/or identity directly and proximately caused and continue to cause damage to Vickers in an amount to be determined at trial.

**WHEREFORE**, Vickers respectfully requests that the Court issue a judgment against all Defendants and grant actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

### VICKERS COUNT II
### (Violation of the Lanham Act, 15 U.S.C. § 1125(a):
### False Endorsement against all Defendants)

561.    Plaintiff Vickers re-alleges paragraphs 1 through 15, 20, 29 through 54, 103 through 114, and 211 through 216 above, and incorporates the same by reference as though fully set forth herein.

562.    Section 43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(A) applies to Defendants, and protects Vickers from the conduct described herein.

563.    Defendants used Vickers' images in order to create the false impression with the public that Vickers either worked at Defendants' strip clubs, or endorsed Defendants' businesses. This was done to promote and attract clientele to Defendants' strip clubs, and thereby generate revenue for Defendants.

564.    Thus, this was done in furtherance of Defendants' commercial benefit.

565.    Vickers is in the business of commercializing her identity and selling her images to reputable brands and companies for profit. Defendants' customers are the exact demographic that views Vickers' images in magazines and online.

566.    Both Vickers and Defendants' strip clubs compete in the entertainment industry, use similar marketing channels and their respective endeavors overlap. They vie for the same dollars from the same demographic consumer group of men.

567.    As such, an unauthorized use of Vickers' images to promote strip clubs created an undeniable confusion in Defendants consumers' minds, which lead to competitive injury to Vickers.

568.    Defendants' use of Vickers' images, likeness and/or identity constitutes a false designation of the source of origin, sponsorship, approval, or association which has deceived Vickers' fans and present and prospective clients into believing that Defendants' advertisements are endorsed by Vickers, or sponsored, approved or associated with Vickers.

569.    Despite the fact that Defendants were at all times aware that Vickers neither worked at, nor endorsed their strip clubs, nevertheless, they used Vickers' images in order to mislead potential customers as to Vickers' employment at and/or affiliation with Defendants.

570.    Defendants knew that their use of Vickers' images would cause consumer confusion as to Vickers' sponsorship and/or employment at Defendants' strip clubs.

571.    Upon information and belief, Defendants' use of Vickers' images did in fact cause consumer confusion as to Vickers' employment at and/or endorsement of Defendants' businesses, and the goods and services provided by Defendants.

572.    As a direct and proximate result of Defendants' actions, Vickers has no control over the nature and quality of the line of products or services provided by Defendants, the nature of the advertisement depicting Vickers' images, likeness and/or identity, or how Vickers' images, likeness and/or identity is being depicted by Defendants.

573.    Further, any failure, neglect or default by Defendants will reflect adversely on Vickers as the believed source of origin, sponsorship, approval or association thereof, hampering efforts by Vickers to continue to protect her reputation for high quality professional modeling, resulting in loss of sales thereof and the considerable expenditures to promote her personal modeling services to legitimate mainstream media, all to the irreparable harm of Vickers.

574.    Due to Defendants' unauthorized use of Vickers' images, Vickers has been damaged in an amount to be determined at trial.

**WHEREFORE**, Vickers respectfully requests that the Court enter a judgment against Defendants and grant actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

**VICKERS COUNT III**
**(Violation of Fla. Stat. § 540.08: Right of Publicity;**
**Unauthorized Misappropriation of Name/Likeness against all Defendants)**

575.    Plaintiff Vickers re-alleges paragraphs 1 through 15, 20, 29 through 54, 103 through 114, and 211 through 216 above, and incorporates the same by reference as though fully set forth herein.

576.    Vickers has a statutory right of publicity under Section 540.08, Florida Statutes.

577.    Section 540.08, Florida Statutes, provides that: "[n]o person shall publish, print, display or otherwise publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of any natural person without the express written or oral consent to such use."

578.    Despite the clear language of Section 540.08, Defendants published Vickers' images, likeness and/or identity on social media outlets, among others, in order to promote, advertise and market Defendants' strip clubs and/or Defendants' events and activities.

579.    At all times relevant to this action, Vickers was and is the exclusive owner of all rights, title, and interest to her images, likeness and/or identity unlawfully converted by Defendants for Defendants' benefit.

580.    Defendants never sought permission or authority to use Vickers' images, likeness and/or identity to advertise, promote, market or endorse Defendants' businesses or any Defendants' event or activity.

581.   Vickers never consented to, permitted, assigned, licensed, or otherwise agreed to Defendants' use of her images, likeness and/or identity to advertise, promote, market or endorse Defendants' businesses or any Defendants' event or activity.

582.   Defendants intentionally or, at a minimum, recklessly published, printed, displayed, or otherwise publicly disseminated or used Vickers' images, likeness and/or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

583.   Defendants had actual or constructive knowledge or consciously disregarded the wrongfulness of their conduct, deprived Vickers of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Vickers.

584.   At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Vickers' rights.

585.   Alternatively, Defendants acted negligently towards Vickers in using and disseminating, without authority, her images, likeness and/or identity on social media outlets in order to promote, advertise and market Defendants' strip clubs and/or Defendants' events and activities.

586.   Defendants have caused irreparable harm to Vickers, her reputation and brand by attributing to Vickers the adult entertainment and striptease lifestyle and activities at Defendants' strip clubs.

587.   Defendants have also damaged Vickers as a direct and proximate result of their unauthorized use of Vickers' images, likeness and/or identity without compensating

Vickers. Defendants' conduct has been despicable and taken in conscious disregard of Vickers' rights.

**WHEREFORE**, Vickers respectfully requests that the Court issue a judgment against all Defendants for all remedies available under Fla. Stat. §540.08, including but not limited to, both actual loss and damages, costs, interest, royalties, and restitution of Defendants' unlawful proceeds, including Defendants' profits and other relief deemed just and proper by this Court.

## VICKERS COUNT IV
### (Violation of Common Law Right of Publicity;
### Unauthorized Misappropriation of Name or Likeness against all Defendants)

588.     Plaintiff Vickers re-alleges paragraphs 1 through 15, 20, 29 through 54, 103 through 114, and 211 through 216 above, and incorporates the same by reference as though fully set forth herein.

589.     Vickers has a common law right of publicity.

590.     Defendants may not publish, print, display or publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of Vickers without express written or oral consent to such use.

591.     At all times relevant to this action, Vickers was and is the exclusive owner of all rights, title, and interest to her images, likeness and/or identity unlawfully converted by Defendants for Defendants' benefit.

592.     Defendants published, printed, displayed and/or publicly used Vickers' images, likeness and/or identity on their social media outlets, among others, for purposes of trade and/or commercial advertising including, but not limited to, promoting, advertising and marketing of Defendants and Defendants' events and activities.

593.    Defendants took these actions without Vickers' permission, consent or authority.   In fact, Defendants never sought permission nor authority to use Vickers' images, likeness and/or identity to advertise, promote, market or endorse Defendants' businesses or any Defendants' event or activity.

594.    Vickers never consented to, permitted, assigned, licensed, or otherwise agreed to Defendants' use of her images, likeness and/or identity to advertise, promote, market or endorse Defendants' businesses or any Defendants' event or activity.

595.    Defendants intentionally or, at a minimum, recklessly, published, printed, displayed, or otherwise publicly disseminated or used Vickers' images, likeness and/or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

596.    Defendants had actual or constructive knowledge or consciously disregarded the wrongfulness of their conduct, deprived Vickers of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Vickers.

597.    At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Vickers' rights.

598.    Alternatively, Defendants acted negligently towards Vickers in using and disseminating, without authority, her images, likeness and/or identity on Defendants' social media outlets in order to promote, advertise and market Defendants' strip clubs and Defendants' events and activities.

599.   Defendants have caused irreparable harm to Vickers, her reputation and brand by attributing to Vickers the adult entertainment and striptease lifestyle and activities at Defendants' strip clubs.

600.   Defendants have also damaged Vickers as a direct and proximate result of their unauthorized use of Vickers' images, likeness and/or identity without compensating Vickers.

**WHEREFORE**, Vickers respectfully requests that the Court issue a judgment against all Defendants for all remedies available under a claim of misappropriation including, but not limited to, actual damages, costs, interest, and restitution of Defendants' unlawful proceeds, including Defendants' profits and other relief deemed just and proper by this Court.

### VICKERS COUNT V
**(Violation of Fla. Stat. § 812.014 and Fla. Stat. § 772.11:**
**Civil Theft against all Defendants)**

601.   Plaintiff Vickers re-alleges paragraphs 1 through 15, 20, 29 through 54, 103 through 114, and 211 through 216 above, and incorporates the same by reference as though fully set forth herein.

602.   Section 772.11, Florida Statutes, creates a private right of action for victims of theft of tangible and intangible personal property, including rights, privileges, interests and claims.

603.   Defendants knowingly appropriated, used and disseminated Vickers' images, likeness and/or identity without authorization or consent.

604.    At all times relevant to this action, Vickers was and is the exclusive owner of all rights, title, and interest to her images, likeness and/or identity unlawfully converted by Defendants for Defendants' benefit.

605.    Defendants' misappropriation of Vickers' images, likeness and/or identity was for Defendants' own use and benefit and to deprive Vickers of certain rights.

606.    Defendants' misconduct detailed in this Complaint denied Vickers the right to engage in arms-length negotiations over the use and dissemination of her images, likeness and/or identity, the right to negotiate over reasonable bargained-for compensation, the right to say "no" to the proposed use by Defendants and the right to otherwise protect her images, likeness and/or identity from harm at the hands of the Defendants.

607.    Defendants' appropriation of Vickers' images, likeness and/or identity as detailed herein without authority violates Sections 772.11 and 812.014, Florida Statutes, and was wrongful.

608.    Defendants had actual or constructive knowledge or consciously disregarded the wrongfulness of their conduct, deprived Vickers of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Vickers.

609.    At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Vickers' rights.

610.    Alternatively, the method and manner in which Defendants used Vickers' images, likeness and/or identity further evinces that Defendants were aware or

consciously disregarded the fact that Vickers did not consent to Defendants' use in order to advertise Defendants' businesses.

611.   Defendants' appropriation and use of Vickers' images, likeness or identity without authority directly and proximately caused damage to Vickers in an amount to be determined at trial.

**WHEREFORE**, Vickers respectfully requests that the Court issue a judgment against all Defendants for all remedies available under Fla. Stat. § 772.11(1), including but not limited to, treble the amount of actual damages, costs, interest, and attorneys' fees and other relief deemed just and proper by this Court.

## VICKERS COUNT VI
### (Conversion against all Defendants)

612.   Plaintiff Vickers re-alleges paragraphs 1 through 15, 20, 29 through 54, 103 through 114, and 211 through 216 above, and incorporates the same by reference as though fully set forth herein.

613.   Vickers is, and all at relevant times was, the exclusive owner of all rights, title, and interest to her images, likeness and/or identity unlawfully converted by Defendants for Defendants' benefit.

614.   Vickers has, and at all times relevant herein had, an intangible property interest in her images, likeness and/or identity unlawfully converted by Defendants for Defendants' benefit.

615.   By their acts and conduct alleged above, Defendants have converted Vickers' property rights, including without limitation, Vickers' images, likeness and/or identity for Defendants' use and wrongful disposition for financial gain.

616.    Vickers is informed and believes and on such information alleges that Defendants have refused to return Vickers' property to her or pay for the deprivation of Vickers' property.

617.    As a result, Vickers has suffered compensatory, punitive and exemplary damages to be determined according to proof at trial; but Vickers alleges that the same are within the jurisdiction of the Court.

618.    Further, Vickers is informed and believes and thereon alleges that in engaging in the conduct described above, Defendants acted with oppression, fraud, and/or malice. Defendants' conduct has been despicable and taken in conscious disregard of Vickers' rights.

**WHEREFORE**, Vickers respectfully requests this Court to issue a judgment against all Defendants and for all remedies available under the common law claim for conversion, including but not limited to actual damages, costs, interest, and restitution of Defendants' unlawful proceeds, including Defendants' profits, and/or other relief deemed just and proper.

## <u>VICKERS COUNT VII</u>
### (Unjust Enrichment against all Defendants)

619.    Plaintiff Vickers re-alleges paragraphs 1 through 15, 20, 29 through 54, 103 through 114, and 211 through 216 above, and incorporates the same by reference as though fully set forth herein.

620.    Vickers has conferred a benefit upon Defendants by virtue of Defendants' usage of her images without compensation.

621.    At all times relevant to this action, Vickers was and is the exclusive owner of all rights, title, and interest to her images, likeness and/or identity unlawfully converted by Defendants for Defendants' benefit.

622.    Defendants were aware that Vickers' images, likeness and/or identity were valuable.

623.    Defendants were aware of the resulting benefit from usage of Vickers' images, likeness and/or identity.

624.    Defendants have retained profits and other benefits conferred upon them by using Vickers' images, likeness and/or identity to promote and advertise Defendants' businesses and/or Defendants' events and activities.

625.    It would be inequitable for Defendants to retain the benefits conferred upon them by using Vickers' images, likeness and/or identity without paying fair value for the images.

**WHEREFORE**, Vickers respectfully requests that the Court issue a judgment against all Defendants for damages, including but not limited to actual damages, costs, interest, imposition of a constructive trust, restitution of unlawful proceeds, including Defendants' gross profits and such other and further relief in law or equity as this Court deems just and proper.

*Plaintiff Dessie Mitcheson's Causes of Action*

**MITCHESON COUNT I**
**(Violation of the Lanham Act, 15 U.S.C. § 1125(a):**
**False Advertising against all Defendants)**

626.    Plaintiff Mitcheson re-alleges paragraphs 1 through 15, 21, 29 through 54, 115 through 126, and 211 through 216 above, and incorporates the same by reference as though fully set forth herein.

627.    Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* applies to Defendants and protects Mitcheson from the conduct described herein. Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . . ."  15 U.S.C. §1125(a)(1)(B).

628.    At all times relevant to this action, Mitcheson was and is the exclusive owner of all rights, title, and interest to her image, likeness and/or identity unlawfully converted by Defendants for Defendants' benefit.

629.    Defendants used Mitcheson's image, likeness and/or identity as described herein without authority in order to create the perception that Mitcheson worked at or was otherwise affiliated with Defendants' strip clubs, endorsed Defendants' businesses and activities, and/or consented to or authorized Defendants to use her image in order to advertise, promote, and market Defendants' businesses and/or Defendants' events and activities.

630.    Defendants' use of Mitcheson's image, likeness and/or identity to advertise, promote and market Defendants' businesses and/or Defendants' events and activities as described in this Complaint was false and misleading.

631.    Defendants' unauthorized use of Mitcheson's image, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or

implying, among other things, that Mitcheson worked at or was otherwise affiliated with Defendants, endorsed Defendants' businesses, or Defendants' events or activities, or consented to or authorized Defendants' usage of her image in order to advertise, promote, and market Defendants' businesses or Defendants' events and activities and/or that Mitcheson would participate in or appear at the specific events promoted in the advertisements.

632.    Defendants' false advertising described above has the capacity or tendency to confuse consumers, including actual and prospective patrons of Defendants, as to the general quality of attendees and participants of Defendants' strip clubs and in their events, as well as specifically whether Mitcheson worked at or was otherwise affiliated with Defendants, endorsed Defendants' businesses or Defendants' events or activities, or consented to or authorized Defendants' usage of her image in order to advertise, promote, and market Defendants' businesses or Defendants' events and activities.

633.    Upon information and belief, Defendants' false advertising described above did, in fact, deceive and/or cause consumer confusion as to whether Mitcheson worked at or was otherwise affiliated with Defendants, endorsed Defendants' businesses or Defendants' events and activities, or consented to or authorized Defendants' usage of her image in order to advertise, promote, and market Defendants' businesses or Defendants' events and activities.  Among other things, upon information and belief, such unauthorized use misled and served to entice consumers and prospective consumers to join Defendants, visit Defendants' strip clubs, and participate in events at Defendants' strip clubs and had a material effect and impact on the decision of members and

prospective members and participants to join Defendants, visit Defendants' strip clubs and take part in the events at Defendants' strip clubs.

634.    Defendants' advertisements, promotions and marketing of Defendants' strip clubs and events occur in and are targeted to interstate commerce.  Specifically, Defendants promote their businesses and events through interstate promotions and campaigns to target persons from different states throughout the United States. Defendants principally use the World Wide Web, social media and other vehicles of interstate commerce to advertise, market, promote, and entice or lure membership and attendance at Defendants' events.

635.    Defendants' unauthorized use of Mitcheson's image, likeness and/or identity as described herein was designed to benefit Defendants' businesses interests by, among other things, promoting Defendants' strip clubs and activities and attracting clientele to Defendants' strip clubs.

636.    Defendants knew or should have known that their unauthorized use of Mitcheson's image, likeness and/or identity would cause consumer confusion as described in this Complaint.

637.    Defendants' unauthorized use of Mitcheson's image, likeness and/or identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

638.    As such, the present case is an exceptional case warranting an award of reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

639.    Defendants had actual or constructive knowledge or consciously disregarded the wrongfulness of their conduct, deprived Mitcheson of a property interest,

and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Mitcheson.

640.   The method and manner in which Defendants used the image of Mitcheson further evinces that Defendants were aware of or consciously disregarded the fact that Mitcheson did not consent to Defendants' use of the image to advertise Defendants' businesses.

641.   Defendants have caused irreparable harm to Mitcheson, her reputation and brand by attributing to Mitcheson the adult entertainment and striptease lifestyle and activities at Defendants' strip clubs.

642.   Defendants' unauthorized use of Mitcheson's image, likeness and/or identity directly and proximately caused and continue to cause damage to Mitcheson in an amount to be determined at trial.

**WHEREFORE**, Mitcheson respectfully requests that the Court issue a judgment against all Defendants and grant actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

<u>**MITCHESON COUNT II**</u>
(**Violation of the Lanham Act, 15 U.S.C. § 1125(a):**
**False Endorsement against all Defendants**)

643.   Plaintiff Mitcheson re-alleges paragraphs 1 through 15, 21, 29 through 54, 115 through 126, and 211 through 216 above, and incorporates the same by reference as though fully set forth herein.

644.   Section 43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(A) applies to Defendants, and protects Mitcheson from the conduct described herein.

645.   Defendants used Mitcheson's image in order to create the false impression with the public that Mitcheson either worked at Defendants' strip clubs, or endorsed Defendants' businesses. This was done to promote and attract clientele to Defendants' strip clubs, and thereby generate revenue for Defendants.

646.   Thus, this was done in furtherance of Defendants' commercial benefit.

647.   Mitcheson is in the business of commercializing her identity and selling her images to reputable brands and companies for profit. Defendants' customers are the exact demographic that views Mitcheson's images in magazines and online.

648.   Both Mitcheson and Defendants' strip clubs compete in the entertainment industry, use similar marketing channels and their respective endeavors overlap. They vie for the same dollars from the same demographic consumer group of men.

649.   As such, an unauthorized use of Mitcheson's image to promote strip clubs created an undeniable confusion in Defendants consumers' minds, which lead to competitive injury to Mitcheson.

650.   Defendants' use of Mitcheson's image, likeness and/or identity constitutes a false designation of the source of origin, sponsorship, approval, or association which has deceived Mitcheson's fans and present and prospective clients into believing that Defendants' advertisements are endorsed by Mitcheson, or sponsored, approved or associated with Mitcheson.

651.   Despite the fact that Defendants were at all times aware that Mitcheson neither worked at, nor endorsed their strip clubs, nevertheless, they used Mitcheson's

image in order to mislead potential customers as to Mitcheson's employment at and/or affiliation with Defendants.

652.     Defendants knew that their use of Mitcheson's image would cause consumer confusion as to Mitcheson's sponsorship and/or employment at Defendants' strip clubs.

653.     Upon information and belief, Defendants' use of Mitcheson's image did in fact cause consumer confusion as to Mitcheson's employment at and/or endorsement of Defendants' businesses, and the goods and services provided by Defendants.

654.     As a direct and proximate result of Defendants' actions, Mitcheson has no control over the nature and quality of the line of products or services provided by Defendants, the nature of the advertisement depicting Mitcheson's image, likeness and/or identity, or how Mitcheson's image, likeness and/or identity is being depicted by Defendants.

655.     Further, any failure, neglect or default by Defendants will reflect adversely on Mitcheson as the believed source of origin, sponsorship, approval or association thereof, hampering efforts by Mitcheson to continue to protect her reputation for high quality professional modeling, resulting in loss of sales thereof and the considerable expenditures to promote her personal modeling services to legitimate mainstream media, all to the irreparable harm of Mitcheson.

656.     Due to Defendants' unauthorized use of Mitcheson's image, Mitcheson has been damaged in an amount to be determined at trial.

**WHEREFORE**, Mitcheson respectfully requests that the Court enter a judgment against Defendants and grant actual, or compensatory, damages in an amount to be

determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

## MITCHESON COUNT III
### (Violation of Fla. Stat. § 540.08: Right of Publicity; Unauthorized Misappropriation of Name/Likeness against all Defendants)

657.     Plaintiff Mitcheson re-alleges paragraphs 1 through 15, 21, 29 through 54, 115 through 126, and 211 through 216 above, and incorporates the same by reference as though fully set forth herein.

658.     Mitcheson has a statutory right of publicity under Section 540.08, Florida Statutes.

659.     Section 540.08, Florida Statutes, provides that: "[n]o person shall publish, print, display or otherwise publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of any natural person without the express written or oral consent to such use."

660.     Despite the clear language of Section 540.08, Defendants published Mitcheson's image, likeness and/or identity on social media outlets, among others, in order to promote, advertise and market Defendants' strip clubs and/or Defendants' events and activities.

661.     At all times relevant to this action, Mitcheson was and is the exclusive owner of all rights, title, and interest to her image, likeness and/or identity unlawfully converted by Defendants for Defendants' benefit.

662.    Defendants never sought permission or authority to use Mitcheson's image, likeness and/or identity to advertise, promote, market or endorse Defendants' businesses or any Defendants' event or activity.

663.    Mitcheson never consented to, permitted, assigned, licensed, or otherwise agreed to Defendants' use of her image, likeness and/or identity to advertise, promote, market or endorse Defendants' businesses or any Defendants' event or activity.

664.    Defendants intentionally or, at a minimum, recklessly published, printed, displayed, or otherwise publicly disseminated or used Mitcheson's image, likeness and/or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

665.    Defendants had actual or constructive knowledge or consciously disregarded the wrongfulness of their conduct, deprived Mitcheson of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Mitcheson.

666.    At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Mitcheson's rights.

667.    Alternatively, Defendants acted negligently towards Mitcheson in using and disseminating, without authority, her image, likeness and/or identity on social media outlets in order to promote, advertise and market Defendants' strip clubs and/or Defendants' events and activities.

668.    Defendants have caused irreparable harm to Mitcheson, her reputation and brand by attributing to Mitcheson the adult entertainment and striptease lifestyle and activities at Defendants' strip clubs.

669.    Defendants have also damaged Mitcheson as a direct and proximate result of their unauthorized use of Mitcheson's image, likeness and/or identity without compensating Mitcheson. Defendants' conduct has been despicable and taken in conscious disregard of Mitcheson's rights.

**WHEREFORE**, Mitcheson respectfully requests that the Court issue a judgment against all Defendants for all remedies available under Fla. Stat. §540.08, including but not limited to, both actual loss and damages, costs, interest, royalties, and restitution of Defendants' unlawful proceeds, including Defendants' profits and other relief deemed just and proper by this Court.

### MITCHESON COUNT IV
**(Violation of Common Law Right of Publicity;
Unauthorized Misappropriation of Name or Likeness against all Defendants)**

670.    Plaintiff Mitcheson re-alleges paragraphs 1 through 15, 21, 29 through 54, 115 through 126, and 211 through 216 above, and incorporates the same by reference as though fully set forth herein.

671.    Mitcheson has a common law right of publicity.

672.    Defendants may not publish, print, display or publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of Mitcheson without express written or oral consent to such use.

673.    At all times relevant to this action, Mitcheson was and is the exclusive owner of all rights, title, and interest to her image, likeness and/or identity unlawfully converted by Defendants for Defendants' benefit.

674.    Defendants published, printed, displayed and/or publicly used Mitcheson's image, likeness and/or identity on their social media outlets, among others, for purposes

of trade and/or commercial advertising including, but not limited to, promoting, advertising and marketing of Defendants and Defendants' events and activities.

675.    Defendants took these actions without Mitcheson's permission, consent or authority.  In fact, Defendants never sought permission nor authority to use Mitcheson's image, likeness and/or identity to advertise, promote, market or endorse Defendants' businesses or any Defendants' event or activity.

676.    Mitcheson never consented to, permitted, assigned, licensed, or otherwise agreed to Defendants' use of her image, likeness and/or identity to advertise, promote, market or endorse Defendants' businesses or any Defendants' event or activity.

677.    Defendants intentionally or, at a minimum, recklessly, published, printed, displayed, or otherwise publicly disseminated or used Mitcheson's image, likeness and/or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

678.    Defendants had actual or constructive knowledge or consciously disregarded the wrongfulness of their conduct, deprived Mitcheson of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Mitcheson.

679.    At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Mitcheson's rights.

680.    Alternatively, Defendants acted negligently towards Mitcheson in using and disseminating, without authority, her image, likeness and/or identity on Defendants' social media outlets in order to promote, advertise and market Defendants' strip clubs and Defendants' events and activities.

681.    Defendants have caused irreparable harm to Mitcheson, her reputation and brand by attributing to Mitcheson the adult entertainment and striptease lifestyle and activities at Defendants' strip clubs.

682.    Defendants have also damaged Mitcheson as a direct and proximate result of their unauthorized use of Mitcheson's image, likeness and/or identity without compensating Mitcheson.

**WHEREFORE**, Mitcheson respectfully requests that the Court issue a judgment against all Defendants for all remedies available under a claim of misappropriation including, but not limited to, actual damages, costs, interest, and restitution of Defendants' unlawful proceeds, including Defendants' profits and other relief deemed just and proper by this Court.

### MITCHESON COUNT V
**(Violation of Fla. Stat. § 812.014 and Fla. Stat. § 772.11:**
**Civil Theft against all Defendants)**

683.    Plaintiff Mitcheson re-alleges paragraphs 1 through 15, 21, 29 through 54, 115 through 126, and 211 through 216 above, and incorporates the same by reference as though fully set forth herein.

684.    Section 772.11, Florida Statutes, creates a private right of action for victims of theft of tangible and intangible personal property, including rights, privileges, interests and claims.

685.    Defendants knowingly appropriated, used and disseminated Mitcheson's image, likeness and/or identity without authorization or consent.

686.    At all times relevant to this action, Mitcheson was and is the exclusive owner of all rights, title, and interest to her image, likeness and/or identity unlawfully converted by Defendants for Defendants' benefit.

687.    Defendants' misappropriation of Mitcheson's image, likeness and/or identity was for Defendants' own use and benefit and to deprive Mitcheson of certain rights.

688.    Defendants' misconduct detailed in this Complaint denied Mitcheson the right to engage in arms-length negotiations over the use and dissemination of her image, likeness and/or identity, the right to negotiate over reasonable bargained-for compensation, the right to say "no" to the proposed use by Defendants and the right to otherwise protect her image, likeness and/or identity from harm at the hands of the Defendants.

689.    Defendants' appropriation of Mitcheson's image, likeness and/or identity as detailed herein without authority violates Sections 772.11 and 812.014, Florida Statutes, and was wrongful.

690.    Defendants had actual or constructive knowledge or consciously disregarded the wrongfulness of their conduct, deprived Mitcheson of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Mitcheson.

691.    At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Mitcheson's rights.

692.    Alternatively, the method and manner in which Defendants used Mitcheson's image, likeness and/or identity further evinces that Defendants were aware

or consciously disregarded the fact that Mitcheson did not consent to Defendants' use in order to advertise Defendants' businesses.

693.    Defendants' appropriation and use of Mitcheson's image, likeness or identity without authority directly and proximately caused damage to Mitcheson in an amount to be determined at trial.

**WHEREFORE**, Mitcheson respectfully requests that the Court issue a judgment against all Defendants for all remedies available under Fla. Stat. § 772.11(1), including but not limited to, treble the amount of actual damages, costs, interest, and attorneys' fees and other relief deemed just and proper by this Court.

## MITCHESON COUNT VI
### (Conversion against all Defendants)

694.    Plaintiff Mitcheson re-alleges paragraphs 1 through 15, 21, 29 through 54, 115 through 126, and 211 through 216 above, and incorporates the same by reference as though fully set forth herein.

695.    Mitcheson is, and all at relevant times was, the exclusive owner of all rights, title, and interest to her image, likeness and/or identity unlawfully converted by Defendants for Defendants' benefit.

696.    Mitcheson has, and at all times relevant herein had, an intangible property interest in her image, likeness and/or identity unlawfully converted by Defendants for Defendants' benefit.

697.    By their acts and conduct alleged above, Defendants have converted Mitcheson's property rights, including without limitation, Mitcheson's image, likeness and/or identity for Defendants' use and wrongful disposition for financial gain.

698.    Mitcheson is informed and believes and on such information alleges that Defendants have refused to return Mitcheson's property to her or pay for the deprivation of Mitcheson's property.

699.    As a result, Mitcheson has suffered compensatory, punitive and exemplary damages to be determined according to proof at trial; but Mitcheson alleges that the same are within the jurisdiction of the Court.

700.    Further, Mitcheson is informed and believes and thereon alleges that in engaging in the conduct described above, Defendants acted with oppression, fraud, and/or malice. Defendants' conduct has been despicable and taken in conscious disregard of Mitcheson's rights.

**WHEREFORE**, Mitcheson respectfully requests this Court to issue a judgment against all Defendants and for all remedies available under the common law claim for conversion, including but not limited to actual damages, costs, interest, and restitution of Defendants' unlawful proceeds, including Defendants' profits, and/or other relief deemed just and proper.

## MITCHESON COUNT VII
### (Unjust Enrichment against all Defendants)

701.    Plaintiff Mitcheson re-alleges paragraphs 1 through 15, 21, 29 through 54, 115 through 126, and 211 through 216 above, and incorporates the same by reference as though fully set forth herein.

702.    Mitcheson has conferred a benefit upon Defendants by virtue of Defendants' usage of her image without compensation.

703.    At all times relevant to this action, Mitcheson was and is the exclusive owner of all rights, title, and interest to her image, likeness and/or identity unlawfully converted by Defendants for Defendants' benefit.

704.    Defendants were aware that Mitcheson's image, likeness and/or identity were valuable.

705.    Defendants were aware of the resulting benefit from usage of Mitcheson's image, likeness and/or identity.

706.    Defendants have retained profits and other benefits conferred upon them by using Mitcheson's image, likeness and/or identity to promote and advertise Defendants' businesses and/or Defendants' events and activities.

707.    It would be inequitable for Defendants to retain the benefits conferred upon them by using Mitcheson's image, likeness and/or identity without paying fair value for the image.

**WHEREFORE**, Mitcheson respectfully requests that the Court issue a judgment against all Defendants for damages, including but not limited to actual damages, costs, interest, imposition of a constructive trust, restitution of unlawful proceeds, including Defendants' gross profits and such other and further relief in law or equity as this Court deems just and proper.

*Plaintiff Devin Justine Takeguma's Causes of Action*

**TAKEGUMA COUNT I**
**(Violation of the Lanham Act, 15 U.S.C. § 1125(a):**
**False Advertising against all Defendants)**

708.    Plaintiff Takeguma re-alleges paragraphs 1 through 15, 22, 29 through 54, 127 through 138, and 211 through 216 above, and incorporates the same by reference as though fully set forth herein.

709.    Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* applies to Defendants and protects Takeguma from the conduct described herein. Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . . ."  15 U.S.C. §1125(a)(1)(B).

710.    At all times relevant to this action, Takeguma was and is the exclusive owner of all rights, title, and interest to her image, likeness and/or identity unlawfully converted by Defendants for Defendants' benefit.

711.    Defendants used Takeguma's image, likeness and/or identity as described herein without authority in order to create the perception that Takeguma worked at or was otherwise affiliated with Defendants' strip clubs, endorsed Defendants' businesses and activities, and/or consented to or authorized Defendants to use her image in order to advertise, promote, and market Defendants' businesses and/or Defendants' events and activities.

712.    Defendants' use of Takeguma's image, likeness and/or identity to advertise, promote and market Defendants' businesses and/or Defendants' events and activities as described in this Complaint was false and misleading.

713.    Defendants' unauthorized use of Takeguma's image, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or

implying, among other things, that Takeguma worked at or was otherwise affiliated with Defendants, endorsed Defendants' businesses, or Defendants' events or activities, or consented to or authorized Defendants' usage of her image in order to advertise, promote, and market Defendants' businesses or Defendants' events and activities and/or that Takeguma would participate in or appear at the specific events promoted in the advertisements.

714.    Defendants' false advertising described above has the capacity or tendency to confuse consumers, including actual and prospective patrons of Defendants, as to the general quality of attendees and participants of Defendants' strip clubs and in their events, as well as specifically whether Takeguma worked at or was otherwise affiliated with Defendants, endorsed Defendants' businesses or Defendants' events or activities, or consented to or authorized Defendants' usage of her image in order to advertise, promote, and market Defendants' businesses or Defendants' events and activities.

715.    Upon information and belief, Defendants' false advertising described above did, in fact, deceive and/or cause consumer confusion as to whether Takeguma worked at or was otherwise affiliated with Defendants, endorsed Defendants' businesses or Defendants' events and activities, or consented to or authorized Defendants' usage of her image in order to advertise, promote, and market Defendants' businesses or Defendants' events and activities.  Among other things, upon information and belief, such unauthorized use misled and served to entice consumers and prospective consumers to join Defendants, visit Defendants' strip clubs, and participate in events at Defendants' strip clubs and had a material effect and impact on the decision of members and

prospective members and participants to join Defendants, visit Defendants' strip clubs and take part in the events at Defendants' strip clubs.

716.    Defendants' advertisements, promotions and marketing of Defendants' strip clubs and events occur in and are targeted to interstate commerce.  Specifically, Defendants promote their businesses and events through interstate promotions and campaigns to target persons from different states throughout the United States. Defendants principally use the World Wide Web, social media and other vehicles of interstate commerce to advertise, market, promote, and entice or lure membership and attendance at Defendants' events.

717.    Defendants' unauthorized use of Takeguma's image, likeness and/or identity as described herein was designed to benefit Defendants' businesses interests by, among other things, promoting Defendants' strip clubs and activities and attracting clientele to Defendants' strip clubs.

718.    Defendants knew or should have known that their unauthorized use of Takeguma's image, likeness and/or identity would cause consumer confusion as described in this Complaint.

719.    Defendants' unauthorized use of Takeguma's image, likeness and/or identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

720.    As such, the present case is an exceptional case warranting an award of reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

721.    Defendants had actual or constructive knowledge or consciously disregarded the wrongfulness of their conduct, deprived Takeguma of a property interest,

and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Takeguma.

722.    The method and manner in which Defendants used the image of Takeguma further evinces that Defendants were aware of or consciously disregarded the fact that Takeguma did not consent to Defendants' use of the image to advertise Defendants' businesses.

723.    Defendants have caused irreparable harm to Takeguma, her reputation and brand by attributing to Takeguma the adult entertainment and striptease lifestyle and activities at Defendants' strip clubs.

724.    Defendants' unauthorized use of Takeguma's image, likeness and/or identity directly and proximately caused and continue to cause damage to Takeguma in an amount to be determined at trial.

**WHEREFORE**, Takeguma respectfully requests that the Court issue a judgment against all Defendants and grant actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

## TAKEGUMA COUNT II
### (Violation of the Lanham Act, 15 U.S.C. § 1125(a): False Endorsement against all Defendants)

725.    Plaintiff Takeguma re-alleges paragraphs 1 through 15, 22, 29 through 54, 127 through 138, and 211 through 216 above, and incorporates the same by reference as though fully set forth herein.

726.     Section 43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(A) applies to Defendants, and protects Takeguma from the conduct described herein.

727.     Defendants used Takeguma's image in order to create the false impression with the public that Takeguma either worked at Defendants' strip clubs, or endorsed Defendants' businesses. This was done to promote and attract clientele to Defendants' strip clubs, and thereby generate revenue for Defendants.

728.     Thus, this was done in furtherance of Defendants' commercial benefit.

729.     Takeguma is in the business of commercializing her identity and selling her images to reputable brands and companies for profit. Defendants' customers are the exact demographic that views Takeguma's images in magazines and online.

730.     Both Takeguma and Defendants' strip clubs compete in the entertainment industry, use similar marketing channels and their respective endeavors overlap. They vie for the same dollars from the same demographic consumer group of men.

731.     As such, an unauthorized use of Takeguma's image to promote strip clubs created an undeniable confusion in Defendants consumers' minds, which lead to competitive injury to Takeguma.

732.     Defendants' use of Takeguma's image, likeness and/or identity constitutes a false designation of the source of origin, sponsorship, approval, or association which has deceived Takeguma's fans and present and prospective clients into believing that Defendants' advertisements are endorsed by Takeguma, or sponsored, approved or associated with Takeguma.

733.     Despite the fact that Defendants were at all times aware that Takeguma neither worked at, nor endorsed their strip clubs, nevertheless, they used Takeguma's

image in order to mislead potential customers as to Takeguma's employment at and/or affiliation with Defendants.

734.    Defendants knew that their use of Takeguma's image would cause consumer confusion as to Takeguma's sponsorship and/or employment at Defendants' strip clubs.

735.    Upon information and belief, Defendants' use of Takeguma's image did in fact cause consumer confusion as to Takeguma's employment at and/or endorsement of Defendants' businesses, and the goods and services provided by Defendants.

736.    As a direct and proximate result of Defendants' actions, Takeguma has no control over the nature and quality of the line of products or services provided by Defendants, the nature of the advertisement depicting Takeguma's image, likeness and/or identity, or how Takeguma's image, likeness and/or identity is being depicted by Defendants.

737.    Further, any failure, neglect or default by Defendants will reflect adversely on Takeguma as the believed source of origin, sponsorship, approval or association thereof, hampering efforts by Takeguma to continue to protect her reputation for high quality professional modeling, resulting in loss of sales thereof and the considerable expenditures to promote her personal modeling services to legitimate mainstream media, all to the irreparable harm of Takeguma.

738.    Due to Defendants' unauthorized use of Takeguma's image, Takeguma has been damaged in an amount to be determined at trial.

**WHEREFORE**, Takeguma respectfully requests that the Court enter a judgment against Defendants and grant actual, or compensatory, damages in an amount to be

determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

## TAKEGUMA COUNT III
### (Violation of Fla. Stat. § 540.08: Right of Publicity;
### Unauthorized Misappropriation of Name/Likeness against all Defendants)

739.    Plaintiff Takeguma re-alleges paragraphs 1 through 15, 22, 29 through 54, 127 through 138, and 211 through 216 above, and incorporates the same by reference as though fully set forth herein.

740.    Takeguma has a statutory right of publicity under Section 540.08, Florida Statutes.

741.    Section 540.08, Florida Statutes, provides that: "[n]o person shall publish, print, display or otherwise publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of any natural person without the express written or oral consent to such use."

742.    Despite the clear language of Section 540.08, Defendants published Takeguma's image, likeness and/or identity on social media outlets, among others, in order to promote, advertise and market Defendants' strip clubs and/or Defendants' events and activities.

743.    At all times relevant to this action, Takeguma was and is the exclusive owner of all rights, title, and interest to her image, likeness and/or identity unlawfully converted by Defendants for Defendants' benefit.

744.    Defendants never sought permission or authority to use Takeguma's image, likeness and/or identity to advertise, promote, market or endorse Defendants' businesses or any Defendants' event or activity.

745.    Takeguma never consented to, permitted, assigned, licensed, or otherwise agreed to Defendants' use of her image, likeness and/or identity to advertise, promote, market or endorse Defendants' businesses or any Defendants' event or activity.

746.    Defendants intentionally or, at a minimum, recklessly published, printed, displayed, or otherwise publicly disseminated or used Takeguma's image, likeness and/or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

747.    Defendants had actual or constructive knowledge or consciously disregarded the wrongfulness of their conduct, deprived Takeguma of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Takeguma.

748.    At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Takeguma's rights.

749.    Alternatively, Defendants acted negligently towards Takeguma in using and disseminating, without authority, her image, likeness and/or identity on social media outlets in order to promote, advertise and market Defendants' strip clubs and/or Defendants' events and activities.

750.    Defendants have caused irreparable harm to Takeguma, her reputation and brand by attributing to Takeguma the adult entertainment and striptease lifestyle and activities at Defendants' strip clubs.

751.    Defendants have also damaged Takeguma as a direct and proximate result of their unauthorized use of Takeguma's image, likeness and/or identity without compensating Takeguma. Defendants' conduct has been despicable and taken in conscious disregard of Takeguma's rights.

**WHEREFORE**, Takeguma respectfully requests that the Court issue a judgment against all Defendants for all remedies available under Fla. Stat. §540.08, including but not limited to, both actual loss and damages, costs, interest, royalties, and restitution of Defendants' unlawful proceeds, including Defendants' profits and other relief deemed just and proper by this Court.

### TAKEGUMA COUNT IV
**(Violation of Common Law Right of Publicity;**
**Unauthorized Misappropriation of Name or Likeness against all Defendants)**

752.    Plaintiff Takeguma re-alleges paragraphs 1 through 15, 22, 29 through 54, 127 through 138, and 211 through 216 above, and incorporates the same by reference as though fully set forth herein.

753.    Takeguma has a common law right of publicity.

754.    Defendants may not publish, print, display or publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of Takeguma without express written or oral consent to such use.

755.    At all times relevant to this action, Takeguma was and is the exclusive owner of all rights, title, and interest to her image, likeness and/or identity unlawfully converted by Defendants for Defendants' benefit.

756.    Defendants published, printed, displayed and/or publicly used Takeguma's image, likeness and/or identity on their social media outlets, among others, for purposes

of trade and/or commercial advertising including, but not limited to, promoting, advertising and marketing of Defendants and Defendants' events and activities.

757.    Defendants took these actions without Takeguma's permission, consent or authority.  In fact, Defendants never sought permission nor authority to use Takeguma's image, likeness and/or identity to advertise, promote, market or endorse Defendants' businesses or any Defendants' event or activity.

758.    Takeguma never consented to, permitted, assigned, licensed, or otherwise agreed to Defendants' use of her image, likeness and/or identity to advertise, promote, market or endorse Defendants' businesses or any Defendants' event or activity.

759.    Defendants intentionally or, at a minimum, recklessly, published, printed, displayed, or otherwise publicly disseminated or used Takeguma's image, likeness and/or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

760.    Defendants had actual or constructive knowledge or consciously disregarded the wrongfulness of their conduct, deprived Takeguma of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Takeguma.

761.    At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Takeguma's rights.

762.    Alternatively, Defendants acted negligently towards Takeguma in using and disseminating, without authority, her image, likeness and/or identity on Defendants' social media outlets in order to promote, advertise and market Defendants' strip clubs and Defendants' events and activities.

763.    Defendants have caused irreparable harm to Takeguma, her reputation and brand by attributing to Takeguma the adult entertainment and striptease lifestyle and activities at Defendants' strip clubs.

764.    Defendants have also damaged Takeguma as a direct and proximate result of their unauthorized use of Takeguma's image, likeness and/or identity without compensating Takeguma.

**WHEREFORE**, Takeguma respectfully requests that the Court issue a judgment against all Defendants for all remedies available under a claim of misappropriation including, but not limited to, actual damages, costs, interest, and restitution of Defendants' unlawful proceeds, including Defendants' profits and other relief deemed just and proper by this Court.

### TAKEGUMA COUNT V
**(Violation of Fla. Stat. § 812.014 and Fla. Stat. § 772.11:
Civil Theft against all Defendants)**

765.    Plaintiff Takeguma re-alleges paragraphs 1 through 15, 22, 29 through 54, 127 through 138, and 211 through 216 above, and incorporates the same by reference as though fully set forth herein.

766.    Section 772.11, Florida Statutes, creates a private right of action for victims of theft of tangible and intangible personal property, including rights, privileges, interests and claims.

767.    Defendants knowingly appropriated, used and disseminated Takeguma's image, likeness and/or identity without authorization or consent.

768. At all times relevant to this action, Takeguma was and is the exclusive owner of all rights, title, and interest to her image, likeness and/or identity unlawfully converted by Defendants for Defendants' benefit.

769. Defendants' misappropriation of Takeguma's image, likeness and/or identity was for Defendants' own use and benefit and to deprive Takeguma of certain rights.

770. Defendants' misconduct detailed in this Complaint denied Takeguma the right to engage in arms-length negotiations over the use and dissemination of her image, likeness and/or identity, the right to negotiate over reasonable bargained-for compensation, the right to say "no" to the proposed use by Defendants and the right to otherwise protect her image, likeness and/or identity from harm at the hands of the Defendants.

771. Defendants' appropriation of Takeguma's image, likeness and/or identity as detailed herein without authority violates Sections 772.11 and 812.014, Florida Statutes, and was wrongful.

772. Defendants had actual or constructive knowledge or consciously disregarded the wrongfulness of their conduct, deprived Takeguma of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Takeguma.

773. At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Takeguma's rights.

774. Alternatively, the method and manner in which Defendants used Takeguma's image, likeness and/or identity further evinces that Defendants were aware

or consciously disregarded the fact that Takeguma did not consent to Defendants' use in order to advertise Defendants' businesses.

775.    Defendants' appropriation and use of Takeguma's image, likeness or identity without authority directly and proximately caused damage to Takeguma in an amount to be determined at trial.

**WHEREFORE**, Takeguma respectfully requests that the Court issue a judgment against all Defendants for all remedies available under Fla. Stat. § 772.11(1), including but not limited to, treble the amount of actual damages, costs, interest, and attorneys' fees and other relief deemed just and proper by this Court.

## TAKEGUMA COUNT VI
### (Conversion against all Defendants)

776.    Plaintiff Takeguma re-alleges paragraphs 1 through 15, 22, 29 through 54, 127 through 138, and 211 through 216 above, and incorporates the same by reference as though fully set forth herein.

777.    Takeguma is, and all at relevant times was, the exclusive owner of all rights, title, and interest to her image, likeness and/or identity unlawfully converted by Defendants for Defendants' benefit.

778.    Takeguma has, and at all times relevant herein had, an intangible property interest in her image, likeness and/or identity unlawfully converted by Defendants for Defendants' benefit.

779.    By their acts and conduct alleged above, Defendants have converted Takeguma's property rights, including without limitation, Takeguma's image, likeness and/or identity for Defendants' use and wrongful disposition for financial gain.

780.    Takeguma is informed and believes and on such information alleges that Defendants have refused to return Takeguma's property to her or pay for the deprivation of Takeguma's property.

781.    As a result, Takeguma has suffered compensatory, punitive and exemplary damages to be determined according to proof at trial; but Takeguma alleges that the same are within the jurisdiction of the Court.

782.    Further, Takeguma is informed and believes and thereon alleges that in engaging in the conduct described above, Defendants acted with oppression, fraud, and/or malice. Defendants' conduct has been despicable and taken in conscious disregard of Takeguma's rights.

**WHEREFORE**, Takeguma respectfully requests this Court to issue a judgment against all Defendants and for all remedies available under the common law claim for conversion, including but not limited to actual damages, costs, interest, and restitution of Defendants' unlawful proceeds, including Defendants' profits, and/or other relief deemed just and proper.

## TAKEGUMA COUNT VII
### (Unjust Enrichment against all Defendants)

783.    Plaintiff Takeguma re-alleges paragraphs 1 through 15, 22, 29 through 54, 127 through 138, and 211 through 216 above, and incorporates the same by reference as though fully set forth herein.

784.    Takeguma has conferred a benefit upon Defendants by virtue of Defendants' usage of her image without compensation.

785.    At all times relevant to this action, Takeguma was and is the exclusive owner of all rights, title, and interest to her image, likeness and/or identity unlawfully converted by Defendants for Defendants' benefit.

786.    Defendants were aware that Takeguma's image, likeness and/or identity were valuable.

787.    Defendants were aware of the resulting benefit from usage of Takeguma's image, likeness and/or identity.

788.    Defendants have retained profits and other benefits conferred upon them by using Takeguma's image, likeness and/or identity to promote and advertise Defendants' businesses and/or Defendants' events and activities.

789.    It would be inequitable for Defendants to retain the benefits conferred upon them by using Takeguma's image, likeness and/or identity without paying fair value for the image.

**WHEREFORE**, Takeguma respectfully requests that the Court issue a judgment against all Defendants for damages, including but not limited to actual damages, costs, interest, imposition of a constructive trust, restitution of unlawful proceeds, including Defendants' gross profits and such other and further relief in law or equity as this Court deems just and proper.

### *Plaintiff Eva Pepaj's Causes of Action*

### <u>PEPAJ COUNT I</u>
**(Violation of the Lanham Act, 15 U.S.C. § 1125(a): False Advertising against BTS North, Inc. d/b/a Booty Trap and T.K. Promotions, Inc. d/b/a Booty Trap)**

790.    Plaintiff Pepaj re-alleges paragraphs 1 through 15, 23, 29 through 54, 139 through 150, and 211 through 216 above, and incorporates the same by reference as though fully set forth herein.

791.    Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* applies to Booby Trap Doral and Booby Trap South Miami and protects Pepaj from the conduct described herein. Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . . ." 15 U.S.C. §1125(a)(1)(B).

792.    At all times relevant to this action, Pepaj was and is the exclusive owner of all rights, title, and interest to her image, likeness and/or identity unlawfully converted by BTS North, Inc. d/b/a Booty Trap ("Booby Trap Doral") and T.K. Promotions, Inc. d/b/a Booty Trap ("Booby Trap South Miami") for Booby Trap Doral and Booby Trap South Miami's benefit.

793.    Booby Trap Doral and Booby Trap South Miami used Pepaj's image, likeness and/or identity as described herein without authority in order to create the perception that Pepaj worked at or was otherwise affiliated with Booby Trap Doral and Booby Trap South Miami's strip clubs, endorsed Booby Trap Doral and Booby Trap South Miami's businesses and activities, and/or consented to or authorized Booby Trap Doral and Booby Trap South Miami to use her image in order to advertise, promote, and market Booby Trap Doral and Booby Trap South Miami's businesses and/or Booby Trap Doral and Booby Trap South Miami's events and activities.

794.     Booby Trap Doral and Booby Trap South Miami's use of Pepaj's image, likeness and/or identity to advertise, promote and market Booby Trap Doral and Booby Trap South Miami's businesses and/or Booby Trap Doral and Booby Trap South Miami's events and activities as described in this Complaint was false and misleading.

795.     Booby Trap Doral and Booby Trap South Miami's unauthorized use of Pepaj's image, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Pepaj worked at or was otherwise affiliated with Booby Trap Doral and Booby Trap South Miami, endorsed Booby Trap Doral and Booby Trap South Miami's businesses, or Booby Trap Doral and Booby Trap South Miami's events or activities, or consented to or authorized Booby Trap Doral and Booby Trap South Miami's usage of her image in order to advertise, promote, and market Booby Trap Doral and Booby Trap South Miami's business or Booby Trap Doral and Booby Trap South Miami's events and activities and/or that Pepaj would participate in or appear at the specific events promoted in the advertisements.

796.     Booby Trap Doral and Booby Trap South Miami's false advertising described above has the capacity or tendency to confuse consumers, including actual and prospective patrons of Booby Trap Doral and Booby Trap South Miami, as to the general quality of attendees and participants of Booby Trap Doral and Booby Trap South Miami's strip clubs and in their events, as well as specifically whether Pepaj worked at or was otherwise affiliated with Booby Trap Doral and Booby Trap South Miami, endorsed Booby Trap Doral and Booby Trap South Miami's businesses or Booby Trap Doral and Booby Trap South Miami's events or activities, or consented to or authorized Booby Trap Doral and Booby Trap South Miami's usage of her image in order to advertise, promote,

and market Booby Trap Doral and Booby Trap South Miami's businesses or Booby Trap Doral and Booby Trap South Miami's events and activities.

797.    Upon information and belief, Booby Trap Doral and Booby Trap South Miami's false advertising described above did, in fact, deceive and/or cause consumer confusion as to whether Pepaj worked at or was otherwise affiliated with Booby Trap Doral and Booby Trap South Miami, endorsed Booby Trap Doral and Booby Trap South Miami's businesses or Booby Trap Doral and Booby Trap South Miami's events and activities, or consented to or authorized Booby Trap Doral and Booby Trap South Miami's usage of her image in order to advertise, promote, and market Booby Trap Doral and Booby Trap South Miami's businesses or Booby Trap Doral and Booby Trap South Miami's events and activities.  Among other things, upon information and belief, such unauthorized use misled and served to entice consumers and prospective consumers to join Booby Trap Doral and Booby Trap South Miami, visit Booby Trap Doral and Booby Trap South Miami's strip clubs, and participate in events at Booby Trap Doral and Booby Trap South Miami's strip clubs and had a material effect and impact on the decision of members and prospective members and participants to join Booby Trap Doral and Booby Trap South Miami, visit Booby Trap Doral and Booby Trap South Miami's strip clubs and take part in the events at Booby Trap Doral and Booby Trap South Miami's strip clubs.

798.    Booby Trap Doral and Booby Trap South Miami's advertisements, promotions and marketing of Booby Trap Doral and Booby Trap South Miami's strip clubs and events occur in and are targeted to interstate commerce.  Specifically, Booby Trap Doral and Booby Trap South Miami promote their businesses and events through

interstate promotions and campaigns to target persons from different states throughout the United States. Booby Trap Doral and Booby Trap South Miami principally use the World Wide Web, social media and other vehicles of interstate commerce to advertise, market, promote, and entice or lure membership and attendance at Booby Trap Doral and Booby Trap South Miami's events.

799.    Booby Trap Doral and Booby Trap South Miami's unauthorized use of Pepaj's image, likeness and/or identity as described herein was designed to benefit Booby Trap Doral and Booby Trap South Miami's businesses interests by, among other things, promoting Booby Trap Doral and Booby Trap South Miami's strip clubs and activities and attracting clientele to Booby Trap Doral and Booby Trap South Miami's strip clubs.

800.    Booby Trap Doral and Booby Trap South Miami knew or should have known that their unauthorized use of Pepaj's image, likeness and/or identity would cause consumer confusion as described in this Complaint.

801.    Booby Trap Doral and Booby Trap South Miami's unauthorized use of Pepaj's image, likeness and/or identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

802.    As such, the present case is an exceptional case warranting an award of reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

803.    Booby Trap Doral and Booby Trap South Miami had actual or constructive knowledge or consciously disregarded the wrongfulness of their conduct, deprived Pepaj of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Pepaj.

804.    The method and manner in which Booby Trap Doral and Booby Trap South Miami used the image of Pepaj further evinces that Booby Trap Doral and Booby Trap South Miami were aware of or consciously disregarded the fact that Pepaj did not consent to Booby Trap Doral and Booby Trap South Miami's use of the image to advertise Booby Trap Doral and Booby Trap South Miami's businesses.

805.    Booby Trap Doral and Booby Trap South Miami have caused irreparable harm to Pepaj, her reputation and brand by attributing to Pepaj the adult entertainment and striptease lifestyle and activities at Booby Trap Doral and Booby Trap South Miami's strip clubs.

806.    Booby Trap Doral and Booby Trap South Miami's unauthorized use of Pepaj's image, likeness and/or identity directly and proximately caused and continue to cause damage to Pepaj in an amount to be determined at trial.

**WHEREFORE**, Pepaj respectfully requests that the Court issue a judgment against Booby Trap Doral and Booby Trap South Miami and grant actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Booby Trap Doral and Booby Trap South Miami's unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

## PEPAJ COUNT II
### (Violation of the Lanham Act, 15 U.S.C. § 1125(a): False Endorsement against BTS North, Inc. d/b/a Booty Trap and T.K. Promotions, Inc. d/b/a Booty Trap)

807.    Plaintiff Pepaj re-alleges paragraphs 1 through 15, 23, 29 through 54, 139 through 150, and 211 through 216 above, and incorporates the same by reference as though fully set forth herein.

808. Section 43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(A) applies to BTS North, Inc. d/b/a Booty Trap ("Booby Trap Doral") and T.K. Promotions, Inc. d/b/a Booty Trap ("Booby Trap South Miami"), and protects Pepaj from the conduct described herein.

809. Booby Trap Doral and Booby Trap South Miami used Pepaj's image in order to create the false impression with the public that Pepaj either worked at Booby Trap Doral and Booby Trap South Miami, or endorsed Booby Trap Doral and Booby Trap South Miami. This was done to promote and attract clientele to Booby Trap Doral and Booby Trap South Miami, and thereby generate revenue for Booby Trap Doral and Booby Trap South Miami.

810. Thus, this was done in furtherance of Booby Trap Doral and Booby Trap South Miami's commercial benefit.

811. Pepaj is in the business of commercializing her identity and selling her images to reputable brands and companies for profit. Booby Trap Doral and Booby Trap South Miami's customers are the exact demographic that views Pepaj's images in magazines and online.

812. Both Pepaj and Booby Trap Doral and Booby Trap South Miami compete in the entertainment industry, use similar marketing channels and their respective endeavors overlap. They vie for the same dollars from the same demographic consumer group of men.

813. As such, an unauthorized use of Pepaj's image to promote strip clubs created an undeniable confusion in Booby Trap Doral and Booby Trap South Miami consumers' minds, which lead to competitive injury to Pepaj.

814.     Booby Trap Doral and Booby Trap South Miami's use of Pepaj's image, likeness and/or identity constitutes a false designation of the source of origin, sponsorship, approval, or association which has deceived Pepaj's fans and present and prospective clients into believing that Booby Trap Doral and Booby Trap South Miami's advertisements are endorsed by Pepaj, or sponsored, approved or associated with Pepaj.

815.     Despite the fact that Booby Trap Doral and Booby Trap South Miami were at all times aware that Pepaj neither worked at, nor endorsed their strip clubs, nevertheless, they used Pepaj's image in order to mislead potential customers as to Pepaj's employment at and/or affiliation with Booby Trap Doral and Booby Trap South Miami.

816.     Booby Trap Doral and Booby Trap South Miami knew that their use of Pepaj's image would cause consumer confusion as to Pepaj's sponsorship and/or employment at Booby Trap Doral and Booby Trap South Miami.

817.     Upon information and belief, Booby Trap Doral and Booby Trap South Miami's use of Pepaj's image did in fact cause consumer confusion as to Pepaj's employment at and/or endorsement of Booby Trap Doral and Booby Trap South Miami's businesses, and the goods and services provided by Booby Trap Doral and Booby Trap South Miami.

818.     As a direct and proximate result of Booby Trap Doral and Booby Trap South Miami's actions, Pepaj has no control over the nature and quality of the line of products or services provided by Booby Trap Doral and Booby Trap South Miami, the nature of the advertisement depicting Pepaj's image, likeness and/or identity, or how

Pepaj's image, likeness and/or identity is being depicted by Booby Trap Doral and Booby Trap South Miami.

819.    Further, any failure, neglect or default by Booby Trap Doral and Booby Trap South Miami will reflect adversely on Pepaj as the believed source of origin, sponsorship, approval or association thereof, hampering efforts by Pepaj to continue to protect her reputation for high quality professional modeling, resulting in loss of sales thereof and the considerable expenditures to promote her personal modeling services to legitimate mainstream media, all to the irreparable harm of Pepaj.

820.    Due to Booby Trap Doral and Booby Trap South Miami's unauthorized use of Pepaj's image, Pepaj has been damaged in an amount to be determined at trial.

**WHEREFORE**, Pepaj respectfully requests that the Court enter a judgment against Booby Trap Doral and Booby Trap South Miami and grant actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Booby Trap Doral and Booby Trap South Miami's unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

### PEPAJ COUNT III
**(Violation of Fla. Stat. § 540.08: Right of Publicity;**
**Unauthorized Misappropriation of Name/Likeness against BTS North, Inc. d/b/a**
**Booty Trap and T.K. Promotions, Inc. d/b/a Booty Trap)**

821.    Plaintiff Pepaj re-alleges paragraphs 1 through 15, 23, 29 through 54, 139 through 150, and 211 through 216 above, and incorporates the same by reference as though fully set forth herein.

822.    Pepaj has a statutory right of publicity under Section 540.08, Florida Statutes.

823.    Section 540.08, Florida Statutes, provides that: "[n]o person shall publish, print, display or otherwise publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of any natural person without the express written or oral consent to such use."

824.    Despite the clear language of Section 540.08, BTS North, Inc. d/b/a Booty Trap ("Booby Trap Doral") and T.K. Promotions, Inc. d/b/a Booty Trap ("Booby Trap South Miami") published Pepaj's image, likeness and/or identity on social media outlets, among others, in order to promote, advertise and market Booby Trap Doral and Booby Trap South Miami's strip clubs and/or Booby Trap Doral and Booby Trap South Miami's events and activities.

825.    At all times relevant to this action, Pepaj was and is the exclusive owner of all rights, title, and interest to her image, likeness and/or identity unlawfully converted by Booby Trap Doral and Booby Trap South Miami for Booby Trap Doral and Booby Trap South Miami's benefit.

826.    Booby Trap Doral and Booby Trap South Miami never sought permission or authority to use Pepaj's image, likeness and/or identity to advertise, promote, market or endorse Booby Trap Doral and Booby Trap South Miami's businesses or any Booby Trap Doral and Booby Trap South Miami's event or activity.

827.    Pepaj never consented to, permitted, assigned, licensed, or otherwise agreed to Booby Trap Doral and Booby Trap South Miami's use of her image, likeness and/or identity to advertise, promote, market or endorse Booby Trap Doral and Booby Trap South Miami's businesses or any Booby Trap Doral and Booby Trap South Miami's event or activity.

828.   Booby Trap Doral and Booby Trap South Miami intentionally or, at a minimum, recklessly published, printed, displayed, or otherwise publicly disseminated or used Pepaj's image, likeness and/or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

829.   Booby Trap Doral and Booby Trap South Miami had actual or constructive knowledge or consciously disregarded the wrongfulness of their conduct, deprived Pepaj of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Pepaj.

830.   At a minimum, Booby Trap Doral and Booby Trap South Miami's conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Pepaj's rights.

831.   Alternatively, Booby Trap Doral and Booby Trap South Miami acted negligently towards Pepaj in using and disseminating, without authority, her image, likeness and/or identity on social media outlets in order to promote, advertise and market Booby Trap Doral and Booby Trap South Miami's strip clubs and/or Booby Trap Doral and Booby Trap South Miami's events and activities.

832.   Booby Trap Doral and Booby Trap South Miami have caused irreparable harm to Pepaj, her reputation and brand by attributing to Pepaj the adult entertainment and striptease lifestyle and activities at Booby Trap Doral and Booby Trap South Miami's strip clubs.

833.   Booby Trap Doral and Booby Trap South Miami have also damaged Pepaj as a direct and proximate result of their unauthorized use of Pepaj's image, likeness

and/or identity without compensating Pepaj.  Booby Trap Doral and Booby Trap South Miami's conduct has been despicable and taken in conscious disregard of Pepaj's rights. Accordingly, Pepaj is entitled to an award of punitive damages against Booby Trap Doral and Booby Trap South Miami in an amount sufficient to punish and make an example of Booby Trap Doral and Booby Trap South Miami. Therefore, Pepaj reserves the right to seek punitive damages according to proof and pursuant to Fla. Stat. §768.72.

**WHEREFORE**, Pepaj respectfully requests that the Court issue a judgment against Booby Trap Doral and Booby Trap South Miami for all remedies available under Fla. Stat. §540.08, including but not limited to, both actual loss and damages, punitive damages according to proof, costs, interest, royalties, and restitution of Booby Trap Doral and Booby Trap South Miami's unlawful proceeds, including Booby Trap Doral and Booby Trap South Miami's profits and other relief deemed just and proper by this Court.

### PEPAJ COUNT IV
**(Violation of Common Law Right of Publicity; Unauthorized Misappropriation of Name or Likeness against BTS North, Inc. d/b/a Booty Trap and T.K. Promotions, Inc. d/b/a Booty Trap)**

834.    Plaintiff Pepaj re-alleges paragraphs 1 through 15, 23, 29 through 54, 139 through 150, and 211 through 216 above, and incorporates the same by reference as though fully set forth herein.

835.    Pepaj has a common law right of publicity.

836.    BTS North, Inc. d/b/a Booty Trap ("Booby Trap Doral") and T.K. Promotions, Inc. d/b/a Booty Trap ("Booby Trap South Miami") may not publish, print, display or publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of Pepaj without express written or oral consent to such use.

837.    At all times relevant to this action, Pepaj was and is the exclusive owner of all rights, title, and interest to her image, likeness and/or identity unlawfully converted by Booby Trap Doral and Booby Trap South Miami for Booby Trap Doral and Booby Trap South Miami's benefit.

838.    Booby Trap Doral and Booby Trap South Miami published, printed, displayed and/or publicly used Pepaj's image, likeness and/or identity on their social media outlets, among others, for purposes of trade and/or commercial advertising including, but not limited to, promoting, advertising and marketing of  Booby Trap Doral and Booby Trap South Miami and Booby Trap Doral and Booby Trap South Miami's events and activities.

839.    Booby Trap Doral and Booby Trap South Miami took these actions without Pepaj's permission, consent or authority.  In fact, Booby Trap Doral and Booby Trap South Miami never sought permission nor authority to use Pepaj's image, likeness and/or identity to advertise, promote, market or endorse Booby Trap Doral and Booby Trap South Miami's businesses or any Booby Trap Doral and Booby Trap South Miami's event or activity.

840.    Pepaj never consented to, permitted, assigned, licensed, or otherwise agreed to Booby Trap Doral and Booby Trap South Miami's use of her image, likeness and/or identity to advertise, promote, market or endorse Booby Trap Doral and Booby Trap South Miami's businesses or any Booby Trap Doral and Booby Trap South Miami's event or activity.

841.    Booby Trap Doral and Booby Trap South Miami intentionally or, at a minimum, recklessly, published, printed, displayed, or otherwise publicly disseminated or

used Pepaj's image, likeness and/or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

842.   Booby Trap Doral and Booby Trap South Miami had actual or constructive knowledge or consciously disregarded the wrongfulness of their conduct, deprived Pepaj of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Pepaj.

843.   At a minimum, Booby Trap Doral and Booby Trap South Miami's conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Pepaj's rights.

844.   Alternatively, Booby Trap Doral and Booby Trap South Miami acted negligently towards Pepaj in using and disseminating, without authority, her image, likeness and/or identity on Booby Trap Doral and Booby Trap South Miami's social media outlets in order to promote, advertise and market Booby Trap Doral and Booby Trap South Miami's strip clubs and Booby Trap Doral and Booby Trap South Miami's events and activities.

845.   Booby Trap Doral and Booby Trap South Miami have caused irreparable harm to Pepaj, her reputation and brand by attributing to Pepaj the adult entertainment and striptease lifestyle and activities at Booby Trap Doral and Booby Trap South Miami's strip clubs.

846.   Booby Trap Doral and Booby Trap South Miami have also damaged Pepaj as a direct and proximate result of their unauthorized use of Pepaj's image, likeness and/or identity without compensating Pepaj.

WHEREFORE, Pepaj respectfully requests that the Court issue a judgment against Booby Trap Doral and Booby Trap South Miami for all remedies available under a claim of misappropriation including, but not limited to, actual damages, costs, interest, and restitution of Booby Trap Doral and Booby Trap South Miami's unlawful proceeds, including Booby Trap Doral and Booby Trap South Miami's profits and other relief deemed just and proper by this Court.

## PEPAJ COUNT V
**(Violation of Fla. Stat. § 812.014 and Fla. Stat. § 772.11: Civil Theft against BTS North, Inc. d/b/a Booty Trap and T.K. Promotions, Inc. d/b/a Booty Trap)**

847.    Plaintiff Pepaj re-alleges paragraphs 1 through 15, 23, 29 through 54, 139 through 150, and 211 through 216 above, and incorporates the same by reference as though fully set forth herein.

848.    Section 772.11, Florida Statutes, creates a private right of action for victims of theft of tangible and intangible personal property, including rights, privileges, interests and claims.

849.    BTS North, Inc. d/b/a Booty Trap ("Booby Trap Doral") and T.K. Promotions, Inc. d/b/a Booty Trap ("Booby Trap South Miami") knowingly appropriated, used and disseminated Pepaj's image, likeness and/or identity without authorization or consent.

850.    At all times relevant to this action, Pepaj was and is the exclusive owner of all rights, title, and interest to her image, likeness and/or identity unlawfully converted by Booby Trap Doral and Booby Trap South Miami for Booby Trap Doral and Booby Trap South Miami's benefit.

851.   Booby Trap Doral and Booby Trap South Miami's misappropriation of Pepaj's image, likeness and/or identity was for Booby Trap Doral and Booby Trap South Miami's own use and benefit and to deprive Pepaj of certain rights.

852.   Booby Trap Doral and Booby Trap South Miami's misconduct detailed in this Complaint denied Pepaj the right to engage in arms-length negotiations over the use and dissemination of her image, likeness and/or identity, the right to negotiate over reasonable bargained-for compensation, the right to say "no" to the proposed use by Booby Trap Doral and Booby Trap South Miami and the right to otherwise protect her image, likeness and/or identity from harm at the hands of the Booby Trap Doral and Booby Trap South Miami.

853.   Booby Trap Doral and Booby Trap South Miami's appropriation of Pepaj's image, likeness and/or identity as detailed herein without authority violates Sections 772.11 and 812.014, Florida Statutes, and was wrongful.

854.   Booby Trap Doral and Booby Trap South Miami had actual or constructive knowledge or consciously disregarded the wrongfulness of their conduct, deprived Pepaj of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Pepaj.

855.   At a minimum, Booby Trap Doral and Booby Trap South Miami's conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Pepaj's rights.

856.   Alternatively, the method and manner in which Booby Trap Doral and Booby Trap South Miami used Pepaj's image, likeness and/or identity further evinces that Booby Trap Doral and Booby Trap South Miami were aware or consciously

disregarded the fact that Pepaj did not consent to Booby Trap Doral and Booby Trap South Miami's use in order to advertise Booby Trap Doral and Booby Trap South Miami's businesses.

857.   Booby Trap Doral and Booby Trap South Miami's appropriation and use of Pepaj's image, likeness or identity without authority directly and proximately caused damage to Pepaj in an amount to be determined at trial.

**WHEREFORE**, Pepaj respectfully requests that the Court issue a judgment against Booby Trap Doral and Booby Trap South Miami for all remedies available under Fla. Stat. § 772.11(1), including but not limited to, treble the amount of actual damages, costs, interest, and attorneys' fees and other relief deemed just and proper by this Court.

## PEPAJ COUNT VI
### (Conversion against BTS North, Inc. d/b/a Booty Trap and T.K. Promotions, Inc. d/b/a Booty Trap)

858.   Plaintiff Pepaj re-alleges paragraphs 1 through 15, 23, 29 through 54, 139 through 150, and 211 through 216 above, and incorporates the same by reference as though fully set forth herein.

859.   Pepaj is, and all at relevant times was, the exclusive owner of all rights, title, and interest to her image, likeness and/or identity unlawfully converted by BTS North, Inc. d/b/a Booty Trap ("Booby Trap Doral") and T.K. Promotions, Inc. d/b/a Booty Trap ("Booby Trap South Miami") for Booby Trap Doral and Booby Trap South Miami's benefit.

860.   Pepaj has, and at all times relevant herein had, an intangible property interest in her image, likeness and/or identity unlawfully converted by Booby Trap Doral

and Booby Trap South Miami for Booby Trap Doral and Booby Trap South Miami's benefit.

861.    By their acts and conduct alleged above, Booby Trap Doral and Booby Trap South Miami have converted Pepaj's property rights, including without limitation, Pepaj's image, likeness and/or identity for Booby Trap Doral and Booby Trap South Miami's use and wrongful disposition for financial gain.

862.    Pepaj is informed and believes and on such information alleges that Booby Trap Doral and Booby Trap South Miami have refused to return Pepaj's property to her or pay for the deprivation of Pepaj's property.

863.    As a result, Pepaj has suffered compensatory, punitive and exemplary damages to be determined according to proof at trial; but Pepaj alleges that the same are within the jurisdiction of the Court.

864.    Further, Pepaj is informed and believes and thereon alleges that in engaging in the conduct described above, Booby Trap Doral and Booby Trap South Miami acted with oppression, fraud, and/or malice. Booby Trap Doral and Booby Trap South Miami's conduct has been despicable and taken in conscious disregard of Pepaj's rights.

**WHEREFORE**, Pepaj respectfully requests this Court to issue a judgment against Booby Trap Doral and Booby Trap South Miami and for all remedies available under the common law claim for conversion, including but not limited to actual damages, costs, interest, and restitution of Booby Trap Doral and Booby Trap South Miami's unlawful proceeds, including Booby Trap Doral and Booby Trap South Miami's profits, and/or other relief deemed just and proper.

**PEPAJ COUNT VII**
**(Unjust Enrichment against BTS North, Inc. d/b/a Booty Trap**
**and T.K. Promotions, Inc. d/b/a Booty Trap)**

865.    Plaintiff Pepaj re-alleges paragraphs 1 through 15, 23, 29 through 54, 139 through 150, and 211 through 216 above, and incorporates the same by reference as though fully set forth herein.

866.    Pepaj has conferred a benefit upon BTS North, Inc. d/b/a Booty Trap ("Booby Trap Doral") and T.K. Promotions, Inc. d/b/a Booty Trap ("Booby Trap South Miami") by virtue of Booby Trap Doral and Booby Trap South Miami's usage of her image without compensation.

867.    At all times relevant to this action, Pepaj was and is the exclusive owner of all rights, title, and interest to her image, likeness and/or identity unlawfully converted by Booby Trap Doral and Booby Trap South Miami for Booby Trap Doral and Booby Trap South Miami's benefit.

868.    Booby Trap Doral and Booby Trap South Miami were aware that Pepaj's image, likeness and/or identity were valuable.

869.    Booby Trap Doral and Booby Trap South Miami were aware of the resulting benefit from usage of Pepaj's image, likeness and/or identity.

870.    Booby Trap Doral and Booby Trap South Miami have retained profits and other benefits conferred upon them by using Pepaj's image, likeness and/or identity to promote and advertise Booby Trap Doral and Booby Trap South Miami's businesses and/or Booby Trap Doral and Booby Trap South Miami's events and activities.

871.   It would be inequitable for Booby Trap Doral and Booby Trap South Miami to retain the benefits conferred upon them by using Pepaj's image, likeness and/or identity without paying fair value for the image.

**WHEREFORE**, Pepaj respectfully requests that the Court issue a judgment against Booby Trap Doral and Booby Trap South Miami for damages, including but not limited to actual damages, costs, interest, imposition of a constructive trust, restitution of unlawful proceeds, including Booby Trap Doral and Booby Trap South Miami's gross profits and such other and further relief in law or equity as this Court deems just and proper.

### *Plaintiff Jessica Burciaga's Causes of Action*

### BURCIAGA COUNT I
### (Violation of the Lanham Act, 15 U.S.C. § 1125(a):
### False Advertising against all Defendants)

872.   Plaintiff Burciaga re-alleges paragraphs 1 through 15, 24, 29 through 54, 151 through 162, and 211 through 216 above, and incorporates the same by reference as though fully set forth herein.

873.   Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* applies to Defendants and protects Burciaga from the conduct described herein. Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . . ."  15 U.S.C. §1125(a)(1)(B).

874.    At all times relevant to this action, Burciaga was and is the exclusive owner of all rights, title, and interest to her images, likeness and/or identity unlawfully converted by Defendants for Defendants' benefit.

875.    Defendants used Burciaga's images, likeness and/or identity as described herein without authority in order to create the perception that Burciaga worked at or was otherwise affiliated with Defendants' strip clubs, endorsed Defendants' businesses and activities, and/or consented to or authorized Defendants to use her images in order to advertise, promote, and market Defendants' businesses and/or Defendants' events and activities.

876.    Defendants' use of Burciaga's images, likeness and/or identity to advertise, promote and market Defendants' businesses and/or Defendants' events and activities as described in this Complaint was false and misleading.

877.    Defendants' unauthorized use of Burciaga's images, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Burciaga worked at or was otherwise affiliated with Defendants, endorsed Defendants' businesses, or Defendants' events or activities, or consented to or authorized Defendants' usage of her images in order to advertise, promote, and market Defendants' businesses or Defendants' events and activities and/or that Burciaga would participate in or appear at the specific events promoted in the advertisements.

878.    Defendants' false advertising described above has the capacity or tendency to confuse consumers, including actual and prospective patrons of Defendants, as to the general quality of attendees and participants of Defendants' strip clubs and in

their events, as well as specifically whether Burciaga worked at or was otherwise affiliated with Defendants, endorsed Defendants' businesses or Defendants' events or activities, or consented to or authorized Defendants' usage of her images in order to advertise, promote, and market Defendants' businesses or Defendants' events and activities.

879.    Upon information and belief, Defendants' false advertising described above did, in fact, deceive and/or cause consumer confusion as to whether Burciaga worked at or was otherwise affiliated with Defendants, endorsed Defendants' businesses or Defendants' events and activities, or consented to or authorized Defendants' usage of her images in order to advertise, promote, and market Defendants' businesses or Defendants' events and activities.   Among other things, upon information and belief, such unauthorized use misled and served to entice consumers and prospective consumers to join Defendants, visit Defendants' strip clubs, and participate in events at Defendants' strip clubs and had a material effect and impact on the decision of members and prospective members and participants to join Defendants, visit Defendants' strip clubs and take part in the events at Defendants' strip clubs.

880.    Defendants' advertisements, promotions and marketing of Defendants' strip clubs and events occur in and are targeted to interstate commerce.   Specifically, Defendants promote their businesses and events through interstate promotions and campaigns to target persons from different states throughout the United States. Defendants principally use the World Wide Web, social media and other vehicles of interstate commerce to advertise, market, promote, and entice or lure membership and attendance at Defendants' events.

881.     Defendants' unauthorized use of Burciaga's images, likeness and/or identity as described herein was designed to benefit Defendants' businesses interests by, among other things, promoting Defendants' strip clubs and activities and attracting clientele to Defendants' strip clubs.

882.     Defendants knew or should have known that their unauthorized use of Burciaga's images, likeness and/or identity would cause consumer confusion as described in this Complaint.

883.     Defendants' unauthorized use of Burciaga's images, likeness and/or identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

884.     As such, the present case is an exceptional case warranting an award of reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

885.     Defendants had actual or constructive knowledge or consciously disregarded the wrongfulness of their conduct, deprived Burciaga of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Burciaga.

886.     The method and manner in which Defendants used the images of Burciaga further evinces that Defendants were aware of or consciously disregarded the fact that Burciaga did not consent to Defendants' use of the images to advertise Defendants' businesses.

887.     Defendants have caused irreparable harm to Burciaga, her reputation and brand by attributing to Burciaga the adult entertainment and striptease lifestyle and activities at Defendants' strip clubs.

888.    Defendants' unauthorized use of Burciaga's images, likeness and/or identity directly and proximately caused and continue to cause damage to Burciaga in an amount to be determined at trial.

**WHEREFORE**, Burciaga respectfully requests that the Court issue a judgment against all Defendants and grant actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

## BURCIAGA COUNT II
### (Violation of the Lanham Act, 15 U.S.C. § 1125(a):
### False Endorsement against all Defendants)

889.    Plaintiff Burciaga re-alleges paragraphs 1 through 15, 24, 29 through 54, 151 through 162, and 211 through 216 above, and incorporates the same by reference as though fully set forth herein.

890.    Section 43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(A) applies to Defendants, and protects Burciaga from the conduct described herein.

891.    Defendants used Burciaga's images in order to create the false impression with the public that Burciaga either worked at Defendants' strip clubs, or endorsed Defendants' businesses. This was done to promote and attract clientele to Defendants' strip clubs, and thereby generate revenue for Defendants.

892.    Thus, this was done in furtherance of Defendants' commercial benefit.

893.    Burciaga is in the business of commercializing her identity and selling her images to reputable brands and companies for profit. Defendants' customers are the exact demographic that views Burciaga's images in magazines and online.

894.    Both Burciaga and Defendants' strip clubs compete in the entertainment industry, use similar marketing channels and their respective endeavors overlap. They vie for the same dollars from the same demographic consumer group of men.

895.    As such, an unauthorized use of Burciaga's images to promote strip clubs created an undeniable confusion in Defendants consumers' minds, which lead to competitive injury to Burciaga.

896.    Defendants' use of Burciaga's images, likeness and/or identity constitutes a false designation of the source of origin, sponsorship, approval, or association which has deceived Burciaga's fans and present and prospective clients into believing that Defendants' advertisements are endorsed by Burciaga, or sponsored, approved or associated with Burciaga.

897.    Despite the fact that Defendants were at all times aware that Burciaga neither worked at, nor endorsed their strip clubs, nevertheless, they used Burciaga's images in order to mislead potential customers as to Burciaga's employment at and/or affiliation with Defendants.

898.    Defendants knew that their use of Burciaga's images would cause consumer confusion as to Burciaga's sponsorship and/or employment at Defendants' strip clubs.

899.    Upon information and belief, Defendants' use of Burciaga's images did in fact cause consumer confusion as to Burciaga's employment at and/or endorsement of Defendants' businesses, and the goods and services provided by Defendants.

900.    As a direct and proximate result of Defendants' actions, Burciaga has no control over the nature and quality of the line of products or services provided by

Defendants, the nature of the advertisement depicting Burciaga's images, likeness and/or identity, or how Burciaga's image, likeness and/or identity is being depicted by Defendants.

901.    Further, any failure, neglect or default by Defendants will reflect adversely on Burciaga as the believed source of origin, sponsorship, approval or association thereof, hampering efforts by Burciaga to continue to protect her reputation for high quality professional modeling, resulting in loss of sales thereof and the considerable expenditures to promote her personal modeling services to legitimate mainstream media, all to the irreparable harm of Burciaga.

902.    Due to Defendants' unauthorized use of Burciaga's image, Burciaga has been damaged in an amount to be determined at trial.

**WHEREFORE**, Burciaga respectfully requests that the Court enter a judgment against Defendants and grant actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

<u>**BURCIAGA COUNT III**</u>
**(Violation of Fla. Stat. § 540.08: Right of Publicity;**
**Unauthorized Misappropriation of Name/Likeness against all Defendants)**

903.    Plaintiff Burciaga re-alleges paragraphs 1 through 15, 24, 29 through 54, 151 through 162, and 211 through 216 above, and incorporates the same by reference as though fully set forth herein.

904.    Burciaga has a statutory right of publicity under Section 540.08, Florida Statutes.

905.     Section 540.08, Florida Statutes, provides that: "[n]o person shall publish, print, display or otherwise publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of any natural person without the express written or oral consent to such use."

906.     Despite the clear language of Section 540.08, Defendants published Burciaga's images, likeness and/or identity on social media outlets, among others, in order to promote, advertise and market Defendants' strip clubs and/or Defendants' events and activities.

907.     At all times relevant to this action, Burciaga was and is the exclusive owner of all rights, title, and interest to her images, likeness and/or identity unlawfully converted by Defendants for Defendants' benefit.

908.     Defendants never sought permission or authority to use Burciaga's images, likeness and/or identity to advertise, promote, market or endorse Defendants' businesses or any Defendants' event or activity.

909.     Burciaga never consented to, permitted, assigned, licensed, or otherwise agreed to Defendants' use of her images, likeness and/or identity to advertise, promote, market or endorse Defendants' businesses or any Defendants' event or activity.

910.     Defendants intentionally or, at a minimum, recklessly published, printed, displayed, or otherwise publicly disseminated or used Burciaga's images, likeness and/or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

911.     Defendants had actual or constructive knowledge or consciously disregarded the wrongfulness of their conduct, deprived Burciaga of a property interest,

and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Burciaga.

912.    At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Burciaga's rights.

913.    Alternatively, Defendants acted negligently towards Burciaga in using and disseminating, without authority, her images, likeness and/or identity on social media outlets in order to promote, advertise and market Defendants' strip clubs and/or Defendants' events and activities.

914.    Defendants have caused irreparable harm to Burciaga, her reputation and brand by attributing to Burciaga the adult entertainment and striptease lifestyle and activities at Defendants' strip clubs.

915.    Defendants have also damaged Burciaga as a direct and proximate result of their unauthorized use of Burciaga's images, likeness and/or identity without compensating Burciaga.  Defendants' conduct has been despicable and taken in conscious disregard of Burciaga's rights.

**WHEREFORE**, Burciaga respectfully requests that the Court issue a judgment against all Defendants for all remedies available under Fla. Stat. §540.08, including but not limited to, both actual loss and damages, costs, interest, royalties, and restitution of Defendants' unlawful proceeds, including Defendants' profits and other relief deemed just and proper by this Court.

## BURCIAGA COUNT IV

**(Violation of Common Law Right of Publicity;**
**Unauthorized Misappropriation of Name or Likeness against all Defendants)**

916.    Plaintiff Burciaga re-alleges paragraphs 1 through 15, 24, 29 through 54, 151 through 162, and 211 through 216 above, and incorporates the same by reference as though fully set forth herein.

917.    Burciaga has a common law right of publicity.

918.    Defendants may not publish, print, display or publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of Burciaga without express written or oral consent to such use.

919.    At all times relevant to this action, Burciaga was and is the exclusive owner of all rights, title, and interest to her images, likeness and/or identity unlawfully converted by Defendants for Defendants' benefit.

920.    Defendants published, printed, displayed and/or publicly used Burciaga's images, likeness and/or identity on their social media outlets, among others, for purposes of trade and/or commercial advertising including, but not limited to, promoting, advertising and marketing of  Defendants and Defendants' events and activities.

921.    Defendants took these actions without Burciaga's permission, consent or authority.  In fact, Defendants never sought permission nor authority to use Burciaga's images, likeness and/or identity to advertise, promote, market or endorse Defendants' businesses or any Defendants' event or activity.

922.    Burciaga never consented to, permitted, assigned, licensed, or otherwise agreed to Defendants' use of her images, likeness and/or identity to advertise, promote, market or endorse Defendants' businesses or any Defendants' event or activity.

923.    Defendants intentionally or, at a minimum, recklessly, published, printed, displayed, or otherwise publicly disseminated or used Burciaga's images, likeness and/or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

924.    Defendants had actual or constructive knowledge or consciously disregarded the wrongfulness of their conduct, deprived Burciaga of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Burciaga.

925.    At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Burciaga's rights.

926.    Alternatively, Defendants acted negligently towards Burciaga in using and disseminating, without authority, her images, likeness and/or identity on Defendants' social media outlets in order to promote, advertise and market Defendants' strip clubs and Defendants' events and activities.

927.    Defendants have caused irreparable harm to Burciaga, her reputation and brand by attributing to Burciaga the adult entertainment and striptease lifestyle and activities at Defendants' strip clubs.

928.    Defendants have also damaged Burciaga as a direct and proximate result of their unauthorized use of Burciaga's images, likeness and/or identity without compensating Burciaga.

**WHEREFORE**, Burciaga respectfully requests that the Court issue a judgment against all Defendants for all remedies available under a claim of misappropriation including, but not limited to, actual damages, costs, interest, and restitution of

Defendants' unlawful proceeds, including Defendants' profits and other relief deemed just and proper by this Court.

## BURCIAGA COUNT V
### (Violation of Fla. Stat. § 812.014 and Fla. Stat. § 772.11: Civil Theft against all Defendants)

929.    Plaintiff Burciaga re-alleges paragraphs 1 through 15, 24, 29 through 54, 151 through 162, and 211 through 216 above, and incorporates the same by reference as though fully set forth herein.

930.    Section 772.11, Florida Statutes, creates a private right of action for victims of theft of tangible and intangible personal property, including rights, privileges, interests and claims.

931.    Defendants knowingly appropriated, used and disseminated Burciaga's images, likeness and/or identity without authorization or consent.

932.    At all times relevant to this action, Burciaga was and is the exclusive owner of all rights, title, and interest to her images, likeness and/or identity unlawfully converted by Defendants for Defendants' benefit.

933.    Defendants' misappropriation of Burciaga's images, likeness and/or identity was for Defendants' own use and benefit and to deprive Burciaga of certain rights.

934.    Defendants' misconduct detailed in this Complaint denied Burciaga the right to engage in arms-length negotiations over the use and dissemination of her images, likeness and/or identity, the right to negotiate over reasonable bargained-for compensation, the right to say "no" to the proposed use by Defendants and the right to

otherwise protect her images, likeness and/or identity from harm at the hands of the Defendants.

935.   Defendants' appropriation of Burciaga's images, likeness and/or identity as detailed herein without authority violates Sections 772.11 and 812.014, Florida Statutes, and was wrongful.

936.   Defendants had actual or constructive knowledge or consciously disregarded the wrongfulness of their conduct, deprived Burciaga of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Burciaga.

937.   At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Burciaga's rights.

938.   Alternatively, the method and manner in which Defendants used Burciaga's images, likeness and/or identity further evinces that Defendants were aware or consciously disregarded the fact that Burciaga did not consent to Defendants' use in order to advertise Defendants' businesses.

939.   Defendants' appropriation and use of Burciaga's images, likeness or identity without authority directly and proximately caused damage to Burciaga in an amount to be determined at trial.

**WHEREFORE**, Burciaga respectfully requests that the Court issue a judgment against all Defendants for all remedies available under Fla. Stat. § 772.11(1), including but not limited to, treble the amount of actual damages, costs, interest, and attorneys' fees and other relief deemed just and proper by this Court.

## <u>BURCIAGA COUNT VI</u>

**(Conversion against all Defendants)**

940.    Plaintiff Burciaga re-alleges paragraphs 1 through 15, 24, 29 through 54, 151 through 162, and 211 through 216 above, and incorporates the same by reference as though fully set forth herein.

941.    Burciaga is, and all at relevant times was, the exclusive owner of all rights, title, and interest to her images, likeness and/or identity unlawfully converted by Defendants for Defendants' benefit.

942.    Burciaga has, and at all times relevant herein had, an intangible property interest in her images, likeness and/or identity unlawfully converted by Defendants for Defendants' benefit.

943.    By their acts and conduct alleged above, Defendants have converted Burciaga's property rights, including without limitation, Burciaga's images, likeness and/or identity for Defendants' use and wrongful disposition for financial gain.

944.    Burciaga is informed and believes and on such information alleges that Defendants have refused to return Burciaga's property to her or pay for the deprivation of Burciaga's property.

945.    As a result, Burciaga has suffered compensatory, punitive and exemplary damages to be determined according to proof at trial; but Burciaga alleges that the same are within the jurisdiction of the Court.

946.    Further, Burciaga is informed and believes and thereon alleges that in engaging in the conduct described above, Defendants acted with oppression, fraud, and/or malice. Defendants' conduct has been despicable and taken in conscious disregard of Burciaga's rights.

**WHEREFORE**, Burciaga respectfully requests this Court to issue a judgment against all Defendants and for all remedies available under the common law claim for conversion, including but not limited to actual damages, costs, interest, and restitution of Defendants' unlawful proceeds, including Defendants' profits, and/or other relief deemed just and proper.

## BURCIAGA COUNT VII
### (Unjust Enrichment against all Defendants)

947.   Plaintiff Burciaga re-alleges paragraphs 1 through 15, 24, 29 through 54, 151 through 162, and 211 through 216 above, and incorporates the same by reference as though fully set forth herein.

948.   Burciaga has conferred a benefit upon Defendants by virtue of Defendants' usage of her images without compensation.

949.   At all times relevant to this action, Burciaga was and is the exclusive owner of all rights, title, and interest to her images, likeness and/or identity unlawfully converted by Defendants for Defendants' benefit.

950.   Defendants were aware that Burciaga's images, likeness and/or identity were valuable.

951.   Defendants were aware of the resulting benefit from usage of Burciaga's images, likeness and/or identity.

952.   Defendants have retained profits and other benefits conferred upon them by using Burciaga's images, likeness and/or identity to promote and advertise Defendants' businesses and/or Defendants' events and activities.

953.    It would be inequitable for Defendants to retain the benefits conferred upon them by using Burciaga's images, likeness and/or identity without paying fair value for the images.

**WHEREFORE**, Burciaga respectfully requests that the Court issue a judgment against all Defendants for damages, including but not limited to actual damages, costs, interest, imposition of a constructive trust, restitution of unlawful proceeds, including Defendants' gross profits and such other and further relief in law or equity as this Court deems just and proper.

### *Plaintiff Lina Posada's Causes of Action*

### POSADA COUNT I
### (Violation of the Lanham Act, 15 U.S.C. § 1125(a): False Advertising against all Defendants)

954.    Plaintiff Posada re-alleges paragraphs 1 through 15, 25, 29 through 54, 163 through 174, and 211 through 216 above, and incorporates the same by reference as though fully set forth herein.

955.    Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* applies to Defendants and protects Posada from the conduct described herein. Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . . ." 15 U.S.C. §1125(a)(1)(B).

956.    At all times relevant to this action, Posada was and is the exclusive owner of all rights, title, and interest to her image, likeness and/or identity unlawfully converted by Defendants for Defendants' benefit.

957.    Defendants used Posada's image, likeness and/or identity as described herein without authority in order to create the perception that Posada worked at or was otherwise affiliated with Defendants' strip clubs, endorsed Defendants' businesses and activities, and/or consented to or authorized Defendants to use her image in order to advertise, promote, and market Defendants' businesses and/or Defendants' events and activities.

958.    Defendants' use of Posada's image, likeness and/or identity to advertise, promote and market Defendants' businesses and/or Defendants' events and activities as described in this Complaint was false and misleading.

959.    Defendants' unauthorized use of Posada's image, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Posada worked at or was otherwise affiliated with Defendants, endorsed Defendants' businesses, or Defendants' events or activities, or consented to or authorized Defendants' usage of her image in order to advertise, promote, and market Defendants' businesses or Defendants' events and activities and/or that Posada would participate in or appear at the specific events promoted in the advertisements.

960.    Defendants' false advertising described above has the capacity or tendency to confuse consumers, including actual and prospective patrons of Defendants, as to the general quality of attendees and participants of Defendants' strip clubs and in their events, as well as specifically whether Posada worked at or was otherwise affiliated with Defendants, endorsed Defendants' businesses or Defendants' events or activities, or consented to or authorized Defendants' usage of her image in order to advertise, promote, and market Defendants' businesses or Defendants' events and activities.

961.    Upon information and belief, Defendants' false advertising described above did, in fact, deceive and/or cause consumer confusion as to whether Posada worked at or was otherwise affiliated with Defendants, endorsed Defendants' businesses or Defendants' events and activities, or consented to or authorized Defendants' usage of her image in order to advertise, promote, and market Defendants' businesses or Defendants' events and activities.  Among other things, upon information and belief, such unauthorized use misled and served to entice consumers and prospective consumers to join Defendants, visit Defendants' strip clubs, and participate in events at Defendants' strip clubs and had a material effect and impact on the decision of members and prospective members and participants to join Defendants, visit Defendants' strip clubs and take part in the events at Defendants' strip clubs.

962.    Defendants' advertisements, promotions and marketing of Defendants' strip clubs and events occur in and are targeted to interstate commerce.  Specifically, Defendants promote their businesses and events through interstate promotions and campaigns to target persons from different states throughout the United States. Defendants principally use the World Wide Web, social media and other vehicles of interstate commerce to advertise, market, promote, and entice or lure membership and attendance at Defendants' events.

963.    Defendants' unauthorized use of Posada's image, likeness and/or identity as described herein was designed to benefit Defendants' businesses interests by, among other things, promoting Defendants' strip clubs and activities and attracting clientele to Defendants' strip clubs.

964.    Defendants knew or should have known that their unauthorized use of Posada's image, likeness and/or identity would cause consumer confusion as described in this Complaint.

965.    Defendants' unauthorized use of Posada's image, likeness and/or identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

966.    As such, the present case is an exceptional case warranting an award of reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

967.    Defendants had actual or constructive knowledge or consciously disregarded the wrongfulness of their conduct, deprived Posada of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Posada.

968.    The method and manner in which Defendants used the image of Posada further evinces that Defendants were aware of or consciously disregarded the fact that Posada did not consent to Defendants' use of the image to advertise Defendants' businesses.

969.    Defendants have caused irreparable harm to Posada, her reputation and brand by attributing to Posada the adult entertainment and striptease lifestyle and activities at Defendants' strip clubs.

970.    Defendants' unauthorized use of Posada's image, likeness and/or identity directly and proximately caused and continue to cause damage to Posada in an amount to be determined at trial.

**WHEREFORE**, Posada respectfully requests that the Court issue a judgment against all Defendants and grant actual, or compensatory, damages in an amount to be

determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

### POSADA COUNT II
**(Violation of the Lanham Act, 15 U.S.C. § 1125(a):**
**False Endorsement against all Defendants)**

971.     Plaintiff Posada re-alleges paragraphs 1 through 15, 25, 29 through 54, 163 through 174, and 211 through 216 above, and incorporates the same by reference as though fully set forth herein.

972.     Section 43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(A) applies to Defendants, and protects Posada from the conduct described herein.

973.     Defendants used Posada's image in order to create the false impression with the public that Posada either worked at Defendants' strip clubs, or endorsed Defendants' businesses. This was done to promote and attract clientele to Defendants' strip clubs, and thereby generate revenue for Defendants.

974.     Thus, this was done in furtherance of Defendants' commercial benefit.

975.     Posada is in the business of commercializing her identity and selling her images to reputable brands and companies for profit. Defendants' customers are the exact demographic that views Posada's images in magazines and online.

976.     Both Posada and Defendants' strip clubs compete in the entertainment industry, use similar marketing channels and their respective endeavors overlap. They vie for the same dollars from the same demographic consumer group of men.

977.    As such, an unauthorized use of Posada's image to promote strip clubs created an undeniable confusion in Defendants consumers' minds, which lead to competitive injury to Posada.

978.    Defendants' use of Posada's image, likeness and/or identity constitutes a false designation of the source of origin, sponsorship, approval, or association which has deceived Posada's fans and present and prospective clients into believing that Defendants' advertisements are endorsed by Posada, or sponsored, approved or associated with Posada.

979.    Despite the fact that Defendants were at all times aware that Posada neither worked at, nor endorsed their strip clubs, nevertheless, they used Posada's image in order to mislead potential customers as to Posada's employment at and/or affiliation with Defendants.

980.    Defendants knew that their use of Posada's image would cause consumer confusion as to Posada's sponsorship and/or employment at Defendants' strip clubs.

981.    Upon information and belief, Defendants' use of Posada's image did in fact cause consumer confusion as to Posada's employment at and/or endorsement of Defendants' businesses, and the goods and services provided by Defendants.

982.    As a direct and proximate result of Defendants' actions, Posada has no control over the nature and quality of the line of products or services provided by Defendants, the nature of the advertisement depicting Posada's image, likeness and/or identity, or how Posada's image, likeness and/or identity is being depicted by Defendants.

983.   Further, any failure, neglect or default by Defendants will reflect adversely on Posada as the believed source of origin, sponsorship, approval or association thereof, hampering efforts by Posada to continue to protect her reputation for high quality professional modeling, resulting in loss of sales thereof and the considerable expenditures to promote her personal modeling services to legitimate mainstream media, all to the irreparable harm of Posada.

984.   Due to Defendants' unauthorized use of Posada's image, Posada has been damaged in an amount to be determined at trial.

**WHEREFORE**, Posada respectfully requests that the Court enter a judgment against Defendants and grant actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

## POSADA COUNT III
### (Violation of Fla. Stat. § 540.08: Right of Publicity;
### Unauthorized Misappropriation of Name/Likeness against all Defendants)

985.   Plaintiff Posada re-alleges paragraphs 1 through 15, 25, 29 through 54, 163 through 174, and 211 through 216 above, and incorporates the same by reference as though fully set forth herein.

986.   Posada has a statutory right of publicity under Section 540.08, Florida Statutes.

987.   Section 540.08, Florida Statutes, provides that: "[n]o person shall publish, print, display or otherwise publicly use for purposes of trade or for any commercial or

advertising purpose the name, portrait, photograph, or other likeness of any natural person without the express written or oral consent to such use."

988.    Despite the clear language of Section 540.08, Defendants published Posada's image, likeness and/or identity on social media outlets, among others, in order to promote, advertise and market Defendants' strip clubs and/or Defendants' events and activities.

989.    At all times relevant to this action, Posada was and is the exclusive owner of all rights, title, and interest to her image, likeness and/or identity unlawfully converted by Defendants for Defendants' benefit.

990.    Defendants never sought permission or authority to use Posada's image, likeness and/or identity to advertise, promote, market or endorse Defendants' businesses or any Defendants' event or activity.

991.    Posada never consented to, permitted, assigned, licensed, or otherwise agreed to Defendants' use of her image, likeness and/or identity to advertise, promote, market or endorse Defendants' businesses or any Defendants' event or activity.

992.    Defendants intentionally or, at a minimum, recklessly published, printed, displayed, or otherwise publicly disseminated or used Posada's image, likeness and/or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

993.    Defendants had actual or constructive knowledge or consciously disregarded the wrongfulness of their conduct, deprived Posada of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Posada.

994.    At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Posada's rights.

995.    Alternatively, Defendants acted negligently towards Posada in using and disseminating, without authority, her image, likeness and/or identity on social media outlets in order to promote, advertise and market Defendants' strip clubs and/or Defendants' events and activities.

996.    Defendants have caused irreparable harm to Posada, her reputation and brand by attributing to Posada the adult entertainment and striptease lifestyle and activities at Defendants' strip clubs.

997.    Defendants have also damaged Posada as a direct and proximate result of their unauthorized use of Posada's image, likeness and/or identity without compensating Posada. Defendants' conduct has been despicable and taken in conscious disregard of Posada's rights.

**WHEREFORE**, Posada respectfully requests that the Court issue a judgment against all Defendants for all remedies available under Fla. Stat. §540.08, including but not limited to, both actual loss and damages, costs, interest, royalties, and restitution of Defendants' unlawful proceeds, including Defendants' profits and other relief deemed just and proper by this Court.

## POSADA COUNT IV
### (Violation of Common Law Right of Publicity;
### Unauthorized Misappropriation of Name or Likeness against all Defendants)

998.    Plaintiff Posada re-alleges paragraphs 1 through 15, 25, 29 through 54, 163 through 174, and 211 through 216 above, and incorporates the same by reference as though fully set forth herein.

999.    Posada has a common law right of publicity.

1000.   Defendants may not publish, print, display or publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of Posada without express written or oral consent to such use.

1001.   At all times relevant to this action, Posada was and is the exclusive owner of all rights, title, and interest to her image, likeness and/or identity unlawfully converted by Defendants for Defendants' benefit.

1002.   Defendants published, printed, displayed and/or publicly used Posada's image, likeness and/or identity on their social media outlets, among others, for purposes of trade and/or commercial advertising including, but not limited to, promoting, advertising and marketing of Defendants and Defendants' events and activities.

1003.   Defendants took these actions without Posada's permission, consent or authority. In fact, Defendants never sought permission nor authority to use Posada's image, likeness and/or identity to advertise, promote, market or endorse Defendants' businesses or any Defendants' event or activity.

1004.   Posada never consented to, permitted, assigned, licensed, or otherwise agreed to Defendants' use of her image, likeness and/or identity to advertise, promote, market or endorse Defendants' businesses or any Defendants' event or activity.

1005.   Defendants intentionally or, at a minimum, recklessly, published, printed, displayed, or otherwise publicly disseminated or used Posada's image, likeness and/or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

1006.  Defendants had actual or constructive knowledge or consciously disregarded the wrongfulness of their conduct, deprived Posada of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Posada.

1007.  At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Posada's rights.

1008.  Alternatively, Defendants acted negligently towards Posada in using and disseminating, without authority, her image, likeness and/or identity on Defendants' social media outlets in order to promote, advertise and market Defendants' strip clubs and Defendants' events and activities.

1009.  Defendants have caused irreparable harm to Posada, her reputation and brand by attributing to Posada the adult entertainment and striptease lifestyle and activities at Defendants' strip clubs.

1010.  Defendants have also damaged Posada as a direct and proximate result of their unauthorized use of Posada's image, likeness and/or identity without compensating Posada.

**WHEREFORE**, Posada respectfully requests that the Court issue a judgment against all Defendants for all remedies available under a claim of misappropriation including, but not limited to, actual damages, costs, interest, and restitution of Defendants' unlawful proceeds, including Defendants' profits and other relief deemed just and proper by this Court.

## POSADA COUNT V
### (Violation of Fla. Stat. § 812.014 and Fla. Stat. § 772.11: Civil Theft against all Defendants)

1011.   Plaintiff Posada re-alleges paragraphs 1 through 15, 25, 29 through 54, 163 through 174, and 211 through 216 above, and incorporates the same by reference as though fully set forth herein.

1012.   Section 772.11, Florida Statutes, creates a private right of action for victims of theft of tangible and intangible personal property, including rights, privileges, interests and claims.

1013.   Defendants knowingly appropriated, used and disseminated Posada's image, likeness and/or identity without authorization or consent.

1014.   At all times relevant to this action, Posada was and is the exclusive owner of all rights, title, and interest to her image, likeness and/or identity unlawfully converted by Defendants for Defendants' benefit.

1015.   Defendants' misappropriation of Posada's image, likeness and/or identity was for Defendants' own use and benefit and to deprive Posada of certain rights.

1016.   Defendants' misconduct detailed in this Complaint denied Posada the right to engage in arms-length negotiations over the use and dissemination of her image, likeness and/or identity, the right to negotiate over reasonable bargained-for compensation, the right to say "no" to the proposed use by Defendants and the right to otherwise protect her image, likeness and/or identity from harm at the hands of the Defendants.

1017.   Defendants' appropriation of Posada's image, likeness and/or identity as detailed herein without authority violates Sections 772.11 and 812.014, Florida Statutes, and was wrongful.

1018.   Defendants had actual or constructive knowledge or consciously disregarded the wrongfulness of their conduct, deprived Posada of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Posada.

1019.   At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Posada's rights.

1020.   Alternatively, the method and manner in which Defendants used Posada's image, likeness and/or identity further evinces that Defendants were aware or consciously disregarded the fact that Posada did not consent to Defendants' use in order to advertise Defendants' businesses.

1021.   Defendants' appropriation and use of Posada's image, likeness or identity without authority directly and proximately caused damage to Posada in an amount to be determined at trial.

**WHEREFORE**, Posada respectfully requests that the Court issue a judgment against all Defendants for all remedies available under Fla. Stat. § 772.11(1), including but not limited to, treble the amount of actual damages, costs, interest, and attorneys' fees and other relief deemed just and proper by this Court.

## POSADA COUNT VI
### (Conversion against all Defendants)

1022.   Plaintiff Posada re-alleges paragraphs 1 through 15, 25, 29 through 54, 163 through 174, and 211 through 216 above, and incorporates the same by reference as though fully set forth herein.

1023.   Posada is, and all at relevant times was, the exclusive owner of all rights, title, and interest to her image, likeness and/or identity unlawfully converted by Defendants for Defendants' benefit.

1024.   Posada has, and at all times relevant herein had, an intangible property interest in her image, likeness and/or identity unlawfully converted by Defendants for Defendants' benefit.

1025.   By their acts and conduct alleged above, Defendants have converted Posada's property rights, including without limitation, Posada's image, likeness and/or identity for Defendants' use and wrongful disposition for financial gain.

1026.   Posada is informed and believes and on such information alleges that Defendants have refused to return Posada's property to her or pay for the deprivation of Posada's property.

1027.   As a result, Posada has suffered compensatory, punitive and exemplary damages to be determined according to proof at trial; but Posada alleges that the same are within the jurisdiction of the Court.

1028.   Further, Posada is informed and believes and thereon alleges that in engaging in the conduct described above, Defendants acted with oppression, fraud, and/or malice. Defendants' conduct has been despicable and taken in conscious disregard of Posada's rights. Accordingly, Posada is entitled to an award of punitive damages against all Defendants in an amount sufficient to punish and make an example of Defendants. Therefore, Posada reserves the right to seek punitive damages according to proof and pursuant to Fla. Stat. §768.72.

**WHEREFORE**, Posada respectfully requests this Court to issue a judgment against all Defendants and for all remedies available under the common law claim for conversion, including but not limited to actual damages, costs, interest, punitive damages according to proof, and restitution of Defendants' unlawful proceeds, including Defendants' profits, and/or other relief deemed just and proper.

### POSADA COUNT VII
**(Unjust Enrichment against all Defendants)**

1029.  Plaintiff Posada re-alleges paragraphs 1 through 15, 25, 29 through 54, 163 through 174, and 211 through 216 above, and incorporates the same by reference as though fully set forth herein.

1030.  Posada has conferred a benefit upon Defendants by virtue of Defendants' usage of her image without compensation.

1031.  At all times relevant to this action, Posada was and is the exclusive owner of all rights, title, and interest to her image, likeness and/or identity unlawfully converted by Defendants for Defendants' benefit.

1032.  Defendants were aware that Posada's image, likeness and/or identity were valuable.

1033.  Defendants were aware of the resulting benefit from usage of Posada's image, likeness and/or identity.

1034.  Defendants have retained profits and other benefits conferred upon them by using Posada's image, likeness and/or identity to promote and advertise Defendants' businesses and/or Defendants' events and activities.

1035.  It would be inequitable for Defendants to retain the benefits conferred upon them by using Posada's image, likeness and/or identity without paying fair value for the image.

WHEREFORE, Posada respectfully requests that the Court issue a judgment against all Defendants for damages, including but not limited to actual damages, costs, interest, imposition of a constructive trust, restitution of unlawful proceeds, including Defendants' gross profits and such other and further relief in law or equity as this Court deems just and proper.

### *Plaintiff Marketa Kazdova's Causes of Action*

### KAZDOVA COUNT I
### (Violation of the Lanham Act, 15 U.S.C. § 1125(a):
### False Advertising against all Defendants)

1036.  Plaintiff Kazdova re-alleges paragraphs 1 through 15, 26, 29 through 54, 175 through 186, and 211 through 216 above, and incorporates the same by reference as though fully set forth herein.

1037.  Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* applies to Defendants and protects Kazdova from the conduct described herein. Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . . ."  15 U.S.C. §1125(a)(1)(B).

1038.  At all times relevant to this action, Kazdova was and is the exclusive owner of all rights, title, and interest to her image, likeness and/or identity unlawfully converted by Defendants for Defendants' benefit.

1039.  Defendants used Kazdova's image, likeness and/or identity as described herein without authority in order to create the perception that Kazdova worked at or was otherwise affiliated with Defendants' strip clubs, endorsed Defendants' businesses and activities, and/or consented to or authorized Defendants to use her image in order to advertise, promote, and market Defendants' businesses and/or Defendants' events and activities.

1040.  Defendants' use of Kazdova's image, likeness and/or identity to advertise, promote and market Defendants' businesses and/or Defendants' events and activities as described in this Complaint was false and misleading.

1041.  Defendants' unauthorized use of Kazdova's image, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Kazdova worked at or was otherwise affiliated with Defendants, endorsed Defendants' businesses, or Defendants' events or activities, or consented to or authorized Defendants' usage of her image in order to advertise, promote, and market Defendants' businesses or Defendants' events and activities and/or that Kazdova would participate in or appear at the specific events promoted in the advertisements.

1042.  Defendants' false advertising described above has the capacity or tendency to confuse consumers, including actual and prospective patrons of Defendants, as to the general quality of attendees and participants of Defendants' strip clubs and in their events, as well as specifically whether Kazdova worked at or was otherwise affiliated with Defendants, endorsed Defendants' businesses or Defendants' events or activities, or consented to or authorized Defendants' usage of her image in order to

advertise, promote, and market Defendants' businesses or Defendants' events and activities.

1043. Upon information and belief, Defendants' false advertising described above did, in fact, deceive and/or cause consumer confusion as to whether Kazdova worked at or was otherwise affiliated with Defendants, endorsed Defendants' businesses or Defendants' events and activities, or consented to or authorized Defendants' usage of her image in order to advertise, promote, and market Defendants' businesses or Defendants' events and activities.  Among other things, upon information and belief, such unauthorized use misled and served to entice consumers and prospective consumers to join Defendants, visit Defendants' strip clubs, and participate in events at Defendants' strip clubs and had a material effect and impact on the decision of members and prospective members and participants to join Defendants, visit Defendants' strip clubs and take part in the events at Defendants' strip clubs.

1044. Defendants' advertisements, promotions and marketing of Defendants' strip clubs and events occur in and are targeted to interstate commerce.  Specifically, Defendants promote their businesses and events through interstate promotions and campaigns to target persons from different states throughout the United States. Defendants principally use the World Wide Web, social media and other vehicles of interstate commerce to advertise, market, promote, and entice or lure membership and attendance at Defendants' events.

1045. Defendants' unauthorized use of Kazdova's image, likeness and/or identity as described herein was designed to benefit Defendants' businesses interests by,

among other things, promoting Defendants' strip clubs and activities and attracting clientele to Defendants' strip clubs.

1046.  Defendants knew or should have known that their unauthorized use of Kazdova's image, likeness and/or identity would cause consumer confusion as described in this Complaint.

1047.  Defendants' unauthorized use of Kazdova's image, likeness and/or identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

1048.  As such, the present case is an exceptional case warranting an award of reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

1049.  Defendants had actual or constructive knowledge or consciously disregarded the wrongfulness of their conduct, deprived Kazdova of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Kazdova.

1050.  The method and manner in which Defendants used the image of Kazdova further evinces that Defendants were aware of or consciously disregarded the fact that Kazdova did not consent to Defendants' use of the image to advertise Defendants' businesses.

1051.  Defendants have caused irreparable harm to Kazdova, her reputation and brand by attributing to Kazdova the adult entertainment and striptease lifestyle and activities at Defendants' strip clubs.

1052.  Defendants' unauthorized use of Kazdova's image, likeness and/or identity directly and proximately caused and continue to cause damage to Kazdova in an amount to be determined at trial.

**WHEREFORE**, Kazdova respectfully requests that the Court issue a judgment against all Defendants and grant actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

### KAZDOVA COUNT II
### (Violation of the Lanham Act, 15 U.S.C. § 1125(a):
### False Endorsement against all Defendants)

1053.   Plaintiff Kazdova re-alleges paragraphs 1 through 15, 26, 29 through 54, 175 through 186, and 211 through 216 above, and incorporates the same by reference as though fully set forth herein.

1054.   Section 43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(A) applies to Defendants, and protects Kazdova from the conduct described herein.

1055.   Defendants used Kazdova's image in order to create the false impression with the public that Kazdova either worked at Defendants' strip clubs, or endorsed Defendants' businesses. This was done to promote and attract clientele to Defendants' strip clubs, and thereby generate revenue for Defendants.

1056.   Thus, this was done in furtherance of Defendants' commercial benefit.

1057.   Kazdova is in the business of commercializing her identity and selling her images to reputable brands and companies for profit. Defendants' customers are the exact demographic that views Kazdova's images in magazines and online.

1058.   Both Kazdova and Defendants' strip clubs compete in the entertainment industry, use similar marketing channels and their respective endeavors overlap. They vie for the same dollars from the same demographic consumer group of men.

1059.   As such, an unauthorized use of Kazdova's image to promote strip clubs created an undeniable confusion in Defendants consumers' minds, which lead to competitive injury to Kazdova.

1060.   Defendants' use of Kazdova's image, likeness and/or identity constitutes a false designation of the source of origin, sponsorship, approval, or association which has deceived Kazdova's fans and present and prospective clients into believing that Defendants' advertisements are endorsed by Kazdova, or sponsored, approved or associated with Kazdova.

1061.   Despite the fact that Defendants were at all times aware that Kazdova neither worked at, nor endorsed their strip clubs, nevertheless, they used Kazdova's image in order to mislead potential customers as to Kazdova's employment at and/or affiliation with Defendants.

1062.   Defendants knew that their use of Kazdova's image would cause consumer confusion as to Kazdova's sponsorship and/or employment at Defendants' strip clubs.

1063.   Upon information and belief, Defendants' use of Kazdova's image did in fact cause consumer confusion as to Kazdova's employment at and/or endorsement of Defendants' businesses, and the goods and services provided by Defendants.

1064.   As a direct and proximate result of Defendants' actions, Kazdova has no control over the nature and quality of the line of products or services provided by Defendants, the nature of the advertisement depicting Kazdova's image, likeness and/or identity, or how Kazdova's image, likeness and/or identity is being depicted by Defendants.

1065.   Further, any failure, neglect or default by Defendants will reflect adversely on Kazdova as the believed source of origin, sponsorship, approval or association thereof, hampering efforts by Kazdova to continue to protect her reputation for high quality professional modeling, resulting in loss of sales thereof and the considerable expenditures to promote her personal modeling services to legitimate mainstream media, all to the irreparable harm of Kazdova.

1066.   Due to Defendants' unauthorized use of Kazdova's image, Kazdova has been damaged in an amount to be determined at trial.

**WHEREFORE**, Kazdova respectfully requests that the Court enter a judgment against Defendants and grant actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

### KAZDOVA COUNT III
**(Violation of Fla. Stat. § 540.08: Right of Publicity;**
**Unauthorized Misappropriation of Name/Likeness against all Defendants)**

1067.   Plaintiff Kazdova re-alleges paragraphs 1 through 15, 26, 29 through 54, 175 through 186, and 211 through 216 above, and incorporates the same by reference as though fully set forth herein.

1068.   Kazdova has a statutory right of publicity under Section 540.08, Florida Statutes.

1069.   Section 540.08, Florida Statutes, provides that: "[n]o person shall publish, print, display or otherwise publicly use for purposes of trade or for any commercial or

advertising purpose the name, portrait, photograph, or other likeness of any natural person without the express written or oral consent to such use."

1070. Despite the clear language of Section 540.08, Defendants published Kazdova's image, likeness and/or identity on social media outlets, among others, in order to promote, advertise and market Defendants' strip clubs and/or Defendants' events and activities.

1071. At all times relevant to this action, Kazdova was and is the exclusive owner of all rights, title, and interest to her image, likeness and/or identity unlawfully converted by Defendants for Defendants' benefit.

1072. Defendants never sought permission or authority to use Kazdova's image, likeness and/or identity to advertise, promote, market or endorse Defendants' businesses or any Defendants' event or activity.

1073. Kazdova never consented to, permitted, assigned, licensed, or otherwise agreed to Defendants' use of her image, likeness and/or identity to advertise, promote, market or endorse Defendants' businesses or any Defendants' event or activity.

1074. Defendants intentionally or, at a minimum, recklessly published, printed, displayed, or otherwise publicly disseminated or used Kazdova's image, likeness and/or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

1075. Defendants had actual or constructive knowledge or consciously disregarded the wrongfulness of their conduct, deprived Kazdova of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Kazdova.

1076. At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Kazdova's rights.

1077. Alternatively, Defendants acted negligently towards Kazdova in using and disseminating, without authority, her image, likeness and/or identity on social media outlets in order to promote, advertise and market Defendants' strip clubs and/or Defendants' events and activities.

1078. Defendants have caused irreparable harm to Kazdova, her reputation and brand by attributing to Kazdova the adult entertainment and striptease lifestyle and activities at Defendants' strip clubs.

1079. Defendants have also damaged Kazdova as a direct and proximate result of their unauthorized use of Kazdova's image, likeness and/or identity without compensating Kazdova. Defendants' conduct has been despicable and taken in conscious disregard of Kazdova's rights.

**WHEREFORE**, Kazdova respectfully requests that the Court issue a judgment against all Defendants for all remedies available under Fla. Stat. §540.08, including but not limited to, both actual loss and damages, costs, interest, royalties, and restitution of Defendants' unlawful proceeds, including Defendants' profits and other relief deemed just and proper by this Court.

## KAZDOVA COUNT IV
### (Violation of Common Law Right of Publicity;
### Unauthorized Misappropriation of Name or Likeness against all Defendants)

1080. Plaintiff Kazdova re-alleges paragraphs 1 through 15, 26, 29 through 54, 175 through 186, and 211 through 216 above, and incorporates the same by reference as though fully set forth herein.

1081.   Kazdova has a common law right of publicity.

1082.   Defendants may not publish, print, display or publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of Kazdova without express written or oral consent to such use.

1083.   At all times relevant to this action, Kazdova was and is the exclusive owner of all rights, title, and interest to her image, likeness and/or identity unlawfully converted by Defendants for Defendants' benefit.

1084.   Defendants published, printed, displayed and/or publicly used Kazdova's image, likeness and/or identity on their social media outlets, among others, for purposes of trade and/or commercial advertising including, but not limited to, promoting, advertising and marketing of Defendants and Defendants' events and activities.

1085.   Defendants took these actions without Kazdova's permission, consent or authority.  In fact, Defendants never sought permission nor authority to use Kazdova's image, likeness and/or identity to advertise, promote, market or endorse Defendants' businesses or any Defendants' event or activity.

1086.   Kazdova never consented to, permitted, assigned, licensed, or otherwise agreed to Defendants' use of her image, likeness and/or identity to advertise, promote, market or endorse Defendants' businesses or any Defendants' event or activity.

1087.   Defendants intentionally or, at a minimum, recklessly, published, printed, displayed, or otherwise publicly disseminated or used Kazdova's image, likeness and/or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

1088.  Defendants had actual or constructive knowledge or consciously disregarded the wrongfulness of their conduct, deprived Kazdova of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Kazdova.

1089.  At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Kazdova's rights.

1090.  Alternatively, Defendants acted negligently towards Kazdova in using and disseminating, without authority, her image, likeness and/or identity on Defendants' social media outlets in order to promote, advertise and market Defendants' strip clubs and Defendants' events and activities.

1091.  Defendants have caused irreparable harm to Kazdova, her reputation and brand by attributing to Kazdova the adult entertainment and striptease lifestyle and activities at Defendants' strip clubs.

1092.  Defendants have also damaged Kazdova as a direct and proximate result of their unauthorized use of Kazdova's image, likeness and/or identity without compensating Kazdova.

**WHEREFORE**, Kazdova respectfully requests that the Court issue a judgment against all Defendants for all remedies available under a claim of misappropriation including, but not limited to, actual damages, costs, interest, and restitution of Defendants' unlawful proceeds, including Defendants' profits and other relief deemed just and proper by this Court.

## KAZDOVA COUNT V
### (Violation of Fla. Stat. § 812.014 and Fla. Stat. § 772.11: Civil Theft against all Defendants)

1093.   Plaintiff Kazdova re-alleges paragraphs 1 through 15, 26, 29 through 54, 175 through 186, and 211 through 216 above, and incorporates the same by reference as though fully set forth herein.

1094.   Section 772.11, Florida Statutes, creates a private right of action for victims of theft of tangible and intangible personal property, including rights, privileges, interests and claims.

1095.   Defendants knowingly appropriated, used and disseminated Kazdova's image, likeness and/or identity without authorization or consent.

1096.   At all times relevant to this action, Kazdova was and is the exclusive owner of all rights, title, and interest to her image, likeness and/or identity unlawfully converted by Defendants for Defendants' benefit.

1097.   Defendants' misappropriation of Kazdova's image, likeness and/or identity was for Defendants' own use and benefit and to deprive Kazdova of certain rights.

1098.   Defendants' misconduct detailed in this Complaint denied Kazdova the right to engage in arms-length negotiations over the use and dissemination of her image, likeness and/or identity, the right to negotiate over reasonable bargained-for compensation, the right to say "no" to the proposed use by Defendants and the right to otherwise protect her image, likeness and/or identity from harm at the hands of the Defendants.

1099.   Defendants' appropriation of Kazdova's image, likeness and/or identity as detailed herein without authority violates Sections 772.11 and 812.014, Florida Statutes, and was wrongful.

1100. Defendants had actual or constructive knowledge or consciously disregarded the wrongfulness of their conduct, deprived Kazdova of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Kazdova.

1101. At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Kazdova's rights.

1102. Alternatively, the method and manner in which Defendants used Kazdova's image, likeness and/or identity further evinces that Defendants were aware or consciously disregarded the fact that Kazdova did not consent to Defendants' use in order to advertise Defendants' businesses.

1103. Defendants' appropriation and use of Kazdova's image, likeness or identity without authority directly and proximately caused damage to Kazdova in an amount to be determined at trial.

**WHEREFORE**, Kazdova respectfully requests that the Court issue a judgment against all Defendants for all remedies available under Fla. Stat. § 772.11(1), including but not limited to, treble the amount of actual damages, costs, interest, and attorneys' fees and other relief deemed just and proper by this Court.

## <u>KAZDOVA COUNT VI</u>
### (Conversion against all Defendants)

1104. Plaintiff Kazdova re-alleges paragraphs 1 through 15, 26, 29 through 54, 175 through 186, and 211 through 216 above, and incorporates the same by reference as though fully set forth herein.

1105.   Kazdova is, and all at relevant times was, the exclusive owner of all rights, title, and interest to her image, likeness and/or identity unlawfully converted by Defendants for Defendants' benefit.

1106.   Kazdova has, and at all times relevant herein had, an intangible property interest in her image, likeness and/or identity unlawfully converted by Defendants for Defendants' benefit.

1107.   By their acts and conduct alleged above, Defendants have converted Kazdova's property rights, including without limitation, Kazdova's image, likeness and/or identity for Defendants' use and wrongful disposition for financial gain.

1108.   Kazdova is informed and believes and on such information alleges that Defendants have refused to return Kazdova's property to her or pay for the deprivation of Kazdova's property.

1109.   As a result, Kazdova has suffered compensatory, punitive and exemplary damages to be determined according to proof at trial; but Kazdova alleges that the same are within the jurisdiction of the Court.

1110.   Further, Kazdova is informed and believes and thereon alleges that in engaging in the conduct described above, Defendants acted with oppression, fraud, and/or malice. Defendants' conduct has been despicable and taken in conscious disregard of Kazdova's rights. Accordingly, Kazdova is entitled to an award of punitive damages against all Defendants in an amount sufficient to punish and make an example of Defendants. Therefore, Kazdova reserves the right to seek punitive damages according to proof and pursuant to Fla. Stat. §768.72.

**WHEREFORE**, Kazdova respectfully requests this Court to issue a judgment against all Defendants and for all remedies available under the common law claim for conversion, including but not limited to actual damages, costs, interest, punitive damages according to proof, and restitution of Defendants' unlawful proceeds, including Defendants' profits, and/or other relief deemed just and proper.

## KAZDOVA COUNT VII
### (Unjust Enrichment against all Defendants)

1111.  Plaintiff Kazdova re-alleges paragraphs 1 through 15, 26, 29 through 54, 175 through 186, and 211 through 216 above, and incorporates the same by reference as though fully set forth herein.

1112.  Kazdova has conferred a benefit upon Defendants by virtue of Defendants' usage of her image without compensation.

1113.  At all times relevant to this action, Kazdova was and is the exclusive owner of all rights, title, and interest to her image, likeness and/or identity unlawfully converted by Defendants for Defendants' benefit.

1114.  Defendants were aware that Kazdova's image, likeness and/or identity were valuable.

1115.  Defendants were aware of the resulting benefit from usage of Kazdova's image, likeness and/or identity.

1116.  Defendants have retained profits and other benefits conferred upon them by using Kazdova's image, likeness and/or identity to promote and advertise Defendants' businesses and/or Defendants' events and activities.

1117.  It would be inequitable for Defendants to retain the benefits conferred upon them by using Kazdova's image, likeness and/or identity without paying fair value for the image.

**WHEREFORE**, Kazdova respectfully requests that the Court issue a judgment against all Defendants for damages, including but not limited to actual damages, costs, interest, imposition of a constructive trust, restitution of unlawful proceeds, including Defendants' gross profits and such other and further relief in law or equity as this Court deems just and proper.

### *Plaintiff Paola Canas' Causes of Action*

### CANAS COUNT I
### (Violation of the Lanham Act, 15 U.S.C. § 1125(a): False Advertising against all Defendants)

1118.  Plaintiff Canas re-alleges paragraphs 1 through 15, 27, 29 through 54, 187 through 198, and 211 through 216 above, and incorporates the same by reference as though fully set forth herein.

1119.  Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* applies to Defendants and protects Canas from the conduct described herein. Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . . ." 15 U.S.C. §1125(a)(1)(B).

1120.  At all times relevant to this action, Canas was and is the exclusive owner of all rights, title, and interest to her image, likeness and/or identity unlawfully converted by Defendants for Defendants' benefit.

1121.   Defendants used Canas' image, likeness and/or identity as described herein without authority in order to create the perception that Canas worked at or was otherwise affiliated with Defendants' strip clubs, endorsed Defendants' businesses and activities, and/or consented to or authorized Defendants to use her image in order to advertise, promote, and market Defendants' businesses and/or Defendants' events and activities.

1122.   Defendants' use of Canas' image, likeness and/or identity to advertise, promote and market Defendants' businesses and/or Defendants' events and activities as described in this Complaint was false and misleading.

1123.   Defendants' unauthorized use of Canas' image, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Canas worked at or was otherwise affiliated with Defendants, endorsed Defendants' businesses, or Defendants' events or activities, or consented to or authorized Defendants' usage of her image in order to advertise, promote, and market Defendants' businesses or Defendants' events and activities and/or that Canas would participate in or appear at the specific events promoted in the advertisements.

1124.   Defendants' false advertising described above has the capacity or tendency to confuse consumers, including actual and prospective patrons of Defendants, as to the general quality of attendees and participants of Defendants' strip clubs and in their events, as well as specifically whether Canas worked at or was otherwise affiliated with Defendants, endorsed Defendants' businesses or Defendants' events or activities, or consented to or authorized Defendants' usage of her image in order to advertise, promote, and market Defendants' businesses or Defendants' events and activities.

1125.  Upon information and belief, Defendants' false advertising described above did, in fact, deceive and/or cause consumer confusion as to whether Canas worked at or was otherwise affiliated with Defendants, endorsed Defendants' businesses or Defendants' events and activities, or consented to or authorized Defendants' usage of her image in order to advertise, promote, and market Defendants' businesses or Defendants' events and activities.   Among other things, upon information and belief, such unauthorized use misled and served to entice consumers and prospective consumers to join Defendants, visit Defendants' strip clubs, and participate in events at Defendants' strip clubs and had a material effect and impact on the decision of members and prospective members and participants to join Defendants, visit Defendants' strip clubs and take part in the events at Defendants' strip clubs.

1126.  Defendants' advertisements, promotions and marketing of Defendants' strip clubs and events occur in and are targeted to interstate commerce.   Specifically, Defendants promote their businesses and events through interstate promotions and campaigns to target persons from different states throughout the United States. Defendants principally use the World Wide Web, social media and other vehicles of interstate commerce to advertise, market, promote, and entice or lure membership and attendance at Defendants' events.

1127.  Defendants' unauthorized use of Canas' image, likeness and/or identity as described herein was designed to benefit Defendants' businesses interests by, among other things, promoting Defendants' strip clubs and activities and attracting clientele to Defendants' strip clubs.

1128.   Defendants knew or should have known that their unauthorized use of Canas' image, likeness and/or identity would cause consumer confusion as described in this Complaint.

1129.   Defendants' unauthorized use of Canas' image, likeness and/or identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

1130.   As such, the present case is an exceptional case warranting an award of reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

1131.   Defendants had actual or constructive knowledge or consciously disregarded the wrongfulness of their conduct, deprived Canas of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Canas.

1132.   The method and manner in which Defendants used the image of Canas further evinces that Defendants were aware of or consciously disregarded the fact that Canas did not consent to Defendants' use of the image to advertise Defendants' businesses.

1133.   Defendants have caused irreparable harm to Canas, her reputation and brand by attributing to Canas the adult entertainment and striptease lifestyle and activities at Defendants' strip clubs.

1134.   Defendants' unauthorized use of Canas' image, likeness and/or identity directly and proximately caused and continue to cause damage to Canas in an amount to be determined at trial.

**WHEREFORE**, Canas respectfully requests that the Court issue a judgment against all Defendants and grant actual, or compensatory, damages in an amount to be

determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

### CANAS COUNT II
**(Violation of the Lanham Act, 15 U.S.C. § 1125(a):**
**False Endorsement against all Defendants)**

1135.   Plaintiff Canas re-alleges paragraphs 1 through 15, 27, 29 through 54, 187 through 198, and 211 through 216 above, and incorporates the same by reference as though fully set forth herein.

1136.  Section 43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(A) applies to Defendants, and protects Canas from the conduct described herein.

1137.   Defendants used Canas' image in order to create the false impression with the public that Canas either worked at Defendants' strip clubs, or endorsed Defendants' businesses. This was done to promote and attract clientele to Defendants' strip clubs, and thereby generate revenue for Defendants.

1138.   Thus, this was done in furtherance of Defendants' commercial benefit.

1139.   Canas is in the business of commercializing her identity and selling her images to reputable brands and companies for profit. Defendants' customers are the exact demographic that views Canas' images in magazines and online.

1140.   Both Canas and Defendants' strip clubs compete in the entertainment industry, use similar marketing channels and their respective endeavors overlap. They vie for the same dollars from the same demographic consumer group of men.

1141.  As such, an unauthorized use of Canas' image to promote strip clubs created an undeniable confusion in Defendants consumers' minds, which lead to competitive injury to Canas.

1142.  Defendants' use of Canas' image, likeness and/or identity constitutes a false designation of the source of origin, sponsorship, approval, or association which has deceived Canas' fans and present and prospective clients into believing that Defendants' advertisements are endorsed by Canas, or sponsored, approved or associated with Canas.

1143.  Despite the fact that Defendants were at all times aware that Canas neither worked at, nor endorsed their strip clubs, nevertheless, they used Canas' image in order to mislead potential customers as to Canas' employment at and/or affiliation with Defendants.

1144.  Defendants knew that their use of Canas' image would cause consumer confusion as to Canas' sponsorship and/or employment at Defendants' strip clubs.

1145.  Upon information and belief, Defendants' use of Canas' image did in fact cause consumer confusion as to Canas' employment at and/or endorsement of Defendants' businesses, and the goods and services provided by Defendants.

1146.  As a direct and proximate result of Defendants' actions, Canas has no control over the nature and quality of the line of products or services provided by Defendants, the nature of the advertisement depicting Canas' image, likeness and/or identity, or how Canas' image, likeness and/or identity is being depicted by Defendants.

1147.  Further, any failure, neglect or default by Defendants will reflect adversely on Canas as the believed source of origin, sponsorship, approval or association thereof,

hampering efforts by Canas to continue to protect her reputation for high quality professional modeling, resulting in loss of sales thereof and the considerable expenditures to promote her personal modeling services to legitimate mainstream media, all to the irreparable harm of Canas.

1148.   Due to Defendants' unauthorized use of Canas' image, Canas has been damaged in an amount to be determined at trial.

**WHEREFORE**, Canas respectfully requests that the Court enter a judgment against Defendants and grant actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

### <u>CANAS COUNT III</u>
**(Violation of Fla. Stat. § 540.08: Right of Publicity;
Unauthorized Misappropriation of Name/Likeness against all Defendants)**

1149.   Plaintiff Canas re-alleges paragraphs 1 through 15, 27, 29 through 54, 187 through 198, and 211 through 216 above, and incorporates the same by reference as though fully set forth herein.

1150.   Canas has a statutory right of publicity under Section 540.08, Florida Statutes.

1151.   Section 540.08, Florida Statutes, provides that: "[n]o person shall publish, print, display or otherwise publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of any natural person without the express written or oral consent to such use."

1152.  Despite the clear language of Section 540.08, Defendants published Canas' image, likeness and/or identity on social media outlets, among others, in order to promote, advertise and market Defendants' strip clubs and/or Defendants' events and activities.

1153.  At all times relevant to this action, Canas was and is the exclusive owner of all rights, title, and interest to her image, likeness and/or identity unlawfully converted by Defendants for Defendants' benefit.

1154.  Defendants never sought permission or authority to use Canas' image, likeness and/or identity to advertise, promote, market or endorse Defendants' businesses or any Defendants' event or activity.

1155.  Canas never consented to, permitted, assigned, licensed, or otherwise agreed to Defendants' use of her image, likeness and/or identity to advertise, promote, market or endorse Defendants' businesses or any Defendants' event or activity.

1156.  Defendants intentionally or, at a minimum, recklessly published, printed, displayed, or otherwise publicly disseminated or used Canas' image, likeness and/or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

1157.  Defendants had actual or constructive knowledge or consciously disregarded the wrongfulness of their conduct, deprived Canas of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Canas.

1158.  At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Canas' rights.

1159.   Alternatively, Defendants acted negligently towards Canas in using and disseminating, without authority, her image, likeness and/or identity on social media outlets in order to promote, advertise and market Defendants' strip clubs and/or Defendants' events and activities.

1160.   Defendants have caused irreparable harm to Canas, her reputation and brand by attributing to Canas the adult entertainment and striptease lifestyle and activities at Defendants' strip clubs.

1161.   Defendants have also damaged Canas as a direct and proximate result of their unauthorized use of Canas' image, likeness and/or identity without compensating Canas. Defendants' conduct has been despicable and taken in conscious disregard of Canas' rights.

**WHEREFORE**, Canas respectfully requests that the Court issue a judgment against all Defendants for all remedies available under Fla. Stat. §540.08, including but not limited to, both actual loss and damages, costs, interest, royalties, and restitution of Defendants' unlawful proceeds, including Defendants' profits and other relief deemed just and proper by this Court.

## CANAS COUNT IV
### (Violation of Common Law Right of Publicity;
### Unauthorized Misappropriation of Name or Likeness against all Defendants)

1162.   Plaintiff Canas re-alleges paragraphs 1 through 15, 27, 29 through 54, 187 through 198, and 211 through 216 above, and incorporates the same by reference as though fully set forth herein.

1163.   Canas has a common law right of publicity.

1164.   Defendants may not publish, print, display or publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of Canas without express written or oral consent to such use.

1165.   At all times relevant to this action, Canas was and is the exclusive owner of all rights, title, and interest to her image, likeness and/or identity unlawfully converted by Defendants for Defendants' benefit.

1166.   Defendants published, printed, displayed and/or publicly used Canas' image, likeness and/or identity on their social media outlets, among others, for purposes of trade and/or commercial advertising including, but not limited to, promoting, advertising and marketing of Defendants and Defendants' events and activities.

1167.   Defendants took these actions without Canas' permission, consent or authority.   In fact, Defendants never sought permission nor authority to use Canas' image, likeness and/or identity to advertise, promote, market or endorse Defendants' businesses or any Defendants' event or activity.

1168.   Canas never consented to, permitted, assigned, licensed, or otherwise agreed to Defendants' use of her image, likeness and/or identity to advertise, promote, market or endorse Defendants' businesses or any Defendants' event or activity.

1169.   Defendants intentionally or, at a minimum, recklessly, published, printed, displayed, or otherwise publicly disseminated or used Canas' image, likeness and/or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

1170.   Defendants had actual or constructive knowledge or consciously disregarded the wrongfulness of their conduct, deprived Canas of a property interest, and

further acted with actual or constructive knowledge of the high probability that injury or damage would result to Canas.

1171.  At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Canas' rights.

1172.  Alternatively, Defendants acted negligently towards Canas in using and disseminating, without authority, her image, likeness and/or identity on Defendants' social media outlets in order to promote, advertise and market Defendants' strip clubs and Defendants' events and activities.

1173.  Defendants have caused irreparable harm to Canas, her reputation and brand by attributing to Canas the adult entertainment and striptease lifestyle and activities at Defendants' strip clubs.

1174.  Defendants have also damaged Canas as a direct and proximate result of their unauthorized use of Canas' image, likeness and/or identity without compensating Canas.

**WHEREFORE**, Canas respectfully requests that the Court issue a judgment against all Defendants for all remedies available under a claim of misappropriation including, but not limited to, actual damages, costs, interest, and restitution of Defendants' unlawful proceeds, including Defendants' profits and other relief deemed just and proper by this Court.

### CANAS COUNT V
**(Violation of Fla. Stat. § 812.014 and Fla. Stat. § 772.11:
Civil Theft against all Defendants)**

1175.   Plaintiff Canas re-alleges paragraphs 1 through 15, 27, 29 through 54, 187 through 198, and 211 through 216 above, and incorporates the same by reference as though fully set forth herein.

1176.   Section 772.11, Florida Statutes, creates a private right of action for victims of theft of tangible and intangible personal property, including rights, privileges, interests and claims.

1177.   Defendants knowingly appropriated, used and disseminated Canas' image, likeness and/or identity without authorization or consent.

1178.   At all times relevant to this action, Canas was and is the exclusive owner of all rights, title, and interest to her image, likeness and/or identity unlawfully converted by Defendants for Defendants' benefit.

1179.   Defendants' misappropriation of Canas' image, likeness and/or identity was for Defendants' own use and benefit and to deprive Canas of certain rights.

1180.   Defendants' misconduct detailed in this Complaint denied Canas the right to engage in arms-length negotiations over the use and dissemination of her image, likeness and/or identity, the right to negotiate over reasonable bargained-for compensation, the right to say "no" to the proposed use by Defendants and the right to otherwise protect her image, likeness and/or identity from harm at the hands of the Defendants.

1181.   Defendants' appropriation of Canas' image, likeness and/or identity as detailed herein without authority violates Sections 772.11 and 812.014, Florida Statutes, and was wrongful.

1182.  Defendants had actual or constructive knowledge or consciously disregarded the wrongfulness of their conduct, deprived Canas of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Canas.

1183.  At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Canas' rights.

1184.  Alternatively, the method and manner in which Defendants used Canas' image, likeness and/or identity further evinces that Defendants were aware or consciously disregarded the fact that Canas did not consent to Defendants' use in order to advertise Defendants' businesses.

1185.  Defendants' appropriation and use of Canas' image, likeness or identity without authority directly and proximately caused damage to Canas in an amount to be determined at trial.

**WHEREFORE**, Canas respectfully requests that the Court issue a judgment against all Defendants for all remedies available under Fla. Stat. § 772.11(1), including but not limited to, treble the amount of actual damages, costs, interest, and attorneys' fees and other relief deemed just and proper by this Court.

<u>**CANAS COUNT VI**</u>
**(Conversion against all Defendants)**

1186.  Plaintiff Canas re-alleges paragraphs 1 through 15, 27, 29 through 54, 187 through 198, and 211 through 216 above, and incorporates the same by reference as though fully set forth herein.

1187.  Canas is, and all at relevant times was, the exclusive owner of all rights, title, and interest to her image, likeness and/or identity unlawfully converted by Defendants for Defendants' benefit.

1188.  Canas has, and at all times relevant herein had, an intangible property interest in her image, likeness and/or identity unlawfully converted by Defendants for Defendants' benefit.

1189.  By their acts and conduct alleged above, Defendants have converted Canas' property rights, including without limitation, Canas' image, likeness and/or identity for Defendants' use and wrongful disposition for financial gain.

1190.  Canas is informed and believes and on such information alleges that Defendants have refused to return Canas' property to her or pay for the deprivation of Canas' property.

1191.  As a result, Canas has suffered compensatory, punitive and exemplary damages to be determined according to proof at trial; but Canas alleges that the same are within the jurisdiction of the Court.

1192.  Further, Canas is informed and believes and thereon alleges that in engaging in the conduct described above, Defendants acted with oppression, fraud, and/or malice. Defendants' conduct has been despicable and taken in conscious disregard of Canas' rights.

**WHEREFORE**, Canas respectfully requests this Court to issue a judgment against all Defendants and for all remedies available under the common law claim for conversion, including but not limited to actual damages, costs, interest, and restitution of

Defendants' unlawful proceeds, including Defendants' profits, and/or other relief deemed just and proper.

## CANAS COUNT VII
### (Unjust Enrichment against all Defendants)

1193.   Plaintiff Canas re-alleges paragraphs 1 through 15, 27, 29 through 54, 187 through 198, and 211 through 216 above, and incorporates the same by reference as though fully set forth herein.

1194.   Canas has conferred a benefit upon Defendants by virtue of Defendants' usage of her image without compensation.

1195.   At all times relevant to this action, Canas was and is the exclusive owner of all rights, title, and interest to her image, likeness and/or identity unlawfully converted by Defendants for Defendants' benefit.

1196.   Defendants were aware that Canas' image, likeness and/or identity were valuable.

1197.   Defendants were aware of the resulting benefit from usage of Canas' image, likeness and/or identity.

1198.   Defendants have retained profits and other benefits conferred upon them by using Canas' image, likeness and/or identity to promote and advertise Defendants' businesses and/or Defendants' events and activities.

1199.   It would be inequitable for Defendants to retain the benefits conferred upon them by using Canas' image, likeness and/or identity without paying fair value for the image.

**WHEREFORE**, Canas respectfully requests that the Court issue a judgment against all Defendants for damages, including but not limited to actual damages, costs,

interest, imposition of a constructive trust, restitution of unlawful proceeds, including Defendants' gross profits and such other and further relief in law or equity as this Court deems just and proper.

### *Plaintiff Tina Quarles' Causes of Action*

### <u>QUARLES COUNT I</u>
**(Violation of the Lanham Act, 15 U.S.C. § 1125(a):**
**False Advertising against all Defendants)**

1200.  Plaintiff Quarles re-alleges paragraphs 1 through 15, 28 through 54, 199 through 216 above, and incorporates the same by reference as though fully set forth herein.

1201.  Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* applies to Defendants and protects Quarles from the conduct described herein. Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . . ." 15 U.S.C. §1125(a)(1)(B).

1202.  At all times relevant to this action, Quarles was and is the exclusive owner of all rights, title, and interest to her image, likeness and/or identity unlawfully converted by Defendants for Defendants' benefit.

1203.  Defendants used Quarles' image, likeness and/or identity as described herein without authority in order to create the perception that Quarles worked at or was otherwise affiliated with Defendants' strip clubs, endorsed Defendants' businesses and activities, and/or consented to or authorized Defendants to use her image in order to

advertise, promote, and market Defendants' businesses and/or Defendants' events and activities.

1204.   Defendants' use of Quarles' image, likeness and/or identity to advertise, promote and market Defendants' businesses and/or Defendants' events and activities as described in this Complaint was false and misleading.

1205.   Defendants' unauthorized use of Quarles' image, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Quarles worked at or was otherwise affiliated with Defendants, endorsed Defendants' businesses, or Defendants' events or activities, or consented to or authorized Defendants' usage of her image in order to advertise, promote, and market Defendants' businesses or Defendants' events and activities and/or that Quarles would participate in or appear at the specific events promoted in the advertisements.

1206.  Defendants' false advertising described above has the capacity or tendency to confuse consumers, including actual and prospective patrons of Defendants, as to the general quality of attendees and participants of Defendants' strip clubs and in their events, as well as specifically whether Quarles worked at or was otherwise affiliated with Defendants, endorsed Defendants' businesses or Defendants' events or activities, or consented to or authorized Defendants' usage of her image in order to advertise, promote, and market Defendants' businesses or Defendants' events and activities.

1207.  Upon information and belief, Defendants' false advertising described above did, in fact, deceive and/or cause consumer confusion as to whether Quarles worked at or was otherwise affiliated with Defendants, endorsed Defendants' businesses or Defendants' events and activities, or consented to or authorized Defendants' usage of

her image in order to advertise, promote, and market Defendants' businesses or Defendants' events and activities.  Among other things, upon information and belief, such unauthorized use misled and served to entice consumers and prospective consumers to join Defendants, visit Defendants' strip clubs, and participate in events at Defendants' strip clubs and had a material effect and impact on the decision of members and prospective members and participants to join Defendants, visit Defendants' strip clubs and take part in the events at Defendants' strip clubs.

1208.  Defendants' advertisements, promotions and marketing of Defendants' strip clubs and events occur in and are targeted to interstate commerce.  Specifically, Defendants promote their businesses and events through interstate promotions and campaigns to target persons from different states throughout the United States. Defendants principally use the World Wide Web, social media and other vehicles of interstate commerce to advertise, market, promote, and entice or lure membership and attendance at Defendants' events.

1209.  Defendants' unauthorized use of Quarles' image, likeness and/or identity as described herein was designed to benefit Defendants' businesses interests by, among other things, promoting Defendants' strip clubs and activities and attracting clientele to Defendants' strip clubs.

1210.  Defendants knew or should have known that their unauthorized use of Quarles' image, likeness and/or identity would cause consumer confusion as described in this Complaint.

1211.  Defendants' unauthorized use of Quarles' image, likeness and/or identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

1212.  As such, the present case is an exceptional case warranting an award of reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

1213.  Defendants had actual or constructive knowledge or consciously disregarded the wrongfulness of their conduct, deprived Quarles of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Quarles.

1214.  The method and manner in which Defendants used the image of Quarles further evinces that Defendants were aware of or consciously disregarded the fact that Quarles did not consent to Defendants' use of the image to advertise Defendants' businesses.

1215.  Defendants have caused irreparable harm to Quarles, her reputation and brand by attributing to Quarles the adult entertainment and striptease lifestyle and activities at Defendants' strip clubs.

1216.  Defendants' unauthorized use of Quarles' image, likeness and/or identity directly and proximately caused and continue to cause damage to Quarles in an amount to be determined at trial.

**WHEREFORE**, Quarles respectfully requests that the Court issue a judgment against all Defendants and grant actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

<u>**QUARLES COUNT II**</u>
**(Violation of the Lanham Act, 15 U.S.C. § 1125(a):**
**False Endorsement against all Defendants**)

The Casas Law Firm, P.C.
Brickell Bayview Center 80 S.W. 8th Street, Suite 2000, Miami, FL 33130

1217.   Plaintiff Quarles re-alleges paragraphs 1 through 15, 28 through 54, 199 through 216 above, and incorporates the same by reference as though fully set forth herein.

1218.   Section 43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(A) applies to Defendants, and protects Quarles from the conduct described herein.

1219.   Defendants used Quarles' image in order to create the false impression with the public that Quarles either worked at Defendants' strip clubs, or endorsed Defendants' businesses. This was done to promote and attract clientele to Defendants' strip clubs, and thereby generate revenue for Defendants.

1220.   Thus, this was done in furtherance of Defendants' commercial benefit.

1221.   Quarles is in the business of commercializing her identity and selling her images to reputable brands and companies for profit. Defendants' customers are the exact demographic that views Quarles' images in magazines and online.

1222.   Both Quarles and Defendants' strip clubs compete in the entertainment industry, use similar marketing channels and their respective endeavors overlap. They vie for the same dollars from the same demographic consumer group of men.

1223.   As such, an unauthorized use of Quarles' image to promote strip clubs created an undeniable confusion in Defendants consumers' minds, which lead to competitive injury to Quarles.

1224.   Defendants' use of Quarles' image, likeness and/or identity constitutes a false designation of the source of origin, sponsorship, approval, or association which has deceived Quarles' fans and present and prospective clients into believing that

Defendants' advertisements are endorsed by Quarles, or sponsored, approved or associated with Quarles.

1225. Despite the fact that Defendants were at all times aware that Quarles neither worked at, nor endorsed their strip clubs, nevertheless, they used Quarles' image in order to mislead potential customers as to Quarles' employment at and/or affiliation with Defendants.

1226. Defendants knew that their use of Quarles' image would cause consumer confusion as to Quarles' sponsorship and/or employment at Defendants' strip clubs.

1227. Upon information and belief, Defendants' use of Quarles' image did in fact cause consumer confusion as to Quarles' employment at and/or endorsement of Defendants' businesses, and the goods and services provided by Defendants.

1228. As a direct and proximate result of Defendants' actions, Quarles has no control over the nature and quality of the line of products or services provided by Defendants, the nature of the advertisement depicting Quarles' image, likeness and/or identity, or how Quarles' image, likeness and/or identity is being depicted by Defendants.

1229. Further, any failure, neglect or default by Defendants will reflect adversely on Quarles as the believed source of origin, sponsorship, approval or association thereof, hampering efforts by Quarles to continue to protect her reputation for high quality professional modeling, resulting in loss of sales thereof and the considerable expenditures to promote her personal modeling services to legitimate mainstream media, all to the irreparable harm of Quarles.

1230. Due to Defendants' unauthorized use of Quarles' image, Quarles has been damaged in an amount to be determined at trial.

**WHEREFORE**, Quarlesst profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

## QUARLES COUNT III
**(Violation of Fla. Stat. § 540.08: Right of Publicity;
Unauthorized Misappropriation of Name/Likeness against all Defendants)**

1231.   Plaintiff Quarles re-alleges paragraphs 1 through 15, 28 through 54, 199 through 216 above, and incorporates the same by reference as though fully set forth herein.

1232.   Quarles has a statutory right of publicity under Section 540.08, Florida Statutes.

1233.   Section 540.08, Florida Statutes, provides that: "[n]o person shall publish, print, display or otherwise publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of any natural person without the express written or oral consent to such use."

1234.   Despite the clear language of Section 540.08, Defendants published Quarles' image, likeness and/or identity on social media outlets, among others, in order to promote, advertise and market Defendants' strip clubs and/or Defendants' events and activities.

1235.   At all times relevant to this action, Quarles was and is the exclusive owner of all rights, title, and interest to her image, likeness and/or identity unlawfully converted by Defendants for Defendants' benefit.

1236.   Defendants never sought permission or authority to use Quarles' image, likeness and/or identity to advertise, promote, market or endorse Defendants' businesses or any Defendants' event or activity.

1237.   Quarles never consented to, permitted, assigned, licensed, or otherwise agreed to Defendants' use of her image, likeness and/or identity to advertise, promote, market or endorse Defendants' businesses or any Defendants' event or activity.

1238.   Defendants intentionally or, at a minimum, recklessly published, printed, displayed, or otherwise publicly disseminated or used Quarles' image, likeness and/or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

1239.   Defendants had actual or constructive knowledge or consciously disregarded the wrongfulness of their conduct, deprived Quarles of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Quarles.

1240.   At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Quarles' rights.

1241.   Alternatively, Defendants acted negligently towards Quarles in using and disseminating, without authority, her image, likeness and/or identity on social media outlets in order to promote, advertise and market Defendants' strip clubs and/or Defendants' events and activities.

1242.   Defendants have caused irreparable harm to Quarles, her reputation and brand by attributing to Quarles the adult entertainment and striptease lifestyle and activities at Defendants' strip clubs.

1243.   Defendants have also damaged Quarles as a direct and proximate result of their unauthorized use of Quarles' image, likeness and/or identity without compensating Quarles. Defendants' conduct has been despicable and taken in conscious disregard of Quarles' rights.

**WHEREFORE**, Quarles respectfully requests that the Court issue a judgment against all Defendants for all remedies available under Fla. Stat. §540.08, including but not limited to, both actual loss and damages, costs, interest, royalties, and restitution of Defendants' unlawful proceeds, including Defendants' profits and other relief deemed just and proper by this Court.

### QUARLES COUNT IV
**(Violation of Common Law Right of Publicity;
Unauthorized Misappropriation of Name or Likeness against all Defendants)**

1244.   Plaintiff Quarles re-alleges paragraphs 1 through 15, 28 through 54, 199 through 216 above, and incorporates the same by reference as though fully set forth herein.

1245.   Quarles has a common law right of publicity.

1246.   Defendants may not publish, print, display or publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of Quarles without express written or oral consent to such use.

1247.   At all times relevant to this action, Quarles was and is the exclusive owner of all rights, title, and interest to her image, likeness and/or identity unlawfully converted by Defendants for Defendants' benefit.

1248.   Defendants published, printed, displayed and/or publicly used Quarles' image, likeness and/or identity on their social media outlets, among others, for purposes

of trade and/or commercial advertising including, but not limited to, promoting, advertising and marketing of Defendants and Defendants' events and activities.

1249. Defendants took these actions without Quarles' permission, consent or authority.  In fact, Defendants never sought permission nor authority to use Quarles' image, likeness and/or identity to advertise, promote, market or endorse Defendants' businesses or any Defendants' event or activity.

1250. Quarles never consented to, permitted, assigned, licensed, or otherwise agreed to Defendants' use of her image, likeness and/or identity to advertise, promote, market or endorse Defendants' businesses or any Defendants' event or activity.

1251. Defendants intentionally or, at a minimum, recklessly, published, printed, displayed, or otherwise publicly disseminated or used Quarles' image, likeness and/or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

1252. Defendants had actual or constructive knowledge or consciously disregarded the wrongfulness of their conduct, deprived Quarles of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Quarles.

1253. At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Quarles' rights.

1254. Alternatively, Defendants acted negligently towards Quarles in using and disseminating, without authority, her image, likeness and/or identity on Defendants' social media outlets in order to promote, advertise and market Defendants' strip clubs and Defendants' events and activities.

1255.  Defendants have caused irreparable harm to Quarles, her reputation and brand by attributing to Quarles the adult entertainment and striptease lifestyle and activities at Defendants' strip clubs.

1256.  Defendants have also damaged Quarles as a direct and proximate result of their unauthorized use of Quarles' image, likeness and/or identity without compensating Quarles.

**WHEREFORE**, Quarles respectfully requests that the Court issue a judgment against all Defendants for all remedies available under a claim of misappropriation including, but not limited to, actual damages, costs, interest, and restitution of Defendants' unlawful proceeds, including Defendants' profits and other relief deemed just and proper by this Court.

## QUARLES COUNT V
### (Violation of Fla. Stat. § 812.014 and Fla. Stat. § 772.11:
### Civil Theft against all Defendants)

1257.  Plaintiff Quarles re-alleges paragraphs 1 through 15, 28 through 54, 199 through 216 above, and incorporates the same by reference as though fully set forth herein.

1258.  Section 772.11, Florida Statutes, creates a private right of action for victims of theft of tangible and intangible personal property, including rights, privileges, interests and claims.

1259.  Defendants knowingly appropriated, used and disseminated Quarles' image, likeness and/or identity without authorization or consent.

1260.   At all times relevant to this action, Quarles was and is the exclusive owner of all rights, title, and interest to her image, likeness and/or identity unlawfully converted by Defendants for Defendants' benefit.

1261.   Defendants' misappropriation of Quarles' image, likeness and/or identity was for Defendants' own use and benefit and to deprive Quarles of certain rights.

1262.   Defendants' misconduct detailed in this Complaint denied Quarles the right to engage in arms-length negotiations over the use and dissemination of her image, likeness and/or identity, the right to negotiate over reasonable bargained-for compensation, the right to say "no" to the proposed use by Defendants and the right to otherwise protect her image, likeness and/or identity from harm at the hands of the Defendants.

1263.   Defendants' appropriation of Quarles' image, likeness and/or identity as detailed herein without authority violates Sections 772.11 and 812.014, Florida Statutes, and was wrongful.

1264.   Defendants had actual or constructive knowledge or consciously disregarded the wrongfulness of their conduct, deprived Quarles of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Quarles.

1265.   At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Quarles' rights.

1266.   Alternatively, the method and manner in which Defendants used Quarles' image, likeness and/or identity further evinces that Defendants were aware or consciously

disregarded the fact that Quarles did not consent to Defendants' use in order to advertise Defendants' businesses.

1267.   Defendants' appropriation and use of Quarles' image, likeness or identity without authority directly and proximately caused damage to Quarles in an amount to be determined at trial.

**WHEREFORE**, Quarles respectfully requests that the Court issue a judgment against all Defendants for all remedies available under Fla. Stat. § 772.11(1), including but not limited to, treble the amount of actual damages, costs, interest, and attorneys' fees and other relief deemed just and proper by this Court.

## QUARLES COUNT VI
### (Conversion against all Defendants)

1268.   Plaintiff Quarles re-alleges paragraphs 1 through 15, 28 through 54, 199 through 216 above, and incorporates the same by reference as though fully set forth herein.

1269.   Quarles is, and all at relevant times was, the exclusive owner of all rights, title, and interest to her image, likeness and/or identity unlawfully converted by Defendants for Defendants' benefit.

1270.   Quarles has, and at all times relevant herein had, an intangible property interest in her image, likeness and/or identity unlawfully converted by Defendants for Defendants' benefit.

1271.   By their acts and conduct alleged above, Defendants have converted Quarles' property rights, including without limitation, Quarles' image, likeness and/or identity for Defendants' use and wrongful disposition for financial gain.

1272.  Quarles is informed and believes and on such information alleges that Defendants have refused to return Quarles' property to her or pay for the deprivation of Quarles' property.

1273.  As a result, Quarles has suffered compensatory, punitive and exemplary damages to be determined according to proof at trial; but Quarles alleges that the same are within the jurisdiction of the Court.

1274.  Further, Quarles is informed and believes and thereon alleges that in engaging in the conduct described above, Defendants acted with oppression, fraud, and/or malice. Defendants' conduct has been despicable and taken in conscious disregard of Quarles' rights.

**WHEREFORE**, Quarles respectfully requests this Court to issue a judgment against all Defendants and for all remedies available under the common law claim for conversion, including but not limited to actual damages, costs, interest, and restitution of Defendants' unlawful proceeds, including Defendants' profits, and/or other relief deemed just and proper.

## QUARLES COUNT VII
### (Unjust Enrichment against all Defendants)

1275.  Plaintiff Quarles re-alleges paragraphs 1 through 15, 28 through 54, 199 through 216 above, and incorporates the same by reference as though fully set forth herein.

1276.  Quarles has conferred a benefit upon Defendants by virtue of Defendants' usage of her image without compensation.

1277.   At all times relevant to this action, Quarles was and is the exclusive owner of all rights, title, and interest to her image, likeness and/or identity unlawfully converted by Defendants for Defendants' benefit.

1278.   Defendants were aware that Quarles' image, likeness and/or identity were valuable.

1279.   Defendants were aware of the resulting benefit from usage of Quarles' image, likeness and/or identity.

1280.   Defendants have retained profits and other benefits conferred upon them by using Quarles' image, likeness and/or identity to promote and advertise Defendants' businesses and/or Defendants' events and activities.

1281.   It would be inequitable for Defendants to retain the benefits conferred upon them by using Quarles' image, likeness and/or identity without paying fair value for the image.

**WHEREFORE**, Quarles respectfully requests that the Court issue a judgment against all Defendants for damages, including but not limited to actual damages, costs, interest, imposition of a constructive trust, restitution of unlawful proceeds, including Defendants' gross profits and such other and further relief in law or equity as this Court deems just and proper.

## **PRAYER FOR RELIEF**

**WHEREFORE**, each Plaintiff individually respectfully prays that this Court grant Judgment to each Plaintiff, respectively, and against Defendants, jointly and severally in an amount to be determined at trial but in no event less than **$2,697,500.00** aggregated across all Plaintiffs and as follows:

The Casas Law Firm, P.C.
Brickell Bayview Center 80 S.W. 8th Street, Suite 2000, Miami, FL 33130

1.      For damages as provided in 15 U.S.C. § 1125(a);

2.      For attorneys' fees and costs of suit, as provided for in 15 U.S.C. § 1125(a);

3.      For damages as provided in Fla. Stat. §540.08;

4.      For general damages according to proof;

5.      For special damages according to proof;

6.      For consequential damages according to proof;

7.      For reasonable attorneys' fees and costs as permitted by law;

8.      For prejudgment interest and royalties at the legal rate;

9.      For such other relief as this Court deems just and proper; and

10.     Plaintiff reserve the right to amend the pleadings to include punitive damages pursuant to Fla. Stat. §768.72.

## DEMAND FOR JURY TRIAL

Plaintiffs demand trial by jury on all issues so triable.

Dated: October 26, 2016.

Respectfully Submitted,

THE CASAS LAW FIRM, P.C.

By:  */s/ Ludmila Khomiak*
Ludmila Khomiak, Esq.
Florida Bar No.: 91757
mila@casaslawfirm.com

Sarah M. Cabarcas, Esq.
Florida Bar No.: 90938
sarah@casaslawfirm.com
Brickell Bayview Center
80 S. W. 8th Street, Suite 2000
Miami, FL 33130
Phone: (786) 671-3244
Fax: (786) 671-3243