## IN THE UNITED STATES DISTRICT COURT
## SOUTHER DISTRICT OF FLORIDA
## MIAMI DIVISION

CIELO JEAN GIBSON, et al.
                        Plaintiffs,

v.                                              Case No. 1:16-cv-24548-MGC

BTS NORTH, INC., et al.,
                        Defendants.

## PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT

Plaintiffs Cielo Jean Gibson ("Gibson"), Cora Skinner ("Skinner"), Vivian Kindle ("Kindle"), Alicia Whitten ("Whitten"), Ashley Vickers ("Vickers") Dessie Mitcheson ("Mitcheson"), Devin Justine Takeguma ("Takeguma"), Eva Pepaj ("Pepaj"), Jessica Burciaga ("Burciaga") Lina Posada ("Posada"), Marketa Kazdova ("Kazdova"), Paola Canas ("Canas"), and Tina Quarles ("Quarles") (collectively "Plaintiffs"), by and through the undersigned counsel, hereby file their collective response in opposition to Defendants BTS North Inc., T.K. Promotions, Inc., P.T.G. Entertainment, Inc., and Booby Trap, Inc.'s, (collectively, "Defendants") F.R.C.P. 12(b)(6) Motion to Dismiss ("MTD") Plaintiffs' Complaint (Doc. 10).

## I.  INTRODUCTION

Plaintiffs seek relief from this Court for the damages arising out of Defendants' unauthorized use and theft of Plaintiffs' images and likenesses for the purpose of advertising, solicitation, and promotion of their strip clubs. (Doc. 1, at ¶¶ 1, 7, 57 (Gibson),

1

69 (Skinner), 81 (Kindle), 93 (Whitten), 105 (Vickers), 117 (Mitcheson), 129 (Takeguma), 141 (Pepaj), 153 (Burciaga), 165 (Posada), 177 (Kazdova), 189 (Canas), 201 (Quarles).) Defendants' MTD moves to dismiss claims that Plaintiffs are not advancing and is replete with illogical arguments meant to confuse the issues and this Court. Each Plaintiff has alleged sufficient facts that her image, likeness, and/or identity (as depicted in Exhibits A-M attached to the Complaint) has been misappropriated and used by Defendants in a manner to falsely and deceptively suggest an association with Defendants' business activities and practices.

Throughout their MTD, Defendants engage in a game of smoke and mirrors by contending that Plaintiffs are not the owners of purported copyrights of the images in question and thus, have somehow automatically given up their own *privacy and publicity rights to their likenesses and persona*. (Doc. 10, p. 5.)  As a matter of law, Defendants' contention is without merit, as it fails to distinguish between a photograph as a whole and the image of the *persona* within the photograph. A model (or any person for that matter) has the right to protect herself from the invasion of her privacy and publicity, misappropriation of her likeness or image, and other violations of her identity, as has occurred in the instant case, irrespective of any separate and distinct claim for copyright infringement that she may or may not posses. This Court need only examine the four corners of the Complaint, along with the Exhibits appended thereto, in order to conclude that each claim asserted by Plaintiffs survives Defendants' MTD; therefore, Defendants' Motion to Dismiss should be denied in its entirety.

## II. FACTS

2

Plaintiffs are all highly successful and professional models who make a living by promoting their images and likenesses to various clients and take great pride in their reputation in the modeling industry. At no time did Plaintiffs give Defendants permission to use their images for any marketing and promotional materials, nor did they consent to being associated with Defendants' strip clubs. (Doc. 1, at ¶ 5.) As a direct and proximate result of Defendants' unauthorized publication of Plaintiffs' images, Defendants received benefits, including but not limited to monetary payments, increased promotional, advertising, marketing, and other public relations benefits, notoriety, and publicity, and accepted those benefits while Plaintiffs failed to receive any benefits for the use of their images to which they are entitled to. *Id*. at ¶ 12.

Defendants knew that Plaintiffs' images were not pictures of any of their employees, as neither Defendants nor any agent acting under Defendants' direction sought consent from Plaintiffs to use their images; and none of the Plaintiffs gave Defendants permission to use the images. Defendants know full well who their employees and/or contractors are and were aware that Plaintiffs were not their employees and/or contractors. (*See e.g.,* Doc. 1 at ¶¶ 242, 283 (Gibson).)[1]

## II.  STANDARD OF REVIEW FOR A MOTION TO DISMISS

A complaint is only required to contain "a short statement of the claim showing that the pleader is entitled to relief." *ADT LLC v. Vision Security, LLC*, No. 13-81197-CV, 2014 WL 3764152, at * 3 (S.D. Fla. July 30, 2014). Accordingly, to survive a motion to dismiss

---

[1]   Each Plaintiff pleads the same allegation and the cited section is an example of similar allegations for each of the other Plaintiffs for purposes of expediency and to comport with the page limitation.

3

under *Fed. Rule Civ. Pro.* 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)). A claim is facially plausible where the claimant pleads sufficient factual content to permit the court to reasonably infer that a defendant is liable for the conduct alleged. *Id.* Therefore, a motion to dismiss should be denied "where the pleading asserts non-conclusory, factual allegations that, if true, would push the claim 'across the line from conceivable to plausible.'" *Id.* As such, a court can only consider what is contained within the four corners of the complaint – it must "limit its consideration to the pleadings and exhibits attached to the pleadings, *Gulfstream Media Group, Inc. v. PD Strategic Media*, *Inc.*, No. 12-62056-CIV, 2013 WL 1891281, at * 3 (S.D. Fla. May 6, 2013)" and "accept the plaintiff's allegations as true and evaluate all plausible inferences from those facts in favor of the plaintiff." *Id.*

### III.  ARGUMENT

**A.    Plaintiffs Have Stated A Valid Claim For Violation of Lanham Act - Count I (False Advertising) and Count II (False Endorsement)**

Section 1125(a) of the Lanham Act creates two distinct bases of liability: false association/false endorsement, § 1125(a)(1)(A) and false advertising, § 1125(a)(1)(B)." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S.Ct. 1377, 1384 (2014). In the matter at hand, Plaintiffs' Complaint contends that Defendants violated Subsection (a)(1)(B) of the Lanham act by engaging in *false advertising* and misrepresenting to the public that Plaintiffs were strippers, employees, or endorsers of Defendants' strip clubs (Count I) and that Defendants used Plaintiffs' images to *falsely endorse* Defendants' strip clubs in violation of Subsection (a)(1)(A) (Count II).

4

1.      **Plaintiffs Have Standing To Bring A "False Advertising" Claim Under Subsection (a)(1)(B) Because They Fall Under The Statutory Zone Of Interest And Fulfill The Proximate-Cause Requirement**

In evaluating a false advertising claim under Subsection (a)(1)(B), *Lexmark,* 134 S.Ct. 1377, is the governing authority. In *Lexmark*, the Supreme Court squarely addressed the issue of standing. There, the plaintiff manufactured and sold laser printers and toner cartridges for its printers. Defendant, Static Control, a maker of component parts for refurbished Lexmark cartridges was sued by Lexmark for copyright infringement. *Id*. at 1383-84. Static Control, in turn, counterclaimed for false advertising in violation of § 1125(a)(1)(B), alleging that Lexmark had undertaken a mass lettering campaign advising its customers that it was illegal to purchase Static Control's refurbished cartridges. *Id*.

The Supreme Court held that "a direct application of the zone-of-interests test and the proximate-cause requirement supplies the relevant limits on *who may sue*" under § 1125(a). *Id*. at 1391. In this regard, the Court held that plaintiffs fall within the statutory zone of interests for purposes of § 1125(a) when they "allege an injury to a commercial interest in reputation or sales." *Id*. at 1390. With respect to proximate cause, the Court held that a plaintiff "must show economic or reputational injury flowing directly from the deception wrought by the defendant's advertising; and that occurs when deception of consumers causes them to withhold trade from the plaintiff." *Id*. at 1391. Because Static Control alleged a decrease in sales as a direct result of Lexmark's false representations to consumers, the Court concluded that Static Control fell within the class of persons and entities authorized to assert a Subsection (a)(1)(B) claim. *Id*.

Here, Plaintiffs have standing because they fall within the statutory zone of interests

5

for purposes of Subsection (a)(1)(B) as each Plaintiff suffered an injury to commercial interest in their reputations and the ability to market their images and likenesses. Specifically, Plaintiffs alleged the following in their Complaint, "[Defendants] have caused irreparable harm to [Plaintiff], her reputation and brand by attributing to [Plaintiff] the strip club lifestyle and other salacious activities at [the strip club]." (*See e.g.,* Doc. 1 at ¶ 272 (Gibson).) It is irrelevant whether or not Plaintiffs photographs were risqué in nature.  (Doc. 10, p. 6.)  What is clear, is that Defendants did not have permission or the authority to use Plaintiffs' images to promote their strip club activities. Defendants are a chain of full friction and full nudity strip clubs, and by posting Plaintiffs images on their social media platforms, they absolutely implied that Plaintiffs were in agreement with such conduct as lap dancing, gyrating for money and tips, etc. Similarly, Plaintiffs also satisfy the proximate-cause requirement as each Plaintiff alleged that their reputational injury flowed directly from Defendants' deception and misrepresentation in Defendants' advertisements, to wit, "[Defendants'] unauthorized use of [Plaintiff's] image, likeness and/or identity directly and proximately caused and continue to cause damage to [Plaintiff] in an amount to be determined at trial." (*See e.g.,* Doc. 1 at ¶ 273 (Gibson).)

Once standing has been established, a plaintiff must state a claim for false advertising in violation of  Subsection (a)(1)(B) by showing that "(1) the ads of the opposing party were false or misleading, (2) the ads deceived, or had the capacity to deceive, consumers, (3) the deception had a material effect on purchasing decisions, (4) the misrepresented product or service affects interstate commerce, and (5) the [plaintiff] has been-or is likely to be-injured as a result of the false advertising." *See Johnson &*

6

*Johnson Vision Care, Inc. v. 1–800 Contacts Inc.,* 299 F.3d 1242, 1247 (11th Cir.2002).

Count I of Plaintiffs' Complaint specifically alleges that (1) Defendants' unauthorized use of each Plaintiff's image constitutes false advertising by suggesting or implying that each Plaintiff worked at or was otherwise affiliated with Defendants (*See e.g.,* Doc. 1 at ¶ 222 (Gibson);) (2) Defendants' advertisements using Plaintiffs' images had the capacity to deceive and confuse customers as to whether Plaintiffs were strippers, employees, or endorsers of Defendants' businesses (*See e.g.,* Doc. 1 at ¶ 223 (Gibson;) (3) the unauthorized use misled and enticed consumers to join Defendants, visit Defendants' strip clubs, and participate in events at Defendants' strip clubs (*See e.g,.* Doc. 1 at ¶ 224 (Gibson);) (4) Defendants' advertisements occur in and are targeted to interstate commerce and target persons from different states throughout the United States through the use of World Wide Web, social media and other vehicles of interstate commerce (*See e.g.,* Doc. 1 at ¶ 225 (Gibson);) and (5) Defendants caused irreparable harm to Plaintiffs, their reputation and brand by attributing to Plaintiffs the strip club lifestyle and activities at Defendants' strip clubs (*See e.g.* Doc. 1 at ¶ 232-233 (Gibson).) As such, Plaintiffs have standing to bring a False Advertising Claim under the Lanham Act.

### 2. Plaintiffs Have Plead Sufficient Facts To Bring A "False Association/False Endorsement" Claim Under Subsection 1125 (a)(1)(A)

To establish a claim under false endorsement Subsection (a)(1)(A) of the Lanham Act, a plaintiff must show "(1) that it had prior rights to the mark at issue and (2) that the defendant adopted a mark or name that was the same, or confusingly similar, to plaintiff's mark such that consumers would likely confuse the two." *See Suntree Tech., Inc. v. Ecosense Int'l, Inc.,* 693 F.3d 1338, 1346 (11th Cir.2012). [T]o show "proof of a valid

trademark[,] a plaintiff need not have a registered mark." *Tana v. Dantanna's*, 611 F.3d 767, 773 (11th Cir.2010). In fact, the use of another's unregistered, i.e., common law, trademark can constitute a violation of [the Lanham Act] where the alleged unregistered trademarks used by the plaintiff are so associated with its goods that the use of the same or similar marks by another company constitutes a false representation that its goods came from the same source.' " Id. (quoting *Conagra, Inc. v. Singleton*, 743 F.2d 1508, 1512–13 (11th Cir.1984)).

In this case, Plaintiffs' rights to their personae rise to the level of common law trademarks that are entitled to protection under Section 2 of the Lanham Act.  Specifically, Plaintiffs: models, actresses, entertainers, and spokespeople who earn a living based solely on marketing, endorsing, and advertising products and services for their clients, are a brand that become inseparable from their personas.  In fact, Plaintiffs Images either suggest the basic nature of their product or service, identify the characteristic of their product or service, or suggest characteristics of their product or service that require an effort of the imagination by the consumer in order to be understood as descriptive. In addition, Plaintiffs' brand--the reason their clients seek to hire them--is unique in that it is encompassed in each Plaintiff's identity, i.e., her persona.  Stated differently, the Plaintiffs' personae are so associated with their brand that the use of the same or similar images and likenesses by Defendants constitutes a false representation by Defendants that its goods and services, i.e. strip club activities, come from the same source as Plaintiffs' brand.

In the factually similar matter of *Downing v. Abercrombie & Fitch*, 265 F.3d 994,

1007 (9th Cir. 2001), the court reasoned that the term "mark" applies to the celebrity's *persona* and the level of recognition that the celebrity has among the segment of the public to whom the advertisement is directed. (citing *White v. Samsung Elec. Am., Inc*., 971 F.2d 1395, 1400–1401 (9th Cir. 1992).)  In Downing, the court also analyzed whether likelihood of confusion existed by looking at the following eight factors: (1) the strength of the plaintiff's mark; (2) the relatedness of the goods; (3) the similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) likely degree of purchaser care; (7) defendant's intent in selecting the mark; and (8) the likelihood of expansion of the product lines.

In *Downing*, five surfers depicted in a photograph of a surfing competition held *over thirty (30) years earlier* brought suit against a clothing retailer, which had used their photograph without permission in a surf-themed catalog. The surfers asserted statutory and common law commercial misappropriation claims under the California law as well as a claim under Subsection (a)(1)(A). *Id*.  The *Downing* decision is instrumental because the court applied each of the eight factors in reaching the conclusion that the plaintiffs raised a genuine issue of material fact concerning a likelihood of confusion as to their endorsement. While the court found each factor was present in favor of the plaintiffs, it is noteworthy to highlight the court's determination that the similarity of likeness (the third factor) was clear because the photograph at issue was an actual photograph of the plaintiffs, and that a jury could reasonably find that Abercrombie intended to indicate to consumers that the plaintiffs were endorsing Abercrombie's merchandise. *Id*. at 1008.

In another factually similar matter of *Prudhomme v. Procter & Gamble Co.*, 800

9

F.Supp. 390 (E.D. La. 1992), a chef sued two companies alleging that their use of an actor bearing resemblance to the plaintiff in coffee commercials involved false and misleading advertisement *and* false endorsement claims under the Lanham Act as well as invasion of privacy and unfair competition claims under Louisiana law. In analyzing the elements of consumer confusion, the court found that the plaintiff alleged sufficient facts to satisfy all the factors of the "likelihood of confusion" test and established a false endorsement claim under the Lanham Act. Significantly, the court focused on how the "look-alike" actor used in defendants' commercial bore a "strong resemblance" to the plaintiff and that defendants were attempting to capitalize on plaintiff's image without his consent. *Id*. at 393.

That said, even plaintiffs with little "fame" or "just a pretty face" (as Defendants chose to characterize Plaintiffs throughout its MTD (Doc. 10, pp. 4, 5, 7, 8, 10, 11, 13)) have been able to bring a claim under Subsection (a)(1)(A) of the Lanham Act. In *Arnold v. Treadwell*, 642 F.Supp.2d 723 (E.D. Mich. 2009) the plaintiff, who was an aspiring model was able to establish the eight elements of false endorsement under the Lanham Act. The defendants in *Arnold* claimed that as a general rule, the image and likeness of an average person, *i.e.* a non-celebrity such as the plaintiff, cannot function as a trademark and cannot receive any protection from the Lanham Act. *Id*. at 733. The court disagreed and held that "the Lanham Act itself does not have a requirement that a plaintiff must be a celebrity." *Id*. at 735.  In the matter of *Condit v. Star Editorial, Inc.* 259 F.Supp.2d 1046 (E.D.Cal.2003), the court found that "a majority of circuits require a commercial interest in a mark, that is, at a minimum, a present intent to commercialize a mark," and that in order to sustain her false association claim, the plaintiff must "at least allege an existing

10

intent to commercialize an interest in identity." *Id*. at 1052. In *Arnold*, the plaintiff was able to introduce evidence of her present intent to commercialize her identity. She offered evidence that she sought modeling jobs and agreed to posting her image on a modeling website in hopes of generating modeling jobs. *Id*.  The court found that plaintiff's evidence showed, at the minimum, "an existing intent to commercialize an interest in identity" for purposes of stating a Lanham Act claim. *Id*.

In this case, Plaintiffs have alleged sufficient facts to satisfy the factors necessary to establish the existence of a common law "trademark" and "consumer confusion." Applying all the necessary elements of false endorsement of the Lanham Act to the facts at hand, the first element of the strength or level of recognition of plaintiff's mark weighs in favor of Plaintiffs. The Complaint sufficiently pleads that each plaintiff is a well-known and reputable model with wide recognition and large social media following. (*See e.g.,* Doc. 1 at ¶ 55 (Gibson).) Further, each Plaintiff is in the business of commercializing her identity and selling her images to reputable brands and companies who look to promote their products with beautiful models for profit. (*See e.g.,* Doc. 1 at ¶ 238 (Gibson).)

Defendants' customers also fall within a subset of the demographic that is interested in beautiful women. Both Plaintiffs and Defendants vie for the same dollars from the same demographic consumer group, *to wit,* men who are interested in and attracted to beautiful women. As such, Plaintiffs contend that an unauthorized use of their images to promote a strip club creates an undeniable confusion in Defendants consumers' minds, which leads to competitive injury to Plaintiffs. (*See e.g.,* Doc. 1 at ¶¶ 240-241 (Gibson).) For this reason, the second element of relatedness of the goods or services of false endorsement

11

also weights in favor of Plaintiffs.

The third element, similarity of likeness, falls squarely in favor of the Plaintiffs since the images in question *are the actual images* of Plaintiffs. The fourth element of actual confusion is not required to sustain a false endorsement claim, as this is but one of eight factors. Nevertheless, the Plaintiffs believe discovery will establish actual confusion. The fifth element (marketing channels used) also weighs in Plaintiffs' favor. Specifically, the parties compete in the same markets and use similar marketing channels in those markets to sell their services, *e.g.* websites and social media such as Twitter, Facebook. (*See e.g.,* Doc. 1 at ¶ 240 (Gibson).)

The sixth element of likely degree of purchaser care also favors Plaintiffs. As stated above, Defendants are in the business of promoting beautiful women and use advertisements to entice the public to visit their strip clubs to watch these women perform. Any prudent consumer would be strongly influenced by an image of a beautiful woman on a strip club's advertising – albeit, only to find out that the beautiful woman in the ad does not actually work at Defendants' establishments. (*See e.g.,* Doc. 1 at ¶ 242 (Gibson).)

The seventh element of Defendants' intent also favors Plaintiffs. Plaintiffs have alleged that Defendants intended to profit by creating confusion among consumers with respect to whether Plaintiffs had endorsed their products and services. (*See e.g.,* Doc. 1 at ¶ 243 (Gibson).) Moreover, Defendants knew full well that Plaintiffs did not work at their establishment; as such they had knowledge of the falsity of their marketing material. Plaintiffs' images are the focal point of each of Defendants' advertisement and the entire emphasis is on Plaintiffs' images.

12

The last element of the likelihood of expansion of product lines also favors Plaintiffs. Because Plaintiffs are reputable models who endorse prestigious brands, an association with strip clubs will certainly prevent them from being hired by any reputable company to promote a high-end product or service. (*See e.g.,* Doc. 1 at ¶ 247 (Gibson).)

### 3.    Defendants' sole reason for dismissing Counts I and II is based on allegations outside the four corners of the Plaintiffs' Complaint

Defendants move to dismiss Counts I and II on a legal impossibility that it is a standard business practice for "…Plaintiffs [to] absolutely [give] up their *privacy and publicity rights to their likeness and persona*." (Doc. 10, p. 6.) This argument is inadmissible and calls for expert testimony as to what may or may not be the standard in the modeling industry. Further, "nothing so exclusively belongs to a man or is so personal and valuable to him as his name, inasmuch as his reputation and the character he has built up are inseparably connected with it." *Battaglia v. Adams*, 164 So. 2d 195 (Fla. 1964). Thus, one would never be able to give up her privacy right to her persona, reputation or likeness.

Defendants' other argument deals with failure to distinguish a photograph that might or might not be copyrighted and an image within that photograph. (Doc. 10, p. 6.) In discussing that issue, the *Downing* Court quoted the venerable *Nimmer on Copyright § 1.01(B)(1)(c)* at 1-23 (1999): "The "work" that is the subject matter of the right of publicity is *the persona*, i.e., the name and likeness of a celebrity or other individual. A persona can hardly be said to constitute a "writing" of an "author" within the meaning of the copyright clause of the Constitution. A fortiori it is not a "work of authorship" under the Act. Such

name or likeness does not become a work of authorship simply because it is embodied in a copyrightable work such as a photograph." *Downing*, supra, 265 F.3d at 1003-1004.

In *Timed Out, LLC v. Youabian, Inc.,* 177 Cal. Rptr. 3d 773, 783 (Cal. Ct. App. 2014), the court also differentiated publicity rights from copyright infringement claims. Specifically, the court held "the photographs displayed on defendants' website, as pictorial works of authorship, are protected by the Copyright Act. However, it is not the publication of the photographs themselves that is the basis for plaintiffs' claims. Rather, it is defendants' use of the models' likenesses pictured in the photographs to promote defendants' business that constitutes the alleged misappropriation." For those reasons, Defendants' analogies and arguments are completely nonsensical and should not be entertained by this Court.

**B.    This Court should exercise Supplemental Jurisdiction as it previously did in a factually similar matter and precisely because there is conflict among the U.S. District Courts in Florida**

Although there is a conflict among lower courts on the issue of the federal district courts' supplemental jurisdiction in factually similar cases, this Court should look to factually similar matter of *Jaime Faith Edmondson, et al. v. Caliente Resorts, LLC d/b/a Caliente Resort, et al.*, Case No. 8:15-cv-2672-T-23TBM.  The facts and claims in the *Edmondson* matter are almost identical to the facts and claims in the case at hand. In *Edmondson*, sixteen (16) professional models brought suit against defendants, a nudist resort and their owner for using plaintiffs' images and likenesses without permission in various promotions of their swingers resort in Tampa, Florida.  In *Edmonson*, defendants argued that plaintiffs had failed to state a cause of action under the Lanham Act for false

14

advertising, violation Fla. Stat. § 540.08 for unauthorized publication of name and likeness, civil theft, unjust enrichment, and negligence. The Middle District of Florida disagreed and denied defendants' Motion to Dismiss as to all counts except negligence. This Court should follow the ruling in *Edmondson* and exercise supplemental jurisdiction over Plaintiffs' state law claims, especially because Defendants regurgitate the same arguments the Defendants in the *Edmondson* matter posed to the court in their unsuccessful MTD. Furthermore, Plaintiff Cielo Jean Gibson has similar cases pending in this and other federal courts, to wit: U.S. District Court for the Southern District of Florida, U.S. District Court for the Middle District of Florida, U.S. District Court for the Eastern District of New York, and U.S. District Court for the Southern District of New York.[2]

## C. Plaintiffs Have Stated A Valid Claim For Violation Of Sec. 540.08, Fla. Stat., Unauthorized Publication Of Plaintiffs' Images - Count III

Count III states a claim for violation of each Plaintiff's statutory Right of Publicity under Section 540.08, Florida Statutes, which prohibits the use of another person's likeness, without consent, "for purposes of trade or for any commercial or advertising purpose." Defendants contend that, because, Plaintiffs alleged no ownership rights in the

---

[2] Gibson et al. Resort At Paradise Lakes, LLC et al, Case No.: 8:2016-cv-00791 (U.S. District Court, Middle District of Florida); Gibson et al. v. White, Case No.: 3:2016-cv-00392 (U.S. District Court, Middle District of Florida); Van Derham et al. v. Bullseye Restaurant, Inc., et al. Case No.: 2:2016-cv-00490 (U.S. District Court, Eastern District of New York); Edmondson et al v. RCI Hospitality Holdings, Inc. et al, Case No.: 1:2016-cv-02242 (U.S. District Court, Southern District of New York); Voronina et al v. Scores Holding Company Inc., et al, Case No.: 1: 2016-cv-02477 (U.S. District Court, Southern District of New York) Ruiz et al v. La Place, Inc. et al, Case No.: 2:15-cv-07104-JMA-ARL (U.S. District Court, Eastern District of New York); Rosario et al v. BV Venture Group, Ltd et al, Case No.: 1:16-cv-00201-NGG-ST (U.S. District Court, Eastern District of New York); Taylor et al v. 44th Enterprises Corp. et al, Case No.: 1:16-cv-00567-AJN (U.S. District Court, Southern District of New York) Gibson et al v. SCE Group, Inc. et al, Case No.: 1:15-cv-08168-ER (U.S. District Court, Southern District of New York) Lancaster et al v. Ocala Hospitality Group, LLC, Case No.: 5:16-cv-00662 (U.S. District Court, Middle District of Florida)

respective "photographs," Plaintiffs lack standing to pursue these claims. (Doc. 10, at 15.) The MTD also contends that it has become an "industry standard" for photographers to have models sign releases relinquishing all rights to photographs during a shoot. *Id.* Regardless of what may or may not be the standard in the modeling industry, what matters is what Plaintiffs have alleged in their Complaint and the Court can only look at the four corners of that Complaint. In other words, Defendants' arguments are completely premature and are not appropriate at a Motion to Dismiss stage. Florida Courts have consistently held that the use of a person's likeness to advertise one's business without authorization is a violation of section 540.08. *See e.g.*, *Miller v. Anheuser Busch, Inc.,* 348 Fed. Appx. 547 (11th Cir. 2009) (model stated claim for misuse of image after expiration of release and partially reversing entry of summary judgment). For those reasons, Plaintiffs respectfully submit that the Motion to Dismiss should fail as to Count III.

### D.   Plaintiffs Have Stated A Valid Claim For Common Law Invasion Of Privacy - Misappropriation - Count IV

As recognized in *Agency for Health Care Admin. v. Assoc. Indus. of Fl.*, 678 So. 2d 1239 (Fla. 1996), there are four categories of the common law invasion of privacy. The first element of common law invasion of privacy, the commercial misappropriation of likeness, coincides with the elements of unauthorized publication of name or likeness in violation of Fla. Stat. § 540.08. *Lane v. MRA Holdings, LLC*, 242 F. Supp. 2d 1205, 1220-21 (M.D. Fla. 2002) (citing *Heath v. Playboy Enters., Inc.,* Supp. 1145, 1147–48 (S.D. Fla. 1990). Defendants' main line of attack against Plaintiffs' common law claim is that "[r]epublication of facts already publicized elsewhere cannot provide a basis for an invasion of privacy claim." *Id.* at 1148. (Doc. 10 at 16.) The case cited by Defendants deals

16

with the <u>third</u> category of the right to privacy violations – public disclosure of private facts – the dissemination of truthful private information, which a reasonable person would find objectionable. The case at bar does not deal with the third category of the right to privacy, instead it deals with the first category of the invasion of privacy – Defendants' appropriation of professional models' images and likenesses for Defendants' marketing and promotional benefit. Therefore, the defense of "republication of facts" is not applicable here, as it pertains to a completely different category of privacy rights violations.

Here, Defendants used Plaintiffs' images in advertisements for their own commercial benefit without Plaintiffs' consent. In doing so, Defendants recklessly and/or deliberately associated Plaintiffs with nude dancing and sexually explicit behavior by setting them out as spokespersons, strippers, and endorsers of Defendants' strip clubs. As a result, Plaintiffs have presented a proper claim under the common law invasion of privacy.

**E.      Plaintiffs Have Stated A Valid Claim For Civil Theft Under Fla. Stat. § 772.11 For Violation Of Fla. Stat. § 812.014 - Count V**

Defendants challenges Count V on grounds that Plaintiffs failed to make a proper written demand on Defendants prior to filing the Complaint. (Doc. 10, at 17,18.) This contention is false. Exhibit N to the Complaint is a copy of Plaintiffs' detailed Cease and Desist letters served on Defendants more than one (1) year prior to filing the original Complaints with this Court.

Defendants further challenge Count VI for failure to plead the requisite intent element, i.e., "felonious intent." *Id.* at 18. However, Florida has firmly established that plaintiffs are not required to plead intent at this early stage in the case much less show any

17

facts by "clear and convincing evidence." *Pinellas Fed. Credit Union v. Reynolds*., No. 8:12-cv-14-T-30MAO, 2012 WL 1069814, at * 3 (M.D. Fla. Mar. 29, 2012) ("PFCU moves to dismiss Plaintiffs' civil theft and conversion counterclaims, with prejudice, because she does not allege "felonious intent," with respect to the civil theft claim… PCFU's arguments are without merit at this stage because… Florida law does not require the pleading of an element of felonious intent in order to state a civil theft claim.").

Specifically, this Court in *Lajos v. DuPont Pub, Inc*., 888 F. Supp. 143 (M.D. Fla. 1995) reasoned that plaintiff's failure to allege felonious intent in the complaint did not require dismissal of civil theft claim against the defendant, which used plaintiff's artwork for purposes outside of the parties' agreement and refused to return the work after the authorized use on a magazine cover. "Plaintiff's allegations, taken as true, raise the possibility that Plaintiff retained property rights in the artwork. This ***possibility of retained property rights*** casts doubt upon the claim of absence of plead intent in the [c]omplaint based upon the lack of specific words of intent. Plaintiff therefore may have intended that the allegations of fact carried with them ***the imputed intent*** required to establish a claim for civil theft." *Id*. at 146 (emphasis added). The holding in *Lajos* is consistent with the precedent which establishes that criminal intent in connection with a claim for civil theft of an image is tantamount to intent to use another's image with actual knowledge such use was unauthorized. *See Century Sr. Servs. v. Consumer Health Ben. Ass'n, Inc*., 770 F. Supp. 2d 1261, 1266 (S.D. Fla. 2011) (ruling that plaintiff's allegations adequately plead felonious intent because the plaintiff's allegations stated that defendant knowingly obtained plaintiff's property with intent to appropriate the property.).

18

Notwithstanding the above, Plaintiffs' Complaint alleges that Defendants misappropriated and used each Plaintiff's image with actual or constructive knowledge that such use was unauthorized and with the intent to make use of the purloined images and, further, that Defendants acted with actual or constructive knowledge of the high probability that injury or damage would result to each Plaintiff. (*See e.g.,* Doc. 1, at ¶ 281 (Gibson).) For the foregoing reasons, Defendants' Motion to Dismiss should fail as to Count VI.

## F.  <u>Plaintiffs Have Stated A Valid Claim For Conversion-Count VI</u>

Defendants challenges Count VI on the ground that Plaintiffs have failed to allege ownership in the photographs and that they were permanently or for indefinite time deprived of property that they owned. (Doc. 1, at 19.) On the contrary, Plaintiffs' Complaint specially states that Plaintiffs are the exclusive owners of all rights, title, and interest to their images, likeness and/or identity. (*See e.g.,* Doc. 1, at ¶ 286 (Gibson).) In addition, in *Warshall v. Price*, the Court established that conversion is an act of dominion wrongfully asserted over another's property inconsistent with his ownership therein and conversion is an appropriate cause of action even if the specific property "converted" has no actual value. 629 So.2d 903, 904 (Fla. 4th DCA 1993) (citing *Tourismart of Am., Inc. v, Gonzales*, 498 So. 2d 469, 470 (Fla. 3d DCA 1986) (holding that airline tickets, which have almost no value as property considering they are mere pieces of paper, are capable of being converted because it is not the tickets, but the service the tickets represent which is "converted").) Here, Defendants converted Plaintiffs' images to their own use with intent to permanently deprive Plaintiffs of the choice to determine where their images can appear and who can use them for what purpose. (Doc. 1, at ¶¶ 10,11, 230 (Gibson). Defendants'

19

conversion also deprived Plaintiffs of the right to negotiate over reasonable bargained for compensation, the right to say "no" to Defendants' use of the images, and the right to protect their images from harm at the hands of Defendants. In light of the foregoing, Defendant's Motion to Dismiss fails as to Count VI.

**G.**   **Plaintiffs Have Stated A Valid Claim for Unjust Enrichment - Count VII**

Defendants challenge Count VII on grounds that Plaintiffs fail to plead facts to satisfy each element of an unjust enrichment claim. (Doc. 10, pp. 19-20.) Defendants' contentions are false. The Complaint pleads that each Plaintiff conferred a benefit on the Defendants by virtue of Defendants' usage of her image without compensation (*See e.g.,* Doc. 1, at ¶ 293 (Gibson);) that Defendants were aware that each Plaintiff's image was valuable (*See e.g.,* Doc. 1, at ¶ 295 (Gibson);) that Defendants were aware of the resulting benefit from the resulting usage of each Plaintiff's image, likeness and/or identity (*See e.g.,* Doc. 1, at ¶ 296 (Gibson);) that Defendants had retained profits and other benefits conferred upon them by each Plaintiff's image, likeness and/or identity to promote and advertise Defendants' businesses (*See e.g.,* Doc. 1, at ¶ 296 (Gibson);) and that it would be inequitable for Defendants to retain the benefits conferred upon them by using any images, likeness and/or identity without paying fair value for the images. (*See e.g.,* Doc. 1, at ¶ 297 (Gibson).) Given the extensive facts pleaded in support of each Plaintiff's unjust enrichment claim, Defendants' Motion to Dismiss should fail as to Count VII.

## IV.  CONCLUSION

For all the reasons detailed herein, Plaintiffs respectfully request that the Court deny Defendants' Motion to Dismiss and grant Plaintiffs such further relief as justice requires.

20

Dated: January 10, 2017.

Respectfully submitted,

By: */s/ Sarah Cabarcas Osman*
Sarah Cabarcas-Osman, Esq.
Florida Bar No.: 90938
sarah@casaslawfirm.com

Ludmila Khomiak, Esq.
Florida Bar No.: 91757
mila@casaslawfirm.com

THE CASAS LAW FIRM, P.C.
80 S. W. 8th St., Suite 2000
Miami, FL 33130
Phone: (786) 671-3244
Fax: (786) 671-3243
*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 10, 2017, I electronically filed the foregoing

with the Clerk of the Court by using CM/ECF system which will send a notice of electronic

filing to the following:

Luke Lirot, Esq.
Law Offices of Luke Lirot, P.A.
2240 Belleair Road, Suite 190
Clearwater, Florida 33764
Luke2@lirotlaw.com
Attorneys for Defendant

Ludmila Khomiak, Esq.
The Casas Law Firm, P.C.
80 S. W. 8th St., Suite 2000
Miami, FL 33130
Attorneys for Plaintiffs

By: */s/ Sarah Cabarcas-Osman*
Sarah Cabarcas-Osman, Esq.
Florida Bar No.: 90938

21