**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION**

| | |
|---|---|
| CIELO JEAN GIBSON, CORA SKINNER, VIVIAN KINDLE, ALICIA WHITTEN, ASHLEY VICKERS, DESSIE MITCHESON, DEVIN JUSTINE TAKEGUMA, EVA PEPAJ, JESSICA BURCIAGA, LINA POSADA, MARKETA KAZDOVA, PAOLA CANAS, and TINA QUARLES, <br> Plaintiffs, <br><br> - against - <br><br> BTS NORTH, INC. d/b/a BOOBY TRAP; T.K. PROMOTIONS, INC. d/b/a BOOBY TRAP; P.T.G. ENTERTAINMENT, INC. d/b/a BOOBY TRAP; and BOOBY TRAP, INC. d/b/a BOOBY TRAP, <br> Defendants. | Case No.: 1:16-CV-24548-MGC |

## PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

COME NOW, the Plaintiffs, CIELO JEAN GIBSON, CORA SKINNER, VIVIAN KINDLE, ALICIA WHITTEN, ASHLEY VICKERS, DESSIE MITCHESON, DEVIN JUSTINE TAKEGUMA, EVA PEPAJ, JESSICA BURCIAGA, LINA POSADA, MARKETA KAZDOVA, PAOLA CANAS, and TINA QUARLES (each a "Plaintiff", and, collectively, the "Plaintiffs") pursuant to Fed. R. Civ. P. 37, and Local Rule 3.04, by and through their undersigned attorneys, pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 56.1, hereby move for summary judgment against Defendants BTS NORTH, INC. d/b/a BOOBY TRAP; T.K. PROMOTIONS, INC. d/b/a BOOBY TRAP; P.T.G. ENTERTAINMENT, INC. d/b/a BOOBY TRAP; and BOOBY TRAP, INC. d/b/a BOOBY TRAP ( collectively "Clubs" or "Booby Trap") for False Advertising in violation of the Lanham Act; False Endorsement in violation of the Lanham Act; Violation of Fla. Stat. § 540.08: Right of Publicity- Unauthorized Misappropriation

1

of Name/Likeness; Violation of Common Law Right of Publicity- Unauthorized Misappropriation of Name or Likeness; Violation of Fla. Stat. § 501.204: Florida's Deceptive and Unfair Trade Practices Act; Violation of Fla. Stat. § 812.014 and Fla. Stat. § 772.11: Civil Theft; Common Law Conversion; and Unjust Enrichment against all Defendants and in support, Plaintiffs state as follows:

## STATEMENT OF UNDISPUTED FACTS [SOUF]

**A.    Plaintiffs' Background and Work in the Modeling and Entertainment Industries**

1.    Each Plaintiff is a professional model, actress and/or businesswoman who earns or has earned a living by promoting her image, likeness and/or identity (collectively "image") to select clients, commercial brands, media and entertainment outlets. (*See generally* Gibson Dec. [**Ex. 1**]; Skinner Dec. [**Ex. 2**]; Kindle Dec. [**Ex. 3**]; Whitten Dec. [**Ex. 4**]; Vickers Dec. [**Ex. 5**]; Mitcheson Dec. [**Ex. 6**]; Takeguma Dec. [**Ex. 7**]; Pepaj Dec. [**Ex. 8**]; Burciaga Dec. [**Ex. 9**]; Posada Dec. [**Ex. 10**]; Kazdova Dec. [**Ex. 11**]; Canas Dec. [**Ex. 12**]; and Quarles Dec. [**Ex. 13**].)

2.    Each Plaintiff relies on her professional reputation and own brand for modeling, acting, hosting and other professional opportunities. *Id.*

3.    Each Plaintiff has worked to establish herself as reliable, reputable and professional. *Id.*

4.    Each Plaintiff seeks to control the use and dissemination of her image, is consulted on and participates in the negotiation, vetting and selection of modeling, acting, brand spokesperson or hosting engagements, and each has been vigilant in building and protecting her brand from harm, taint or other diminution. *Id.*

5.     In all instances of commercial marketing and promotion of her image, each Plaintiff has negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed upon compensation. *Id*.

6.     No Plaintiff has ever been employed by, contracted with or otherwise given permission or consent to Defendants in any way for the use of her image by Defendants to advertise, promote, market or endorse Defendants' full friction and full nudity lifestyle activities and business. *Id*.

7.     Defendants did not, at any time, seek or obtain permission or authority to use or alter any Plaintiff's image to advertise, promote, market or endorse Defendants full friction and full nudity lifestyle activities and business on Defendants' social media pages. *Id*.

8.     Even if asked by Defendants, no Plaintiff would, under any circumstances and regardless of the compensation offered, have permitted or consented to the use of her image by Defendants to advertise, promote, market or endorse Defendants' full friction and full nudity lifestyle activities and business, even if asked in advance. *Id*.

9.     Defendants used one or more images of each Plaintiff in one or more ways to advertise and promote their commercial activities consisting of full friction and full nudity lifestyle activities at Booby Trap. (Booby Trap Imagery [**Ex. 14**].)

10.     No Plaintiff was offered or paid any compensation by Defendants for the use of her image to advertise, promote, market or endorse Defendants' full friction and full nudity lifestyle activities and business. *Id*.

11.     Because Defendants used each Plaintiff's image without her consent to advertise and promote Defendants' full friction and full nudity lifestyle activities and business, each Plaintiff is entitled to be compensated for at least the calculated fair market value for each use of each

Plaintiff's image.  (*See* Chamberlin Report [**Ex. 15**]; *see generally* Gibson Dec. [**Ex. 1**]; Skinner Dec. [**Ex. 2**]; Kindle Dec. [**Ex. 3**]; Whitten Dec. [**Ex. 4**]; Vickers Dec. [**Ex. 5**]; Mitcheson Dec. [**Ex. 6**]; Takeguma Dec. [**Ex. 7**]; Pepaj Dec. [**Ex. 8**]; Burciaga Dec. [**Ex. 9**]; Posada Dec. [**Ex. 10**]; Kazdova Dec. [**Ex. 11**]; Canas Dec. [**Ex. 12**]; and Quarles Dec. [**Ex. 13**].)

**B.    Defendants Booby Trap**

12.    Defendant BTS North, Inc. has owned and operated a full friction and full nudity gentlemen's club named Booby Trap ("Booby Trap Doral") located at  5325 NW 77th Avenue, Miami, Florida 33166.  Booby Trap Doral is a strip club that engages in the business of entertaining its patrons with nude female dancing and alcohol.  Booby Trap Doral operates https://www.facebook.com/Booby-Trap Doral-562566280563479/?fref=ts as well as other social media accounts and website through which it advertises its business, events, and parties. For many of these events, images of one or more of the Plaintiffs were used to market and promote Booby Trap Doral's events.

13.    Defendant T.K. Promotions, Inc. has owned and operated a full friction and full nudity gentlemen's club named Booby Trap ("Booby Trap South Miami") located at 5922 S. Dixie Highway, South Miami, Florida 33143.  Booby Trap South Miami is a strip club that engages in the business of entertaining its patrons with nude female dancing and alcohol.  Booby Trap South Miami operates https://www.facebook.com/BTs-South Miami-812152195566200/?fref=ts as well as other social media accounts and websites through which it advertises its business, events, and parties. For many of these events, images of one or more of the Plaintiffs were used to market and promote Booby Trap South Miami's events.

14.    Defendant P.T.G Entertainment, Inc. has owned and operated a full friction and full nudity gentlemen's club named Booby Trap ("Booby Trap Pompano") located at 2840

Hammondville Road, Pompano Beach, Florida 33069. Booby Trap Pompano is a strip club that engages in the business of entertaining its patrons with nude female dancing and alcohol. Booby Trap Pompano operates https://www.facebook.com/theboobytrap. net/?fref=ts as well as other social media accounts and websites through which it advertises its business, events, and parties. For many of these events, images of one or more of the Plaintiffs were used to market and promote Booby Trap Pompano's events.

15.     Defendant Booby Trap, Inc. has also owned and operated a full friction and full nudity gentlemen's club named Booby Trap ("Booby Trap Pompano") located at 2840 Hammondville Road, Pompano Beach, Florida 33069. Booby Trap Pompano is a strip club that engages in the business of entertaining its patrons with nude female dancing and alcohol. Booby Trap Pompano operates https://www.facebook.com/theboobytrap.net/?fref=ts as well as other social media accounts and websites through which it advertises its business, events, and parties. For many of these events, images of one or more of the Plaintiffs were used to market and promote Booby Trap Pompano's events.

16.     All four Defendants knew they did not possess nor had ever even seen any releases executed by any of the Plaintiffs giving authority for Defendants to use the Plaintiffs' images; nor did Defendants ever receive any releases or other proof that any other third party had any authority to use Plaintiffs' images. (Gori Depo. [**Ex. 21**] 117:18-23, 123:10-13; 123:23-124:5; Petinato Depo. [**Ex. 19**] 12:11-23; *see generally* Gibson Dec. [**Ex. 1**]; Skinner Dec. [**Ex. 2**]; Kindle Dec. [**Ex. 3**]; Whitten Dec. [**Ex. 4**]; Vickers Dec. [**Ex. 5**]; Mitcheson Dec. [**Ex. 6**]; Takeguma Dec. [**Ex. 7**]; Pepaj Dec. [**Ex. 8**]; Burciaga Dec. [**Ex. 9**]; Posada Dec. [**Ex. 10**]; Kazdova Dec. [**Ex. 11**]; Canas Dec. [**Ex. 12**]; and Quarles Dec. [**Ex. 13**]).

17.     In short, Defendants engaged in a marketing campaign with full knowledge that their internet postings and social media sites contained imagery of non-employee models who did not give them permission to post their images for purposes of advertising Booby Trap strip clubs or the events taking place at the Booby Trap Strip clubs. *Id.*, Gori Depo. [**Ex. 21**] 122:22-123-13; Gettinger Depo. [**Ex. 18**] 22:13-25; Fernandez Depo. [**Ex. 17**] 7:3-7.

18.     Booby Trap knew that not one Plaintiff had ever been employed by, contracted with or otherwise consented to the use of her image to advertise, market or promote the Booby Trap Strip clubs or any full friction and full nudity lifestyle activity hosted at the Clubs. *Id.*

19.     According to Plaintiffs' expert, Dr. Martin Buncher, by using each Plaintiff's image in one or more advertisements for Booby Trap strip clubs, Defendants confused and deceived consumers and potential consumers into believing that Plaintiffs knowingly permitted and consented to having their images used, agreed to endorse Defendants' businesses and the full friction and full nudity lifestyle activities at the Clubs, and were likely to participate in the full friction and full nudity lifestyle activities advertised. (Buncher Decl. [**Ex. 16**] p. 12-13, 16-17.)

**C.    Each Plaintiff Is Entitled to Compensation of a Sum Certain for Defendants' Theft of Her Image(s)**

20.     Because none of the Booby Trap Clubs had authority or permission to use or alter any Plaintiff's image for advertisements, each Plaintiff is entitled to compensation at least equivalent to the fair market value, that is, a value approximating what each Plaintiff, if compelled to provide a value retrospectively, would value the sale of a single image for a single usage to this particular set of disreputable buyers.  (Chamberlin Decl. [**Ex. 15**]; *see generally* Gibson Decl. [**Ex. 1**]; Skinner Dec. [**Ex. 2**]; Kindle Dec. [**Ex. 3**]; Whitten Dec. [**Ex. 4**]; Vickers Dec. [**Ex. 5**]; Mitcheson Dec. [**Ex. 6**]; Takeguma Dec. [**Ex. 7**]; Pepaj Dec. [**Ex. 8**]; Burciaga Dec. [**Ex. 9**]; Posada Dec. [**Ex. 10**]; Kazdova Dec. [**Ex. 11**]; Canas Dec. [**Ex. 12**]; and Quarles Dec. [**Ex. 13**].)

21.     While retrospectively estimating the fair market value of use of any Plaintiff's image in a situation where an image has been stolen is distinct from prospective negotiation in the ordinary course, based on each Plaintiff's respective experience in the modeling and entertainment industries, and extensive experience participating in negotiations over contracts, each Plaintiff has reviewed and agreed that the fair market valuation range proffered by Plaintiffs' expert aligns with what they would each value the use of their own images in light of the theft by the Defendants. *Id*.

**D.     Defendants' Own Employees Have Created and Posted the Subject Advertisements to Defendants' Social Media Pages**

22.     Defendants' office manager, Patricia Petinato has testified that promotions such as the subject images in this case are usually created by the managers of the Clubs. (Petinato Depo. [**Ex. 19**] 51:5-55:12, 57:10-18.)

23.     Phil Gori, the corporate representative of all four Defendants and Eric Otero, a bookkeeper for the Clubs have also testified that although the Clubs retained the services of Darren Franclemont also known as Duffy also known as J Dog to do certain advertising work for them, Mr. Franclemont only did print advertising, radio promotions, and pay-per-view ordering for the Clubs. (Gori Depo. [**Ex. 21**] 50:18-51:4, 121:17-19; Otero Depo. [**Ex. 20**] 33:17-34:23.)

24.     When asked who is responsible for social media promotions and management for the Clubs, Mr. Gori testified that he does not know. (Gori Depo. [**Ex. 21**] 56:15-57:2.) Mr. Gori did not testify that Mr. Franclemont created and posted the subject advertising. *Id*. at 122:13-19.

25.     Of two hundred ninety-eight (298) J Dog itemized invoices produced by Defendants, not one of the invoices contained a change for social media advertising, posting or promotion. (*See generally*, J Dog Invoices [**Ex. 22**].)

**DISCUSSION**

**A.     Standard of Review**

26.     The Court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The existence of some factual disputes – as opposed to genuine disputes of material fact –will not defeat a motion for summary judgment.  *One Hour Air Conditioning Franchising, L.L.C. v. Jerry's Comfort Experts, Inc.*, No. 8:14-CV-994-T-EAK, 2015 WL 2095199, at *2 (M.D. Fla. May 5, 2015).  A "genuine" dispute as to a material fact exists if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Coregis Ins. Co. v. McCollum*, No. 96-1068-CIV-T-17B, 1997 WL 128132, at *1 (M.D. Fla. Mar. 6, 1997) (citing *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986)).  The Court must "draw all inferences from the evidence in the light most favorable to the non-movant and resolve all reasonable doubts in that party's favor."  *U.S. v. Nguyen*, No. 8:13-CV-1538-T-24, 2013 WL 4520931, at *1 (M.D. Fla. Aug. 26, 2013).

**B.     Plaintiffs are entitled to summary judgment on COUNT I (Violation of the Lanham Act, 15 U.S.C. § 1125(a): False Advertising)**

27.     The Lanham Act, 15 U.S.C. § 1125(a) confers upon a plaintiff a cause of action against a defendant that uses such plaintiff's image in an advertisement, without authorization, to falsely claim that such plaintiff endorses the defendant's business.  *See Allen v. Nat'l Video, Inc.*, 610 F. Supp. 612, 626 (S.D.N.Y. 1985) ); *see also ETW Corp. v. Jireh Pub., Inc.,* 332 F.3d 915, 924 (6th Cir. 2003) (unfair competition and false advertising claim existed where Tiger Woods' image and likeness were used for commercial purposes without his authorization); *Seale v. Gramercy Pictures*, 949 F. Supp. 331, 340 (E.D. Pa. 1996).  Standing is not limited to direct competitors of a defendant, but extends to anyone that can "plead (and ultimately prove) an injury

to a commercial interest in sales or business reputation proximately caused by the ... [defendant's] misrepresentations." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1395, 188 L. Ed. 2d 392 (2014).  Plaintiffs suffered an injury to a commercial interest in their business reputations proximately caused by Defendants' misrepresentations and Plaintiffs have satisfied all elements of a Lanham Act false advertising claim.  To establish a violation of 15 U.S.C. § 1125(a) for false advertising, Plaintiffs must prove (1) Defendants' advertisements were false or misleading; (2) the advertisements deceived, or had the capacity to deceive, consumers; (3) the deception had a material effect on purchasing decisions; (4) the misrepresented product or service affects interstate commerce; and (5) Plaintiffs have been, or are likely to be, injured as a result of the false advertising.  *Ameritox, Ltd. v. Millenium Labs., Inc.*, 889 F. Supp. 2d 1304, 1314 (M.D. Fla. 2012).

28.     The first element can be satisfied by proof an advertisement is either "literally false" or "true, but misleading."  *Osmose, Inc. v. Viance, LLC*, 612 F.3d 1298, 1308 (11th Cir. 2010). Under both constructs, Plaintiffs proffer undisputed facts in support.  A "*literally false*" message may be either explicit or "conveyed by necessary implication when, considering the advertisement in its entirety, the audience would recognize the claim as readily as if it had been explicitly stated." *Clorox Co. v. Proctor & Gamble Comm'l Co.*, 228 F.3d 24, 35 (1st Cir.2000).  "When evaluating whether an advertising claim is literally false, the claim must always be analyzed in its full context." *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997) (citing *Castrol Inc. v. Pennzoil Co.*, 987 F.2d 939, 943, 946 (3d Cir.1993)). A "completely unsubstantiated advertising claim by the defendant is per se false without additional evidence from the plaintiff to that effect."  *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharmaceuticals Co.*, 290 F.3d 578, 590 (3d Cir. 2002). Here, Defendants' advertisements

necessarily conveyed or implied each Plaintiff's association with endorsement of, and support for the Clubs.  No Plaintiff ever affiliated or associated with, nor would ever affiliate or associate with Booby Trap, or any of the activities hosted by Defendants.  (*see generally* Gibson Decl. [**Ex. 1**]; Skinner Dec. [**Ex. 2**]; Kindle Dec. [**Ex. 3**]; Whitten Dec. [**Ex. 4**]; Vickers Dec. [**Ex. 5**]; Mitcheson Dec. [**Ex. 6**]; Takeguma Dec. [**Ex. 7**]; Pepaj Dec. [**Ex. 8**]; Burciaga Dec. [**Ex. 9**]; Posada Dec. [**Ex. 10**]; Kazdova Dec. [**Ex. 11**]; Canas Dec. [**Ex. 12**]; and Quarles Dec. [**Ex. 13**].)  The Defendants advertisements were, thus, literally false. *See N. Am. Med. Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1211, 1217 (11th Cir. 2008), thereby obviating the need to present evidence of consumer deception. *Osmose, Inc.,* 612 F.3d at 1319

29.     Even if not "literally false," Defendants' advertisements were misleading, as supported by evidence of deception in the form of consumer surveys, market research, expert testimony, or other evidence. *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1261 (11th Cir. 2004); *Select Portfolio Servicing, Inc. v. Evaluation Sols., L.L.C.*, No. 306CV582J33MMH, 2006 WL 2691784, at *3 (M.D. Fla. Sept. 20, 2006).  According to Plaintiffs' expert, Dr. Martin Buncher, Defendants' advertisements deceived and mislead consumers and potential consumers into believing that Plaintiffs agreed to appear in the advertisements, agreed to endorse Booby Trap, supported and agreed with the Clubs' activities and would likely appear at or take part in activities advertised therein. Specifically, "[n]inety-four percent of the Sample felt the models used had agreed to be in the advertising. Ninety-one percent of the Sample felt the models have agreed to promote the Club shown in the advertising. Nine out of ten respondents felt the models represent the lifestyle to which the Club is oriented. Almost four out of five felt the models probably enjoy a lifestyle like that reflected in the advertising. Almost four out of five felt the models might participate in some of the events described in the advertising. Ninety-five percent of the Random

Sample thought it was likely that these models were used to make them think they represented the kind of women they would expect to see at the club, including 75% who felt it was "Extremely likely" and 20% who felt it was "Somewhat likely." (Buncher Decl. [**Ex. 16**] p. 12-13.) Indeed, the level of likely deception was so high and utterly un-refuted as to remove any doubt that prongs 1 and 2 are satisfied.

30.     It is also undisputed that Defendants advertised and marketed the Clubs and their Clubs through the internet, which is paradigmatically a channel and instrumentality of interstate commerce. *See U.S. v. Ballinger*, 395 F.3d 1218, 1226 (11th Cir. 2005); *U.S. v. Hornaday*, 392 F.3d 1306, 1311 (11th Cir. 2004); *Shatel Corp. v. Mao Ta Lumber & Yacht Corp.*, 697 F.2d 1352, 1356 (11th Cir. 1983) ("Advertising that affects interstate commerce and solicitation of sales across state lines ... is ... commerce within the meaning of Lanham Act.")  Such use satisfies the Lanham Act's "interstate commerce" prong. *See Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1194-95 (11th Cir. 2001); *see also N. Am. Med. Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1211, 1220 (11th Cir. 2008). There being no genuine issue of material fact in dispute, summary judgment should be granted for Plaintiffs as to Count I.

**C.     Plaintiffs are entitled to summary judgment on COUNTS III and IV (Violation of Fla. Stat. § 540.08: Right of Publicity- Unauthorized Misappropriation of Name/Likeness and Violation of Common Law Right of Publicity- Unauthorized Misappropriation of Name or Likeness)**

31.     The elements for a violation of Section 540.08, Florida Statutes, and common law misappropriate of likeness are identical, *see Lane v. MRA Holdings, LLC*, 242 F. Supp. 2d 1205, 1220 (M.D. Fla. 2002), and require proof of (1) use of an image or likeness of another, (2) for a commercial or advertising purpose, (3) without consent. *See* Fla. Sta. Ann. § 540.08.  Defendants used each Plaintiff's image in advertisements for commercial purposes. (SOUF at ¶¶ 9.)  No Plaintiff, nor anyone acting on her or his behalf, provided written or oral consent to Defendants'

11

use. (SOUF at ¶¶ 6, 7.)  There being no genuine issue of material fact, summary judgment should be granted for Plaintiffs as to Counts III and IV.  Additionally, Plaintiffs are entitled to all the remedies available under § 540.08, including damages and injunctive relief. *See Coton v. Televised Visual X-Ography, Inc*., 740 F. Supp. 2d 1299, 1310 (M.D. Fla. 2010).

**D.     Plaintiffs are entitled to summary judgment on COUNTS V and VI (Violation of Fla. Stat. § 812.014 and Fla. Stat. § 772.11: Civil Theft and Common Law Conversion)**

32.     To establish civil theft, Plaintiffs must prove an intent to appropriate another's property or services.  *See Lajos v. duPont Pub., Inc*., 888 F. Supp. 143, 146 (M.D. Fla. 1995); *see also Becil v. Bank of Am., N.A*., No. 10-20377-CIV-COOKE, 2010 WL 3943001, at *3 (S.D. Fla. Oct. 5, 2010).  "Property" under the theft statute is broadly defined as "anything of value" and includes "tangible or intangible personal property, including rights, privileges, interests, and claims," as well as "services."  Fla. Stat. Ann. § 812.012.  "Services" covers anything of value resulting from a person's physical or mental labor or skill, or from the use, possession, or presence of property, and includes, among other things, professional services.  Fla. Stat. Ann. § 812.012(6).  Theft of employment services and failing to pay to another party wages for work performed, for example, can give rise to a claim of civil theft.  *See Circuitronix, LLC v. Kapoor*, No. 15CIV61446BLOOMVALLE, 2015 WL 6735538, at *4 (S.D. Fla. Nov. 4, 2015).  Here, Defendants appropriated each Plaintiff's image through use of those images without consent and without compensation.  (SOUF at ¶¶ 6-11.)  Defendants also appropriated Plaintiffs' professional services and wages otherwise due to them for use of their modeling services.  By such unlawful use, Defendants conscripted Plaintiffs into being involuntary spokes-models for their strip clubs and their full friction and full nudity activities that define Defendants.  *See* (SOUF at ¶¶ 6-11, 19.)  Defendants further acted with requisite *intent* to appropriate Plaintiffs' services and property without consent or compensation before the receipt of the demand letter.

12

33.     It is also well settled law that conversion is an unauthorized act that deprives another of his property permanently or for an indefinite time. *Star Fruit Co. v. Eagle Lake Growers, Inc.,* 160 Fla. 130, 33 So. 2d 858 (1948); *see also West Yellow Pine Co. v. Stephens,* 80 Fla. 298, 304, 86 So. 241, 243 (1920) ("[T]he essential elements of a conversion is [sic], a wrongful deprivation of property to the owner, and neither manucaption nor asportation is an essential element thereof."); *Quitman Naval Stores Co. v. Conway,* 63 Fla. 253, 58 So. 840 (1912); *King v. Saucier,* 356 So. 2d 930 (Fla. 2d DCA 1978). Where a person having a right to possession of property makes demand for its return and the property is not relinquished, a conversion has occurred. But while a demand and refusal constitute evidence that a conversion has occurred, it is unnecessary to prove a demand and refusal where the conversion can be otherwise shown. *Anderson v. Agnew,* 38 Fla. 30, 20 So. 766 (1896); *see also Goodrich v. Malowney,* 157 So. 2d 829, 832 (Fla. 2d DCA 1963) ("[t]he purpose of proving a demand for property by a plaintiff and a refusal by a defendant to return it in an action for conversion is to show the conversion. However, the generally accepted rule is that demand and refusal are unnecessary where the act complained of amounts to a conversion regardless of whether a demand is made."). Thus, the essence of conversion is not the possession of property by the wrongdoer, but rather such possession in conjunction with a present intent on the part of the wrongdoer to deprive the person entitled to possession of the property, which intent may be, but is not always, shown by demand and refusal. *Senfeld v. Bank of Nova Scotia Trust Co.*, 450 So. 2d 1157, 1161 (Fla. 3d DCA 1984).

34.     Here, Defendants converted Plaintiffs' images to their own use with intent to deprive Plaintiffs of the choice to determine where their images can appear and who can use them for what purpose.  Plaintiffs also alleged that they were and are the exclusive owners of all rights, title, and interest in their images, likenesses and/or identity stolen by Defendants. (SOUF at ¶¶ 1-

5.) Conversion is also an appropriate cause of action even if the specific property "converted" has no actual value. 629 So.2d 903, 904 (Fla. 4th DCA 1993) (citing *Tourismart of Am., Inc. v, Gonzales*, 498 So. 2d 469, 470 (Fla. 3d DCA 1986) (holding that airline tickets, which have almost no value as property considering they are mere pieces of paper, are capable of being converted because it is not the tickets, but the service the tickets represent which is "converted")). Because there are no genuine issues of material fact in dispute, summary judgment should be granted for Plaintiffs as to Counts V and VI.

**E.     Plaintiffs are entitled to summary judgment on COUNT VII (Unjust Enrichment)**

35.     The doctrine of unjust enrichment applies when: "(1) the plaintiff conferred a benefit on the defendant, who had knowledge of the benefit; (2) the defendant voluntarily accepted and retained the benefit; and (3) under the circumstances, it would be inequitable for the defendant to retain the benefit without paying for it." *Kowalski v. Jackson Nat. Life Ins. Co.*, 981 F. Supp. 2d 1309, 1317 (S.D. Fla. 2013). Unjust enrichment applies to persons that reap a benefit from the unauthorized use of another's likeness. *See, e.g.*, *Keller v. Elecs. Arts, Inc.*, No. C 09-1967 CW, 2010 WL 530108, at *10 (N.D. Cal. Feb. 8, 2010), *aff'd sub nom. In re NCAA Student-Athlete Name & Likeness Licensing Litig.*, 724 F.3d 1268 (9th Cir. 2013)

36.     Defendants used Plaintiffs' images to promote their strip clubs, (SOUF at ¶ 9), had knowledge of receipt of such a benefit by not having to compensate Plaintiffs or negotiate a release, (SOUF at ¶¶ 6-11, 16-21), voluntarily accepted and retained the benefit conferred by using and posting Plaintiffs' images in their advertisements, and further retained an opportunity cost for not having to pay Plaintiffs the fair market value for use of the images. *Id*. Under the circumstances, it would be inequitable for Defendants to retain the benefit of using Plaintiffs' images, each of which has intrinsic and extrinsic value, without adequate compensation, particularly as the

acquisition of the rights to use an image comes only through an arms-length negotiation process in which each Plaintiff participates – an opportunity of which Defendants' unlawful conduct utterly deprived each Plaintiff. There being no genuine issues of material fact, summary judgment should be granted as to Count VII.  *See State Farm Mut. Auto. Ins. Co. v. Med. Serv. Ctr. of Florida, Inc.,* 103 F. Supp. 3d 1343, 1355 (S.D. Fla. 2015).

**F.     Plaintiffs are entitled to summary judgment on COUNT II (Violation of the Lanham Act, 15 U.S.C. § 1125(a): False Endorsement)**

37.     To establish a claim under false endorsement Subsection (a)(1)(A) of the Lanham Act, a plaintiff must show "(1) that it had prior rights to the mark at issue and (2) that the defendant adopted a mark or name that was the same, or confusingly similar, to plaintiff's mark such that consumers would likely confuse the two." *See Suntree Tech., Inc. v. Ecosense Int'l, Inc.,* 693 F.3d 1338, 1346 (11th Cir. 2012). To show "proof of a valid trademark[,] a plaintiff need not have a registered mark." *Tana v. Dantanna's,* 611 F.3d 767, 773 (11th Cir. 2010). "[T]he use of another's unregistered, *i.e.,* common law, trademark can constitute a violation of [the Lanham Act] where the alleged unregistered trademarks used by the plaintiff are so associated with its goods that the use of the same or similar marks by another company constitutes a false representation that its goods came from the same source." *Id.* And, "the general principles qualifying a mark for registration under the Lanham Act are for the most part applicable in determining whether an unregistered mark is entitled to protection." *Two Pesos, Inc. v. Taco Cabana, Inc.,* 505 U.S. 763, 768 (1992). Marks that are "sufficiently 'distinctive,' are eligible for federal registration or protection as common law marks." *Id.* at 773. A mark is distinctive and eligible for protection if "it either (1) is inherently distinctive or (2) has acquired distinctiveness through secondary meaning." *Id.* at 769.

38.     The Eleventh Circuit recognizes four categories of distinctiveness to determine if a

mark is eligible for protection as a common law mark. *Tana*, 611 F.3d at 774 ("Our circuit recognizes four categories of distinctiveness, listed in ascending order of strength: '(1) genetic-marks that suggest the basic nature of the product or service; (2) descriptive- marks that identify the characteristic or quality of a product or service; (3) suggestive- marks that suggest characteristics of the product of service and require an effort of the imagination by the consumer in order to be understood as descriptive; and (4) arbitrary or fanciful- marks that bear no relationship to the product or service, and the strongest category of trademarks.'") (quoting *Gift of Learning Found., Inc. v. TGC, Inc.* 329 F.3d 792, 797-98 (11th Cir. 2003)).

39.     As established above, Plaintiffs' images (in this case their actual identities) are, by definition, inherently distinctive or, by virtue of the Plaintiffs using their images (identities) to build a brand around themselves, have acquired a distinctiveness through secondary meaning. (SOUF at ¶¶ 4-5.) Each Plaintiff's image either suggests the basic nature of the Plaintiff's product or service, identifies the characteristic of Plaintiff's product or service, or suggests the characteristics of Plaintiff's product or service that requires an effort of the imagination by the consumer in order to be understood as descriptive. Each Plaintiff's brand- the reason her clients seek to hire her- is unique in that it is encompassed in her identity, i.e., her persona.

40.     Stated differently, it is because each Plaintiff's persona is inseparable from her brand that the use of the same or similar images and likeness by Defendants constitutes a false representation by Defendants that their good or services, i.e. strip club activities, come from the source of each Plaintiff's brand. Defendants' use of each Plaintiff's persona is, on its face, a false statement that she has, in fact, endorsed Defendants' Clubs. Simply put, Defendants' unauthorized use and alteration of each Plaintiffs' image, likeness and identity violates Section 2 of the Lanham Act because each Plaintiff's rights to her persona rises to the level of common law trademark and

therefore, each Plaintiff is entitled to protection under Section 2 of the Lanham Act.

41.     In the factually similar matter of *Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1007 (9th Cir. 2001), the court reasoned that the term "mark" applies to the celebrity's *persona* and the level of recognition that the celebrity has among the segment of the public to whom the advertisement is directed. (citing *White v. Samsung Elec. Am., Inc*., 971 F.2d 1395, 1400–1401 (9th Cir. 1992).)[1] The *Downing* court then evaluated the following eight factors in determining the likelihood of confusion: (1) the strength of the plaintiff's mark; (2) the relatedness of the goods; (3) the similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) likely degree of purchaser care; (7) defendant's intent in selecting the mark; and (8) the likelihood of expansion of the product lines. Each factor is specifically enumerated, but they are not necessarily of equal importance, nor do they all apply to each case. *Id.* at 1008.

42.     Moreover, even plaintiffs with little "fame" have been able to establish a claim under Subsection (a)(1)(A) of the Lanham Act. In *Arnold v. Treadwell*, 642 F. Supp.2d 723 (E.D. Mich. 2009) the plaintiff, who was an aspiring model was able to establish the eight elements of false endorsement. The Defendant in *Arnold* claimed that as a general rule, the image and likeness of an average person, *i.e.* a non-celebrity such as the plaintiff, cannot function as a trademark and cannot receive any protection from the Lanham Act. *Id*. at 733. The court disagreed and held that "the Lanham Act itself does not have a requirement that a plaintiff must be a celebrity." *Id*. at 735. In the matter of *Condit v. Star Editorial, Inc.* 259 F.Supp.2d 1046 (E. D. Cal. 2003), the court found that "a majority of circuits require a commercial interest in a mark, that is, at a minimum, a present intent to commercialize a mark," and that in order to sustain her false association claim,

---

[1]     Although the Eleventh Circuit has yet to determine that the term "mark" applies to celebrities, the Ninth Circuit *Downing's* analysis on whether a likelihood of confusion exists should be applied in this case as its presents an excellent analysis as to consumer confusion in the case of common law marks.

the plaintiff must "at least allege an existing intent to commercialize an interest in identity." *Id*. at

1052. In *Arnold*, the plaintiff offered evidence that she sought modeling jobs and posted her image

on a modeling website in hopes of generating modeling jobs. The court found that this evidence

presented an intent to commercialize an interest in plaintiff's identity for purposes of stating a

Lanham Act claim. *Id*.

43.    In this case, Plaintiffs have alleged sufficient facts to show that they have rights in

their images and personas as common law marks and satisfied the factors necessary to establish

"consumer confusion." (SOUF at ¶¶ 4-5). Thus, applying all the necessary elements of false

endorsement of the Lanham Act to the facts at hand, the first element of the strength or level of

recognition of plaintiff's mark weighs in favor of Plaintiffs. Each Plaintiff is a well-known and

reputable model with wide recognition and large social media following. (SOUF at ¶¶ 1-5).

Further, each Plaintiff is in the business of commercializing her identity and selling her images to

reputable brands and companies who look to promote their products with beautiful models for

profit. (SOUF at ¶¶ 1-5). In addition, common-law trademark rights are "appropriated only through

actual prior use in commerce." *Planetary Motion, Inc. v. Techsplosion, Inc.,* 261 F.3d 1188, 1193–

94 (11th Cir. 2001) (quoting *Tally–Ho, Inc. v. Coast Cmty. Coll. Dist.,* 889 F.2d 1018, 1022 (11th

Cir. 1989)). "[T]he use of a mark in commerce ... must be sufficient to establish *ownership*

*rights* for a plaintiff to recover against subsequent users under section 43(a)." *Id*. at 1195 (emphasis

in original). As such, it has been shown above that Plaintiffs' images have been used by respectable

companies and commercial brands to promote their products and services. (SOUF at ¶¶ 1-5).

44.    Under the second element, Defendants' customers also fall within a subset of the

demographic that is interested in beautiful women. Both Plaintiffs and Defendants vie for the same

dollars from the same demographic consumer group, *to wit,* men who are interested in and attracted

to beautiful women. As such, an unauthorized use of Plaintiffs' images to promote Defendants'

strip clubs creates an undeniable confusion in Defendants consumers' minds, which leads to

competitive injury to Plaintiffs. (SOUF at ¶ 19). For this reason, the second element of relatedness

of the goods or services of false endorsement also weights in favor of Plaintiffs.

45.     The third element, similarity of likeness, falls squarely in favor of Plaintiffs since

the images in question *are the actual images* of Plaintiffs. The fourth element of actual confusion

was established through Mr. Buncher's study that showed actual confusion. (SOUF at ¶ 19). The

fifth element (marketing channels used) also weighs in Plaintiffs' favor. Specifically, the parties

compete in the same markets and use similar marketing channels in those markets to sell their

services, *e.g.* websites and social media such as Twitter, Facebook. (SOUF at ¶¶ 7, 9, 11, 13-15,

17, 19). The sixth element of likely degree of purchaser care also favors Plaintiffs.  Defendants

are in the business of promoting beautiful women and they use advertisements to entice the public

to visit their Clubs.  Any consumer that viewed the subject advertisements featuring Plaintiffs was

strongly influenced by the images of beautiful women– albeit, only to find out that the beautiful

women does not actually work at  Booby Trap. (SOUF at ¶ 19).

46.     The seventh element of Defendants' intent in selecting the mark also favors

Plaintiffs. Defendants intended to profit by creating confusion among consumers with respect to

whether Plaintiffs had endorsed their products and services. (SOUF at ¶ 19). Moreover, Defendants

knew full well that Plaintiffs did not work at their establishments; as such they had knowledge of

the falsity of their marketing materials.  Lastly, the eighth element of likelihood of expansion of

product lines also favors Plaintiffs. Because Plaintiffs are reputable models who endorse

prestigious brands, an association with Booby Trap strip clubs will certainly prevent them from

being hired by any prominent company to promote a high-end product or service. There being no

genuine issues of material fact, summary judgment should be granted as to Count II.

**G.    Summary Judgment Should be Granted on Damages**

47.    Having established Defendants' liability on seven Counts of the Complaint, the undisputed facts establish Plaintiffs are entitled to recover actual (or compensatory) damages and reasonable royalty under Fla. Sta. Ann. § 540.08, treble damages under Fla. Stat. Ann. § 772.11(1), and attorney's fees under the Lanham Act.

48.    Plaintiffs have proffered evidence of a retrospective fair market valuation for the unauthorized use of their images as a means of compensating each Plaintiff for such unauthorized use. Defendants offer no evidence to the contrary.  The fair market valuation provided by Steven Chamberlin, and expressly adopted by each Plaintiff, is reasonable, undisputed, and should be awarded on summary judgment.  Plaintiffs are also entitled to recover a reasonable royalty from Defendants under Fla. Stat. Ann. § 540.08, approximating the fair market value to Plaintiffs. Having established civil theft under Fla. Stat. Ann. § 772.11(1), Plaintiffs are further entitled to treble damages.

49.    Finally, Plaintiffs may recover attorney's fees under the Lanham Act where, as here, Defendants have acted "in a malicious, fraudulent, deliberate, or willful manner," *Jackson v. Grupo Indus. Hotelero, S.A.,* No. 07-22046-CIV, 2009 WL 8634834, at *15 (S.D. Fla. Apr. 29, 2009) (citation omitted).

**CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court enter summary judgment in Plaintiffs' favor on all Counts of the Complaint and grant Plaintiffs such further relief as justice requires.

Dated: October 16, 2017

Respectfully Submitted,

THE CASAS LAW FIRM, P.C.

By: */s/ Ludmila Khomiak*
Ludmila Khomiak, Esq.
Florida Bar No.: 91757
mila@casaslawfirm.com
Brickell Bayview Center
80 S. W. 8th St., Suite 2000
Miami, FL 33130
Phone: (786) 671-3244
Fax: (786) 671-3243
*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 16, 2017, I electronically filed the foregoing with the Clerk of the Court by using CM/ECF system which will send a notice of electronic filing to the following:

THE CASAS LAW FIRM, P.C.

By: */s/ Ludmila Khomiak*
Ludmila Khomiak, Esq.
Florida Bar No.: 91757