```
 1                IN THE UNITED STATES DISTRICT COURT
                     SOUTHER DISTRICT OF FLORIDA
 2                         MIAMI DIVISION
 3
    CIELO JEAN GIBSON, CORA SKINNER,    CASE NO.:
 4  VIVIAN KINDLE, ALICIA WHITTEN,      1:16-CV-24548-MGC
    ASHLEY VICKERS, DESSIE MITCHESON,
 5  DEVIN JUSTINE TAKEGUMA,
    EVA PEPAJ, JESSICA BURCIAGA,
 6  LINA POSADA, MARKETA KAZDOVA,
    PAOLA CANAS, and TINA QUARLES,
 7
            Plaintiffs,
 8
            vs.
 9
    BTS NORTH, INC. d/b/a BOOBY TRAP;
10  T.K. PROMOTIONS, INC. d/b/a
    BOOBY TRAP; P.T.G. ENTERTAINMENT,
11  INC. d/b/a BOOBY TRAP; and BOOBY
    TRAP, INC. d/b/a BOOBY TRAP,
12
            Defendants.
13  ~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
14
                         DEPOSITION OF
15
                       GEORGE GETTINGER
16
             TAKEN ON BEHALF OF THE DEFENDANTS
17
18              Wednesday, July 5, 2017
                12:05 p.m. - 1:16 p.m.
19
20
                      Booby Trap Doral
21              5325 Northwest 77th Avenue
                     Miami, Florida
22
23
24              Chloe Leroux, FPR
25
```

Page 1

```
 1                    A P P E A R A N C E S

 2

 3    On behalf of the Plaintiffs:

 4        LUDMILA KHOMIAK, ESQUIRE
          THE CASAS LAW FIRM, P.C.

 5        80 Southwest 8th Street
          Suite 2000

 6        Miami, Florida 33130
          (786)671-3244

 7        mila@casaslawfirm.com

 8

      On behalf of the Defendants:

 9

          LUKE LIROT, ESQUIRE

10        LUKE CHARLES LIROT, P.A.
          2240 Belleair Road

11        Suite 190
          Clearwater, Florida 33764

12        (727) 536-2100
          luke2@lirotlaw.com

13

14                                    -   -   -

15

16

17

18

19

20

21

22

23

24

25
```

Page 2

```
1                          I N D E X

2

3    Witness:                              Page:

4    GEORGE GETTINGER

5    DIRECT EXAMINATION                        4

6
                              -   -   -
7

8

9                   Description:       Page:

10

11   Exhibit 1  Re-Notice of Taking        18

12              Deposition Duces Tecum

13   Exhibit 2  Photographic Images        19

     Exhibit 3  Photographic Images        19

14   Exhibit 4  Photographic Images        19

     Exhibit 5  Photographic Images        19

15   Exhibit 6  Photographic Images        19

16   Exhibit 7  Photographic Images        19

     Exhibit 8  Photographic Images        19

17   Exhibit 9  Photographic Images        19

18   Exhibit 10 Photographic Images        19

     Exhibit 11 Photographic Images        19

19   Exhibit 12 Photographic Images        19

20   Exhibit 13 Photographic Images        19

21   Exhibit 14 Photographic Images        19

22   Exhibit 15 Driver's License           22

23

24

25

                                        Page  3
```

```
 1              Deposition of George Gettinger

 2                     July 5, 2017

 3

 4   THEREUPON,

 5                    GEORGE GETTINGER,

 6   having been first duly sworn or affirmed, was examined

 7   and testified as follows:

 8             THE WITNESS:  I do.

 9                    DIRECT EXAMINATION

10   BY MS. KHOMIAK:

11        Q.   Mr. Gettinger, my name is Mila Khomiak.  I

12   introduced myself before we went on the record.  I

13   represent the plaintiffs in the matter which you have

14   been called for deposition today.

15        A.   Okay.

16        Q.   As you have just taken an oath, the oath that

17   you've taken is the same oath you would take in front of

18   a judge in an open court or a jury, so the same rules

19   apply that would apply in court, meaning that the oath

20   that you took is the same oath that you would take in

21   front of a judge or jury.

22        A.   Okay.

23        Q.   Before we begin, I would also like to give you

24   a few ground rules.  When I ask you a question and it

25   calls for a yes or no answer, please make sure to say
```

Page 4

yes or no and not uh-huh or shaking of the head, because the court reporter cannot transcribe that.

A. Okay.

Q. When I do ask you a question, I ask that you let me finish my entire question, even if you know what I'm asking and you want to jump in and respond, please allow me to finish the question fully, again, for the court reporter to be able to take the whole question down, because anybody reading the transcript might not be able to understand what it is that I'm asking you, even though you do. Okay?

A. I understand.

Q. And I will do the same for you. When you're answering a question, I will allow you to answer it fully.

Is there anything that could potentially be preventing you from giving your best testimony today? For instance, have you been drinking? Are you on any medication today?

A. No.

Q. Can you please spell your name for the record.

A. First name, George, G-e-o-r-g-e, last name Gettinger, G-e-t-t-i-n-g-e-r.

Q. What is your highest level of education?

A. I have my associate's degree in business

```
 1    administration.
 2         Q.   What is the name of the college that you went
 3    to, to get that degree?
 4         A.   Robert Morris Business College, in Pittsburgh,
 5    Pennsylvania.
 6         Q.   Have you been convicted of a felony
 7    previously?
 8         A.   No.
 9              (Plaintiffs' Exhibit No. 1, Re-Notice of
10         Taking Deposition Duces Tecum, was marked for
11         identification.)
12    BY MS. KHOMIAK:
13         Q.   Throughout this whole deposition, I'll be
14    handing you exhibits for you to review and identify, so
15    we'll start with Exhibit 1, which is the re-notice of
16    taking deposition duces tecum.
17              MS. KHOMIAK:  Do you want to see it again?
18              MR. LIROT:  No, I'm familiar with the
19         document.
20         Q.   Have you seen this document before?
21         A.   Can I page through it?
22         Q.   Yes, go through every page.
23         A.   No, I have not.
24         Q.   So how have you heard about this deposition
25    today?
```

Page 6

1      A.   I was informed by my secretary, Patricia, that

2   there was going to be a deposition and that they needed

3   a spokesman from each club to come by, and I live

4   relatively close to this facility and volunteered to be

5   that person.

6      Q.   Do you know what this lawsuit is about, that

7   you're being deposed for today?

8      A.   Not really.

9      Q.   Have you spoken to anybody about this lawsuit

10  besides Patricia?

11     A.   No.

12     Q.   You have not, okay.  Do you know who the

13  plaintiffs this case are?

14     A.   I don't.

15     Q.   Do you just generally know what this lawsuit

16  is about?

17     A.   When I say generally, I mean generally.  I was

18  away on vacation for two weeks, and then they said that

19  this was happening, and I said okay.  It was very vague

20  to me, but, you know, I came down, and they said that

21  there was going to be a deposition and that we needed a

22  spokesman from, like I said, each club, and I ended up

23  being that spokesman.

24     Q.   Do you know anything about the three clubs

25  that are involved in this lawsuit, their use of my

Page 7

```
 1    clients' images for advertising purposes?  Does that
 2    ring a bell at all?
 3         A.    No.
 4         Q.    So you have no idea why we're here today?
 5         A.    I don't.
 6         Q.    Who are you employed by?
 7         A.    Booby Trap.  If we're going down to the
 8    technical name, it used to be P.T.G. Entertainment, and
 9    now it's TCB Enterprises.
10         Q.    Is it TCB South Florida II Inc. possibly?
11         A.    I don't think we're South Inc.  It might be
12    under a loop.  It changed when I came back.  I've been
13    back for a year and a half, and, like I said, it was
14    P.T.G., that I've always known it by, but it's TCB maybe
15    of South Florida.  That possibly could be right, yeah.
16         Q.    How long have you been employed by let's start
17    with P.T.G. alone?
18         A.    17 years.
19         Q.    Okay.  And TCB?
20         A.    I've been back a year and a half, a year and
21    8 months.
22         Q.    So you've been there for a while?
23         A.    Yes.
24         Q.    You know the ins and outs of the club?
25         A.    I would say yes.
```

Veritext Legal Solutions
866 299-5127

1      Q.    So is this the Booby Trap Pompano location?

2      A.    Correct.

3      Q.    From now on, I'll just refer to the Booby Trap

4   Pompano, but I will mean the TCB and the P.T.G.

5   together.

6      A.    Okay.

7      Q.    What is Booby Trap Pompano in the business of

8   doing?  What is it that they do?

9      A.    Adult entertainment.

10     Q.    And what are your day-to-day activities at the

11  club?

12     A.    Mine personally?

13     Q.    Yes.

14     A.    General overseeing of the business, doing

15  hourly reports on the inventory, what's being sold, what

16  entertainers are working, I guess just the general

17  overall overseeing of the business.

18     Q.    What is your actual title?

19     A.    I'm the Tuesday through Friday manager.

20     Q.    So you're not the general manager?

21     A.    We don't have a general manager in Pompano.

22     Q.    How many managers in total do you have?

23     A.    Four.

24     Q.    And who are the other three managers?

25     A.    Mark Biendelo (phonetic), Peter Mancini, and

Page 9

1    Adam, I forget his last name.  Adam, I'm going to blank

2    out on Adam's last name.

3         Q.   That's fine.  And so do each of you take

4    shifts?

5         A.   Mm-hmm, yes.  I work Tuesday through Friday,

6    daytime, so I work from 12 noon until 8:00.  Pete

7    Mancini works Wednesday through Saturday, 8:00 to

8    2:00 a.m.  Mark Biandello works, I guess, he's Sunday,

9    Monday, Tuesday evenings, meaning 8:00 until 2:00 a.m.

10   And Adam works Saturday, Sunday, Monday, daytime,

11   meaning 12 noon until 8:00.

12        Q.   Starting with Pete, do you know how long has

13   he been employed by both P.T.G. and TCB now?

14        A.   No, I don't know.

15        Q.   Had he been there before you came in?

16        A.   Pete came with me, and then Pete left for a

17   little while, and then Pete came back.  He's been there

18   a little bit.  If I were to guess --

19        Q.   I don't want you to guess.

20        A.   Okay.  Then I don't know that with any

21   accuracy.

22        Q.   What about Adam?

23        A.   Adam, no.  Adam has been manager for 4 years.

24   You don't want me to guess, so I'm not going to say that

25   with any kind of accuracy.

Page 10

```
 1        Q.    But approximately?

 2        A.    Approximately 4 years.

 3        Q.    What about Mark?

 4        A.    Mark has been there 20 years.

 5        Q.    So he's been there longer than you?

 6        A.    Yes.

 7        Q.    I'm not sure if you know, but we have taken

 8   the deposition of Mr. Phil Gori.  Do you know who Phil

 9   Gori is?

10        A.    Yes, of course.

11        Q.    And who is he to you?

12        A.    He's my boss.  He's the owner of the club.

13        Q.    And so he owns the formerly P.T.G., now TCB.

14   Does he own any other clubs?

15        A.    He is owner of Doral.  He's owner of BT's

16   Miami.  I guess part owner.  He has partners.  And I

17   think that's all of them, I think.

18        Q.    All right.  Mr. Gori also testified that

19   there's a lien on the property that is occupied by now

20   TCB, the Booby Trap Pompano.  Do you know anything about

21   that lien?

22        A.    No.  I don't get involved in that type of the

23   business end of that.

24        Q.    Okay.  Do you know if Booby Trap Pompano owns

25   any assets in the club, meaning, tables, chairs?  Do you
```

Page 11

1    know if they own any of that?

2         A.   I wouldn't be aware if they own it.  We have

3    it.  I don't know if we own it.  Again, that's not --

4    you know, I don't get in that part of the business.

5         Q.   So you don't know if they could possibly be

6    leasing it from somebody, the tables and chairs, the bar

7    equipment?

8         A.   Correct, I wouldn't know that.

9         Q.   Okay.  Do you know if the Booby Trap Pompano,

10   which is now TCB, do you know if they're leasing the

11   space from anybody?

12        A.   I don't know that with any accuracy, no.  I

13   don't know that.

14        Q.   What are all the sources of revenue for Booby

15   Trap Pompano?  How do they make their money?

16        A.   The bar more than anything, selling of liquor,

17   selling of alcoholic beverages and, you know, the

18   entertainment idea of, you know, the club itself.

19        Q.   Does the club make any money from the food

20   they sell?

21        A.   Yes, of course.

22        Q.   Can we discuss a little bit about the kitchen

23   aspect of the club?  Does the kitchen lease the space

24   from the club?

25        A.   The way that I've understood it, and again,

Page 12

```
1    I'm not going to be accurate with this, I believe that
2    the kitchen is subcontracted out.  So the people that
3    run the kitchen, they run the kitchen.  I remember
4    having a conversation with Phil, and he said, I don't
5    want anything to do with the kitchen.  So I don't think
6    that's us.  I don't think that's the Booby Trap.
7         Q.   Does the club itself make a cut from the
8    kitchen?
9         A.   I don't know that.
10        Q.   Okay.  What about the entertainers?  Does the
11   club make a cut from what the entertainers make a day
12   and night?
13        A.   We don't get a cut from what the entertainers
14   make, no.
15        Q.   So whatever it is that they make, they take
16   100 percent of it?
17        A.   Correct.
18        Q.   Mr. Gori also testified that the entertainers
19   actually lease the space at the club.  Is that correct?
20        A.   They sign an agreement saying that they're
21   going to, right, exactly, lease our -- we supply the
22   building.  They use that as their means of making money.
23        Q.   But they don't pay for that, or do they?
24        A.   They do not.
25        Q.   Do you know who is in charge of negotiating
```

Page 13

1     that lease with the entertainers?

2         A.   No, I don't get involved in that.  No, I don't

3     know that.

4         Q.   So if let's say a girl comes in and she tells

5     you one night that she wants to dance for Booby Trap

6     Pompano, where would you send her?  What would be the

7     process of getting her hired?

8         A.   She would do an audition and then sign a lease

9     agreement, and, you know, we would copy down here ID,

10    and move forward from them.

11        Q.   So when I asked you earlier about this lease

12    agreement, who would hand her the lease agreement to

13    sign?

14        A.   It's in our files in the office.

15        Q.   Who would give her the lease?

16        A.   Probably the floor manager.

17        Q.   And you're not one of those managers?

18        A.   I'm the manager.  I'm not the floor manager.

19    The floor manager handles the girls.

20        Q.   How many floor manages do you have at the

21    Pompano location?

22        A.   Six.

23        Q.   So aside from Mark, you told me Adam and Pete,

24    there's an additional six floor managers?

25        A.   Right.

1       Q.    Okay.  Have you seen any of those leases

2    before, that the entertainers sign?

3       A.    Mm-hmm, yes.

4       Q.    And what are the terms of those leases?  What

5    is in those leases?

6       A.    That we're supplying the facility for those

7    girls to be able to make money.

8       Q.    Is there any language in there about using

9    their images for advertising or promoting?

10      A.    Not that I'm aware of.

11      Q.    Do you know where those leases are kept?

12      A.    The lease agreements?

13      Q.    Yes.

14      A.    Yes.

15      Q.    Where are they kept?

16      A.    In the office.

17      Q.    Do you know how far back they go?

18      A.    No, I have no idea.

19      Q.    Do you charge any entrance fees at the club?

20      A.    Not when I'm there during the day.

21      Q.    So there's no charge during the day?

22      A.    Right.

23      Q.    But is there a charge at night?

24      A.    There's a charge at the door during the

25    evening, yes.

Page 15

1      Q.    And who determines what that charge would be?

2      A.    I think it's $5 at the door.

3      Q.    So it's a standard $5 every time, every night?

4      A.    Right.

5      Q.    Is there valet on the property?

6      A.    There is.

7      Q.    And how much is that?

8      A.    From what I understand, there's VIP parking,

9   which is $5, and then there's $1 for parking the

10  vehicles.

11     Q.    So nobody can park their vehicles themselves?

12  They have to do the valet?

13     A.    No.  Almost everybody parks it themselves.

14     Q.    So the $1 is just for parking your own car?

15     A.    Right.

16     Q.    And that $1 can go the whole night, for

17  however long they need to be parked there?

18     A.    Yes.

19     Q.    And you said something about VIP parking?

20  That's just for the valet guy to go and park your car.

21  It's not just for VIP members?

22     A.    It's for, your car, to have it more close to

23  the building, you know, probably more easily viewed by

24  the valet parker themselves, so they're going to be

25  front positions.

Veritext Legal Solutions
866 299-5127

1        Q.   Got it.  Does the Booby Trap Pompano have a

2   VIP membership?

3        A.   Not anything that's set.  We used to have VIP

4   cards, but we don't even have VIP cards anymore.

5        Q.   When you say used to, how long ago did you

6   have those cards?

7        A.   When I first got there, so 17 years ago.  I

8   haven't seen anything since then.

9        Q.   So you haven't seen VIP memberships for

10  17 years now?

11       A.   No.

12       Q.   So there's no special privileges to anybody

13  that you could possibly give?  There's no repeat

14  customers that you can tell, well, because you're here

15  all the time, we're going to give you a bottle for free

16  every time that you come in, because you spend so much

17  money?

18       A.   No, there's nothing set like that.  If you see

19  a guy that, you know, that you've seen often, you're not

20  going to charge him at the door.  But there's nothing

21  set in stone that this is our procedure for which we do

22  it.

23       Q.   Do you know if there's insurance policies on

24  Booby Trap Pompano?

25       A.   That, I don't know.

                                              Page 17

1       Q.   Do you know if Booby Trap Pompano has any

2  specific person that's in charge of the advertising?

3       A.   Our club itself?

4       Q.   Yes.

5       A.   There's nobody that's in charge of

6  advertising.

7       Q.   Do you know if there's a third party that you

8  contact to do the advertising for?

9       A.   Anything that we have, like we have like an

10  Excitement magazine, that goes through Duffy, J-Dog

11  Media.

12       Q.   Do you ever personally contact him?

13       A.   The only time I've ever contacted him is when

14  I need matches or I need pens.

15       Q.   Those are the only two things?

16       A.   Yes.  We used to have VIP parties, and it got

17  to the place where he was -- because we go on a

18  rotation, so there's three clubs.  There's BT's Miami,

19  there's Doral, and then there's us.  So these guys have

20  their party here, skip, skip, and then we have our party

21  here.

22       And he lets me know, you know, you guys have

23  the party for August, so what's your theme?  He can ask

24  me what my theme is.  You know, it's the naughty nightie

25  theme, that kind of thing.  It's like I said, pens and

Veritext Legal Solutions
866 299-5127

```
 1    matches.
 2         Q.   So you do have contact with him?
 3         A.   Oh, I mean, I've talked to Duffy.
 4         Q.   Do you usually talk to him on the phone or
 5    e-mail?
 6         A.   It's usually on the phone.  Hey, I'm out of
 7    these, need these, coming close to not having these
 8    anymore.
 9         Q.   So when you just testified, stating that you
10    have the rotation where one club does it one week, the
11    next club does the same, I guess, from what I
12    understand, the same party the following week, and then
13    you guys do it on the third week --
14         A.   It's up to the individual club what theme
15    they're going to do.
16         Q.   Okay.  So who determines what theme you're
17    going to do?
18         A.   I guess the manager who's idea what theme they
19    want to do.  It usually goes, if a club is going to have
20    a party for August, that's going to be the summer fun
21    party, okay?  So August, it's almost gotten to the point
22    where you know what -- October is Halloween.  February
23    is Valentine's Day.  So whoever gets that month, we
24    basically know what it is anymore.
25         Q.   Okay.  Does Duffy ever contact you personally,
```

Page 19

1      to tell you about what promotion he's doing?

2          A.   No.

3          Q.   Okay.  So what I'm trying to get at is, who

4      exactly decides?  Even though you said you already know

5      what month goes with what holiday, but who decides what

6      promotion you're going to do that month?

7          A.   It was set.  Like I said, if it's August, it's

8      our fun-in-the-sun theme.  October is the Halloween

9      theme.  December is Christmas.  And July is salute to

10     the troops.  I think they've followed a blueprint

11     forever.

12         Q.   So you're saying that's been going on for

13     many, many years?

14         A.   Yeah.

15         Q.   Is it something that's been going on in the

16     club before Duffy came in?

17         A.   I couldn't say.

18         Q.   So when Duffy calls you and says you have a

19     fun-in-the-sun, for instance, event coming up in August,

20     what is your conversation like?  Who decides what kind

21     of flyers to make, what kind of posters to make?

22         A.   That's all Duffy.  I don't have anything to do

23     with that.

24         Q.   So is he responsible for choosing the type of

25     girl he wants to put on there?

                                                    Page 20

 1          A.    Yes.  You know, when I'm flipping through the

 2     magazine, there's the ad.  All right, yes, that's the

 3     ad.  I don't have anything to do with that.

 4          Q.    Does anyone else, in any of the club

 5     locations, have anything to do with the ads?

 6          A.    The fact that I don't have anything to do with

 7     it, then the other guys, I don't think have anything to

 8     do with what appears in the ads.

 9          Q.    And do you know how long Duffy has been doing

10     the advertising for the clubs for?

11          A.    I couldn't answer that with any kind of

12     accuracy.  Duffy has been around, it seems like, longer

13     than I have.

14          Q.    So you have no idea who possibly retained him

15     originally?

16          A.    No, I don't.

17          Q.    So when we talk about Duffy, we're also

18     referring to, correct me if I'm wrong, Darren

19     Franclemont?

20          A.    I guess that's his name.  I don't know.

21          Q.    Okay.  I'm assuming you never even saw the

22     complaint in this lawsuit?

23          A.    No.

24          Q.    Or the exhibits attached to the complaint?

25          A.    No.

                                                  Page 21

```
 1              (Plaintiffs' Exhibit Nos. 2, 3, 4, 5, 6, 7, 8,

 2         9, 10, 11, 12, 13, 14, Photographic Images, were

 3         marked for identification.)

 4    BY MS. KHOMIAK:

 5         Q.    I'm going to hand you what has been marked as

 6    Exhibits 2 through 14, and you can flip through it, and

 7    we'll just go off the record, so you can look at all of

 8    those pages.

 9              (Off the record.)

10    BY MS. KHOMIAK:

11         Q.    And let's go to page 5.  Page 5 contains all

12    of the documents that we asked you to produce for this

13    deposition, and Mr. Lirot has produced some of these

14    documents, but I'll still need to go over them with you.

15              No. 1 asks for:

16              Any and all letters, e-mails, and/or other

17         correspondence between the plaintiffs and

18         his/her/their representatives and yourself.

19              First of all, before you answer whether you

20    have those documents, I'm going to hand you Exhibits 2

21    through 14.  If you can, look through each of these

22    pages.  And we'll go off the record for now, while you

23    look at them.

24              (Off the record.)

25    BY MS. KHOMIAK:
```

Page 22

1          Q.    I asked you to review what has been premarked

2     as Exhibits 2 to 14, which are the images that the Booby

3     Trap clubs have used to promote the clubs without the

4     models' permission that are depicted in those images.

5     Have you seen those images before?

6          A.    Never.

7          Q.    Do you know who these models are in these

8     images?

9          A.    No, I've never seen them.

10         Q.    You don't know --

11         A.    No, I don't know.

12         Q.    We'll get back to Exhibit 2.

13              So going back to the first exhibit, on page 5,

14     where it requests documents of you, it says:

15              Any and all letters, e-mails, and/or other

16         correspondence between the plaintiffs and

17         his/her/their representatives and yourself.

18              The plaintiffs are the models that are

19     depicted in Exhibits 2 to 14, that you just reviewed.

20     Do you have any correspondence or any letters or e-mails

21     between yourself and the models depicted in those

22     images?

23         A.    No, I do not.

24         Q.    No. 2 asks for:

25              Any and all documents that refer to, reflect,

                                                      Page 23

 1          or evidence any and all communications between you,

 2          or anyone acting on your behalf, and any other

 3          person related to the creation, distribution, or

 4          payment for the images attached as exhibits and/or

 5          composites to plaintiffs' complaint.

 6              The exhibits are the images that you just

 7    reviewed in Exhibits 2 through 14.

 8              MR. LIROT:  I'm sorry, if we could take a

 9          break?

10              MS. KHOMIAK:  Certainly.

11              (A short break was taken.)

12    BY MS. KHOMIAK:

13          Q.   Mr. Gettinger, before we took a break, I

14    handed you Exhibits 2 through 14, which are the

15    advertisements that the three clubs posted, using my

16    client's images without authorization.  Have you have

17    any communication with the models that are depicted in

18    the images in those advertisements?

19          A.   No.

20          Q.   And do you know if there's any communication

21    between these models and the club?

22          A.   No, I would have no idea.

23          Q.   But you don't have any communication with them

24    yourself?

25          A.   No, I do not.

Page 24

1      Q.   You've also testified earlier that Duffy does

2   all the promotions for the club.  Do you have any

3   communication with Duffy about these specific images as

4   reflected in Exhibits 2 through 14?

5      A.   I do not.

6      Q.   Okay.  No. 3 on Exhibit 1, asks for:

7           All documents that refer to, reflect, or

8        evidence any and all written agreements between

9        you, your representatives, agents, or anyone acting

10       on your behalf, and any other person related to the

11       creation, distribution, or payment for the images

12       attached as exhibits and/or composites to the

13       plaintiffs' complaint.

14          Do you have any documents that relate to the

15   payment of these images as identified in Exhibits 2

16   through 14?

17     A.   I have not.

18     Q.   Have you ever seen any invoices from Duffy for

19   any advertising?

20     A.   I have not.

21     Q.   You have never seen any?

22     A.   Never.

23     Q.   And No. 4 asks:

24          All documents that refer to, reflect, or

25       evidence any and all written agreements between

Page 25

```
1          you, your representatives, agents, or anyone acting

2          on your behalf, and any Plaintiff related to the

3          creation, distribution, or payment for the images

4          attached as exhibits and/or composites to

5          plaintiffs' complaint.

6               Do you have any documents that relate to the

7     use of these images and the plaintiffs in these images?

8          A.   I do not.

9          Q.   Okay.  No. 5 asks for:

10              All reports, estimates, statements, invoices,

11         bills, or receipts for earnings or profits related

12         to the usage of plaintiffs' images described in

13         plaintiffs' complaint.

14         A.   Do I have any of those documents?

15         Q.   Yes.

16         A.   I do not.

17         Q.   Okay.  No. 6 asks for:

18              Any and all documents bearing any plaintiffs'

19         image.

20              Do you have any documents that contain those

21    images or have anything to do with those images?

22         A.   I do not.

23         Q.   Have you seen those images prior to today's

24    deposition?

25              A.   No, I have not.
```

Page 26

```
 1        Q.    You've never seen them on social media?

 2        A.    I'm not a big social media guy, but no.

 3        Q.    No. 7 asks for:

 4              Any and all documents, videos, and or diagrams

 5        that refer to, reflect, or evidence any

 6        photographic images of plaintiffs.

 7              Not just these images that we discussed, but

 8    any photographic images of these models, these girls,

 9    these plaintiffs?

10        A.    The question is, do I have anything like that?

11        Q.    Yes.

12        A.    No, I do not.

13        Q.    And No. 8 asks for:

14              Images of plaintiffs in whatever format they

15        exist.

16        A.    I have nothing.

17        Q.    No. 9 asks:

18              Any and all documents that refer to, reflect,

19        or evidence any and all claims made against

20        defendants by plaintiffs' complaint.

21              First of all, have you reviewed plaintiff's

22    complaint in this action?

23        A.    I have not.

24        Q.    Okay.  So you probably wouldn't know the

25    claims that are actually made in the complaint?
```

Page 27

```
 1        A.   No, I wouldn't.

 2        Q.   And you wouldn't have any documents that

 3   pertain to those claims?

 4        A.   I do not.

 5        Q.   No. 10 asks for:

 6             Any and all policies of insurance for BTS

 7        North Inc., T.K. Promotions Inc., P.T.G.

 8        Entertainment Inc., and Booby Trap Inc. for the

 9        last five years.

10             Would you have the insurance policies?

11        A.   I would not.

12        Q.   No. 11:

13             Any and all employee handbooks, guidelines, or

14        manuals of BTS North Inc., T.K. Promotions Inc.,

15        P.T.G. Entertainment Inc., and Booby Trap Inc. for

16        the last five years.

17             Do I have any of those documents?

18        A.   I don't.

19        Q.   Does the club have any employee handbooks,

20   guidelines or manuals?

21        A.   I imagine someplace in the club there are,

22   yes.

23        Q.   Have you ever seen any manuals or handbooks?

24        A.   Employee handbooks?

25        Q.   Yes.
```

Page 28

```
 1        A.   I'm going to say no.

 2        Q.   But you just said that you would imagine that

 3   they would.  So why do you believe that they would, if

 4   you've never seen one?

 5        A.   Because they're not in my office, so it's a

 6   different vicinity.  Like I said, I'm a more hands-on

 7   club, as opposed to documentation.

 8        Q.   But you believe that the club still has one,

 9   but you just haven't seen it?

10        A.   Correct.

11        Q.   Do you know who would have them?

12        A.   No, I do not.

13        Q.   No. 12 asks for:

14             Any and all releases or waivers for employees,

15        performers, dancers, and adult entertainers for the

16        last 5 years.

17             Are there any releases or waivers that the

18   dancers sign?

19        A.   I hear they're kept in files someplace.  I

20   don't have them personally, no.

21        Q.   But do you know if there are?

22        A.   Yes.

23        Q.   What are they, those releases or waivers?

24        A.   The employees releases saying that they're

25   private contractors working for us.
```

Page 29

1          Q.    Are those the only releases that the club has?

2          A.    Yes.

3          Q.    Okay.

4          A.    As far as I know.

5          Q.    Okay.  Are there any waivers or releases for

6     the dancers, that the dancers sign when the club wants

7     to use their image, for whatever purpose?

8          A.    No.

9          Q.    No, meaning you don't know?

10         A.    Not that I know of, no.  I've never seen any

11    release forms for images.

12         Q.    Okay.  No. 13 asks for:

13               All documents reflecting employees of BTS

14         North Inc., T.K. Promotions Inc., P.T.G.

15         Entertainment Inc., and Booby Trap Inc., from 2011

16         to the present, including their last known address,

17         their dates of employment, if they are no longer

18         employed, and their position.

19         A.    You're asking me a question?

20         Q.    Going back to Question 13, it's asking for

21    documents reflecting the employees of the entities, the

22    three entities, well, four entities, from 2011 to

23    present.  Do you know who keeps those lists?

24         A.    No, I don't know who keeps those lists.

25         Q.    Okay.  No. 14 asks for:

Page 30

1          Any and all documents that refer to, reflect,

2      or evidence images of plaintiffs used in any

3      marketing materials, including but not limited to:

4      Marketing and promotional materials, such as, but

5      not limited to: websites, social media accounts,

6      print, advertising, posters, videos, billboards,

7      marquees, newspapers, flyers, or coupons for BTS

8      North Inc., T.K. Promotions Inc., P.T.G.

9      Entertainment Inc., and Booby Trap Inc.

10     A.   I do not know who keeps any of the promotional

11 items.

12     Q.   But have you ever seen these specific images

13 as reflected --

14     A.   No, I have not.

15     Q.   You need to let me finish the question.

16     A.   I'm sorry.

17     Q.   Have you ever seen the images, as reflected in

18 Exhibits 2 to 14, anywhere else, in any other

19 advertisements, for Booby Trap Pompano?

20     A.   I personally have not.

21     Q.   Okay.  No. 15 asks for:

22          Any and all documents that refer to, reflect,

23      or evidence total gross profits from the past five

24      years to date of BTS North Inc., T.K. Promotions

25      Inc., P.T.G. Entertainment Inc., and Booby Trap

Page 31

1       Inc.

2       A.   Again, I don't have any of those documents.

3       Q.   Okay.  No. 16 asks for:

4           Any and all statements for the guest check

5       average for the last three years for BTS North

6       Inc., T.K. Promotions Inc., P.T.G. Entertainment

7       Inc., and Booby Trap Inc.

8       A.   Again, I don't have any of those documents.

9       Q.   Okay.  Do you know if there is a guest check

10   average at the club, if the club calculates the guest

11   check average?

12      A.   No, I do not know that.

13      Q.   No. 17 asks for:

14          Any and all documents that refer to, reflect,

15      or evidence the amount of money spent on BTS North

16      Inc., T.K. Promotions Inc., P.T.G. Entertainment

17      Inc., and Booby Trap Inc.'s websites, social media

18      accounts, print, advertising, posters, videos,

19      billboards, marquees, newspapers, flyers, or

20      coupons for the last five years.

21      A.   I'm unaware of those documents.  I don't know

22   where they would be kept.

23      Q.   So you don't know how much the club spends on

24   advertising?

25      A.   No.  Again, not my territory.

Page 32

```
 1          Q.    No. 18:
 2                Any and all documents that refer to, reflect,
 3          or evidence the payment of any monies by you to any
 4          of the plaintiffs related to the images attached as
 5          exhibits and/or composites to plaintiffs'
 6          complaint.
 7          A.    Again, don't know where those documents are
 8     kept or if they exist.
 9          Q.    Okay.  19 asks for:
10                Any and all documents that refer to, reflect,
11          or evidence the payment of any monies by you to any
12          of the plaintiffs related to BTS North Inc., T.K.
13          Promotions Inc., P.T.G. Entertainment Inc., and
14          Booby Trap Inc.
15          A.    Don't know of those documents, don't know if
16     they exist.
17          Q.    Okay.  No. 20 asks for:
18                Any and all documents that refer to, reflect,
19          or evidence the payment of any monies by you to the
20          plaintiffs related to the use of plaintiffs'
21          images.
22          A.    Don't know if they exist, wouldn't be aware of
23     them myself.
24          Q.    Okay.  No. 21 asks for:
25                All correspondence between you or anyone
```

Page 33

```
 1              acting on your behalf and plaintiffs or anyone on

 2              the plaintiffs' behalf regarding the claims which

 3              are the subject of this lawsuit.

 4         A.    There wouldn't be any correspondence, because

 5    I have not corresponded in regards to anything.

 6         Q.    Okay.  No. 22 asks for:

 7              Any and all documents that refer to, reflect,

 8              or evidence that plaintiffs are not entitled to any

 9              compensation for your use of their images.

10         A.    Again, I don't know of any of these documents,

11    whether they exist.  It's not anything to do with me.

12         Q.    Okay.  No. 23 asks for:

13              Any and all documents concerning when the

14              images were first used in any of group group's

15              marketing material promotional material advertising

16              material or products.

17         A.    Advertising has nothing to do with me.  I

18    don't know of any of these documents.

19         Q.    Okay.  No. 24 asks for:

20              Any and all documents concerning where the

21              images were first used.

22         A.    And I wouldn't know where they were first

23    used.

24         Q.    No. 25 asks:

25              Any and all documents concerning how the
```

Page 34

1           images were first used.

2               Do you have any documents pertaining to that?

3       A.   I have nothing.

4       Q.   26 asks for:

5               Any and all documents concerning where the

6       Images were first published to the public in any of

7       BTS North Inc., T.K. Promotions Inc., P.T.G.

8       Entertainment Inc., and Booby Trap Inc.'s marketing

9       materials, promotional materials, advertising

10      materials, or products.

11      A.   I don't have any knowledge of these documents.

12      Q.   No. 27 asks for:

13              Any and all documents depicting the date when

14      any of the images were first released to the

15      public.

16      A.   I have no knowledge, nor any of the documents.

17      Q.   28 asks for:

18              Any and all documents between you and any

19      third party relating to the creation, management,

20      and/or maintenance of any of BTS North Inc., T.K.

21      Promotions Inc., P.T.G. Entertainment Inc., and

22      Booby Trap Inc.'s social media accounts.

23      A.   I'm not part of the creation, nor do I know of

24      the documentation.

25      Q.   Do you know who maintains the social media

Veritext Legal Solutions
866 299-5127

1    accounts for the clubs?

2         A.   No, I don't know.

3         Q.   29 asks for:

4              Any and all documents between you and any

5         third party relating to the creation, management,

6         and/or maintenance of BTS North Inc., T.K.

7         Promotions Inc., P.T.G. Entertainment Inc., and

8         Booby Trap Inc.'s websites.

9         A.   I don't hold any of those documents, nor do I

10   know of said documents.

11        Q.   Okay.  No. 30 asks for:

12             All diagrams, photographs or videos taken or

13        produced by you, your marketing team,

14        representatives, agents, or any person or entity on

15        your behalf regarding and related to the images of

16        plaintiffs.

17        A.   Don't have any diagrams, nor do I have a

18   marketing team.

19        Q.   The last question is No. 31, and they ask for:

20             All photographs or videos depicting the

21        interior of BTS North Inc., T.K. Promotions Inc.,

22        P.T.G. Entertainment Inc., and Booby Trap Inc. from

23        January 2011 to present.

24        A.   I don't have any documents, and I don't have

25   any photographs, videos.  I don't hold any of those.

Page 36

1      Q.    Do you know anybody that would have those

2   images?

3      A.    No, I do not.

4      Q.    Okay.  So there's nobody, in the 17 years that

5   you've been working at P.T.G. Entertainment and TCB,

6   that came in and took pictures of the interior?

7      A.    No, not off the top of my head, no.

8      Q.    Do you know if anybody has, at any point,

9   destroyed any documents for P.T.G. Entertainment or TCB,

10  in this case, any electronic documents?  Do you know of

11  any documents, electronic or physical documents, that

12  have been destroyed since September 18, 2015?

13     A.    I have no knowledge of anything being

14  destroyed, no.

15     Q.    Do you have Exhibit 2?

16     A.    Mm-hmm, yes.

17     Q.    Exhibit 2 is a copy of the images at issue in

18  this case for one of the plaintiffs known as CJ Gibson,

19  Cielo Jean Gibson.  Do you recognize that image at all?

20     A.    I do not.

21     Q.    Have you ever seen those images that are

22  encompassed in Exhibit 2, on Facebook?

23     A.    I have not.

24     Q.    Do you know who posted them to Facebook?

25     A.    I do not.

Page 37

1        Q.   Do you know who created them?

2        A.   I do not.

3        Q.   Do you believe it's Darren Franclemont?

4        A.   I'm sorry?

5        Q.   Do you believe it's Darren Franclemont, who is

6   Duffy?

7        A.   I would have no idea.

8        Q.   Okay.  But you earlier testified that Duffy

9   does all the advertising.  So is there a reason why you

10  would believe that somebody else could have done this

11  besides him?

12       A.   That somebody else could have posted a

13  picture?

14       Q.   Yes.

15       A.   I mean, I guess with social media, anybody can

16  post pictures.

17       Q.   But anybody can just post a picture for

18  advertising purposes, to promote the club, other than

19  Duffy?  That's what my question is.

20       A.   No.

21       Q.   So is it fair to say that these images that

22  are in Exhibit 2, which are of Plaintiff Cielo Jean

23  Gibson, that these images were posted by Duffy?

24       A.   If said images were posted, then it wouldn't

25  be anybody other than Duffy, I guess.  He's the

                                          Page 38

1    one person that does any kind of posting for the Booby

2    Trap.  There's nobody else that has any posting

3    capabilities.

4         Q.   Okay.  So is it your testimony that only Duffy

5    has access to Booby Trap Pompano's Facebook page?

6         A.   I can't answer that with any accuracy, but I

7    would think so.  I don't know that it exists.

8         Q.   Well, if you turn to page -- let's see, turn

9    page 3 of the exhibit, of Exhibit 2.  I submit to you

10   that this is a screen shot of Booby Trap Pompano's

11   Facebook page, page 3 of Exhibit 2.

12             MR. LIROT:  Does that one have a date on it?

13             MS. KHOMIAK:  Yes, it does, December 25, 2013,

14        but they all are posted on the same date.

15        A.   Is there a question?

16        Q.   You just testified that you don't think that

17   there is a Facebook page for Booby Trap Pompano; yet,

18   I'm pointing you to page 3 of Exhibit 2, identifying the

19   Facebook page.

20        A.   Okay.  The reason I would say that is me

21   working the floor of the club, people, I usually get

22   complaints that I can't even get on your Booby Trap

23   page, as if there isn't one.  That's why I would say

24   that.  I've never been on the Booby Trap Facebook page,

25   and I've definitely never seen the image.

Page 39

```
 1          Q.    Okay.  So is it fair to say that the other

 2    three managers that you mentioned before, Adam, Mark,

 3    and Pete, don't have access to the Booby Trap Facebook

 4    page?

 5          A.    That's pretty fair to say.

 6          Q.    Do you know for sure, or is it something

 7    that's a companywide policy, that the managers don't

 8    have access to social media pages of the club?

 9          A.    We just don't have access, mainly, to make

10    adjustments or anything like that.  Like I said, I've

11    never even been on the Booby Trap page.

12          Q.    What about the shift managers?  Would they

13    have access?

14          A.    The shift managers are the four guys that I

15    named.

16          Q.    I'm sorry, the other six managers that you --

17          A.    The floor managers?

18          Q.    The floor managers, would they have access?

19          A.    They wouldn't, no.

20          Q.    They wouldn't have access, okay.  Going back

21    to Exhibit 2, Ms. CJ Gibson's images, it looks like the

22    first three pages were posted on December 23, 2013, by

23    all three clubs, the Doral location, the South Miami,

24    and the Pompano location.  They were posted on

25    December 25, 2013, to promote, it says, Merry Christmas.
```

Page 40

```
 1    Thank you for your patronage, Merry Christmas, and to
 2    all a good night.
 3            Do you know how much the club, specifically
 4    your location, the Pompano location, made on
 5    December 25, 2013, how much in revenue the club made?
 6        A.   I have no idea.
 7        Q.   Do you know who would have that information?
 8        A.   I'm guessing accounting.
 9        Q.   Okay.  Would your answer be the same for the
10    next three pages of the same exhibit?
11        A.   It would.
12        Q.   Okay.  The image that was posted on
13    October 28, 2013, of CJ Gibson?
14        A.   Yes, my answer would be the same.
15        Q.   Going back to the TCB and P.T.G. Entertainment
16    Inc., were you at all involved in the purchase and sale
17    of TCB from P.T.G.?
18        A.   No.
19        Q.   So you wouldn't know the terms of the purchase
20    and sale agreement at all?
21        A.   No.
22        Q.   Do you know who would have that agreement?
23        A.   No.
24        Q.   Just going back briefly to the actual decision
25    on what events are going to be happening at the club, do
```

Page 41

1      the managers and yourself have any input on what events

2      are going to take place?

3           Let's say if you want -- there's a fight, a

4      boxing fight going on, and you knew that this would be a

5      good night to make some good revenue for the club, and

6      you wanted to have a fight night, let's say, and would

7      you yourself contact Duffy, or would you go to Mr. Gori

8      with that idea?  How would you go about creating an

9      event?

10          A.   I don't think the -- the managers themselves

11     don't have direct say as to what events are created, you

12     know.  If it's a pay-per-view thing that we've already

13     paid for, then it's already piped in, so, you know, we

14     just get the promotional things, through Duffy, that

15     we're showing the fight.

16          Q.   Okay.  So if you --

17          A.   But us, as managers, we don't have anything to

18     do with that, no.

19          Q.   So if you wanted to throw an event, there's no

20     way for you to do that?

21          A.   No.

22               MS. KHOMIAK:  I don't have any further

23          questions.

24               MR. LIROT:  I really don't.  I want to thank

25          you for your participation today.

Veritext Legal Solutions
866 299-5127

1          You have the right to read the transcript, or

2      you can waive that.  What would you like to do?

3          THE WITNESS:  I can waive it.  That's fine.

4          MS. KHOMIAK:  Exhibit is 15 is license.  So

5      this is one is 15.

6          (Plaintiffs' Exhibit No. 15, Driver's License,

7      was marked for identification.)

8          MS. KHOMIAK:  Thank you.

9          (The Deposition was concluded at 1:16 p.m.)

10                     -  -  -

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 43

```
 1              REPORTER'S DEPOSITION CERTIFICATE

 2

 3     STATE OF FLORIDA)

 4     COUNTY OF MIAMI-DADE)

 5

 6        I, Chloe Leroux, Florida Professional Reporter and

 7     Notary Public in and for the State of Florida at Large,

 8     certify that I was authorized to and did

 9     stenographically report the deposition of George

10     Gettinger; that a review of the transcript was denied;

11     and that the transcript is a true and complete record of

12     my stenographic notes.

13        I further certify that I am not a relative, employee,

14     attorney, or counsel of any of the parties, nor am I a

15     relative or employee of any of the parties' attorney or

16     counsel connected with the action, nor am I financially

17     interested in the action.

18

19        DATED this 19th day of July, 2017.

20

21

22

             Chloe Leroux, FPR

23

24

25

                                                    Page 44
```

**[1 - asking]**

| 1 |
|---|
| **1**  3:11 6:9,15 16:9 16:14,16 22:15 25:6 |
| **10**  3:18 22:2 28:5 |
| **100**  13:16 |
| **11**  3:18 22:2 28:12 |
| **12**  3:19 10:6,11 22:2 29:13 |
| **12:05**  1:18 |
| **13**  3:20 22:2 30:12 30:20 |
| **14**  3:21 22:2,6,21 23:2,19 24:7,14 25:4,16 30:25 31:18 |
| **15**  3:22 31:21 43:4 43:5,6 |
| **16**  32:3 |
| **17**  8:18 17:7,10 32:13 37:4 |
| **18**  3:11 33:1 37:12 |
| **19**  3:13,13,14,14 3:15,16,16,17,18 3:18,19,20,21 33:9 |
| **190**  2:11 |
| **19th**  44:19 |
| **1:16**  1:4,18 43:9 |

| 2 |
|---|
| **2**  3:13 22:1,6,20 23:2,12,19,24 24:7 24:14 25:4,15 31:18 37:15,17,22 38:22 39:9,11,18 40:21 |
| **20**  11:4 33:17 |
| **2000**  2:5 |
| **2011**  30:15,22 36:23 |

| (col 2 top) |
|---|
| **2013**  39:13 40:22 40:25 41:5,13 |
| **2015**  37:12 |
| **2017**  1:18 4:2 44:19 |
| **21**  33:24 |
| **22**  3:22 34:6 |
| **2240**  2:10 |
| **23**  34:12 40:22 |
| **24**  34:19 |
| **24548**  1:4 |
| **25**  34:24 39:13 40:25 41:5 |
| **26**  35:4 |
| **27**  35:12 |
| **28**  35:17 41:13 |
| **29**  36:3 |
| **2:00**  10:8,9 |

| 3 |
|---|
| **3**  3:13 22:1 25:6 39:9,11,18 |
| **30**  36:11 |
| **31**  36:19 |
| **33130**  2:6 |
| **33764**  2:11 |

| 4 |
|---|
| **4**  3:5,14 10:23 11:2 22:1 25:23 |

| 5 |
|---|
| **5**  1:18 3:14 4:2 16:2,3,9 22:1,11 22:11 23:13 26:9 29:16 |
| **5325**  1:21 |
| **536-2100**  2:12 |

| 6 |
|---|
| **6**  3:15 22:1 26:17 |
| **671-3244**  2:6 |

| 7 |
|---|
| **7**  3:16 22:1 27:3 |
| **727**  2:12 |
| **77th**  1:21 |
| **786**  2:6 |

| 8 |
|---|
| **8**  3:16 8:21 22:1 27:13 |
| **80**  2:5 |
| **8:00**  10:6,7,9,11 |
| **8th**  2:5 |

| 9 |
|---|
| **9**  3:17 22:2 27:17 |

| a |
|---|
| **a.m.**  10:8,9 |
| **able**  5:8,10 15:7 |
| **access**  39:5 40:3,8 40:9,13,18,20 |
| **accounting**  41:8 |
| **accounts**  31:5 32:18 35:22 36:1 |
| **accuracy**  10:21,25 12:12 21:12 39:6 |
| **accurate**  13:1 |
| **acting**  24:2 25:9 26:1 34:1 |
| **action**  27:22 44:16 44:17 |
| **activities**  9:10 |
| **actual**  9:18 41:24 |
| **ad**  21:2,3 |
| **adam**  10:1,1,10,22 10:23,23 14:23 40:2 |
| **adam's**  10:2 |
| **additional**  14:24 |
| **address**  30:16 |
| **adjustments**  40:10 |
| **administration**  6:1 |

| (col 4) |
|---|
| **ads**  21:5,8 |
| **adult**  9:9 29:15 |
| **advertisements**  24:15,18 31:19 |
| **advertising**  8:1 15:9 18:2,6,8 21:10 25:19 31:6 32:18,24 34:15,17 35:9 38:9,18 |
| **affirmed**  4:6 |
| **agents**  25:9 26:1 36:14 |
| **ago**  17:5,7 |
| **agreement**  13:20 14:9,12,12 41:20 41:22 |
| **agreements**  15:12 25:8,25 |
| **alcoholic**  12:17 |
| **alicia**  1:4 |
| **allow**  5:7,14 |
| **amount**  32:15 |
| **answer**  4:25 5:14 21:11 22:19 39:6 41:9,14 |
| **answering**  5:14 |
| **anybody**  5:9 7:9 12:11 17:12 37:1 37:8 38:15,17,25 |
| **anymore**  17:4 19:8,24 |
| **appears**  21:8 |
| **apply**  4:19,19 |
| **approximately**  11:1,2 |
| **ashley**  1:4 |
| **aside**  14:23 |
| **asked**  14:11 22:12 23:1 |
| **asking**  5:6,10 30:19,20 |

Page 1

**[asks - contacted]**

**asks**  22:15 23:24 25:6,23 26:9,17 27:3,13,17 28:5 29:13 30:12,25 31:21 32:3,13 33:9,17,24 34:6,12 34:19,24 35:4,12 35:17 36:3,11
**aspect**  12:23
**assets**  11:25
**associate's**  5:25
**assuming**  21:21
**attached**  21:24 24:4 25:12 26:4 33:4
**attorney**  44:14,15
**audition**  14:8
**august**  18:23 19:20,21 20:7,19
**authorization** 24:16
**authorized**  44:8
**avenue**  1:21
**average**  32:5,10 32:11
**aware**  12:2 15:10 33:22

**b**

**b**  1:9,10,11,11
**back**  8:12,13,20 10:17 15:17 23:12 23:13 30:20 40:20 41:15,24
**bar**  12:6,16
**basically**  19:24
**bearing**  26:18
**behalf**  1:16 2:3,8 24:2 25:10 26:2 34:1,2 36:15
**believe**  13:1 29:3,8 38:3,5,10

**bell**  8:2
**belleair**  2:10
**best**  5:17
**beverages**  12:17
**biandello**  10:8
**biendelo**  9:25
**big**  27:2
**billboards**  31:6 32:19
**bills**  26:11
**bit**  10:18 12:22
**blank**  10:1
**blueprint**  20:10
**booby**  1:9,10,11 1:11,11,20 8:7 9:1 9:3,7 11:20,24 12:9,14 13:6 14:5 17:1,24 18:1 23:2 28:8,15 30:15 31:9,19,25 32:7,17 33:14 35:8,22 36:8,22 39:1,5,10 39:17,22,24 40:3 40:11
**boss**  11:12
**bottle**  17:15
**boxing**  42:4
**break**  24:9,11,13
**briefly**  41:24
**bt's**  11:15 18:18
**bts**  1:9 28:6,14 30:13 31:7,24 32:5,15 33:12 35:7,20 36:6,21
**building**  13:22 16:23
**burciaga**  1:5
**business**  5:25 6:4 9:7,14,17 11:23 12:4

**c**

**c**  2:1
**calculates**  32:10
**called**  4:14
**calls**  4:25 20:18
**canas**  1:6
**capabilities**  39:3
**car**  16:14,20,22
**cards**  17:4,4,6
**casas**  2:4
**casaslawfirm.com** 2:7
**case**  1:3 7:13 37:10,18
**certainly**  24:10
**certificate**  44:1
**certify**  44:8,13
**chairs**  11:25 12:6
**changed**  8:12
**charge**  13:25 15:19,21,23,24 16:1 17:20 18:2,5
**charles**  2:10
**check**  32:4,9,11
**chloe**  1:24 44:6,22
**choosing**  20:24
**christmas**  20:9 40:25 41:1
**cielo**  1:3 37:19 38:22
**cj**  37:18 40:21 41:13
**claims**  27:19,25 28:3 34:2
**clearwater**  2:11
**client's**  24:16
**clients**  8:1
**close**  7:4 16:22 19:7
**club**  7:3,22 8:24 9:11 11:12,25

12:18,19,23,24 13:7,11,19 15:19 18:3 19:10,11,14 19:19 20:16 21:4 24:21 25:2 28:19 28:21 29:7,8 30:1 30:6 32:10,10,23 38:18 39:21 40:8 41:3,5,25 42:5
**clubs**  7:24 11:14 18:18 21:10 23:3 23:3 24:15 36:1 40:23
**college**  6:2,4
**come**  7:3 17:16
**comes**  14:4
**coming**  19:7 20:19
**communication** 24:17,20,23 25:3
**communications** 24:1
**companywide** 40:7
**compensation** 34:9
**complaint**  21:22 21:24 24:5 25:13 26:5,13 27:20,22 27:25 33:6
**complaints**  39:22
**complete**  44:11
**composites**  24:5 25:12 26:4 33:5
**concerning**  34:13 34:20,25 35:5
**concluded**  43:9
**connected**  44:16
**contact**  18:8,12 19:2,25 42:7
**contacted**  18:13

Page 2

[contain - esquire]

**contain** 26:20
**contains** 22:11
**contractors** 29:25
**conversation** 13:4
  20:20
**convicted** 6:6
**copy** 14:9 37:17
**cora** 1:3
**correct** 9:2 12:8
  13:17,19 21:18
  29:10
**corresponded**
  34:5
**correspondence**
  22:17 23:16,20
  33:25 34:4
**counsel** 44:14,16
**county** 44:4
**coupons** 31:7
  32:20
**course** 11:10
  12:21
**court** 1:1 4:18,19
  5:2,8
**created** 38:1 42:11
**creating** 42:8
**creation** 24:3
  25:11 26:3 35:19
  35:23 36:5
**customers** 17:14
**cut** 13:7,11,13
**cv** 1:4

**d**

**d** 1:9,10,11,11 3:1
**dade** 44:4
**dance** 14:5
**dancers** 29:15,18
  30:6,6
**darren** 21:18 38:3
  38:5

**date** 31:24 35:13
  39:12,14
**dated** 44:19
**dates** 30:17
**day** 9:10,10 13:11
  15:20,21 19:23
  44:19
**daytime** 10:6,10
**december** 20:9
  39:13 40:22,25
  41:5
**decides** 20:4,5,20
**decision** 41:24
**defendants** 1:12
  1:16 2:8 27:20
**definitely** 39:25
**degree** 5:25 6:3
**denied** 44:10
**depicted** 23:4,19
  23:21 24:17
**depicting** 35:13
  36:20
**deposed** 7:7
**deposition** 1:14
  3:12 4:1,14 6:10
  6:13,16,24 7:2,21
  11:8 22:13 26:24
  43:9 44:1,9
**described** 26:12
**description** 3:9
**dessie** 1:4
**destroyed** 37:9,12
  37:14
**determines** 16:1
  19:16
**devin** 1:5
**diagrams** 27:4
  36:12,17
**different** 29:6
**direct** 3:5 4:9
  42:11

**discuss** 12:22
**discussed** 27:7
**distribution** 24:3
  25:11 26:3
**district** 1:1,1
**division** 1:2
**document** 6:19,20
**documentation**
  29:7 35:24
**documents** 22:12
  22:14,20 23:14,25
  25:7,14,24 26:6,14
  26:18,20 27:4,18
  28:2,17 30:13,21
  31:1,22 32:2,8,14
  32:21 33:2,7,10,15
  33:18 34:7,10,13
  34:18,20,25 35:2,5
  35:11,13,16,18
  36:4,9,10,24 37:9
  37:10,11,11
**dog** 18:10
**doing** 9:8,14 20:1
  21:9
**door** 15:24 16:2
  17:20
**doral** 1:20 11:15
  18:19 40:23
**drinking** 5:18
**driver's** 3:22 43:6
**duces** 3:12 6:10,16
**duffy** 18:10 19:3
  19:25 20:16,18,22
  21:9,12,17 25:1,3
  25:18 38:6,8,19,23
  38:25 39:4 42:7
  42:14
**duly** 4:6

**e**

**e** 2:1,1 3:1 5:22,22
  5:23,23 19:5
  22:16 23:15,20
**earlier** 14:11 25:1
  38:8
**earnings** 26:11
**easily** 16:23
**education** 5:24
**electronic** 37:10
  37:11
**employed** 8:6,16
  10:13 30:18
**employee** 28:13,19
  28:24 44:13,15
**employees** 29:14
  29:24 30:13,21
**employment** 30:17
**encompassed**
  37:22
**ended** 7:22
**enterprises** 8:9
**entertainers** 9:16
  13:10,11,13,18
  14:1 15:2 29:15
**entertainment**
  1:10 8:8 9:9 12:18
  28:8,15 30:15
  31:9,25 32:6,16
  33:13 35:8,21
  36:7,22 37:5,9
  41:15
**entire** 5:5
**entities** 30:21,22
  30:22
**entitled** 34:8
**entity** 36:14
**entrance** 15:19
**equipment** 12:7
**esquire** 2:4,9

[estimates - head]

estimates  26:10
eva  1:5
evening  15:25
evenings  10:9
event  20:19 42:9
  42:19
events  41:25 42:1
  42:11
everybody  16:13
evidence  24:1 25:8
  25:25 27:5,19
  31:2,23 32:15
  33:3,11,19 34:8
exactly  13:21 20:4
examination  3:5
  4:9
examined  4:6
excitement  18:10
exhibit  3:11,13,13
  3:14,14,15,16,16
  3:17,18,18,19,20
  3:21,22 6:9,15
  22:1 23:12,13
  25:6 37:15,17,22
  38:22 39:9,9,11,18
  40:21 41:10 43:4
  43:6
exhibits  6:14
  21:24 22:6,20
  23:2,19 24:4,6,7
  24:14 25:4,12,15
  26:4 31:18 33:5
exist  27:15 33:8,16
  33:22 34:11
exists  39:7

**f**

facebook  37:22,24
  39:5,11,17,19,24
  40:3
facility  7:4 15:6

fact  21:6
fair  38:21 40:1,5
familiar  6:18
far  15:17 30:4
february  19:22
fees  15:19
felony  6:6
fight  42:3,4,6,15
files  14:14 29:19
financially  44:16
fine  10:3 43:3
finish  5:5,7 31:15
firm  2:4
first  4:6 5:22 17:7
  22:19 23:13 27:21
  34:14,21,22 35:1,6
  35:14 40:22
five  28:9,16 31:23
  32:20
flip  22:6
flipping  21:1
floor  14:16,18,19
  14:20,24 39:21
  40:17,18
florida  1:1,21 2:6
  2:11 8:10,15 44:3
  44:6,7
flyers  20:21 31:7
  32:19
followed  20:10
following  19:12
follows  4:7
food  12:19
forever  20:11
forget  10:1
format  27:14
formerly  11:13
forms  30:11
forward  14:10
four  9:23 30:22
  40:14

fpr  1:24 44:22
franclemont  21:19
  38:3,5
free  17:15
friday  9:19 10:5
front  4:17,21
  16:25
fully  5:7,15
fun  19:20 20:8,19
further  42:22
  44:13

**g**

g  5:22,22,23,23
general  9:14,16,20
  9:21
generally  7:15,17
  7:17
george  1:15 3:4
  4:1,5 5:22 44:9
getting  14:7
gettinger  1:15 3:4
  4:1,5,11 5:23
  24:13 44:10
gibson  1:3 37:18
  37:19 38:23 41:13
gibson's  40:21
girl  14:4 20:25
girls  14:19 15:7
  27:8
give  4:23 14:15
  17:13,15
giving  5:17
go  6:22 15:17
  16:16,20 18:17
  22:7,11,14,22 42:7
  42:8
goes  18:10 19:19
  20:5
going  7:2,21 8:7
  10:1,24 13:1,21
  16:24 17:15,20

19:15,17,19,20
  20:6,12,15 22:5,20
  23:13 29:1 30:20
  40:20 41:15,24,25
  42:2,4
good  41:2 42:5,5
gori  11:8,9,18
  13:18 42:7
gotten  19:21
gross  31:23
ground  4:24
group  34:14
group's  34:14
guess  9:16 10:8,18
  10:19,24 11:16
  19:11,18 21:20
  38:15,25
guessing  41:8
guest  32:4,9,10
guidelines  28:13
  28:20
guy  16:20 17:19
  27:2
guys  18:19,22
  19:13 21:7 40:14

**h**

half  8:13,20
halloween  19:22
  20:8
hand  14:12 22:5
  22:20
handbooks  28:13
  28:19,23,24
handed  24:14
handing  6:14
handles  14:19
hands  29:6
happening  7:19
  41:25
head  5:1 37:7

[hear - loop]

| | | | |
|---|---|---|---|
| **hear**  29:19 | **inc.'s**  32:17 35:8 | **kept**  15:11,15 | **l** |
| **heard**  6:24 | 35:22 36:8 | 29:19 32:22 33:8 | |
| **hey**  19:6 | **including**  30:16 | **khomiak**  2:4 4:10 | **language**  15:8 |
| **highest**  5:24 | 31:3 | 4:11 6:12,17 22:4 | **large**  44:7 |
| **hired**  14:7 | **individual**  19:14 | 22:10,25 24:10,12 | **law**  2:4 |
| **hmm**  10:5 15:3 | **information**  41:7 | 39:13 42:22 43:4 | **lawsuit**  7:6,9,15 |
| 37:16 | **informed**  7:1 | 43:8 | 7:25 21:22 34:3 |
| **hold**  36:9,25 | **input**  42:1 | **kind**  10:25 18:25 | **lease**  12:23 13:19 |
| **holiday**  20:5 | **ins**  8:24 | 20:20,21 21:11 | 13:21 14:1,8,11,12 |
| **hourly**  9:15 | **instance**  5:18 | 39:1 | 14:15 15:12 |
| **huh**  5:1 | 20:19 | **kindle**  1:4 | **leases**  15:1,4,5,11 |
| **i** | **insurance**  17:23 | **kitchen**  12:22,23 | **leasing**  12:6,10 |
| | 28:6,10 | 13:2,3,3,5,8 | **left**  10:16 |
| **idea**  8:4 12:18 | **interested**  44:17 | **knew**  42:4 | **leroux**  1:24 44:6 |
| 15:18 19:18 21:14 | **interior**  36:21 | **know**  5:5 7:6,12 | 44:22 |
| 24:22 38:7 41:6 | 37:6 | 7:15,20,24 8:24 | **letters**  22:16 23:15 |
| 42:8 | **introduced**  4:12 | 10:12,14,20 11:7,8 | 23:20 |
| **identification**  6:11 | **inventory**  9:15 | 11:20,24 12:1,3,4 | **level**  5:24 |
| 22:3 43:7 | **invoices**  25:18 | 12:5,8,9,10,12,13 | **license**  3:22 43:4,6 |
| **identified**  25:15 | 26:10 | 12:17,18 13:9,25 | **lien**  11:19,21 |
| **identify**  6:14 | **involved**  7:25 | 14:3,9 15:11,17 | **limited**  31:3,5 |
| **identifying**  39:18 | 11:22 14:2 41:16 | 16:23 17:19,23,25 | **lina**  1:6 |
| **ii**  8:10 | **issue**  37:17 | 18:1,7,22,22,24 | **liquor**  12:16 |
| **image**  26:19 30:7 | **items**  31:11 | 19:22,24 20:4 | **lirot**  2:9,10 6:18 |
| 37:19 39:25 41:12 | **j** | 21:1,9,20 23:7,10 | 22:13 24:8 39:12 |
| **images**  3:13,13,14 | | 23:11 24:20 27:24 | 42:24 |
| 3:14,15,16,16,17 | **j**  18:10 | 29:11,21 30:4,9,10 | **lirotlaw.com**  2:12 |
| 3:18,18,19,20,21 | **january**  36:23 | 30:23,24 31:10 | **lists**  30:23,24 |
| 8:1 15:9 22:2 23:2 | **jean**  1:3 37:19 | 32:9,12,21,23 33:7 | **little**  10:17,18 |
| 23:4,5,8,22 24:4,6 | 38:22 | 33:15,15,22 34:10 | 12:22 |
| 24:16,18 25:3,11 | **jessica**  1:5 | 34:18,22 35:23,25 | **live**  7:3 |
| 25:15 26:3,7,7,12 | **judge**  4:18,21 | 36:2,10 37:1,8,10 | **location**  9:1 14:21 |
| 26:21,21,23 27:6,7 | **july**  1:18 4:2 20:9 | 37:24 38:1 39:7 | 40:23,24 41:4,4 |
| 27:8,14 30:11 | 44:19 | 40:6 41:3,7,19,22 | **locations**  21:5 |
| 31:2,12,17 33:4,21 | **jump**  5:6 | 42:12,13 | **long**  8:16 10:12 |
| 34:9,14,21 35:1,6 | **jury**  4:18,21 | **knowledge**  35:11 | 16:17 17:5 21:9 |
| 35:14 36:15 37:2 | **justine**  1:5 | 35:16 37:13 | **longer**  11:5 21:12 |
| 37:17,21 38:21,23 | **k** | **known**  8:14 30:16 | 30:17 |
| 38:24 40:21 | | 37:18 | **look**  22:7,21,23 |
| **imagine**  28:21 | **kazdova**  1:6 | | **looks**  40:21 |
| 29:2 | **keeps**  30:23,24 | | **loop**  8:12 |
| | 31:10 | | |

Veritext Legal Solutions
866 299-5127

[ludmila - page]

**ludmila** 2:4
**luke** 2:9,10
**luke2** 2:12

**m**

**magazine** 18:10
21:2
**mail** 19:5
**mails** 22:16 23:15
23:20
**maintains** 35:25
**maintenance**
35:20 36:6
**making** 13:22
**management**
35:19 36:5
**manager** 9:19,20
9:21 10:23 14:16
14:18,18,19 19:18
**managers** 9:22,24
14:17,24 40:2,7,12
40:14,16,17,18
42:1,10,17
**manages** 14:20
**mancini** 9:25 10:7
**manuals** 28:14,20
28:23
**mark** 9:25 10:8
11:3,4 14:23 40:2
**marked** 6:10 22:3
22:5 43:7
**marketa** 1:6
**marketing** 31:3,4
34:15 35:8 36:13
36:18
**marquees** 31:7
32:19
**matches** 18:14
19:1
**material** 34:15,15
34:16

**materials** 31:3,4
35:9,9,10
**matter** 4:13
**mean** 7:17 9:4
19:3 38:15
**meaning** 4:19 10:9
10:11 11:25 30:9
**means** 13:22
**media** 18:11 27:1
27:2 31:5 32:17
35:22,25 38:15
40:8
**medication** 5:19
**members** 16:21
**membership** 17:2
**memberships** 17:9
**mentioned** 40:2
**merry** 40:25 41:1
**mgc** 1:4
**miami** 1:2,21 2:6
11:16 18:18 40:23
44:4
**mila** 2:7 4:11
**mine** 9:12
**mitcheson** 1:4
**mm** 10:5 15:3
37:16
**models** 23:4,7,18
23:21 24:17,21
27:8
**monday** 10:9,10
**money** 12:15,19
13:22 15:7 17:17
32:15
**monies** 33:3,11,19
**month** 19:23 20:5
20:6
**months** 8:21
**morris** 6:4
**move** 14:10

**n**

**n** 2:1 3:1 5:23
**name** 4:11 5:21,22
5:22 6:2 8:8 10:1
10:2 21:20
**named** 40:15
**naughty** 18:24
**need** 16:17 18:14
18:14 19:7 22:14
31:15
**needed** 7:2,21
**negotiating** 13:25
**never** 21:21 23:6,9
25:21,22 27:1
29:4 30:10 39:24
39:25 40:11
**newspapers** 31:7
32:19
**night** 13:12 14:5
15:23 16:3,16
41:2 42:5,6
**nightie** 18:24
**noon** 10:6,11
**north** 1:9 28:7,14
30:14 31:8,24
32:5,15 33:12
35:7,20 36:6,21
**northwest** 1:21
**nos** 22:1
**notary** 44:7
**notes** 44:12
**notice** 3:11 6:9,15

**o**

**o** 5:22
**oath** 4:16,16,17,19
4:20
**occupied** 11:19
**october** 19:22 20:8
41:13

**office** 14:14 15:16
29:5
**oh** 19:3
**okay** 4:15,22 5:3
5:11 7:12,19 8:19
9:6 10:20 11:24
12:9 13:10 15:1
19:16,21,25 20:3
21:21 25:6 26:9
26:17 27:24 30:3
30:5,12,25 31:21
32:3,9 33:9,17,24
34:6,12,19 36:11
37:4 38:8 39:4,20
40:1,20 41:9,12
42:16
**open** 4:18
**opposed** 29:7
**originally** 21:15
**outs** 8:24
**overall** 9:17
**overseeing** 9:14,17
**owner** 11:12,15,15
11:16
**owns** 11:13,24

**p**

**p** 2:1,1
**p.a.** 2:10
**p.c.** 2:4
**p.m.** 1:18,18 43:9
**p.t.g.** 1:10 8:8,14
8:17 9:4 10:13
11:13 28:7,15
30:14 31:8,25
32:6,16 33:13
35:7,21 36:7,22
37:5,9 41:15,17
**page** 3:3,9 6:21,22
22:11,11 23:13
39:5,8,9,11,11,17
39:18,19,23,24

Veritext Legal Solutions
866 299-5127

[page - receipts]

40:4,11
**pages**  22:8,22 40:8
40:22 41:10
**paid**  42:13
**paola**  1:6
**park**  16:11,20
**parked**  16:17
**parker**  16:24
**parking**  16:8,9,14
16:19
**parks**  16:13
**part**  11:16 12:4
35:23
**participation**
42:25
**parties**  18:16
44:14,15
**partners**  11:16
**party**  18:7,20,20
18:23 19:12,20,21
35:19 36:5
**patricia**  7:1,10
**patronage**  41:1
**pay**  13:23 42:12
**payment**  24:4
25:11,15 26:3
33:3,11,19
**pennsylvania**  6:5
**pens**  18:14,25
**people**  13:2 39:21
**pepaj**  1:5
**percent**  13:16
**performers**  29:15
**permission**  23:4
**person**  7:5 18:2
24:3 25:10 36:14
39:1
**personally**  9:12
18:12 19:25 29:20
31:20

**pertain**  28:3
**pertaining**  35:2
**pete**  10:6,12,16,16
10:17 14:23 40:3
**peter**  9:25
**phil**  11:8,8 13:4
**phone**  19:4,6
**phonetic**  9:25
**photographic**  3:13
3:13,14,14,15,16
3:16,17,18,18,19
3:20,21 22:2 27:6
27:8
**photographs**
36:12,20,25
**physical**  37:11
**picture**  38:13,17
**pictures**  37:6
38:16
**piped**  42:13
**pittsburgh**  6:4
**place**  18:17 42:2
**plaintiff**  26:2
38:22
**plaintiff's**  27:21
**plaintiffs**  1:7 2:3
4:13 6:9 7:13 22:1
22:17 23:16,18
24:5 25:13 26:5,7
26:12,13,18 27:6,9
27:14,20 31:2
33:4,5,12,20,20
34:1,2,8 36:16
37:18 43:6
**please**  4:25 5:6,21
**point**  19:21 37:8
**pointing**  39:18
**policies**  17:23 28:6
28:10
**policy**  40:7

**pompano**  9:1,4,7
9:21 11:20,24
12:9,15 14:6,21
17:1,24 18:1
31:19 39:17 40:24
41:4
**pompano's**  39:5
39:10
**posada**  1:6
**position**  30:18
**positions**  16:25
**possibly**  8:10,15
12:5 17:13 21:14
**post**  38:16,17
**posted**  24:15
37:24 38:12,23,24
39:14 40:22,24
41:12
**posters**  20:21 31:6
32:18
**posting**  39:1,2
**potentially**  5:16
**premarked**  23:1
**present**  30:16,23
36:23
**pretty**  40:5
**preventing**  5:17
**previously**  6:7
**print**  31:6 32:18
**prior**  26:23
**private**  29:25
**privileges**  17:12
**probably**  14:16
16:23 27:24
**procedure**  17:21
**process**  14:7
**produce**  22:12
**produced**  22:13
36:13
**products**  34:16
35:10

**professional**  44:6
**profits**  26:11
31:23
**promote**  23:3
38:18 40:25
**promoting**  15:9
**promotion**  20:1,6
**promotional**  31:4
31:10 34:15 35:9
42:14
**promotions**  1:10
25:2 28:7,14
30:14 31:8,24
32:6,16 33:13
35:7,21 36:7,21
**property**  11:19
16:5
**public**  35:6,15
44:7
**published**  35:6
**purchase**  41:16,19
**purpose**  30:7
**purposes**  8:1
38:18
**put**  20:25

**q**

**quarles**  1:6
**question**  4:24 5:4
5:5,7,8,14 27:10
30:19,20 31:15
36:19 38:19 39:15
**questions**  42:23

**r**

**r**  2:1 5:22,23
**read**  43:1
**reading**  5:9
**really**  7:8 42:24
**reason**  38:9 39:20
**receipts**  26:11

Veritext Legal Solutions
866 299-5127

[recognize - take]

recognize  37:19
record  4:12 5:21
  22:7,9,22,24 44:11
refer  9:3 23:25
  25:7,24 27:5,18
  31:1,22 32:14
  33:2,10,18 34:7
referring  21:18
reflect  23:25 25:7
  25:24 27:5,18
  31:1,22 32:14
  33:2,10,18 34:7
reflected  25:4
  31:13,17
reflecting  30:13
  30:21
regarding  34:2
  36:15
regards  34:5
relate  25:14 26:6
related  24:3 25:10
  26:2,11 33:4,12,20
  36:15
relating  35:19
  36:5
relative  44:13,15
relatively  7:4
release  30:11
released  35:14
releases  29:14,17
  29:23,24 30:1,5
remember  13:3
repeat  17:13
report  44:9
reporter  5:2,8
  44:6
reporter's  44:1
reports  9:15 26:10
represent  4:13
representatives
  22:18 23:17 25:9

26:1 36:14
requests  23:14
respond  5:6
responsible  20:24
retained  21:14
revenue  12:14
  41:5 42:5
review  6:14 23:1
  44:10
reviewed  23:19
  24:7 27:21
right  8:15 11:18
  13:21 14:25 15:22
  16:4,15 21:2 43:1
ring  8:2
road  2:10
robert  6:4
rotation  18:18
  19:10
rules  4:18,24
run  13:3,3

**s**

s  2:1
sale  41:16,20
salute  20:9
saturday  10:7,10
saw  21:21
saying  13:20 20:12
  29:24
says  20:18 23:14
  40:25
screen  39:10
secretary  7:1
see  6:17 17:18
  39:8
seen  6:20 15:1
  17:8,9,19 23:5,9
  25:18,21 26:23
  27:1 28:23 29:4,9
  30:10 31:12,17
  37:21 39:25

sell  12:20
selling  12:16,17
send  14:6
september  37:12
set  17:3,18,21 20:7
shaking  5:1
shift  40:12,14
shifts  10:4
short  24:11
shot  39:10
showing  42:15
sign  13:20 14:8,13
  15:2 29:18 30:6
signature  44:22
six  14:22,24 40:16
skinner  1:3
skip  18:20,20
social  27:1,2 31:5
  32:17 35:22,25
  38:15 40:8
sold  9:15
somebody  12:6
  38:10,12
someplace  28:21
  29:19
sorry  24:8 31:16
  38:4 40:16
sources  12:14
south  8:10,11,15
  40:23
souther  1:1
southwest  2:5
space  12:11,23
  13:19
special  17:12
specific  18:2 25:3
  31:12
specifically  41:3
spell  5:21
spend  17:16

spends  32:23
spent  32:15
spoken  7:9
spokesman  7:3,22
  7:23
standard  16:3
start  6:15 8:16
starting  10:12
state  44:3,7
statements  26:10
  32:4
states  1:1
stating  19:9
stenographic
  44:12
stenographically
  44:9
stone  17:21
street  2:5
subcontracted
  13:2
subject  34:3
submit  39:9
suite  2:5,11
summer  19:20
sun  20:8,19
sunday  10:8,10
supply  13:21
supplying  15:6
sure  4:25 11:7
  40:6
sworn  4:6

**t**

t  5:23,23
t.k.  1:10 28:7,14
  30:14 31:8,24
  32:6,16 33:12
  35:7,20 36:6,21
tables  11:25 12:6
take  4:17,20 5:8
  10:3 13:15 24:8

Page 8

[take - years]

42:2
**takeguma** 1:5
**taken** 1:16 4:16,17
   11:7 24:11 36:12
**talk** 19:4 21:17
**talked** 19:3
**tcb** 8:9,10,14,19
   9:4 10:13 11:13
   11:20 12:10 37:5
   37:9 41:15,17
**team** 36:13,18
**technical** 8:8
**tecum** 3:12 6:10
   6:16
**tell** 17:14 20:1
**tells** 14:4
**terms** 15:4 41:19
**territory** 32:25
**testified** 4:7 11:18
   13:18 19:9 25:1
   38:8 39:16
**testimony** 5:17
   39:4
**thank** 41:1 42:24
   43:8
**theme** 18:23,24,25
   19:14,16,18 20:8,9
**thing** 18:25 42:12
**things** 18:15 42:14
**think** 8:11 11:17
   11:17 13:5,6 16:2
   20:10 21:7 39:7
   39:16 42:10
**third** 18:7 19:13
   35:19 36:5
**three** 7:24 9:24
   18:18 24:15 30:22
   32:5 40:2,22,23
   41:10
**throw** 42:19

**time** 16:3 17:15,16
   18:13
**tina** 1:6
**title** 9:18
**today** 4:14 5:17,19
   6:25 7:7 8:4 42:25
**today's** 26:23
**told** 14:23
**top** 37:7
**total** 9:22 31:23
**transcribe** 5:2
**transcript** 5:9
   43:1 44:10,11
**trap** 1:9,10,11,11
   1:11,20 8:7 9:1,3
   9:7 11:20,24 12:9
   12:15 13:6 14:5
   17:1,24 18:1 23:3
   28:8,15 30:15
   31:9,19,25 32:7,17
   33:14 35:8,22
   36:8,22 39:2,5,10
   39:17,22,24 40:3
   40:11
**troops** 20:10
**true** 44:11
**trying** 20:3
**tuesday** 9:19 10:5
   10:9
**turn** 39:8,8
**two** 7:18 18:15
**type** 11:22 20:24

**u**

**uh** 5:1
**unaware** 32:21
**understand** 5:10
   5:12 16:8 19:12
**understood** 12:25
**united** 1:1
**usage** 26:12

**use** 7:25 13:22
   26:7 30:7 33:20
   34:9
**usually** 19:4,6,19
   39:21

**v**

**vacation** 7:18
**vague** 7:19
**valentine's** 19:23
**valet** 16:5,12,20
   16:24
**vehicles** 16:10,11
**vicinity** 29:6
**vickers** 1:4
**videos** 27:4 31:6
   32:18 36:12,20,25
**view** 42:12
**viewed** 16:23
**vip** 16:8,19,21
   17:2,3,4,9 18:16
**vivian** 1:4
**volunteered** 7:4
**vs** 1:8

**w**

**waive** 43:2,3
**waivers** 29:14,17
   29:23 30:5
**want** 5:6 6:17
   10:19,24 13:5
   19:19 42:3,24
**wanted** 42:6,19
**wants** 14:5 20:25
   30:6
**way** 12:25 42:20
**we've** 42:12
**websites** 31:5
   32:17 36:8
**wednesday** 1:18
   10:7

**week** 19:10,12,13
**weeks** 7:18
**went** 4:12 6:2
**whitten** 1:4
**witness** 3:3 4:8
   43:3
**work** 10:5,6
**working** 9:16
   29:25 37:5 39:21
**works** 10:7,8,10
**written** 25:8,25
**wrong** 21:18

**x**

**x** 3:1

**y**

**yeah** 8:15 20:14
**year** 8:13,20,20
**years** 8:18 10:23
   11:2,4 17:7,10
   20:13 28:9,16
   29:16 31:24 32:5
   32:20 37:4

Veritext Legal Solutions
866 299-5127

Federal Rules of Civil Procedure

Rule 30

(e) Review By the Witness; Changes.

(1) Review; Statement of Changes. On request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available in which:

(A) to review the transcript or recording; and

(B) if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them.

(2) Changes Indicated in the Officer's Certificate. The officer must note in the certificate prescribed by Rule 30(f)(1) whether a review was requested and, if so, must attach any changes the deponent makes during the 30-day period.

DISCLAIMER:  THE FOREGOING FEDERAL PROCEDURE RULES ARE PROVIDED FOR INFORMATIONAL PURPOSES ONLY. THE ABOVE RULES ARE CURRENT AS OF SEPTEMBER 1, 2016.  PLEASE REFER TO THE APPLICABLE FEDERAL RULES OF CIVIL PROCEDURE FOR UP-TO-DATE INFORMATION.

VERITEXT LEGAL SOLUTIONS
COMPANY CERTIFICATE AND DISCLOSURE STATEMENT

Veritext Legal Solutions represents that the foregoing transcript is a true, correct and complete transcript of the colloquies, questions and answers as submitted by the court reporter. Veritext Legal Solutions further represents that the attached exhibits, if any, are true, correct and complete documents as submitted by the court reporter and/or attorneys in relation to this deposition and that the documents were processed in accordance with our litigation support and production standards.

Veritext Legal Solutions is committed to maintaining the confidentiality of client and witness information, in accordance with the regulations promulgated under the Health Insurance Portability and Accountability Act (HIPAA), as amended with respect to protected health information and the Gramm-Leach-Bliley Act, as amended, with respect to Personally Identifiable Information (PII). Physical transcripts and exhibits are managed under strict facility and personnel access controls. Electronic files of documents are stored in encrypted form and are transmitted in an encrypted fashion to authenticated parties who are permitted to access the material. Our data is hosted in a Tier 4 SSAE 16 certified facility.

Veritext Legal Solutions complies with all federal and State regulations with respect to the provision of court reporting services, and maintains its neutrality and independence regardless of relationship or the financial outcome of any litigation. Veritext requires adherence to the foregoing professional and ethical standards from all of its subcontractors in their independent contractor agreements.

Inquiries about Veritext Legal Solutions' confidentiality and security policies and practices should be directed to Veritext's Client Services Associates indicated on the cover of this document or at www.veritext.com.