```
 1              IN THE UNITED STATES DISTRICT COURT
                   SOUTHER DISTRICT OF FLORIDA
 2                        MIAMI DIVISION
 3
    CIELO JEAN GIBSON, CORA SKINNER,     CASE NO.:
 4  VIVIAN KINDLE, ALICIA WHITTEN,       1:16-CV-24548-MGC
    ASHLEY VICKERS, DESSIE MITCHESON,
 5  DEVIN JUSTINE TAKEGUMA, EVA PEPAJ,
    JESSICA BURCIAGA, LINA POSADA,
 6  MARKETA KAZDOVA, PAOLA CANAS,
    and TINA QUARLES,
 7
            Plaintiffs,
 8
            vs.
 9
    BTS NORTH, INC. d/b/a BOOBY TRAP;
10  T.K. PROMOTIONS, INC. d/b/a
    BOOBY TRAP; P.T.G. ENTERTAINMENT,
11  INC. d/b/a BOOBY TRAP; and BOOBY
    TRAP, INC. d/b/a BOOBY TRAP,
12
            Defendants.
13  ~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
14
                       DEPOSITION OF
15
                    PATRICIA PETTINATO
16
            TAKEN ON BEHALF OF THE PLAINTIFFS
17
18                 Wednesday, July 5, 2017
                   10:30 a.m. - 11:57 a.m.
19
20
                      Booby Trap Doral
21              5325 Northwest 77th Avenue
                      Miami, Florida
22
23
24                  Chloe Leroux, FPR
25
```

Page 1

```
 1                    A P P E A R A N C E S

 2

 3    On behalf of the Plaintiffs:

 4        LUDMILA KHOMIAK, ESQUIRE
          THE CASAS LAW FIRM, P.C.
 5        80 Southwest 8th Street
          Suite 2000
 6        Miami, Florida 33130
          (786)671-3244
 7        mila@casaslawfirm.com

 8

      On behalf of the Defendants:

 9

          LUKE LIROT, ESQUIRE
10        LUKE CHARLES LIROT, P.A.
          2240 Belleair Road
11        Suite 190
          Clearwater, Florida 33764
12        (727) 536-2100
          luke2@lirotlaw.com

13
                                 -   -   -
14

15

16

17

18

19

20

21

22

23

24

25
```

Page 2

```
 1                    I N D E X
 2
 3  Witness:                              Page:
 4  PATRICIA PETTINATO
 5  DIRECT EXAMINATION                        5
    CROSS-EXAMINATION                        58
 6  REDIRECT EXAMINATION                     59
 7
                        -   -   -
 8
 9                  E X H I B I T S
10
11               Description:       Page:
12
    Exhibit 1      Re-Notice of Taking
13                 Deposition Duces Tecum   7
14  Exhibit 2      Cielo Jean Gibson,
                   Photographic Images     15
15
    Exhibit 3      Cora Skinner,
16                 Photographic Images      16
17  Exhibit 4      Vivian Kindle,
                   Photographic Images      16
18
    Exhibit 5      Alicia Whitten,
19                 Photographic Images      16
20  Exhibit 6      Ashley Vickers,
                   Photographic Images      16
21
    Exhibit 7      Dessie Mitcheson
22                 Photographic Images      17
23  Exhibit 8      Devin Justine Takeguma,
                   Photographic Images      17
24
    Exhibit 9      Eva Papaj, Photographic
25                 Images                   17


                                      Page  3
```

1

Exhibit 10        Jessica Burciaga,           17
2                 Photographic Images
3  Exhibit 11        Lina Posada,               17
4                    Photographic Images
   Exhibit 12        Marketa Kazdova,           18
5                 Photographic Images
6  Exhibit 13        Paola Canas,               18
7                    Photographic Images
   Exhibit 14        Tina Quarles,              18
8              Photographic Images
9  Exhibit 15        Driver's License          60
10
   Exhibit 16        List of Employees         29

11

12                          -   -   -

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                 Deposition of Patricia Pettinato

 2                         July 5, 2017

 3

 4    THEREUPON,

 5                     PATRICIA PETTINATO,

 6    having been first duly sworn or affirmed, was examined

 7    and testified as follows:

 8                THE WITNESS:  I do.

 9                     DIRECT EXAMINATION

10    BY MS. KHOMIAK:

11        Q.   Ms. Pettinato, as I stated off the record, my

12    name is Mila Khomiak, and I represent the plaintiffs in

13    the matter that we're here for today.  You have just

14    taken an oath, and it's important for you to understand

15    that --

16        A.   If you can talk a little bit louder?  I'm

17    sorry, it's from the job and the loud music.

18        Q.   Did you hear the first part?

19        A.   Yes.

20        Q.   You've just taken an oath, and everything that

21    will be said today is under oath and will be the same as

22    if you're testifying in front of a judge or the jury.

23    So you understand that, correct?

24        A.   Yes.

25        Q.   Okay.  Before I begin, I'll give you a few
```

Page 5

```
 1   ground rules.  It's important that, when I ask you a
 2   question, you listen for my entire question and answer
 3   only when I finish the question, so it's important that
 4   we do not interrupt each other.  I will do the same.  I
 5   will not interrupt you when you're answering, and if I
 6   could have you do the same for me.
 7          Also, when I do ask you a question and the
 8   question calls for a yes or no response, I would like
 9   you to say yes or no and not uh-huh or uh-uh or shaking
10   of the head or nodding of the head, just because the
11   court reporter will not be able to take that down.  She
12   can only take down what is verbally expressed.
13          Also, if you answer my question, I will assume
14   that you understood what I asked you.  If you don't ask
15   for clarification, I will assume that what you answer is
16   true and correct.  Does that make sense?
17       A.   Yes.
18       Q.   Okay.  Is there anything that's preventing you
19   from giving me your best testimony today?  For instance,
20   are you under any medication?  Have you drank any
21   alcohol before coming --
22       A.   Oh, no.
23       Q.   See, this is one of the rules that I just
24   spoke about, if you could just let me finish my question
25   before you respond, so we can get a clear record.
```

Page 6

1            Can you please state and spell your full name

2    for the record.

3         A.   It's Patricia Pettinato, P-e-t-t-i-n-a-t-o.

4         Q.   What is your highest level of education?

5         A.   Associate's degree.

6         Q.   Where is that associate's degree from?

7         A.   Junior college in Pennsylvania.

8         Q.   Okay.  And what degree did you get, in what

9    field?

10        A.   I'm trying to remember.  Accounting -- you

11   know, I don't remember.  It's business, let's say

12   business.

13        Q.   Okay, that's fair enough.  Have you ever been

14   convicted of a felony?

15        A.   No.

16             (Plaintiffs' Exhibit No. 1, Re-Notice of

17        Taking Deposition Duces Tecum, was marked for

18        identification.)

19   BY MS. KHOMIAK:

20        Q.   And part of the process today, I'll be handing

21   you certain exhibits for you to identify and discuss.

22   The first exhibit, that I have premarked as Exhibit 1,

23   is the notice for this deposition.  Have you seen this

24   document before?

25        A.   No.

                                           Page 7

1      Q.   You have not seen this document before?  How

2   did you find out about this deposition?

3      A.   I'm trying to remember.  I was told by one of

4   the managers, that I was part of it.  Eric and I could

5   have been discussing it.  I don't remember.  But it

6   wasn't a formal notification of any kind.

7      Q.   Do you know when you discussed it with Eric?

8      A.   I found out about it last Monday or Tuesday.

9      Q.   Did he ask you to bring any documents with

10  you?

11     A.   No.  I was e-mailed a list of documents.

12     Q.   Can you turn to page 5 of the notice, which

13  has been marked as Exhibit 1.  Is this a list of the

14  documents he asked you to bring?

15     A.   No.

16     Q.   Okay.  Can you go over the list of the

17  documents that you discussed before?

18     A.   Am I supposed to tell you which ones I know

19  about?

20     Q.   When you discussed with Eric, what documents

21  did he ask you to bring today?  Not necessarily what's

22  on that list, but what did he tell you to bring?

23     A.   The employee handbooks, which we have none.  I

24  didn't go far enough.

25     Q.   Just forget this list.  What did Eric tell you

Page 8

1    to bring?

2         A.   The list was 5 years of gross receipts, a list

3    of employee names, addresses, whatever, and the

4    insurance policies for the club, which I had already

5    given to Mr. Lirot, and the waivers, which we don't use,

6    because I was told it wasn't relevant.  That's it.

7         Q.   And when you refer to Eric, is this Eric

8    Otero?

9         A.   Yes, it is.

10        Q.   Okay.  I'll go over this list with you, that's

11   on Exhibit 1, in a little bit, so we'll get back to

12   that.  What company do you work for?

13        A.   I work for the Booby Trap Pompano, which is

14   TCB.

15        Q.   Is that a legal name?

16        A.   Yes.

17        Q.   Is it TCB South Florida II Inc.?

18        A.   Yes.

19        Q.   What is your position at TCB?

20        A.   Bookkeeper, office manager.

21        Q.   Is this the only location where you're

22   employed?

23        A.   Yes.

24        Q.   From now on, I will refer to TCB South Florida

25   II Inc. as TCB, and you'll know what it is, okay?

Veritext Legal Solutions
866 299-5127

1        A.    Okay.

2        Q.    What is TCB in the business of doing?

3        A.    Operates the club.

4        Q.    What kind of club?

5        A.    Adult entertainment nightclub.

6        Q.    And what are your day-to-day activities at

7   TCB?

8        A.    Well, let's see, writing up the deposits,

9   doing a sales journal.  I don't know, opening the club,

10  counting the safe, and I also work, in other capacities,

11  for other companies, so everything I do isn't

12  necessarily for TCB, but it's unrelated to this.

13       Q.    So the other companies you're referring to,

14  they're completely unrelated to the Booby Trap?

15       A.    Right.  They're not entertainment companies.

16       Q.    So your responsibilities are accounting and

17  bookkeeping?

18       A.    Yes.

19       Q.    Do you do anything in terms of advertising?

20       A.    No.

21       Q.    Do you pay any bills for the advertising that

22  the club does?

23       A.    No.

24       Q.    Is it separate and apart from what your job

25  duties are?

Veritext Legal Solutions
866 299-5127

```
 1          A.    Yes.
 2          Q.    And do you know who pays for the advertising
 3   aspects of the business?
 4          A.    I believe it's put on the credit card.
 5          Q.    Whose credit card?
 6          A.    It's a company credit card.
 7          Q.    Who pays that credit card?
 8          A.    We all do.  Eric does and I do.
 9          Q.    So you do pay the bill?
10          A.    Well, I guess in an indirect sort of way.
11          Q.    And who is this bill usually from?
12          A.    J-Dog.
13          Q.    And we'll get back to that in a little bit.
14   Do you know how long TCB had been business with J-Dog?
15          A.    A few years.
16          Q.    Would you say in the last 3 years?
17          A.    Sounds right.
18          Q.    Could it be 5 years maybe?
19          A.    No.  I don't believe it's 5, no.
20          Q.    Okay.  As you might know, our office has
21   already taken the deposition of Mr. Phil Gori.  Do you
22   know who Phil Gori is?
23          A.    Sure.
24          Q.    Who is he to you?
25          A.    He's my boss.
```

Page 11

1    Q.   Let's go back to Exhibit 1, that I handed you

2    earlier, which is the notice of this deposition, and

3    please go back to page 5.

4    A.   Page 5?

5    Q.   Yes.

6    A.   Question No. 1 asks:

7         Any and all letters, e-mails, and/or other

8         correspondence between the plaintiffs and

9         his/her/their representatives and yourself.

10   A.   The plaintiffs?

11   Q.   The plaintiffs are Cielo Jean Gibson, Cora

12   Gibson, Vivian Kindle, Alicia Whitten, Ashley Vickers,

13   Dessie Mitcheson --

14   A.   No.

15        MR. LIROT:   Her finish.

16   Q.   Devin Justine Takeguma, Eva Papaj Jessica

17   Burciaga, Lina Posada, Marketa Kazdova, Paola Canas, and

18   Tina Quarles.

19   A.   No, I know I don't know any of them.

20   Q.   Do you think TCB has any letters, e-mails, or

21   any other correspondence between these ladies, that I

22   just mentioned, and TCB?

23   A.   Not to my knowledge.

24   Q.   Okay.  Do you know who, before we proceed to

25   Question No. 2, who P.T.G. Entertainment Inc. is?

Page 12

1      A.   It was originally the corporation that ran,

2   that operated, the Booby Trap.

3      Q.   In Pompano?

4      A.   Yes.

5      Q.   So how long has TCB been operating the Pompano

6   location?

7      A.   Roughly 2 years.

8      Q.   So before it was P.T.G. Entertainment Inc.?

9      A.   Right.

10     Q.   Did you work at P.T.G. Entertainment Inc.?

11     A.   Yes.

12     Q.   Okay, how long have you been employed by the

13   Pompano location?

14     A.   This is my 5th year.

15     Q.   Okay.  So is it fair to say that you worked

16   for P.T.G. for about 3 years, and then you worked at TCB

17   for the last year?

18     A.   Yes.  I just could remember the exact date

19   that TCB started.  Clarification, in the beginning, I

20   only worked part time.

21     Q.   Was there anybody else that was working as a

22   bookkeeper or accountant for P.T.G.?

23     A.   Yes.  I believe she passed away.

24     Q.   What was her name?

25     A.   I don't know.

                                        Page 13

```
 1        Q.   You don't recall?

 2        A.   Never met her.

 3        Q.   Okay.  From now on, when it comes to these

 4   questions that I'm going to ask you, on page 5 of

 5   Exhibit 1, I'm going to state TCB, but I'm also going to

 6   mean P.T.G. Entertainment Inc., okay?  Just because TCB

 7   has been only operating the business for the last few

 8   years, and the claims that are asserted in our complaint

 9   stand for the last 5 years.

10        A.   I understand.

11        Q.   Question No. 2, on page 5 of Exhibit 1,

12   states:

13             Any and all documents that refer to, reflect,

14        or evidence any and all communications between you,

15        or anyone acting on your behalf, and any other

16        person related to the creation, distribution, or

17        payment for the images attached as exhibits and/or

18        composites to plaintiffs' complaint.

19             Before I ask you about these documents, have

20   you seen the complaint in this action?

21        A.   No.

22        Q.   You have not?  Have you seen the exhibits that

23   are attached to the complaint?

24        A.   No.

25        Q.   So you do not know what advertising that
```

Page 14

1    plaintiffs are suing for?

2         A.   No.

3         Q.   So you have never seen any of this?

4         A.   No.

5         Q.   Okay.  So before I can go on with these

6    questions, I'll need to show you the images that the

7    Booby Trap locations, all three Booby Trap locations,

8    had used, in order to promote the clubs.  I'm going to

9    hand you Exhibits 2 to 14, and I'm going to ask you if

10   you have seen these before?

11        A.   I try not to.

12        Q.   Can you review each page and tell me if you

13   have seen any of those images, which are the exhibits

14   that were attached to the complaint?

15        A.   The person or the picture, have I seen this

16   before?

17        Q.   The picture.

18        A.   No.

19        Q.   If you can flip through them, there's a whole

20   bunch of them.

21             (Plaintiffs' Exhibit No. 2, Cielo Jean Gibson,

22        Photographic Images, was marked for

23        identification.)

24             MR. LIROT:  The first one is Cielo Jean

25        Gibson.

                                         Page 15

1        A.    Oh, okay.   Exhibit 2, no.

2              (Plaintiffs' Exhibit No. 3, Cora Skinner,

3        Photographic Images, was marked for

4        identification.)

5              MR. LIROT:   Exhibit 3, Cora Skinner?

6        A.    No.

7   BY MS. KHOMIAK:

8        Q.    Have you seen any of those images in Exhibits

9   2 or 3?

10       A.    No.

11             (Plaintiffs' Exhibit No. 4, Vivian Kindle,

12       Photographic Images, was marked for

13       identification.)

14             MR. LIROT:   Exhibit No. 4, Vivian Kindle?

15       A.    No.

16             (Plaintiffs' Exhibit No. 5, Alicia Whitten,

17       Photographic Images, was marked for

18       identification.)

19             MR. LIROT:   Exhibit No. 5, Alicia Whitten?

20       A.    No.

21             (Plaintiffs' Exhibit No. 6, Ashley Vickers,

22       Photographic Images, was marked for

23       identification.)

24             MR. LIROT:   Exhibit No. 6, Ashley Vickers?

25       A.    No.

                                        Page 16

1              (Plaintiffs' Exhibit No. 7, Dessie Mitcheson

2         Photographic Images, was marked for

3         identification.)

4              MR. LIROT:  Exhibit No. 7, Dessie Mitcheson?

5         A.   No.

6              (Plaintiffs' Exhibit No. 8, Devin Justine

7         Takeguma, Photographic Images, was marked for

8         identification.)

9              MR. LIROT:  Exhibit No. 8, Devin Justine

10        Takeguma?

11        A.   No.

12             (Plaintiffs' Exhibit No. 9, Eva Papaj,

13        Photographic Images, was marked for

14        identification.)

15             MR. LIROT:  Exhibit No. 9, Eva Papaj?

16        A.   No.

17             (Plaintiffs' Exhibit No. 10, Jessica Burciaga,

18        Photographic Images, was marked for

19        identification.)

20             MR. LIROT:  Exhibit No. 10 is Jessica

21        Burciaga.

22        A.   No.

23             (Plaintiffs' Exhibit No. 11, Lina Posada,

24        Photographic Images, was marked for

25        identification.)

Page 17

```
 1              MR. LIROT:  Exhibit No. 11, Lina Posada?

 2        A.   No.

 3              (Plaintiffs' Exhibit No. 12, Marketa Kazdova,

 4        Photographic Images, was marked for

 5        identification.)

 6              MR. LIROT:  Exhibit No. 12, Marketa Kazdova?

 7        A.   No.

 8              (Plaintiffs' Exhibit No. 13, Paola Canas,

 9        Photographic Images, was marked for

10        identification.)

11              MR. LIROT:  Exhibit No. 13, Paola Canas?

12        A.   No.

13              (Plaintiffs' Exhibit No. 14, Tina Quarles,

14        Photographic Images, was marked for

15        identification.)

16              MR. LIROT:  Exhibit No. 14, Tina Quarles?

17        A.   No.

18   BY MS. KHOMIAK:

19        Q.   So you have testified just earlier, that

20   J-Dog, that you pay J-Dog's advertising that he does for

21   the club?

22        A.   Yes.  That's what he goes by.

23        Q.   Okay.  Do you have any records of those

24   invoices in your possession?

25        A.   No, not with me, no.
```

Veritext Legal Solutions
866 299-5127

1        Q.   But you do have them at your office, correct?

2        A.   Yes.

3        Q.   Okay.  I will ask that you produce those to

4   Mr. Lirot, because we have requested them previously,

5   and we have requested them on No. 2, on page 5, of

6   Exhibit 1, which is the notice.

7        A.   Sure.

8             MR. LIROT:  What time frame are you looking

9        for?

10            MS. KHOMIAK:  For the last 5 years.

11            MR. LIROT:  Fair enough.

12            THE WITNESS:  For how long?

13   BY MS. KHOMIAK:

14       Q.   For 5 years.

15       A.   Well, I could have sent them to you, but that

16   requires storage.  It might take me a few days, but I

17   can give you what I have there.

18            MR. LIROT:  Would J-Dog have copies of that?

19            THE WITNESS:  Sure, it comes from them.  They

20       fax them over.

21            MR. LIROT:  As long as we get the full set,

22       would you be happy with whatever source we get

23       those from?

24            MS. KHOMIAK:  That's fine.  If you can get

25       them from J-Dog, that's fine as well.

Page 19

```
1              MR. LIROT:  Very good.

2              THE WITNESS:  Much easier, yeah.

3    BY MS. KHOMIAK:

4         Q.   But we ask for the last 5 years, because

5    that's when the images --

6         A.   To be honest with you, I don't know that I

7    have them for 5 years anyways, but go ahead.

8         Q.   As far back as you can go, that's what we're

9    asking.

10        A.   Well, he's going to provide them now, right?

11             MR. LIROT:  We'll work together, to make sure

12        that they get produced.

13        A.   Yeah.

14        Q.   Okay.  Is there any other evidence of

15   communication or any other documents that pertain to the

16   advertising aspect of both, the TCB and the P.T.G.

17   Entertainment?

18        A.   Not that I'm aware of.

19        Q.   Okay.  No. 3, on page 5 of Exhibit 1, asks

20   for:

21             All documents that refer to, reflect, or

22        evidence any and all written agreements between

23        you, your representatives, agents, or anyone acting

24        on your behalf, and any other person related to the

25        creation, distribution, or payment for the images
```

Page 20

1          attached as exhibits and/or composites to

2          plaintiffs' complaint.

3                So this pertains to any communication or any

4      other agreements between P.T.G. and TCB and any other

5      person that has created any other advertising for them,

6      besides J-Dog.

7          A.   Not that I'm aware of.

8          Q.   Are you saying that there's no other person,

9      besides J-Dog, that does the advertising for the

10     company?

11         A.   That I'm aware of, yes.

12         Q.   Okay.  No. 4 asks for:

13               All documents that refer to, reflect, or

14          evidence any and all written agreements between

15          you, your representatives, agents, or anyone acting

16          on your behalf, and any plaintiff related to the

17          creation, distribution, or payment for the images

18          attached as exhibits and/or composites to

19          plaintiffs' complaint.

20               I showed you Exhibits 2 through 14, and what

21     No. 4 is asking you is for documents, between these

22     plaintiffs, these models on these images, and anyone at

23     TCB or P.T.G.

24         A.   Not that I'm aware of.

25         Q.   Are you saying that there's no documents

Page 21

1    between the plaintiffs in this action and the clubs that

2    you worked for?

3         A.   No.

4         Q.   That you currently work for.

5         A.   No, not that I'm aware of.

6         Q.   Okay.  No. 5 asks for:

7              All reports, estimates, statements, invoices,

8         bills, or receipts for earnings or profits related

9         to the usage of plaintiffs' images described in

10        plaintiffs' complaint.

11             I know Mr. Lirot produced certain tax returns

12   for the Pompano entity location, the P.T.G. and TCB

13   South Florida, and it does include the monies spent on

14   advertising.  Do you have any additional documents, for

15   the last 5 years, for how much TCB and P.T.G. has spent

16   on advertising?

17        A.   I'm not really sure, off the top of my head,

18   no.

19        Q.   Okay.  Do you have any documents that would

20   say how much TCB and P.T.G. have spent on the

21   advertisements marked as Exhibits 2 through 14?

22        A.   The tax returns, profit and loss statement,

23   tax return, that's it.

24        Q.   Who does the actual tax filing for TCB and

25   P.T.G.?

                                              Page 22

1        A.    Al Masters.

2        Q.    Okay.  And would he have any documents that

3   pertain to these specific images marked as Exhibits 2 to

4   14?

5        A.    No.

6        Q.    He would not?

7        A.    No.

8        Q.    Would the invoices that J-Dog provides to you

9   encompass these images marked as Exhibits 2 to 14?

10        A.    I don't understand.  What do you mean?

11        Q.    The invoices that J-Dog provides to you --

12        A.    Correct.

13        Q.    -- for creating the advertisements, would

14   there be invoices for these specific images, that I

15   showed you before, marked as Exhibits 2 through 14?

16        A.    I don't know.

17        Q.    Okay.

18        A.    Not to me.

19        Q.    But do you not know what's on those invoices,

20   what's reflected on those invoices, what they look like?

21        A.     It's a breakdown of what's maybe in print,

22   what's maybe in radio.  I haven't scrutinized one

23   lately.  But it's just generalities, not in particular

24   to these individuals.  I've never noticed one.

25        Q.    So you wouldn't have an invoice where it would

Page 23

1    say, let's say, St. Patty's Day, 2015 advertising?  It

2    would not say that?

3         A.   You know, I can't honestly answer, because I

4    don't scrutinize those invoices when they come in.  I

5    tend to just file them.  I've looked at them, not in a

6    long time, and see where certain things are broken down,

7    as to generalities, but not specifics.

8         Q.   All right.  Would you have any documents,

9    besides the tax returns, that provides the profits of

10   the events that were advertised in Exhibits 2 through

11   14?

12        A.   You mean in reference to a specific event?

13        Q.   Yes.

14        A.   Not that I'm aware of.

15        Q.   Okay.  No. 6 of Exhibit 1 asks for:

16             Any and all documents bearing any plaintiffs'

17        image.

18             Do you know if there's any other documents,

19   any other evidence, where these models' images were used

20   for any other advertising or any other promotion?

21        A.   Again, no, not that I'm aware of.

22        Q.   No. 7 asks for:

23             Any and all documents, videos, and or diagrams

24        that refer to, reflect, or evidence any

25        photographic images of plaintiffs.

Page 24

1      A.    I wouldn't know, no.

2      Q.    And No. 8 asks for:

3            Any and all images of plaintiffs in whatever

4      format they exist.

5      A.    No.

6      Q.    No. 9 asks for:

7            Any and all documents that refer to, reflect,

8      or evidence any and all claims made against

9      defendants by plaintiffs' complaint.

10     A.    Translation?

11     Q.    Earlier you testified that you have not read

12     the complaint, so you probably wouldn't even know what

13     claims were brought by the plaintiffs against the

14     defendants in this action, is that correct?

15     A.    Yes.

16     Q.    Okay.  No. 10 asks for:

17           Any and all policies of insurance for BTS

18     North Inc., T.K. Promotions Inc., P.T.G.

19     Entertainment Inc., and Booby Trap Inc. for the

20     last five years.

21           I know that you stated that you are employed

22     by TCB and you were previously employed by P.T.G.

23     Entertainment Inc., but do you have any policies of

24     insurance for the other two locations, BTS North Inc.

25     and T.K. Promotions Inc.?

Page 25

1       A.   No.

2       Q.   Okay.  So is it fair to say that the office

3    that you work at, in the Pompano location, only handles

4    the Pompano location's accounting and bookkeeping, and

5    it doesn't handle any other club location's bookkeeping

6    and accounting?

7       A.   Yes.

8       Q.   So you know nothing about BTS North Inc. and

9    T.K. Promotions Inc.?

10      A.   No.

11      Q.   The insurance policies, have you submitted all

12   of the insurance policies that are in your possession

13   for Pompano?

14      A.   I provided it for 5 years, to Mr. Lirot, yes.

15      Q.   Okay.  No. 11 asks for:

16           Any and all employee handbooks, guidelines, or

17           manuals of BTS North Inc., T.K. Promotions Inc.,

18           P.T.G. Entertainment Inc., and Booby Trap Inc. for

19           the last five years.

20           Again, we'll just concentrate on P.T.G.

21   entertainment, since that's who your employer is.  Are

22   there any handbooks, guidelines, or manuals?

23      A.   No.

24      Q.   Okay.  No. 12 asks for:

25           Any and all releases or waivers of employees,

                                                    Page 26

1         performers, dancers, and/or adult entertainers for

2         the last 5 years.

3         A.   If I can ask this question?  This pertains to

4    models, and we don't use models.

5         Q.   No, this pertains to your employees,

6    performers, dancers, and adult entertainers, meaning any

7    strippers.  Do they have any waivers or releases that

8    they sign?

9         A.   I'll have to check.  They do fill out

10   paperwork.  I'm not really sure about this terminology,

11   releases or waivers.  With aspect to what?  Picture

12   taking?

13        Q.   I'll narrow it down.  Are there any releases

14   or waivers for them to be performing on the stage?

15        A.   You know, I have no real answer to that.  I

16   have an answer as to whether or not paperwork is done,

17   but I don't recall the specifics, you know, the wording

18   of the paperwork.

19        Q.   But you did say that they signed something.

20   What is it that they sign?  Do you recall?

21        A.   I believe it's more for, like, that their

22   self-employed.

23        Q.   Okay, so are you saying like tax forms?

24        A.   You know, ID, for, obviously, for their

25   protection, as well as ours.  I'm trying to think of

                                              Page 27

```
 1    what else it says.  It's been a while since I last went

 2    through it.  But that's basically it, that we don't bear

 3    any responsibility and that they are self-employed.

 4    That's really more the gist of it.

 5         Q.   What about any releases or waivers for using

 6    their images for advertising?  Do those exist?

 7         A.   I don't -- it's not an issue.  I don't believe

 8    so, but I don't have a definitive answer.

 9         Q.   But you have never seen one yourself?

10         A.   No.

11         Q.   Okay.  Do you know who might have an answer to

12    this?

13         A.   George.

14         Q.   What is George's last name?

15         A.   Gettinger.

16         Q.   Is he a manager at the TCB South Florida?

17         A.   Yes.  He might be more familiar with what that

18    paperwork says.

19         Q.   Okay, great, thank you.  Going back to No. 13:

20              All documents reflecting employees of BTS

21              North Inc., T.K. Promotions Inc., P.T.G.

22              Entertainment Inc., and Booby Trap Inc., from 2011

23              to the present, including their last known address,

24              their dates of employment, if they are no longer

25              employed, and their position.
```

Page 28

```
 1                   And again, this will only refer to --

 2         A.    -- regular employees?

 3         Q.    Yes.

 4         A.    I provided that to Mr. Lirot.

 5               MS. KHOMIAK:  Was it from 2011 to present?  I

 6         don't recall what year it was.

 7               MR. LIROT:  I'm not really sure.

 8         A.    Do you want me to look?  I printed it.  I

 9    think it's from 2011.

10         Q.    Okay, certainly.

11               MR. LIROT:  I'm going to hand you that.  It

12         looks to be the same copy of what I e-mailed to

13         you.

14               MS. KHOMIAK:  So it doesn't look like it says

15         what year.  Oh, yes, it does.

16               THE WITNESS:  Yes, I believe it does.

17               MS. KHOMIAK:  It starts 2011, I see.  I'll

18         mark this as Exhibit 16.

19               (Plaintiffs' Exhibit No. 16, List of

20         Employees, was marked for identification.)

21    BY MS. KHOMIAK:

22         Q.    Ms. Pettinato, what I have marked as

23    Exhibit 16, is it a true and correct list of the

24    employees that were employed at P.T.G. Entertainment

25    Inc. and TCB South Florida?
```

Page 29

1     A.    Yes.

2     Q.    Okay, where were we?  So going back to

3   Exhibit 1, No. 14, it says:

4         Any and all documents that refer to, reflect,

5         or evidence images of plaintiffs used in any

6         marketing materials, including but not limited to:

7         Marketing and promotional materials, such as, but

8         not limited to: websites, social media accounts,

9         print, advertising, posters, videos, billboards,

10        marquees, newspapers, flyers, or coupons for BTS

11        North Inc., T.K. Promotions Inc., P.T.G.

12        Entertainment Inc., and Booby Trap Inc.

13        So what this question is asking is for, have

14  you seen any of theses images, that identified in

15  Exhibits 2 to 14, on any other advertising, besides the

16  social media advertising that we have attached as

17  exhibits to the complaint?

18    A.    Wait a minute, wait a minute.  Run that by me

19  again.  I'm sorry.

20    Q.    Certainly.  Have you seen these images, in

21  Exhibits 2 through 14, anywhere else, besides on what I

22  showed you before, on social media, those screen shots,

23  on social media?  Have you seen them in print?  Have you

24  seen them in videos, any billboards, marquees, in any

25  other forms of advertisements?  Have you seen them on,

Page 30

```
 1    maybe, on a cab?  Have you seen those anywhere else?
 2         A.   No.
 3         Q.   Okay.  No. 15 asks:
 4              Any and all documents that refer to, reflect,
 5         or evidence total gross profits from the past five
 6         years to date of BTS North Inc., T.K. Promotions
 7         Inc., P.T.G. Entertainment Inc., and Booby Trap
 8         Inc.
 9         A.   The tax returns.
10         Q.   Are those tax returns for the last 5 years?
11         A.   Yes, and I apologize on missing 1 year, and
12    I'm trying to obtain it.
13         Q.   What year are you missing?
14         A.   2012.
15         Q.   Okay.  So do we have 2016 in there?
16         A.   Yes.
17         Q.   So '16, '15, '14, '13?
18         A.   Yes.
19         Q.   So we'll ask that you provide '12.
20         A.   Hopefully as soon as I go check my e-mail,
21    I'll be able to print it out for you.
22         Q.   No. 16 asks:
23              Any and all statements for the guest check
24         average for the last three years for BTS North
25         Inc., T.K. Promotions Inc., P.T.G. Entertainment
```

Page 31

1    Inc., and Booby Trap Inc.

2         Do you have any guest check averages for --

3    A.    I have no idea.

4    Q.    Do you know who would know?

5    A.    No, I don't.

6    Q.    So no other managers would know if there's a

7    guest check average at the club?

8    A.    Not that I'm aware of.

9    Q.    Okay.  No. 17 asks for:

10        Any and all documents that refer to, reflect,

11        or evidence the amount of money spent on BTS North

12        Inc., T.K. Promotions Inc., P.T.G. Entertainment

13        Inc., and Booby Trap Inc.'s websites, social media

14        accounts, print, advertising, posters, videos,

15        billboards, marquees, newspapers, flyers, or

16        coupons for the last five years.

17   A.    Not off the top of my head.

18   Q.    So you have produced the tax records.  Are

19   there any other additional documents that will show how

20   much annually P.T.G. Entertainment Inc. and TCB has

21   spent on their websites, their social media accounts,

22   and their advertising?

23   A.    The invoices, maybe a printout of the expense

24   account.  That's it.

25   Q.    What expense account?

Page 32

1      A.   Oh, it's not an expense account like where you

2  go out and you get to tax deduct it.  I just mean the

3  category advertising, I could do a desktop.  But the

4  only thing that's going to be there is J-Dog.

5      Q.   Can you provide those documents to Mr. Lirot

6  as well, for the last 5 years?

7      A.   Sure.

8      Q.   Okay.  No. 18 asks for:

9           Any and all documents that refer to, reflect,

10          or evidence the payment of any monies by you to any

11          of the plaintiffs related to the images attached as

12          exhibits and/or composites to plaintiffs'

13          complaint.

14          Do you know if these plaintiffs, these models

15  that are evidenced in Exhibits 2 to 14, have been paid

16  by your club in any capacity?

17      A.   No, they've never been paid by me.

18      Q.   Have they been paid by anyone in your club?

19      A.   Not that I'm aware of, no.

20      Q.   Okay.  No. 19 asks:

21          Any and all documents that refer to, reflect,

22          or evidence the payment of any monies by you to any

23          of the plaintiffs related to BTS North Inc., T.K.

24          Promotions Inc., P.T.G. Entertainment Inc., and

25          Booby Trap Inc.

Page 33

1        A.    Not that I'm aware of.

2        Q.    No. 20 asks for:

3              Any and all documents that refer to, reflect,

4        or evidence the payment of any monies by you to the

5        plaintiffs related to the use of plaintiffs'

6        images.

7              Not just the images that are referenced in

8    Exhibits 2 through 14, but have these models, that I

9    listed for you before, have they been paid, for

10   anything, by your club before?

11       A.    Not that I'm aware of.

12       Q.    Okay.  21 asks for:

13             Any correspondence between you and anyone

14       acting on your behalf and plaintiffs or anyone on

15       plaintiffs' behalf regarding the claims which is

16       the subject of this lawsuit.

17       A.    Again, not that I'm aware of.

18       Q.    Okay.  So you have not --

19       A.    I don't have, personally, any correspondence

20   having anything to do with this, or advertisements.

21       Q.    How did you hear about this lawsuit?

22       A.    Mr. Gori and Mr. Lirot.

23       Q.    And have they told you what this lawsuit is

24   all about?

25       A.    No, not really, they didn't.

                                        Page 34

```
 1        Q.    So what exactly did they tell you?

 2        A.    That there was a lawsuit.  That there was a

 3   deposition.  I asked if it had to do with J-Dog, or

 4   Duffy, and that they needed certain backup, and that was

 5   it.

 6        Q.    And when you say J-Dog and Duffy, is it the

 7   same person?

 8        A.    I believe so, yes.

 9        Q.    Do you know him by any other name?

10        A.    No.

11        Q.    Darren Franclemont?

12        A.    I never even knew his whole name.

13        Q.    All right.  So there's no other communication

14   between you and Mr. Phil Gori about this lawsuit,

15   besides what you just told me?  Is there anything in

16   writing?

17        A.    No.

18        Q.    So how did you communicate with Mr. Gori?

19        A.    I called him and said, am I supposed to be

20   somewhere at a certain time for a deposition?  Because I

21   knew Eric was.  And he told me.  I only wish somebody

22   would have told me more.  No, I had no real knowledge

23   about it.

24        Q.    All right.  No. 22 asks for:

25              Any and all documents that refer to, reflect,
```

Page 35

```
 1          or evidence that plaintiffs are not entitled to any
 2          compensation for your use of their images.
 3                Is there anything that you have that says that
 4      these plaintiffs are not entitled to be compensated for
 5      the use of their images?
 6          A.   No.
 7          Q.   No. 23 asks for:
 8                Any and all documents concerning when the
 9          images were first used.
10                So is it safe to say that the documents that
11      you do have are the J-Dog documents, invoices, that
12      those would be the ones that would reflect when these
13      images were used?
14          A.   I guess.
15          Q.   I don't want you to guess.
16          A.   I don't -- I told you, I don't really remember
17      how he breaks down the invoice, and without the invoice
18      in front of me, I can't answer that question.  I don't
19      get involved in advertising, dancers, models, etc.  It's
20      out of my realm.
21          Q.   Okay.  Do you know who would know this
22      information?
23          A.   No.  I'm not sure, to tell you the truth.
24          Q.   Would Eric Otero know more about J-Dog?
25          A.   It's possible.  I don't know what Eric's job
```

Page 36

```
 1    entails, other than parts similar to mine.
 2         Q.   Okay.  No. 24 asks:
 3              Any and all documents concerning where the
 4         images were first used.
 5              You need to verbalize your answer.
 6         A.   I'm thinking.  No.
 7         Q.   No, meaning you don't have those documents?
 8         A.   I don't have any such thing.
 9         Q.   Okay.  No. 25 asks for:
10              Any and all documents concerning how the
11         images were first used.
12         A.   Again, don't know.
13         Q.   Okay.
14         A.   I don't have any.  I'm unaware of any.
15         Q.   Okay.  No. 26 asks for:
16              Any and all documents concerning where the
17         images were first published to the public in any of
18         BTS North Inc., T.K. Promotions Inc., P.T.G.
19         Entertainment Inc., and Booby Trap Inc.'s marketing
20         materials, promotional materials, advertising
21         materials, or products.
22         A.   There are no such documents that I know about,
23    that I'm aware of.
24         Q.   No. 27 asks for:
25              Any and all documents depicting the date when
```

Page 37

1          any of the images were first released to the

2          public.

3          A.    Again, I have no knowledge.

4          Q.    No. 28 asks for:

5                Any and all documents between you and any

6          third party relating to the creation, management,

7          and/or maintenance of any of BTS North Inc., T.K.

8          Promotions Inc., P.T.G. Entertainment Inc., and

9          Booby Trap Inc.'s social media accounts.

10         A.    No knowledge.

11         Q.    So when you testified that J-Dog does the

12    advertising for the club, does he also maintain the

13    social media pages and the website for the clubs?

14         A.    To my knowledge, yes.

15         Q.    Does he charge TCB, formerly P.T.G., a

16    separate fee, for maintaining the social media accounts

17    and the websites, for the advertisements that he posts

18    there?

19         A.    His bill is itemized.  I can't answer that off

20    the top of your head.

21         Q.    So when you say itemized, what does that

22    entail exactly?

23         A.    It means I don't know exactly what the invoice

24    says.

25         Q.    But you personally don't know if he charges

                                              Page 38

1    separately or --

2        A.   I don't know.

3        Q.   Or if it's a monthly deal, that he charges a

4    monthly fee?

5        A.   I don't know.

6        Q.   You don't know, okay.  No. 29 asks for:

7            Any and all documents between you and any

8        third party relating to the creation, management,

9        and/or maintenance of BTS North Inc., T.K.

10       Promotions Inc., P.T.G. Entertainment Inc., and

11       Booby Trap Inc.'s websites.

12       A.   I don't have any documents.

13       Q.   No. 30 asks for:

14           All diagrams, photographs or videos taken or

15       produced by you, your marketing team,

16       representatives, agents, or any person or entity on

17       your behalf regarding and related to the images of

18       plaintiffs.

19       A.   I don't have anything, nor am I aware of

20   anything like that.

21       Q.   And the last question asks for:

22           All photographs or videos depicting the

23       interior of BTS North Inc., T.K. Promotions Inc.,

24       P.T.G. Entertainment Inc., and Booby Trap Inc. from

25       January 2011 to present.

                                              Page 39

```
 1          A.    I don't have any photographs, and I'm not
 2   aware of any.
 3          Q.    So there has been no photographs taken of the
 4   inside of the club from January 2011 to present?
 5          A.    From when?
 6          Q.    January 2011 to present.
 7          A.    I can't make that statement.  I could just
 8   make the statement that I personally do not have any
 9   photographs or gave anyone permission to take any
10   photographs or have any knowledge of anybody taking
11   photographs inside the club.
12          Q.    Do you know anybody that would have those
13   photographs or could have those photographs?
14          A.    Again, he would.
15          Q.    He meaning?
16          A.    Duffy, Darren.
17          Q.    Why would Darren be taking photographs of the
18   inside of the club?
19          A.    Well, as it pertains to this, I don't know.
20   He does whatever he does for the advertising.
21          Q.    So you're saying he might have taken
22   photographs for advertising purposes.  But has the
23   interior of the club been photographed, since
24   January 2011, by anybody else, for any other purpose?
25          A.    No, not that I'm aware of.
```

Page 40

1          Q.   Do you know if anybody has destroyed any

2     documents for, in your case, P.T.G. Entertainment Inc.

3     and T.K. Promotions Inc., since September 18, 2015?

4     That includes any of the electronically stored

5     information.  Have any documents been destroyed since

6     that time?

7          A.   No, not that I'm aware of, not that I've seen.

8          Q.   Okay.  What is the corporate office address

9     for TCB South Florida II Inc.?

10         A.   2840 Hammondville Road, Pompano Beach 33069.

11         Q.   Were you at all involved in the purchasing of

12    the club by TCB from P.T.G.?

13         A.   No.

14         Q.   So you don't know any of the terms of the

15    purchase and sale agreement?

16         A.   No.

17         Q.   Okay.  Do you know who has that agreement in

18    their possession?

19         A.   No, not off the top of my head.  I would

20    imagine that Mr. Gori does.

21         Q.   Okay.  Do you know what the duties are of TCB

22    South Florida II Inc., their day-to-day activities?

23    What does it do?

24         A.   It runs the club.  People come in, they eat,

25    they drink.  We deposit the money.  We have a kitchen.

                                              Page 41

1    It pays the bills.  Normal stuff.

2        Q.   And is the kitchen owned by the club itself?

3        A.   No.  It's operated separately.

4        Q.   How is it operated?  Are they considered an

5    independent contractor?  What is their relationship to

6    TCB?

7        A.   That's a good question.  We pay them a fee for

8    the free lunches, that we give out from noon until 6:00,

9    and the rest of it is run by them.

10       Q.   So are they leasing a space at the club?

11       A.   No.  They use our kitchen.

12       Q.   Okay.  So they don't lease, they don't pay you

13   a lease, and they just operate the kitchen.  Does the

14   club make any profit from the kitchen?

15       A.   No.

16       Q.   Okay.  So earlier, you were talking about the

17   possible agreements that the dancers make with the club.

18   Do you know who signs those agreements with the dancers?

19       A.   No.

20       Q.   Okay.  And you don't know where those

21   agreements would be kept?

22       A.   I know where they're kept, but outside of

23   that, no.

24       Q.   Where are they kept?

25       A.   On the location, in the manager's office, at

Page 42

1    the club.

2          Q.   Do you have access to those?

3          A.   Yes.

4          Q.   Can you produce those to Mr. Lirot, for the

5    last 5 years?

6          A.   It would cost a fortune.  I mean, you're

7    talking about two big file cabinets full of documents,

8    this thick, for each person.  If you want to come visit,

9    we'll show them to you.

10             MR. LIROT:  I'm sure we can give you a sample

11        of one.

12         Q.   Is it fair to say they're all the same type of

13   agreement?

14         A.   Yes, they're standard.

15         Q.   So it's a form they fill out?

16         A.   Yes.

17             MS. KHOMIAK:  Can we get a sample form from

18        each club?

19             MR. LIROT:  Yes, we can do that.

20         A.   Yes, that's not hard.

21         Q.   Okay.  Do you know if TCB South Florida and

22   formerly P.T.G. Entertainment Inc., do you know if they

23   own any assets in the club, such as tables, chairs,

24   anything?  Do they own anything?

25         A.   Not to my knowledge.  Well, I really shouldn't

Page 43

```
 1    answer that.  I don't know the answer to that.
 2         Q.   Okay.  So you probably wouldn't know if they
 3    own any intangible rights, such as copyrights,
 4    trademarks, or other intellectual property?
 5         A.   Not that I'm aware of.
 6         Q.   Do you know who Mariano & Son is?
 7         A.   Yes.
 8         Q.   Who are they?
 9         A.   It's the owner of the property.
10         Q.   Is there a lease agreement between the owner
11    of the property and TCB South Florida, formerly P.T.G.
12    Entertainment Inc.?
13         A.   We pay rent.
14         Q.   So that means that there is a lease?
15         A.   An agreement.
16         Q.   Do you know who's in possession of that?
17         A.   No, I do not.
18         Q.   Do you have the terms of that agreement, the
19    duration of that agreement?
20         A.   No, I don't.
21         Q.   How much rent do you pay?
22         A.   $11,500.
23         Q.   Is that monthly?
24         A.   Yes.
25         Q.   And do you personally pay that?
```

Page 44

1          A.    Yes.

2          Q.    How do you pay it?

3          A.    I deposit it into the landlord's account.

4          Q.    Okay.   So Mariano & Son is the landlord,

5     correct?   And do you know who owns Mariano & Son?

6          A.    I know one, Mr. Gori.

7          Q.    One meaning one --

8          A.    I don't know if anyone else is a partner or

9     whatever at Mariano & Son.

10         Q.    Do you know if Mariano & Son has a lien on the

11    Booby Trap Pompano location, either TCB South Florida or

12    P.T.G.?   Do you know if there's a lien?

13         A.    I thought I just answered that.   I'm not sure.

14    I would imagine that a lease exists.

15         Q.    Not a lease, is there a lien?

16         A.    A lien?

17              MR. LIROT:   Does that include like UCC

18         security agreements and things like that?

19         Q.    Anything.

20         A.    There are builders' liens.

21              MR. LIROT:   I don't think that's what she's

22         asking.

23         A.    I know.   Not that I know about.

24         Q.    So you've never seen any documents pertaining

25    to any liens on the property?

1          A.    Not that I remember.

2          Q.    Mr. Gori also testified that Mariano & Son has

3     a mortgage on the location, on the property?

4          A.    Okay, yes.

5          Q.    What is the mortgage payment?  Do you pay that

6     mortgage?

7          A.    The mortgage comes out, automatically, of the

8     account where I deposit the rent.

9          Q.    So it's the same account?

10         A.    Yes.

11         Q.    Do you know how much the mortgage is?

12         A.    I probably shouldn't answer without it in

13     front of me, but I want to say like $5,559.

14         Q.    That's an approximate?

15         A.    Yes.  The way the thing is structured, it

16     comes out twice a month.

17         Q.    And who is the mortgage company?  Who is the

18     mortgage being paid to?

19         A.    I don't know that I can answer that, because

20     I've never seen the documents for the mortgage.  Do you

21     follow?

22         Q.    I understand, but you said that you deposit

23     the rent check into the same account?

24         A.    Into Mariano & Son, and the mortgage comes out

25     of that account.

                                                Page 46

1      Q.   Who takes that mortgage out?

2      A.   The bank.

3      Q.   So what is the bank's name?

4      A.   Marquis Bank.

5      Q.   So what are the main streams of revenue for

6   Booby Trap Pompano?  Where does the club make most of

7   their revenue from?

8      A.   From the club.

9      Q.   So what exactly from the club?

10      A.   Liquor, beer, champagne, wine.

11      Q.   What about the dancers, the performers?  Does

12   the club make a cut off what they make at the end of the

13   day or the end of the night?

14      A.   No.

15      Q.   They do not?

16      A.   Not that I'm aware of.

17      Q.   So they keep 100 percent?

18      A.   In complete disclosure here, I don't really

19   get involved in the inner workings of the clubs and the

20   dancers or the interaction.  It's out of my realm.

21      Q.   Okay, fair enough.  Do you know if there's a

22   customer e-mail list that's being maintained by TCB?

23      A.   Not one that I've ever seen.

24      Q.   Okay.  Are there any situations where the

25   customer would come into the club and would give their

                                              Page 47

1    address or e-mail, for any purpose whatsoever?

2         A.   No.

3         Q.   You don't know?

4         A.   Not that I'm aware of.  I've never seen it

5    happen.  Customers don't generally like to give out

6    their address.

7         Q.   What about when they pay with a credit card?

8    Do you get any of those credit card receipts on your --

9         A.   No.  Well, of course we maintain credit card

10   receipts, but it doesn't require that they fill out

11   their address.

12        Q.   Okay.  What about their name or --

13        A.   We take a copy of the credit card and a copy

14   of the driver's license.

15        Q.   So you do maintain that?

16        A.   Well, we don't really maintain it.  It's that

17   they're never looked at again, unless the customer

18   disputes something.  It's just for our safety, so

19   that -- you have people that come in and they want to

20   play and party, and then they don't want to know about

21   it, and they call up the credit card company and they

22   dispute it.  If not, they don't go anywhere.

23        Q.   So how far back do you keep those receipts,

24   the copies of the credit card and their driver's

25   license?

Veritext Legal Solutions
866 299-5127

1          A.    About 5 years, 7 years.

2          Q.    Okay.

3          A.    I'm not sure exactly how many years we have in

4     our possession right now, but they go together.

5          Q.    We spoke very briefly about the insurance

6     policies at the P.T.G. and TCB.  Have you provided all

7     of them to Mr. Lirot, all the ones that you currently

8     have?

9          A.    Yes.

10         Q.    And what years did you provide?  Do you

11    remember?

12         A.    The last 5 years, up until current, I believe.

13    I would have to look to double-check that, but I did

14    give 5 years.

15         Q.    Okay, great.  So is it fair to say that the

16    club has maintained an insurance for the last 5 years?

17         A.    Yes.

18         Q.    There's been no cancellations or gaps?

19         A.    Absolutely, no.

20         Q.    So it has never been canceled?

21         A.    No.

22         Q.    In the last 5 years, no insurance has been

23    canceled?

24         A.    No, not to my knowledge.

25         Q.    Have you filed a claim with your current

                                                  Page 49

```
 1    insurance provider or any past insurance providers, as a

 2    result of this lawsuit?

 3         A.   Not that I'm aware of.

 4         Q.   You personally haven't?

 5         A.   No.

 6         Q.   Okay.  Do you know who could have possibly

 7    filed a claim on the club's behalf?

 8         A.   The only person would be Mr. Gori.

 9         Q.   Okay.  Do you know if the club has a VIP

10    membership?

11         A.   No, I don't.

12         Q.   You don't know, okay.  Briefly going back to

13    J-Dog, besides the advertising services that we have

14    discussed previously, does J-Dog provide any other

15    services for P.T.G. or TCB?

16         A.   Not that I'm aware of.

17         Q.   Okay.  Do you know if any employee of P.T.G.

18    or TCB have access to the social media pages of the

19    club?

20         A.   No, I'm not sure.

21         Q.   Okay.  So it's your understanding that J-Dog

22    runs the website himself for the club?

23         A.   Yes.

24         Q.   Okay.  Do you know if TCB has a computer

25    network that it operates under, a specific computer
```

Page 50

1    network, and maintains that computer network?

2        A.   No.

3        Q.   Meaning no?

4        A.   Again, not that I'm aware of.

5        Q.   Does TCB and P.T.G. formerly, store and

6    maintain any of its electronic data, and if it does,

7    where is it kept?

8        A.   Any electronic data, in relation to what?

9        Q.   Any of the information in the computer system,

10   where it is kept, who has acces to it.

11       A.   There are only two computers on the property,

12   to my knowledge, one, the business one, and mine.  And

13   who has access to my computer, nobody, really, except

14   me.  Oh, and our accountant.

15       Q.   And that is?

16       A.   Al Masters.

17       Q.   So only you and him have access to your

18   computer?

19       A.   Yes.

20       Q.   You said there are two computers on the

21   property --

22       A.   To my desktop.  Now, they could go on my

23   computer, a manager could, but not into those files.

24       Q.   Which files?

25       A.   Business files.  In other words, they could go

Page 51

1   on to type an employee letter, confirmation of

2   employment or something.  But Al and I are the only two

3   people that have access to any real business documents.

4        Q.   And Al Masters, is he employed by TCB, or he's

5   an independent?

6        A.   No, he's an independent accountant.

7        Q.   But does he work out of that location?

8        A.   No.

9        Q.   So why would he have access to your computer?

10       A.   So that he can go into the accounting program

11  and do the work and not have to be at my location.

12       Q.   So he has remote access to your computer?

13       A.   Yes.

14       Q.   Okay, fair enough.  But you also mentioned

15  that there's another computer on the property.  What is

16  that other computer?

17       A.   Guys use it to look things up.  It's more a

18  social thing.

19       Q.   So there's no documents or anything that's

20  connected to the property business?

21       A.   No.

22       Q.   It's just for internet use?

23       A.   Yes.

24       Q.   So when you log on your desktop to the

25  business file, as you call them, do you have a password

Page 52

```
 1    that only you and Al Masters know about?

 2         A.   Yes.

 3         Q.   Does anybody else in the company know that

 4    password?

 5         A.   No.

 6         Q.   Does Phil Gori know that password?

 7         A.   No.

 8         Q.   And no manager has that password?

 9         A.   No.

10         Q.   Okay.   Does TCB or P.T.G. formerly, do they

11    hire any independent contractors for any purpose

12    whatsoever?

13         A.   Well, maybe for repairs.

14         Q.   Okay.

15         A.   I'm trying to think of another reason.

16         Q.   Is the DJ an independent contractor, or is he

17    an employee?

18         A.   He's an independent contractor.

19         Q.   So somebody had to hire him for that purpose?

20         A.   Right.

21         Q.   You also stated that -- well, Mr. Duffy, as

22    you called him, Darren Franclemont, J-Dog, is he an

23    independent contractor?

24         A.   I don't know.   That's an interpretation maybe.

25    He's an outside vendor.   I don't know that -- I don't
```

Page 53

```
 1    think he qualifies as an independent contractor.  I

 2    mean, he's an independent contractor to somebody.  I

 3    don't know.

 4         Q.   But does he do promotions for the club every

 5    month, or is it only when whoever calls him once in a

 6    while, or is it a regular requirement, for him to create

 7    specific promotions, advertisements, on a monthly basis

 8    or on a weekly basis?

 9         A.   To my knowledge, no.  Our managers do our

10    promotions in the club.

11         Q.   What do you mean your managers do the

12    promotions?

13         A.   You're asking about promotions?  I don't

14    understand the question.

15         Q.   My question is about Mr. Franclemont, Duffy.

16    You're saying you're not sure if he's an independent

17    contractor.  So I'm trying to clarify, to see what his

18    requirements are.

19             Is he required to create advertising for the

20    club on a monthly basis, on a weekly basis, or is he

21    somebody that you call up once every couple of months or

22    randomly?

23         A.   I don't have the authority to do that.  That's

24    out of my realm.  I can't answer the question.

25         Q.   So you don't know what the structure of the
```

Page 54

1    agreement is between Mr. Franclemont and the club?

2         A.   No.

3         Q.   And you have no idea who originally hired him

4    or who contacted him?

5         A.   No.

6         Q.   Okay.  And you stated that the managers do the

7    promotion for the club.  What do you mean by that?

8         A.   Oh, like, in other words, if, say, you were

9    going to run a drink special for 2 hours, you were going

10   to have a Margaritaville or something, then it would be

11   management and not J-Dog.  Those are the kind of

12   promotions that I thought you meant.

13        Q.   So are you referring to verbal promotion, that

14   the managers would come up to the customers and tell

15   them?

16        A.   Maybe you would call them flash promotions,

17   where they just come out, where they're not planned, you

18   want to have a Halloween party, that kind of promotion.

19   That's a promotion.

20        Q.   But are you referring to verbal promotion or

21   flyers or table tents?  What exactly are you referring

22   to, when you talk about the managers doing the

23   promotions?

24        A.   I'm talking about the DJ announces that we're

25   going to do a promotion.  It's Margaritaville, or we

                                              Page 55

```
 1    might put something up outside that says two-for-one
 2    drinks.  It's us.  It's not an outside company.
 3         Q.   Do the managers ever create flyers for those
 4    promotions?
 5         A.   No, I've never seen flyers.
 6         Q.   So it's verbal?
 7         A.   Yes.
 8              MR. LIROT:  I think the distinction is, and I
 9         want to understand, to make sure we're all on the
10         same page here, you're talking about some kind of a
11         business operational promotion, as opposed to some
12         kind of tangible promotion, that goes out in the
13         public to attract business.
14              THE WITNESS:  Right.
15              MS. KHOMIAK:  Okay.
16              THE WITNESS:  I thought when you said
17         promotion, that's what I'm accustomed to, so that's
18         where I went.
19    BY MS. KHOMIAK:
20         Q.   Do you ever communicate with J-Dog or Duffy?
21         A.   No, I do not.
22         Q.   So you have never spoken to him before?
23         A.   Yes, I have spoken to him, but I don't
24    communicate with him on any kind of a regular basis.  If
25    somebody says call Duffy, we need posters, then I might
```

Page 56

1    make the phone call.  But outside of that, no, not

2    unless someone asks me to.

3        Q.   Have you ever e-mailed him about --

4        A.   No.

5        Q.   -- advertising or promoting?

6        A.   I don't even think I have his e-mail address.

7        Q.   Okay.  Do you know who determines what events

8    are being promoted at the club?

9        A.   I'm sorry?

10       Q.   Do you know who decides what events should be

11   promoted at a club, what the next party is going to be?

12       A.   I don't know the answer to that.

13       Q.   So you don't know who decides to create flyers

14   and tells you to call Duffy to get flyers?

15       A.   I would be guessing.  It could be managers

16   thought that this was a good idea, and they decided to

17   put something together.  They went to Phil, and they

18   said, is it okay?  We think it's a good idea.  And I'm

19   not involved in it.

20       Q.   Okay.

21            MS. KHOMIAK:  I think I'm done.  I don't have

22        any further questions.

23            Mr. Lirot, do you have any questions?

24            MR. LIROT:  I just have one followup area for

25        you.

```
 1                    CROSS-EXAMINATION

 2   BY MR. LIROT:

 3       Q.   The credit card issue, what documentation do

 4   you actually keep for a credit card transaction, that

 5   would be longer than just the charge-back period?  I was

 6   under the understanding that there's, I believe, the

 7   federal regulation is FACTA, F-A-C-T-A, but I don't know

 8   what it stands for, and I know they put limits on what

 9   you can keep and for how long.

10       A.   They have a company, as a matter of fact, I

11   have to deal with one when I go back, that makes sure

12   that your computer, whatever, qualifies, that kind of

13   keeps you, in other words, keeps you secure.  And you

14   have to pass these tests, where they take you through a

15   test, where you're on the computer and someone is on the

16   phone, and you have to qualify, in order to continue to

17   take credit cards.

18            The reason why we do the other thing is only

19   for amounts that exceed like maybe $100 or whatever,

20   because people have a way of, you know, and they do it

21   quite often.

22       Q.   Showing off and then saying I never went to

23   the club?

24       A.   Right.

25            MR. LIROT:   Okay.
```

Page 58

```
 1              MS. KHOMIAK:  I have a couple more questions.
 2                   REDIRECT EXAMINATION
 3    BY MS. KHOMIAK:
 4         Q.   So is it fair to say you only keep credit card
 5    receipts for amounts that are over $100 or more?
 6         A.   Right, and we only ask for ID on those, and we
 7    don't do it on everyone.  You know, if we have a regular
 8    customer that comes in all the time, then you might not.
 9              If you get really busy and it happens, then
10    you might not.  You might not have the time, because it
11    just backs up everything.
12              But we try, if they're on the floor and
13    they're big spenders, then we try to get backup, you
14    know, for what they do.
15         Q.   And you stated you keep those for the last
16    5 years?
17         A.   I would have to really look to see how many.
18    I just asked that question anyway, because we need more
19    space.  I have to see how many years we have in there,
20    because I really don't know off the top of my head.  But
21    they're rubber-banded and they're kept with everything.
22              And then once they're packaged, someone else
23    takes them and somebody else takes over, and I don't go
24    back into them, unless I really need to.  That's why I
25    said I don't know how many are still there.
```

Page 59

```
 1                    (Plaintiffs' Exhibit No. 15, Driver's License,

 2          was marked for identification.)

 3   BY MS. KHOMIAK:

 4          Q.   Okay.  Actually, before we started this

 5   deposition, we asked for a copy of your driver's

 6   license, and what I have marked as Exhibit 15, is that a

 7   true and accurate copy of your driver's license?  Is

 8   that correct?

 9          A.   Yes, it is.

10               MS. KHOMIAK:  Thank you.  I don't have any

11          further questions.

12               MR. LIROT:  If this gets transcribed, you can

13          read it.

14               THE WITNESS:  Which do you prefer?  I feel

15          comfortable.

16               MR. LIROT:  Then you would waive.

17               THE WITNESS:  All right, that's what we will

18          do then.

19               MR. LIROT:  Thank you.

20               (The Deposition was concluded at 11:57 a.m.)

21                              -  -  -

22

23

24

25
```

                                            Page 60

```
 1              REPORTER'S DEPOSITION CERTIFICATE

 2

 3   STATE OF FLORIDA)

 4   COUNTY OF MIAMI-DADE)

 5

 6      I, Chloe Leroux, Florida Professional Reporter and

 7   Notary Public in and for the State of Florida at Large,

 8   certify that I was authorized to and did

 9   stenographically report the deposition of Patricia

10   Pettinato; that a review of the transcript was denied;

11   and that the transcript is a true and complete record of

12   my stenographic notes.

13      I further certify that I am not a relative, employee,

14   attorney, or counsel of any of the parties, nor am I a

15   relative or employee of any of the parties' attorney or

16   counsel connected with the action, nor am I financially

17   interested in the action.

18

19      DATED this 19th day of July, 2017.

20

21

22

             Chloe Leroux, FPR

23

24

25

                                              Page 61
```

**[& - advertising]**

| & | 1:16   1:4 | 4 | a |
|---|---|---|---|
| **&**   44:6 45:4,5,9,10 46:2,24 | **2** | **4**   3:17 16:11,14 21:12,21 | **a.m.**   1:18,18 60:20 |
| **1** | **2**   3:14 12:25 13:7 14:11 15:9,21 16:1,9 19:5 21:20 22:21 23:3,9,15 24:10 30:15,21 33:15 34:8 55:9 | **5** | **able**   6:11 31:21 |
| **1**   3:12 7:16,22 8:13 9:11 12:1,6 14:5,11 19:6 20:19 24:15 30:3 31:11 | | **5**   1:18 3:5,18 5:2 8:12 9:2 11:18,19 12:3,4 14:4,9,11 16:16,19 19:5,10 19:14 20:4,7,19 22:6,15 26:14 27:2 31:10 33:6 43:5 49:1,12,14,16 49:22 59:16 | **absolutely**   49:19 |
| | | | **acces**   51:10 |
| | | | **access**   43:2 50:18 51:13,17 52:3,9,12 |
| **10**   4:1 17:17,20 25:16 | **20**   34:2 | | **account**   32:24,25 33:1 45:3 46:8,9 46:23,25 |
| **100**   47:17 58:19 59:5 | **2000**   2:5 | | **accountant**   13:22 51:14 52:6 |
| **10:30**   1:18 | **2011**   28:22 29:5,9 29:17 39:25 40:4 40:6,24 | **5,559**   46:13 | **accounting**   7:10 10:16 26:4,6 52:10 |
| **11**   4:3 17:23 18:1 26:15 | **2012**   31:14 | **5325**   1:21 | |
| **11,500**   44:22 | **2015**   24:1 41:3 | **536-2100**   2:12 | **accounts**   30:8 32:14,21 38:9,16 |
| **11:57**   1:18 60:20 | **2016**   31:15 | **58**   3:5 | **accurate**   60:7 |
| **12**   4:4 18:3,6 26:24 31:19 | **2017**   1:18 5:2 61:19 | **59**   3:6 | **accustomed**   56:17 |
| **13**   4:6 18:8,11 28:19 31:17 | **21**   34:12 | **5th**   13:14 | **acting**   14:15 20:23 21:15 34:14 |
| **14**   4:7 15:9 18:13 18:16 21:20 22:21 23:4,9,15 24:11 30:3,15,21 31:17 33:15 34:8 | **22**   35:24 | **6** | **action**   14:20 22:1 25:14 61:16,17 |
| | **2240**   2:10 | **6**   3:20 16:21,24 24:15 | **activities**   10:6 41:22 |
| | **23**   36:7 | **60**   4:9 | **actual**   22:24 |
| | **24**   37:2 | **671-3244**   2:6 | **additional**   22:14 32:19 |
| | **24548**   1:4 | **6:00**   42:8 | |
| **15**   3:14 4:9 31:3 31:17 60:1,6 | **25**   37:9 | **7** | **address**   28:23 41:8 48:1,6,11 57:6 |
| | **26**   37:15 | **7**   3:13,21 17:1,4 24:22 49:1 | |
| **16**   3:16,17,19,20 4:10 29:18,19,23 31:17,22 | **27**   37:24 | **727**   2:12 | **addresses**   9:3 |
| | **28**   38:4 | **77th**   1:21 | **adult**   10:5 27:1,6 |
| **17**   3:22,23,25 4:1,3 32:9 | **2840**   41:10 | **786**   2:6 | **advertised**   24:10 |
| | **29**   4:10 39:6 | **8** | **advertisements**   22:21 23:13 30:25 34:20 38:17 54:7 |
| **18**   4:4,6,7 33:8 41:3 | **3** | **8**   3:23 17:6,9 25:2 | |
| **19**   33:20 | **3**   3:15 11:16 13:16 16:2,5,9 20:19 | **80**   2:5 | |
| **190**   2:11 | **30**   39:13 | **8th**   2:5 | **advertising**   10:19 10:21 11:2 14:25 18:20 20:16 21:5 21:9 22:14,16 |
| **19th**   61:19 | **33069**   41:10 | **9** | |
| | **33130**   2:6 | **9**   3:24 17:12,15 25:6 | |
| | **33764**   2:11 | | |

Page 1

[advertising - called]

24:1,20 28:6 30:9
30:15,16 32:14,22
33:3 36:19 37:20
38:12 40:20,22
50:13 54:19 57:5
**affirmed**  5:6
**agents**  20:23 21:15
39:16
**agreement**  41:15
41:17 43:13 44:10
44:15,18,19 55:1
**agreements**  20:22
21:4,14 42:17,18
42:21 45:18
**ahead**  20:7
**al**  23:1 51:16 52:2
52:4 53:1
**alcohol**  6:21
**alicia**  1:4 3:18
12:12 16:16,19
**amount**  32:11
**amounts**  58:19
59:5
**announces**  55:24
**annually**  32:20
**answer**  6:2,13,15
24:3 27:15,16
28:8,11 36:18
37:5 38:19 44:1,1
46:12,19 54:24
57:12
**answered**  45:13
**answering**  6:5
**anybody**  13:21
40:10,12,24 41:1
53:3
**anyway**  59:18
**anyways**  20:7
**apart**  10:24
**apologize**  31:11

**approximate**
46:14
**area**  57:24
**ashley**  1:4 3:20
12:12 16:21,24
**asked**  6:14 8:14
35:3 59:18 60:5
**asking**  20:9 21:21
30:13 45:22 54:13
**asks**  12:6 20:19
21:12 22:6 24:15
24:22 25:2,6,16
26:15,24 31:3,22
32:9 33:8,20 34:2
34:12 35:24 36:7
37:2,9,15,24 38:4
39:6,13,21 57:2
**aspect**  20:16 27:11
**aspects**  11:3
**asserted**  14:8
**assets**  43:23
**associate's**  7:5,6
**assume**  6:13,15
**attached**  14:17,23
15:14 21:1,18
30:16 33:11
**attorney**  61:14,15
**attract**  56:13
**authority**  54:23
**authorized**  61:8
**automatically**
46:7
**avenue**  1:21
**average**  31:24
32:7
**averages**  32:2
**aware**  20:18 21:7
21:11,24 22:5
24:14,21 32:8
33:19 34:1,11,17
37:23 39:19 40:2

40:25 41:7 44:5
47:16 48:4 50:3
50:16 51:4

**b**

**b**  1:9,10,11,11 3:9
**back**  9:11 11:13
12:1,3 20:8 28:19
30:2 48:23 50:12
58:5,11 59:24
**backs**  59:11
**backup**  35:4 59:13
**banded**  59:21
**bank**  47:2,4
**bank's**  47:3
**basically**  28:2
**basis**  54:7,8,20,20
56:24
**beach**  41:10
**bear**  28:2
**bearing**  24:16
**beer**  47:10
**beginning**  13:19
**behalf**  1:16 2:3,8
14:15 20:24 21:16
34:14,15 39:17
50:7
**believe**  11:4,19
13:23 27:21 28:7
29:16 35:8 49:12
58:6
**belleair**  2:10
**best**  6:19
**big**  43:7 59:13
**bill**  11:9,11 38:19
**billboards**  30:9,24
32:15
**bills**  10:21 22:8
42:1
**bit**  5:16 9:11 11:13
**booby**  1:9,10,11
1:11,11,20 9:13

10:14 13:2 15:7,7
25:19 26:18 28:22
30:12 31:7 32:1
32:13 33:25 37:19
38:9 39:11,24
45:11 47:6
**bookkeeper**  9:20
13:22
**bookkeeping**
10:17 26:4,5
**boss**  11:25
**breakdown**  23:21
**breaks**  36:17
**briefly**  49:5 50:12
**bring**  8:9,14,21,22
9:1
**broken**  24:6
**brought**  25:13
**bts**  1:9 25:17,24
26:8,17 28:20
30:10 31:6,24
32:11 33:23 37:18
38:7 39:9,23
**builders**  45:20
**bunch**  15:20
**burciaga**  1:5 4:1
12:17 17:17,21
**business**  7:11,12
10:2 11:3,14 14:7
51:12,25 52:3,20
52:25 56:11,13
**busy**  59:9

**c**

**c**  2:1 58:7
**cab**  31:1
**cabinets**  43:7
**call**  48:21 52:25
54:21 55:16 56:25
57:1,14
**called**  35:19 53:22

[calls - darren]

| | | | |
|---|---|---|---|
| **calls** 6:8 54:5 | **clarify** 54:17 | **complaint** 14:8,18 | 29:23 45:5 60:8 |
| **canas** 1:6 4:6 | **clear** 6:25 | 14:20,23 15:14 | **correspondence** |
| 12:17 18:8,11 | **clearwater** 2:11 | 21:2,19 22:10 | 12:8,21 34:13,19 |
| **canceled** 49:20,23 | **club** 9:4 10:3,4,9 | 25:9,12 30:17 | **cost** 43:6 |
| **cancellations** | 10:22 18:21 26:5 | 33:13 | **counsel** 61:14,16 |
| 49:18 | 32:7 33:16,18 | **complete** 47:18 | **counting** 10:10 |
| **capacities** 10:10 | 34:10 38:12 40:4 | 61:11 | **county** 61:4 |
| **capacity** 33:16 | 40:11,18,23 41:12 | **completely** 10:14 | **couple** 54:21 59:1 |
| **card** 11:4,5,6,7 | 41:24 42:2,10,14 | **composites** 14:18 | **coupons** 30:10 |
| 48:7,8,9,13,21,24 | 42:17 43:1,18,23 | 21:1,18 33:12 | 32:16 |
| 58:3,4 59:4 | 47:6,8,9,12,25 | **computer** 50:24 | **course** 48:9 |
| **cards** 58:17 | 49:16 50:9,19,22 | 50:25 51:1,9,13,18 | **court** 1:1 6:11 |
| **casas** 2:4 | 54:4,10,20 55:1,7 | 51:23 52:9,12,15 | **create** 54:6,19 |
| **casaslawfirm.com** | 57:8,11 58:23 | 52:16 58:12,15 | 56:3 57:13 |
| 2:7 | **club's** 50:7 | **computers** 51:11 | **created** 21:5 |
| **case** 1:3 41:2 | **clubs** 15:8 22:1 | 51:20 | **creating** 23:13 |
| **category** 33:3 | 38:13 47:19 | **concentrate** 26:20 | **creation** 14:16 |
| **certain** 7:21 22:11 | **college** 7:7 | **concerning** 36:8 | 20:25 21:17 38:6 |
| 24:6 35:4,20 | **come** 24:4 41:24 | 37:3,10,16 | 39:8 |
| **certainly** 29:10 | 43:8 47:25 48:19 | **concluded** 60:20 | **credit** 11:4,5,6,7 |
| 30:20 | 55:14,17 | **confirmation** 52:1 | 48:7,8,9,13,21,24 |
| **certificate** 61:1 | **comes** 14:3 19:19 | **connected** 52:20 | 58:3,4,17 59:4 |
| **certify** 61:8,13 | 46:7,16,24 59:8 | 61:16 | **cross** 3:5 58:1 |
| **chairs** 43:23 | **comfortable** 60:15 | **considered** 42:4 | **current** 49:12,25 |
| **champagne** 47:10 | **coming** 6:21 | **contacted** 55:4 | **currently** 22:4 |
| **charge** 38:15 58:5 | **communicate** | **continue** 58:16 | 49:7 |
| **charges** 38:25 | 35:18 56:20,24 | **contractor** 42:5 | **customer** 47:22,25 |
| 39:3 | **communication** | 53:16,18,23 54:1,2 | 48:17 59:8 |
| **charles** 2:10 | 20:15 21:3 35:13 | 54:17 | **customers** 48:5 |
| **check** 27:9 31:20 | **communications** | **contractors** 53:11 | 55:14 |
| 31:23 32:2,7 | 14:14 | **convicted** 7:14 | **cut** 47:12 |
| 46:23 49:13 | **companies** 10:11 | **copies** 19:18 48:24 | **cv** 1:4 |
| **chloe** 1:24 61:6,22 | 10:13,15 | **copy** 29:12 48:13 | |
| **cielo** 1:3 3:14 | **company** 9:12 | 48:13 60:5,7 | **d** |
| 12:11 15:21,24 | 11:6 21:10 46:17 | **copyrights** 44:3 | **d** 1:9,10,11,11 3:1 |
| **claim** 49:25 50:7 | 48:21 53:3 56:2 | **cora** 1:3 3:15 | **dade** 61:4 |
| **claims** 14:8 25:8 | 58:10 | 12:11 16:2,5 | **dancers** 27:1,6 |
| 25:13 34:15 | **compensated** 36:4 | **corporate** 41:8 | 36:19 42:17,18 |
| **clarification** 6:15 | **compensation** | **corporation** 13:1 | 47:11,20 |
| 13:19 | 36:2 | **correct** 5:23 6:16 | **darren** 35:11 |
| | | 19:1 23:12 25:14 | 40:16,17 53:22 |

Veritext Legal Solutions
866 299-5127

[data - exactly]

**data** 51:6,8
**date** 13:18 31:6
  37:25
**dated** 61:19
**dates** 28:24
**day** 10:6,6 24:1
  41:22,22 47:13
  61:19
**days** 19:16
**deal** 39:3 58:11
**decided** 57:16
**decides** 57:10,13
**deduct** 33:2
**defendants** 1:12
  2:8 25:9,14
**definitive** 28:8
**degree** 7:5,6,8
**denied** 61:10
**depicting** 37:25
  39:22
**deposit** 41:25 45:3
  46:8,22
**deposition** 1:14
  3:13 5:1 7:17,23
  8:2 11:21 12:2
  35:3,20 60:5,20
  61:1,9
**deposits** 10:8
**described** 22:9
**description** 3:11
**desktop** 33:3
  51:22 52:24
**dessie** 1:4 3:21
  12:13 17:1,4
**destroyed** 41:1,5
**determines** 57:7
**devin** 1:5 3:23
  12:16 17:6,9
**diagrams** 24:23
  39:14

**direct** 3:5 5:9
**disclosure** 47:18
**discuss** 7:21
**discussed** 8:7,17
  8:20 50:14
**discussing** 8:5
**dispute** 48:22
**disputes** 48:18
**distinction** 56:8
**distribution** 14:16
  20:25 21:17
**district** 1:1,1
**division** 1:2
**dj** 53:16 55:24
**document** 7:24 8:1
**documentation**
  58:3
**documents** 8:9,11
  8:14,17,20 14:13
  14:19 20:15,21
  21:13,21,25 22:14
  22:19 23:2 24:8
  24:16,18,23 25:7
  28:20 30:4 31:4
  32:10,19 33:5,9,21
  34:3 35:25 36:8
  36:10,11 37:3,7,10
  37:16,22,25 38:5
  39:7,12 41:2,5
  43:7 45:24 46:20
  52:3,19
**dog** 11:12,14
  18:20 19:18,25
  21:6,9 23:8,11
  33:4 35:3,6 36:11
  36:24 38:11 50:13
  50:14,21 53:22
  55:11 56:20
**dog's** 18:20
**doing** 10:2,9 55:22

**doral** 1:20
**double** 49:13
**drank** 6:20
**drink** 41:25 55:9
**drinks** 56:2
**driver's** 4:9 48:14
  48:24 60:1,5,7
**duces** 3:13 7:17
**duffy** 35:4,6 40:16
  53:21 54:15 56:20
  56:25 57:14
**duly** 5:6
**duration** 44:19
**duties** 10:25 41:21

**e**

**e** 2:1,1 3:1,9 7:3
  8:11 12:7,20
  29:12 31:20 47:22
  48:1 57:3,6
**earlier** 12:2 18:19
  25:11 42:16
**earnings** 22:8
**easier** 20:2
**eat** 41:24
**education** 7:4
**either** 45:11
**electronic** 51:6,8
**electronically** 41:4
**employed** 9:22
  13:12 25:21,22
  27:22 28:3,25
  29:24 52:4
**employee** 8:23 9:3
  26:16 50:17 52:1
  53:17 61:13,15
**employees** 4:10
  26:25 27:5 28:20
  29:2,20,24
**employer** 26:21
**employment** 28:24
  52:2

**encompass** 23:9
**entail** 38:22
**entails** 37:1
**entertainers** 27:1
  27:6
**entertainment**
  1:10 10:5,15
  12:25 13:8,10
  14:6 20:17 25:19
  25:23 26:18,21
  28:22 29:24 30:12
  31:7,25 32:12,20
  33:24 37:19 38:8
  39:10,24 41:2
  43:22 44:12
**entire** 6:2
**entitled** 36:1,4
**entity** 22:12 39:16
**eric** 8:4,7,20,25
  9:7,7 11:8 35:21
  36:24
**eric's** 36:25
**esquire** 2:4,9
**estimates** 22:7
**eva** 1:5 3:24 12:16
  17:12,15
**event** 24:12
**events** 24:10 57:7
  57:10
**evidence** 14:14
  20:14,22 21:14
  24:19,24 25:8
  30:5 31:5 32:11
  33:10,22 34:4
  36:1
**evidenced** 33:15
**exact** 13:18
**exactly** 35:1 38:22
  38:23 47:9 49:3
  55:21

Page 4

[examination - head]

examination  3:5,5
  3:6 5:9 58:1 59:2
examined  5:6
exceed  58:19
exhibit  3:12,14,15
  3:17,18,20,21,23
  3:24 4:1,3,4,6,7,9
  4:10 7:16,22,22
  8:13 9:11 12:1
  14:5,11 15:21
  16:1,2,5,11,14,16
  16:19,21,24 17:1,4
  17:6,9,12,15,17,20
  17:23 18:1,3,6,8
  18:11,13,16 19:6
  20:19 24:15 29:18
  29:19,23 30:3
  60:1,6
exhibits  7:21
  14:17,22 15:9,13
  16:8 21:1,18,20
  22:21 23:3,9,15
  24:10 30:15,17,21
  33:12,15 34:8
exist  25:4 28:6
exists  45:14
expense  32:23,25
  33:1
expressed  6:12

**f**

f  58:7
fact  58:10
facta  58:7
fair  7:13 13:15
  19:11 26:2 43:12
  47:21 49:15 52:14
  59:4
familiar  28:17
far  8:24 20:8
  48:23

fax  19:20
federal  58:7
fee  38:16 39:4 42:7
feel  60:14
felony  7:14
field  7:9
file  24:5 43:7
  52:25
filed  49:25 50:7
files  51:23,24,25
filing  22:24
fill  27:9 43:15
  48:10
financially  61:16
find  8:2
fine  19:24,25
finish  6:3,24 12:15
firm  2:4
first  5:6,18 7:22
  15:24 36:9 37:4
  37:11,17 38:1
five  25:20 26:19
  31:5 32:16
flash  55:16
flip  15:19
floor  59:12
florida  1:1,21 2:6
  2:11 9:17,24
  22:13 28:16 29:25
  41:9,22 43:21
  44:11 45:11 61:3
  61:6,7
flyers  30:10 32:15
  55:21 56:3,5
  57:13,14
follow  46:21
follows  5:7
followup  57:24
forget  8:25
form  43:15,17

formal  8:6
format  25:4
formerly  38:15
  43:22 44:11 51:5
  53:10
forms  27:23 30:25
fortune  43:6
found  8:8
fpr  1:24 61:22
frame  19:8
franclemont  35:11
  53:22 54:15 55:1
free  42:8
front  5:22 36:18
  46:13
full  7:1 19:21 43:7
further  57:22
  60:11 61:13

**g**

gaps  49:18
generalities  23:23
  24:7
generally  48:5
george  28:13
george's  28:14
gettinger  28:15
gibson  1:3 3:14
  12:11,12 15:21,25
gist  28:4
give  5:25 19:17
  42:8 43:10 47:25
  48:5 49:14
given  9:5
giving  6:19
go  8:16,24 9:10
  12:1,3 15:5 20:7,8
  31:20 33:2 48:22
  49:4 51:22,25
  52:10 58:11 59:23
goes  18:22 56:12

going  14:4,5,5
  15:8,9 20:10
  28:19 29:11 30:2
  33:4 50:12 55:9,9
  55:25 57:11
good  20:1 42:7
  57:16,18
gori  11:21,22
  34:22 35:14,18
  41:20 45:6 46:2
  50:8 53:6
great  28:19 49:15
gross  9:2 31:5
ground  6:1
guess  11:10 36:14
  36:15
guessing  57:15
guest  31:23 32:2,7
guidelines  26:16
  26:22
guys  52:17

**h**

h  3:9
halloween  55:18
hammondville
  41:10
hand  15:9 29:11
handbooks  8:23
  26:16,22
handed  12:1
handing  7:20
handle  26:5
handles  26:3
happen  48:5
happens  59:9
happy  19:22
hard  43:20
head  6:10,10
  22:17 32:17 38:20
  41:19 59:20

[hear - large]

**hear** 5:18 34:21
**highest** 7:4
**hire** 53:11,19
**hired** 55:3
**honest** 20:6
**honestly** 24:3
**hopefully** 31:20
**hours** 55:9
**huh** 6:9

**i**

**idea** 32:3 55:3
57:16,18
**identification** 7:18
15:23 16:4,13,18
16:23 17:3,8,14,19
17:25 18:5,10,15
29:20 60:2
**identified** 30:14
**identify** 7:21
**ii** 9:17,25 41:9,22
**image** 24:17
**images** 3:14,16,17
3:19,20,22,23,25
4:2,4,5,7,8 14:17
15:6,13,22 16:3,8
16:12,17,22 17:2,7
17:13,18,24 18:4,9
18:14 20:5,25
21:17,22 22:9
23:3,9,14 24:19,25
25:3 28:6 30:5,14
30:20 33:11 34:6
34:7 36:2,5,9,13
37:4,11,17 38:1
39:17
**imagine** 41:20
45:14
**important** 5:14
6:1,3
**inc.'s** 32:13 37:19
38:9 39:11

**include** 22:13
45:17
**includes** 41:4
**including** 28:23
30:6
**independent** 42:5
52:5,6 53:11,16,18
53:23 54:1,2,16
**indirect** 11:10
**individuals** 23:24
**information** 36:22
41:5 51:9
**inner** 47:19
**inside** 40:4,11,18
**instance** 6:19
**insurance** 9:4
25:17,24 26:11,12
49:5,16,22 50:1,1
**intangible** 44:3
**intellectual** 44:4
**interaction** 47:20
**interested** 61:17
**interior** 39:23
40:23
**internet** 52:22
**interpretation**
53:24
**interrupt** 6:4,5
**invoice** 23:25
36:17,17 38:23
**invoices** 18:24
22:7 23:8,11,14,19
23:20 24:4 32:23
36:11
**involved** 36:19
41:11 47:19 57:19
**issue** 28:7 58:3
**itemized** 38:19,21

**j**

**j** 11:12,14 18:20
18:20 19:18,25
21:6,9 23:8,11
33:4 35:3,6 36:11
36:24 38:11 50:13
50:14,21 53:22
55:11 56:20
**january** 39:25
40:4,6,24
**jean** 1:3 3:14
12:11 15:21,24
**jessica** 1:5 4:1
12:16 17:17,20
**job** 5:17 10:24
36:25
**journal** 10:9
**judge** 5:22
**july** 1:18 5:2 61:19
**junior** 7:7
**jury** 5:22
**justine** 1:5 3:23
12:16 17:6,9

**k**

**kazdova** 1:6 4:4
12:17 18:3,6
**keep** 47:17 48:23
58:4,9 59:4,15
**keeps** 58:13,13
**kept** 42:21,22,24
51:7,10 59:21
**khomiak** 2:4 5:10
5:12 7:19 16:7
18:18 19:10,13,24
20:3 29:5,14,17,21
43:17 56:15,19
57:21 59:1,3 60:3
60:10
**kind** 8:6 10:4
55:11,18 56:10,12

56:24 58:12
**kindle** 1:4 3:17
12:12 16:11,14
**kitchen** 41:25 42:2
42:11,13,14
**knew** 35:12,21
**know** 7:11 8:7,18
9:25 10:9 11:2,14
11:20,22 12:19,19
12:24 13:25 14:25
20:6 22:11 23:16
23:19 24:3,18
25:1,12,21 26:8
27:15,17,24 28:11
32:4,4,6 33:14
35:9 36:21,21,24
36:25 37:12,22
38:23,25 39:2,5,6
40:12,19 41:1,14
41:17,21 42:18,20
42:22 43:21,22
44:1,2,6,16 45:5,6
45:8,10,12,23,23
46:11,19 47:21
48:3,20 50:6,9,12
50:17,24 53:1,3,6
53:24,25 54:3,25
57:7,10,12,13 58:7
58:8,20 59:7,14,20
59:25
**knowledge** 12:23
35:22 38:3,10,14
40:10 43:25 49:24
51:12 54:9
**known** 28:23

**l**

**ladies** 12:21
**landlord** 45:4
**landlord's** 45:3
**large** 61:7

Veritext Legal Solutions
866 299-5127

**lately** 23:23
**law** 2:4
**lawsuit** 34:16,21
  34:23 35:2,14
  50:2
**lease** 42:12,13
  44:10,14 45:14,15
**leasing** 42:10
**legal** 9:15
**leroux** 1:24 61:6
  61:22
**letter** 52:1
**letters** 12:7,20
**level** 7:4
**license** 4:9 48:14
  48:25 60:1,6,7
**lien** 45:10,12,15
  45:16
**liens** 45:20,25
**limited** 30:6,8
**limits** 58:8
**lina** 1:5 4:3 12:17
  17:23 18:1
**liquor** 47:10
**lirot** 2:9,10 9:5
  12:15 15:24 16:5
  16:14,19,24 17:4,9
  17:15,20 18:1,6,11
  18:16 19:4,8,11,18
  19:21 20:1,11
  22:11 26:14 29:4
  29:7,11 33:5
  34:22 43:4,10,19
  45:17,21 49:7
  56:8 57:23,24
  58:2,25 60:12,16
  60:19
**lirotlaw.com** 2:12
**list** 4:10 8:11,13
  8:16,22,25 9:2,2
  9:10 29:19,23

47:22
**listed** 34:9
**listen** 6:2
**little** 5:16 9:11
  11:13
**location** 9:21 13:6
  13:13 22:12 26:3
  42:25 45:11 46:3
  52:7,11
**location's** 26:4,5
**locations** 15:7,7
  25:24
**log** 52:24
**long** 11:14 13:5,12
  19:12,21 24:6
  58:9
**longer** 28:24 58:5
**look** 23:20 29:8,14
  49:13 52:17 59:17
**looked** 24:5 48:17
**looking** 19:8
**looks** 29:12
**loss** 22:22
**loud** 5:17
**louder** 5:16
**ludmila** 2:4
**luke** 2:9,10
**luke2** 2:12
**lunches** 42:8

| **m** |
| --- |

**mail** 31:20 47:22
  48:1 57:6
**mailed** 8:11 29:12
  57:3
**mails** 12:7,20
**main** 47:5
**maintain** 38:12
  48:9,15,16 51:6
**maintained** 47:22
  49:16

**maintaining** 38:16
**maintains** 51:1
**maintenance** 38:7
  39:9
**management** 38:6
  39:8 55:11
**manager** 9:20
  28:16 51:23 53:8
**manager's** 42:25
**managers** 8:4 32:6
  54:9,11 55:6,14,22
  56:3 57:15
**manuals** 26:17,22
**margaritaville**
  55:10,25
**mariano** 44:6 45:4
  45:5,9,10 46:2,24
**mark** 29:18
**marked** 7:17 8:13
  15:22 16:3,12,17
  16:22 17:2,7,13,18
  17:24 18:4,9,14
  22:21 23:3,9,15
  29:20,22 60:2,6
**marketa** 1:6 4:4
  12:17 18:3,6
**marketing** 30:6,7
  37:19 39:15
**marquees** 30:10
  30:24 32:15
**marquis** 47:4
**masters** 23:1
  51:16 52:4 53:1
**materials** 30:6,7
  37:20,20,21
**matter** 5:13 58:10
**mean** 14:6 23:10
  24:12 33:2 43:6
  54:2,11 55:7
**meaning** 27:6 37:7
  40:15 45:7 51:3

**means** 38:23 44:14
**meant** 55:12
**media** 30:8,16,22
  30:23 32:13,21
  38:9,13,16 50:18
**medication** 6:20
**membership**
  50:10
**mentioned** 12:22
  52:14
**met** 14:2
**mgc** 1:4
**miami** 1:2,21 2:6
  61:4
**mila** 2:7 5:12
**mine** 37:1 51:12
**minute** 30:18,18
**missing** 31:11,13
**mitcheson** 1:4
  3:21 12:13 17:1,4
**models** 21:22
  24:19 27:4,4
  33:14 34:8 36:19
**monday** 8:8
**money** 32:11
  41:25
**monies** 22:13
  33:10,22 34:4
**month** 46:16 54:5
**monthly** 39:3,4
  44:23 54:7,20
**months** 54:21
**mortgage** 46:3,5,6
  46:7,11,17,18,20
  46:24 47:1
**music** 5:17

| **n** |
| --- |

**n** 2:1 3:1 7:3
**name** 5:12 7:1
  9:15 13:24 28:14
  35:9,12 47:3

[name - personally]

48:12
names 9:3
narrow 27:13
necessarily 8:21
10:12
need 15:6 37:5
56:25 59:18,24
needed 35:4
network 50:25
51:1,1
never 14:2 15:3
23:24 28:9 33:17
35:12 45:24 46:20
48:4,17 49:20
56:5,22 58:22
newspapers 30:10
32:15
night 47:13
nightclub 10:5
nodding 6:10
noon 42:8
normal 42:1
north 1:9 25:18,24
26:8,17 28:21
30:11 31:6,24
32:11 33:23 37:18
38:7 39:9,23
northwest 1:21
notary 61:7
notes 61:12
notice 3:12 7:16
7:23 8:12 12:2
19:6
noticed 23:24
notification 8:6

**o**

o 7:3
oath 5:14,20,21
obtain 31:12
obviously 27:24

office 9:20 11:20
19:1 26:2 41:8
42:25
oh 6:22 16:1 29:15
33:1 51:14 55:8
okay 5:25 6:18 7:8
7:13 8:16 9:10,25
10:1 11:20 12:24
13:12,15 14:3,6
15:5 16:1 18:23
19:3 20:14,19
21:12 22:6,19
23:2,17 24:15
25:16 26:2,15,24
27:23 28:11,19
29:10 30:2 31:3
31:15 32:9 33:8
33:20 34:12,18
36:21 37:2,9,13,15
39:6 41:8,17,21
42:12,16,20 43:21
44:2 45:4 46:4
47:21,24 48:12
49:2,15 50:6,9,12
50:17,21,24 52:14
53:10,14 55:6
56:15 57:7,18,20
58:25 60:4
once 54:5,21 59:22
ones 8:18 36:12
49:7
opening 10:9
operate 42:13
operated 13:2
42:3,4
operates 10:3
50:25
operating 13:5
14:7
operational 56:11

opposed 56:11
order 15:8 58:16
originally 13:1
55:3
otero 9:8 36:24
outside 42:22
53:25 56:1,2 57:1
owned 42:2
owner 44:9,10
owns 45:5

**p**

p 2:1,1 7:3
p.a. 2:10
p.c. 2:4
p.t.g. 1:10 12:25
13:8,10,16,22 14:6
20:16 21:4,23
22:12,15,20,25
25:18,22 26:18,20
28:21 29:24 30:11
31:7,25 32:12,20
33:24 37:18 38:8
38:15 39:10,24
41:2,12 43:22
44:11 45:12 49:6
50:15,17 51:5
53:10
packaged 59:22
page 3:3,11 8:12
12:3,4 14:4,11
15:12 19:5 20:19
56:10
pages 38:13 50:18
paid 33:15,17,18
34:9 46:18
paola 1:6 4:6
12:17 18:8,11
papaj 3:24 12:16
17:12,15
paperwork 27:10
27:16,18 28:18

part 5:18 7:20 8:4
13:20
particular 23:23
parties 61:14,15
partner 45:8
parts 37:1
party 38:6 39:8
48:20 55:18 57:11
pass 58:14
passed 13:23
password 52:25
53:4,6,8
patricia 1:15 3:4
5:1,5 7:3 61:9
patty's 24:1
pay 10:21 11:9
18:20 42:7,12
44:13,21,25 45:2
46:5 48:7
payment 14:17
20:25 21:17 33:10
33:22 34:4 46:5
pays 11:2,7 42:1
pennsylvania 7:7
people 41:24
48:19 52:3 58:20
pepaj 1:5
percent 47:17
performers 27:1,6
47:11
performing 27:14
period 58:5
permission 40:9
person 14:16
15:15 20:24 21:5
21:8 35:7 39:16
43:8 50:8
personally 34:19
38:25 40:8 44:25
50:4

Page 8

**pertain**  20:15 23:3
**pertaining**  45:24
**pertains**  21:3 27:3
  27:5 40:19
**pettinato**  1:15 3:4
  5:1,5,11 7:3 29:22
  61:10
**phil**  11:21,22
  35:14 53:6 57:17
**phone**  57:1 58:16
**photographed**
  40:23
**photographic**  3:14
  3:16,17,19,20,22
  3:23,24 4:2,4,5,7,8
  15:22 16:3,12,17
  16:22 17:2,7,13,18
  17:24 18:4,9,14
  24:25
**photographs**
  39:14,22 40:1,3,9
  40:10,11,13,13,17
  40:22
**picture**  15:15,17
  27:11
**plaintiff**  21:16
**plaintiffs**  1:7,16
  2:3 5:12 7:16 12:8
  12:10,11 14:18
  15:1,21 16:2,11,16
  16:21 17:1,6,12,17
  17:23 18:3,8,13
  21:2,19,22 22:1,9
  22:10 24:16,25
  25:3,9,13 29:19
  30:5 33:11,12,14
  33:23 34:5,5,14,15
  36:1,4 39:18 60:1
**planned**  55:17
**play**  48:20

**please**  7:1 12:3
**policies**  9:4 25:17
  25:23 26:11,12
  49:6
**pompano**  9:13
  13:3,5,13 22:12
  26:3,4,13 41:10
  45:11 47:6
**posada**  1:5 4:3
  12:17 17:23 18:1
**position**  9:19
  28:25
**possession**  18:24
  26:12 41:18 44:16
  49:4
**possible**  36:25
  42:17
**possibly**  50:6
**posters**  30:9 32:14
  56:25
**posts**  38:17
**prefer**  60:14
**premarked**  7:22
**present**  28:23 29:5
  39:25 40:4,6
**preventing**  6:18
**previously**  19:4
  25:22 50:14
**print**  23:21 30:9
  30:23 31:21 32:14
**printed**  29:8
**printout**  32:23
**probably**  25:12
  44:2 46:12
**proceed**  12:24
**process**  7:20
**produce**  19:3 43:4
**produced**  20:12
  22:11 32:18 39:15
**products**  37:21

**professional**  61:6
**profit**  22:22 42:14
**profits**  22:8 24:9
  31:5
**program**  52:10
**promote**  15:8
**promoted**  57:8,11
**promoting**  57:5
**promotion**  24:20
  55:7,13,18,19,20
  55:25 56:11,12,17
**promotional**  30:7
  37:20
**promotions**  1:10
  25:18,25 26:9,17
  28:21 30:11 31:6
  31:25 32:12 33:24
  37:18 38:8 39:10
  39:23 41:3 54:4,7
  54:10,12,13 55:12
  55:16,23 56:4
**property**  44:4,9
  44:11 45:25 46:3
  51:11,21 52:15,20
**protection**  27:25
**provide**  20:10
  31:19 33:5 49:10
  50:14
**provided**  26:14
  29:4 49:6
**provider**  50:1
**providers**  50:1
**provides**  23:8,11
  24:9
**public**  37:17 38:2
  56:13 61:7
**published**  37:17
**purchase**  41:15
**purchasing**  41:11
**purpose**  40:24
  48:1 53:11,19

**purposes**  40:22
**put**  11:4 56:1
  57:17 58:8

**q**

**qualifies**  54:1
  58:12
**qualify**  58:16
**quarles**  1:6 4:7
  12:18 18:13,16
**question**  6:2,2,3,7
  6:8,13,24 12:6,25
  14:11 27:3 30:13
  36:18 39:21 42:7
  54:14,15,24 59:18
**questions**  14:4
  15:6 57:22,23
  59:1 60:11
**quite**  58:21

**r**

**r**  2:1
**radio**  23:22
**ran**  13:1
**randomly**  54:22
**read**  25:11 60:13
**real**  27:15 35:22
  52:3
**really**  22:17 27:10
  28:4 29:7 34:25
  36:16 43:25 47:18
  48:16 51:13 59:9
  59:17,20,24
**realm**  36:20 47:20
  54:24
**reason**  53:15
  58:18
**recall**  14:1 27:17
  27:20 29:6
**receipts**  9:2 22:8
  48:8,10,23 59:5

Page 9

[record - space]

**record** 5:11 6:25 7:2 61:11
**records** 18:23 32:18
**redirect** 3:6 59:2
**refer** 9:7,24 14:13 20:21 21:13 24:24 25:7 29:1 30:4 31:4 32:10 33:9 33:21 34:3 35:25
**reference** 24:12
**referenced** 34:7
**referring** 10:13 55:13,20,21
**reflect** 14:13 20:21 21:13 24:24 25:7 30:4 31:4 32:10 33:9,21 34:3 35:25 36:12
**reflected** 23:20
**reflecting** 28:20
**regarding** 34:15 39:17
**regular** 29:2 54:6 56:24 59:7
**regulation** 58:7
**related** 14:16 20:24 21:16 22:8 33:11,23 34:5 39:17
**relating** 38:6 39:8
**relation** 51:8
**relationship** 42:5
**relative** 61:13,15
**released** 38:1
**releases** 26:25 27:7,11,13 28:5
**relevant** 9:6
**remember** 7:10,11 8:3,5 13:18 36:16 46:1 49:11

**remote** 52:12
**rent** 44:13,21 46:8 46:23
**repairs** 53:13
**report** 61:9
**reporter** 6:11 61:6
**reporter's** 61:1
**reports** 22:7
**represent** 5:12
**representatives** 12:9 20:23 21:15 39:16
**requested** 19:4,5
**require** 48:10
**required** 54:19
**requirement** 54:6
**requirements** 54:18
**requires** 19:16
**respond** 6:25
**response** 6:8
**responsibilities** 10:16
**responsibility** 28:3
**rest** 42:9
**result** 50:2
**return** 22:23
**returns** 22:11,22 24:9 31:9,10
**revenue** 47:5,7
**review** 15:12 61:10
**right** 10:15 11:17 13:9 20:10 24:8 35:13,24 49:4 53:20 56:14 58:24 59:6 60:17
**rights** 44:3
**road** 2:10 41:10

**roughly** 13:7
**rubber** 59:21
**rules** 6:1,23
**run** 30:18 42:9 55:9
**runs** 41:24 50:22

**s**

**s** 2:1 3:9
**safe** 10:10 36:10
**safety** 48:18
**sale** 41:15
**sales** 10:9
**sample** 43:10,17
**saying** 21:8,25 27:23 40:21 54:16 58:22
**says** 28:1,18 29:14 30:3 36:3 38:24 56:1,25
**screen** 30:22
**scrutinize** 24:4
**scrutinized** 23:22
**secure** 58:13
**security** 45:18
**see** 6:23 10:8 24:6 29:17 54:17 59:17 59:19
**seen** 7:23 8:1 14:20,22 15:3,10 15:13,15 16:8 28:9 30:14,20,23 30:24,25 31:1 41:7 45:24 46:20 47:23 48:4 56:5
**self** 27:22 28:3
**sense** 6:16
**sent** 19:15
**separate** 10:24 38:16
**separately** 39:1 42:3

**september** 41:3
**services** 50:13,15
**set** 19:21
**shaking** 6:9
**shots** 30:22
**show** 15:6 32:19 43:9
**showed** 21:20 23:15 30:22
**showing** 58:22
**sign** 27:8,20
**signature** 61:22
**signed** 27:19
**signs** 42:18
**similar** 37:1
**situations** 47:24
**skinner** 1:3 3:15 16:2,5
**social** 30:8,16,22 30:23 32:13,21 38:9,13,16 50:18 52:18
**somebody** 35:21 53:19 54:2,21 56:25 59:23
**son** 44:6 45:4,5,9 45:10 46:2,24
**soon** 31:20
**sorry** 5:17 30:19 57:9
**sort** 11:10
**sounds** 11:17
**source** 19:22
**south** 9:17,24 22:13 28:16 29:25 41:9,22 43:21 44:11 45:11
**souther** 1:1
**southwest** 2:5
**space** 42:10 59:19

Page 10

[special - tuesday]

**special** 55:9
**specific** 23:3,14
  24:12 50:25 54:7
**specifics** 24:7
  27:17
**spell** 7:1
**spenders** 59:13
**spent** 22:13,15,20
  32:11,21
**spoke** 6:24 49:5
**spoken** 56:22,23
**st** 24:1
**stage** 27:14
**stand** 14:9
**standard** 43:14
**stands** 58:8
**started** 13:19 60:4
**starts** 29:17
**state** 7:1 14:5 61:3
  61:7
**stated** 5:11 25:21
  53:21 55:6 59:15
**statement** 22:22
  40:7,8
**statements** 22:7
  31:23
**states** 1:1 14:12
**stenographic**
  61:12
**stenographically**
  61:9
**storage** 19:16
**store** 51:5
**stored** 41:4
**streams** 47:5
**street** 2:5
**strippers** 27:7
**structure** 54:25
**structured** 46:15
**stuff** 42:1

**subject** 34:16
**submitted** 26:11
**suing** 15:1
**suite** 2:5,11
**supposed** 8:18
  35:19
**sure** 11:23 19:7,19
  20:11 22:17 27:10
  29:7 33:7 36:23
  43:10 45:13 49:3
  50:20 54:16 56:9
  58:11
**sworn** 5:6
**system** 51:9

**t**

**t** 3:9 7:3,3,3 58:7
**t.k.** 1:10 25:18,25
  26:9,17 28:21
  30:11 31:6,25
  32:12 33:23 37:18
  38:7 39:9,23 41:3
**table** 55:21
**tables** 43:23
**take** 6:11,12 19:16
  40:9 48:13 58:14
  58:17
**takeguma** 1:5 3:23
  12:16 17:7,10
**taken** 1:16 5:14,20
  11:21 39:14 40:3
  40:21
**takes** 47:1 59:23
  59:23
**talk** 5:16 55:22
**talking** 42:16 43:7
  55:24 56:10
**tangible** 56:12
**tax** 22:11,22,23,24
  24:9 27:23 31:9
  31:10 32:18 33:2

**tcb** 9:14,17,19,24
  9:25 10:2,7,12
  11:14 12:20,22
  13:5,16,19 14:5,6
  20:16 21:4,23
  22:12,15,20,24
  25:22 28:16 29:25
  32:20 38:15 41:9
  41:12,21 42:6
  43:21 44:11 45:11
  47:22 49:6 50:15
  50:18,24 51:5
  52:4 53:10
**team** 39:15
**tecum** 3:13 7:17
**tell** 8:18,22,25
  15:12 35:1 36:23
  55:14
**tells** 57:14
**tend** 24:5
**tents** 55:21
**terminology** 27:10
**terms** 10:19 41:14
  44:18
**test** 58:15
**testified** 5:7 18:19
  25:11 38:11 46:2
**testifying** 5:22
**testimony** 6:19
**tests** 58:14
**thank** 28:19 60:10
  60:19
**theses** 30:14
**thick** 43:8
**thing** 33:4 37:8
  46:15 52:18 58:18
**things** 24:6 45:18
  52:17
**think** 12:20 27:25
  29:9 45:21 53:15
  54:1 56:8 57:6,18

57:21
**thinking** 37:6
**third** 38:6 39:8
**thought** 45:13
  55:12 56:16 57:16
**three** 15:7 31:24
**time** 13:20 19:8
  24:6 35:20 41:6
  59:8,10
**tina** 1:6 4:7 12:18
  18:13,16
**today** 5:13,21 6:19
  7:20 8:21
**told** 8:3 9:6 34:23
  35:15,21,22 36:16
**top** 22:17 32:17
  38:20 41:19 59:20
**total** 31:5
**trademarks** 44:4
**transaction** 58:4
**transcribed** 60:12
**transcript** 61:10
  61:11
**translation** 25:10
**trap** 1:9,10,11,11
  1:11,20 9:13
  10:14 13:2 15:7,7
  25:19 26:18 28:22
  30:12 31:7 32:1
  32:13 33:25 37:19
  38:9 39:11,24
  45:11 47:6
**true** 6:16 29:23
  60:7 61:11
**truth** 36:23
**try** 15:11 59:12,13
**trying** 7:10 8:3
  27:25 31:12 53:15
  54:17
**tuesday** 8:8

Veritext Legal Solutions
866 299-5127

[turn - years]

**turn** 8:12
**twice** 46:16
**two** 25:24 43:7
  51:11,20 52:2
  56:1
**type** 43:12 52:1

### u

**ucc** 45:17
**uh** 6:9,9,9
**unaware** 37:14
**understand** 5:14
  5:23 14:10 23:10
  46:22 54:14 56:9
**understanding**
  50:21 58:6
**understood** 6:14
**united** 1:1
**unrelated** 10:12
  10:14
**usage** 22:9
**use** 9:5 27:4 34:5
  36:2,5 42:11
  52:17,22
**usually** 11:11

### v

**vendor** 53:25
**verbal** 55:13,20
  56:6
**verbalize** 37:5
**verbally** 6:12
**vickers** 1:4 3:20
  12:12 16:21,24
**videos** 24:23 30:9
  30:24 32:14 39:14
  39:22
**vip** 50:9
**visit** 43:8
**vivian** 1:4 3:17
  12:12 16:11,14

**vs** 1:8

### w

**wait** 30:18,18
**waive** 60:16
**waivers** 9:5 26:25
  27:7,11,14 28:5
**want** 29:8 36:15
  43:8 46:13 48:19
  48:20 55:18 56:9
**way** 11:10 46:15
  58:20
**website** 38:13
  50:22
**websites** 30:8
  32:13,21 38:17
  39:11
**wednesday** 1:18
**weekly** 54:8,20
**went** 28:1 56:18
  57:17 58:22
**whatsoever** 48:1
  53:12
**whitten** 1:4 3:18
  12:12 16:16,19
**wine** 47:10
**wish** 35:21
**witness** 3:3 5:8
  19:12,19 20:2
  29:16 56:14,16
  60:14,17
**wording** 27:17
**words** 51:25 55:8
  58:13
**work** 9:12,13
  10:10 13:10 20:11
  22:4 26:3 52:7,11
**worked** 13:15,16
  13:20 22:2
**working** 13:21
**workings** 47:19

**writing** 10:8 35:16
**written** 20:22
  21:14

### x

**x** 3:1,9

### y

**yeah** 20:2,13
**year** 13:14,17 29:6
  29:15 31:11,13
**years** 9:2 11:15,16
  11:18 13:7,16
  14:8,9 19:10,14
  20:4,7 22:15
  25:20 26:14,19
  27:2 31:6,10,24
  32:16 33:6 43:5
  49:1,1,3,10,12,14
  49:16,22 59:16,19

Page 12

Federal Rules of Civil Procedure

Rule 30


(e) Review By the Witness; Changes.

(1) Review; Statement of Changes. On request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available in which:

(A) to review the transcript or recording; and

(B) if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them.

(2) Changes Indicated in the Officer's Certificate. The officer must note in the certificate prescribed by Rule 30(f)(1) whether a review was requested and, if so, must attach any changes the deponent makes during the 30-day period.


DISCLAIMER:  THE FOREGOING FEDERAL PROCEDURE RULES ARE PROVIDED FOR INFORMATIONAL PURPOSES ONLY. THE ABOVE RULES ARE CURRENT AS OF SEPTEMBER 1, 2016.  PLEASE REFER TO THE APPLICABLE FEDERAL RULES OF CIVIL PROCEDURE FOR UP-TO-DATE INFORMATION.

VERITEXT LEGAL SOLUTIONS
COMPANY CERTIFICATE AND DISCLOSURE STATEMENT

Veritext Legal Solutions represents that the
foregoing transcript is a true, correct and complete
transcript of the colloquies, questions and answers
as submitted by the court reporter. Veritext Legal
Solutions further represents that the attached
exhibits, if any, are true, correct and complete
documents as submitted by the court reporter and/or
attorneys in relation to this deposition and that
the documents were processed in accordance with
our litigation support and production standards.

Veritext Legal Solutions is committed to maintaining
the confidentiality of client and witness information,
in accordance with the regulations promulgated under
the Health Insurance Portability and Accountability
Act (HIPAA), as amended with respect to protected
health information and the Gramm-Leach-Bliley Act, as
amended, with respect to Personally Identifiable
Information (PII). Physical transcripts and exhibits
are managed under strict facility and personnel access
controls. Electronic files of documents are stored
in encrypted form and are transmitted in an encrypted
fashion to authenticated parties who are permitted to
access the material. Our data is hosted in a Tier 4
SSAE 16 certified facility.

Veritext Legal Solutions complies with all federal and
State regulations with respect to the provision of
court reporting services, and maintains its neutrality
and independence regardless of relationship or the
financial outcome of any litigation. Veritext requires
adherence to the foregoing professional and ethical
standards from all of its subcontractors in their
independent contractor agreements.

Inquiries about Veritext Legal Solutions'
confidentiality and security policies and practices
should be directed to Veritext's Client Services
Associates indicated on the cover of this document or
at www.veritext.com.