UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

**CIELO JEAN GIBSON, et al.,**

    **Plaintiffs,**

v.                                                   **Case No.: 1:16-CV-24548-MGC**

**BTS NORTH, INC., et al.,**

    **Defendants.**
_____/

**DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT**

COMES NOW, the Defendants, BTS NORTH, INC., d/b/a BOOBY TRAP; T.K. PROMOTIONS, INC., d/b/a BOOBY TRAP; P.T.G. ENTERTAINMENT, INC., d/b/a BOOBY TRAP; and BOOBY TRAP, INC., d/b/a BOOBY TRAP,, by and through the undersigned counsel and pursuant to Rule 56, Fed.R.Civ.P., and to Local Rule 56.1, respectfully responds in opposition to Plaintiff's Motion for Summary Judgment (Doc. 38) and would state as follows:

**INTRODUCTION**

On the basis of relying on third parties to produce their promotional materials, the "Corporate Defendants," fully licensed businesses, utilized images offered for sharing on Facebook and did just that (See Declaration of Darren Franclemont, Exhibit "A" hereto). Plaintiff's generic images were used to promote various Booby Trap clubs (the "Clubs"), a common occurrence in advertising in the United States, but, since there are ZERO references to any Plaintiff by name, no statement of endorsement, no statement that any named Plaintiff would be present at any of the Booby Trap Clubs, and no proof that any actual "false

1

advertising" or "endorsement" was ever conveyed by Defendants' advertising. Based on the most basic analysis of Plaintiffs' claims, an analysis of what the Lanham Act truly encompasses, the ridiculous claims of Plaintiffs' "experts," and the clearly disputed issues involving all of these variables, any summary judgment concluding that the Defendants engaged in false advertisement and/or false endorsement in violation of the Lanham Act, or engaged in any other conduct that would support any of the other "counts" would be erroneous.

## RESPONSE TO STATEMENT OF UNDISPUTED FACTS

Pursuant to Local Rule 56.1, Defendants incorporate by reference herein the Response to "undisputed facts," set forth in the Defendants Response to Statement of Undisputed Material Facts ("DRSOUF") filed contemporaneously with this Response in Opposition to Plaintiffs' Motion for Summary Judgment.

Based on the actual use of Plaintiffs' "images," their status as to the subjective assertions of being "successful models and entertainers" is totally irrelevant. Whether they would have "consented to use of their imagery by Defendants," the photographs are all sexually suggestive and depict scantily clad females. See Complaint Exhibits A through M Other than self-serving and conclusory assertions, no Plaintiff has shown any "professional harm" caused by Defendants' conduct. (*See* DRSOUF par. 1). Other than the additional self-serving statement of having achieved "celebrity status and fame," the comparative recognition of each Plaintiff was dubious as it pertained to the Defendants' recipient audience. The specific features of the Clubs are not disputed. All of the Booby Trap Clubs are "Gentlemen's Clubs." The corporate entities are distinct, and each deals with its own income and profit characteristics. (*See* DRSOUF pars. 6-9).

Defendants concede only that they relied on third parties to prepare and disseminate advertisements with each Plaintiff's image. (*See* DRSOUF pars. 10). Defendants never created any of the promotional materials, never actually had final approval or authority over the use and dissemination of such advertisements, nor did they control the dissemination of any such advertisements. (*See* DRSOUF pars 10, 13, 18, and 19). Based on an individual with over 20 years' experience in creating advertising for "sexually oriented businesses," no such advertising was created to give any "false impression" that any person featured in any such advertising 1) agreed to promote the Clubs, or 2) might attend events at any of the Clubs (*See* DRSOUF par. ). Other than Plaintiffs' self-serving and subjective conclusions, there is no evidence that Defendants' advertisements have harmed any Plaintiff's professional reputation, her standing as a celebrity and/or notoriety in the modeling industry. (*See* DRSOUF par. 10, and 13-18).

Defendants' reliance on Third Parties does not render an aspect of Defendants' conduct "unlawful." (*See* DRSOUF par. 10, 13). Simply put, Defendants never falsely portrayed Plaintiffs as promoting or endorsing the Clubs, and, having had nothing to do with the creation of the subject promotions, could never be shown to have done anything "intentionally" to support Plaintiffs' Lanham Act claims. (*See* DRSOUF pars. 10, 13-18). These facts, addressed fully in the attached Defendants' Statement of Material Facts in Opposition to Plaintiffs' Statement of Undisputed Facts, as well as the Declaration of Darren Franclemont (Exhibit 1), and the Declaration of Phil Gori (Exhibit 2), attached hereto and filed contemporaneously herewith, reveal dramatic issues that simply are not appropriate to support any summary judgment in favor of Plaintiffs.

**REPONSIVE ARGUMENT**

A. **Standard of Review**

The Eleventh Circuit has stated the standards for granting summary judgment, noting that the Court must:

> ... draw[] "all reasonable inferences in the light most favorable to the non-moving party." *See Owen v. I.C. Sys., Inc.,* 629 F.3d 1263, 1270 (11th Cir. 2011). Summary judgment may be granted only if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505 2510, ... (1986) (quoting Fed.R.Civ.P. 56(c) (1985)). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the non[-]moving party." *Id.* at 248, 106 S.Ct. at 2510. Summary judgment is only appropriate if a case is "so one-sided that one party must prevail as a matter of law." *See id.* at 251–52, 106 S.Ct. at 2512.

*Quigg v. Thomas County School Board,* 814 F.3d 1227, 1232, (11th Cir. 2016).

The Court must grant summary judgment only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must "view the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion." *Id*. As shown in the record developed in this action, the Plaintiffs are simply not entitled to summary judgment on any of the Counts in their Complaint.

B. **Plaintiffs Are Not Entitled to Summary Judgment on Either Lanham Act Claim, Either False Advertising or False Endorsement) (B and F of Plaintiffs' Motion)**

This Court should assess the "full context" of any alleged misconduct in analyzing the elements of the Lanham Act claims. *Osmose, Inc. v. Viance*, *LLC*, 612 F.3d 1298, 1308-1309 (11th Cir. 2010). Looking directly at the applicable Lanham Act standards, and analyzing those in the "full context" of this case, it is clear that no summary judgment would be appropriate on these claims.

At this point, this Court is well familiar with Section 43(a) of the Lanham Act. *See, e.g., Warner-Lambert Co. v. BreathAssure, Inc.,* 204 F.3d 87, 91-92 (3d Cir. 2000). The major

disconnect with the Plaintiffs' claims is that, with all due respect, the Plaintiffs' are simply not "recognizable celebrities." The Lanham Act, 15 U.S.C. § 1125(a) provides a cause of action against a defendant that uses such plaintiff's image in an advertisement, without authorization, to falsely claim that such plaintiff endorses the defendant's business, but ***there needs to be a recognizable brand to support such a claim.*** See *Allen v. Nat'l Video, Inc.*, 610 F. Supp. 612, 626 (S.D.N.Y. 1985); *see also ETW Corp. v. Jireh Pub., Inc.,* 332 F.3d 915, 924 (6th Cir. 2003) (unfair competition and false advertising claim existed where Tiger Woods' image and likeness used for commercial purposes without his authorization); *Seale v. Gramercy Pictures*, 949 F. Supp. 331, 340 (E.D. Pa. 1996). The Plaintiffs are seeking to expand the application of the Lanham Act to the generic use of Facebook photographs the Plaintiffs do not allege they own, for individuals that are simply not recognizable as "walking, talking trademarks," and for the simple use of a "pretty face" (and other Darwinistically attractive attributes, politely summarized herein as just a "pretty face") to simply provide an attractive backdrop to the Booby Trap Clubs' Facebook pages. The gist of the common Count I claims, paraphrased, bases "false advertising" under the Lanham Act on the theory that the respective Plaintiffs may be presumed to have worked at, or otherwise were affiliated with, the Defendants' Club, endorsed the events or activities at the Club, or consented to the use of their image to "advertise, promote, market" or "participate in," or "appear" at the specific events in which their images were utilized. These assertions, based on the plain appearance of the Facebook posts at issue, are based on pure speculation.

Candidly, no one would ever be naïve enough to think they would encounter any of the "pretty faces" in a visit to the Defendants' establishment any more than one would expect to see Colonel Sanders when picking up a bucket of fried chicken. The entire theme of the

5

Plaintiffs' case presumes a level of consumer ignorance simply not embraced by any "reasonable person" regardless of the carefully manipulated contents of the "Buncher Report." Perhaps the most notable omission in this "Report" is that it never asks any survey participant if they recognize the girl in the image. Based on any Lanham Act claim, this is not only conspicuous by its absence, but it casts extreme doubt on the validity and applicability of the entire "Report," flawed in many ways, as described below.  Since the only use is an image, with no language, and no representations of any kind, Plaintiffs fail to state any actual false advertising and fail to plead any evidence of competitive injury, as the law requires. Similar to the facts in the instant case, in *Kournikova v. General Media Communications Inc.*, 278 F. Supp. 2d 1111, 1117 (C.D. Cal. 2003), a celebrity tennis player brought a Lanham Act suit against an adult entertainment magazine publisher, alleging that display of falsely identified photographs constituted false advertising and false endorsement. The court held that: (1) there was no evidence of competitive injury needed to make out any false advertising claim; (2) the publisher's conduct did not amount to a false endorsement; and (3) the false endorsement claim was barred by the First Amendment.

Applying these concepts to the instant case, first, false advertising cases generally involve some sort of misrepresentation in the marketplace that causes "a discernibly competitive injury." *Id.* To have standing to assert any claim under this line of cases requires a showing that: (1) the plaintiff competes with the defendant in some marketplace, *Halicki v. United Artists Communications, Inc.,* 812 F.2d 1213, 1214 (9th Cir.1987); (2) the plaintiff has alleged a discernibly competitive injury resulting from a misrepresentation in the marketplace (*Waits,* 978 F.2d at 1109); and (3) the misrepresentation implicates some purpose of the Lanham Act regarding the use of trademarks.

Plaintiffs have failed to make any assertions that: (1) the Plaintiffs compete with the Booby Trap Clubs in the same marketplace, or (2) Plaintiffs have suffered some type of "competitive" injury. If anything, the Plaintiffs have asserted only that they are insulted with the alleged "association" with the Clubs. By their very nature, such claims would have to be evaluated on a "Plaintiff by Plaintiff" basis, boding against any summary judgment on the scope of that sought by the Plaintiffs. On their face, these assertions unequivocally establish the inapplicability of the Lanham Act to the facts alleged. Plaintiffs do not "vie for the same dollars from the same consumers," further evidencing the lack of any competition between the "models" and the Clubs. Even if Plaintiffs could meet the first prong, they fail to articulate any competitive injury, simply because they cannot. Although Plaintiffs alleged that the "false association" with Defendant' Clubs has caused "irreparable damage to [her] reputation and brand," they omit any claim of specific losses due to competitive injury, see *Kournikova*, 278 F. Supp. at 119 (stating plaintiff might have overcome the absence of any allegation regarding competitive injury by presenting evidence that she lost sales of videos, calendars, and the like as a result of the *Penthouse* photo spread at issue in that case.)

In addition, Plaintiffs contend that the use of their likeness on the Defendant's social media is likely to cause confusion as to their association with and endorsement of Defendant's establishment. This is, respectfully, ridiculous. Consumer confusion exists when: (1) the defendant used the plaintiff's identity; and (2) the use suggests that plaintiff sponsored or approved the defendant's product. *See e.g., Waits,* 978 F.2d at 1110–11. When looking at the first prong, Plaintiffs assert that the exhibits are the Plaintiffs in question, but the Defendants ***never identified any of the photos by any Plaintiff's name, affiliations, status or distinction***. Plaintiffs' "identity" on the photographs is never established, and, the use of a "pretty face"

does not a Lanham Act violation make. Other than pure speculation, there is no "suggestion" of any endorsement, no statement, and no language. Summary judgment cannot be based on speculation.

As to the second prong, to determine if the "use" of the photo suggests any Plaintiff sponsored or approved Defendant's product requires an examination using the following factors: (a) the relatedness of Plaintiff's fame or success to Defendant's product; (b) the similarity of the likeness used by Defendants to Plaintiffs; (c) evidence of actual confusion; (d) marketing channels used; (e) likely degree of purchaser care; (f) Defendant's intent in selecting Plaintiff; and (g) likelihood of expansion of the product lines. *Kournikova*, 278 F. Supp. at 1120; *citing Downing v. Abercrombie & Fitch,* 265 F.3d 994, 1007–08 (9th Cir.2001) (restating the factors set forth in *AMF, Inc. v. Sleekcraft Boats,* 599 F.2d 341 (9th Cir.1979). Defendants urge the Court to focus on the two factors Plaintiffs fail to meet: "A mark with extensive public recognition and renown, deserves and receives more legal protection than an obscure or weak mark." *YKK Corp. v. Jungwoo Zipper Co.,* 213 F.Supp.2d 1195, 1200 (C.D.Cal.2002) (quoting *Kenner Parker Toys, Inc. v. Rose Art Indus., Inc.,* 963 F.2d 350, 353 (Fed.Cir.1992)). Although Plaintiffs contend that the females in the photos are "models" and the Complaint cites to their varying numbers of twitter and Instagram followers, their public recognition is limited, at best, rendering a lowered legal protection. Plaintiffs also fail to state that a "reasonable consumer" (not Buncher's minimally low data base) would be ***likely*** to conclude that the Plaintiffs endorsed Defendants' Clubs, like the magazine in the cited case. See *Waits,* 978 F.2d at 1110; 15 U.S.C. § 1125, (Normally, the likelihood of confusion centers on the probable reactions of prospective purchasers of the parties' goods. *American Int'l Group, Inc. v. London America Int'l Corp.,* 664 F.2d 348, 351 (2d Cir.1981); (Each case involved a

8

specific arbitrary symbol that had been used over time and had become associated in the public mind with the plaintiffs finding it was likely that, the widely recognized Dallas Cowboy uniform used in an adult video would give the public confusion that Dallas Cowboys was affiliated with the video.) *Dallas Cowboys Cheerleaders*, *Inc. v. Pussycat Cinema, Ltd.*, 604 F.2d 200, 205 (2d Cir.1979). In contrast, the Plaintiffs are indistinguishable from generic "pretty faces." Again, since the most notable omission in the Buncher "Report" is that it never asks any survey participant if they recognize the girl in the image.

The decision in *Lexmark Int'l, Inc. v. Static Control Components, Inc.,* 134 S.Ct. 1377, 188 L. Ed. 2d 392, 82 USLW 4195 (2014), is illuminating, and held that "a plaintiff suing under § 1125(a) ordinarily must show economic or reputational injury flowing directly from the deception wrought by the defendant's advertising; and that that occurs when deception of consumers causes them to withhold trade from the plaintiff." Other than bald allegations, Plaintiffs have submitted no actual evidence of any loss or "withhold of trade."

Obviously, this underscores the Defendants' arguments that a "pretty face" posing for a professional photograph (she does not allege she owns) simply can't show, under any circumstances, that the obscure use of her photo to promote obscure Clubs would deceive any consumer or result in any "loss of trade." Under *Miller's Ale House, Inc. v. Boynton Carolina Ale House, LLC*, 745 F. Supp. 2d 1359, 1376-78 (S.D. Fla. 2010), to state a claim for false advertising, a complaint must establish (1) that "the [advertisement] of the [defendant] w[as] false or misleading," (2) that "the [advertisement] deceived, or had the capacity to deceive, consumers," (3) that "the deception had a material effect on purchasing decisions," (4) that "the misrepresented product or service affects interstate commerce," and (5) that "the

9

[plaintiff] has been — or is likely to be — injured as a result of the false advertising." (Citing *Osmose, Inc. v. Viance, LLC*, 612 F.3d 1298, 1308 (11th Cir. 2010)).

To be sure, there is simply nothing "false" or "misleading" in using a "pretty face" to advertise a business, other than Plaintiffs' concocted claims. The most important question in this case is whether a "pretty face" is the equivalent of a "mark." The strength of any mark is decisive in a Lanham Act claim. A mark with extensive public recognition and renown deserves and receives more legal protection than an obscure or weak mark. *YKK Corp. v. Jungwoo Zipper Co.,* 213 F.Supp.2d 1195, 1200 (C.D.Cal.2002) (quoting *Kenner Parker Toys, Inc. v. Rose Art Indus., Inc.,* 963 F.2d 350, 353 (Fed.Cir.1992)). See also *Downing v. Abercrombie & Fitch,* 265 F.3d 994, 1007–08 (9th Cir.2001) (restating the factors set forth in *AMF, Inc. v. Sleekcraft Boats,* 599 F.2d 341 (9th Cir.1979) to make them more applicable to the celebrity case). "Although these are all factors that are appropriate for consideration in determining the likelihood of confusion, they are not necessarily of equal importance, nor do they necessarily apply to every case." *Id.* at 1008. *Kournikova v. Gen. Media Commc'ns Inc.*, 278 F. Supp. 2d 1111, 1120–21 (C.D. Cal. 2003). **The categorization of a mark is a factual question**. *Donchez v. Coors Brewing Co.,* 392 F.3d 1211, 1216 (10th Cir.2004) (emphasis added, citation omitted).

No statements exist in any of the Exhibits that say that the "pretty face" will be present at the Clubs or endorses the Clubs, and it is beyond speculative to even think simply showing a "pretty face" will deceive some consumer into thinking the "pretty face" will be present at any Clubs. The Survey results, as evidenced in the Buncher Report and explained in his expert opinions, establish nothing, because they bypass the "recognizable mark" requirement. The open ended questions used in the Buncher Report do not comport with the most rudimentary

Federal "survey requirements" required by the *Reference Manual on Scientific Evidence*,[1] which includes a lengthy discussion of the use of surveys in Court. The *Manual* states:

> ... [Surveys] permit an assessment of the extent to which the measured objects or respondents are likely to adequately represent a relevant group of objects, individuals or social organisms. All questions asked of respondents and all other measuring devices can be examined by the court and the opposing party for objectivity, clarity, and relevance, and all answers or other measures obtained can be analyzed for completeness and consistency. In order to permit the court and the opposing party to closely scrutinize the survey, so that its relevance, objectivity and representativeness can be evaluated, the design and execution of the survey are described in detail by the party proposing to offer it as evidence. [2]

The Manual then refers to Rule 703, Fed.R.Evid., and particularly the comments of the Advisory Committee thereto. See, also, *McCormick on Evidence* [4] § 208, Vol. II, p. 937, *et.seq.* dealing, in the context of scientific evidence, with survey evidence. Surveys must have certain hallmarks of reliability. *Pittsburgh Press Club v. United States,* 579 F.2d 751, 758 (3d Cir.1978). In rejecting a survey prepared for litigation use, the Third Circuit reviewed several factors which must be examined when determining the intrinsic reliability of a survey. *761 *Pittsburgh Press Club,* 579 F.2d at 758. The court noted that:

> A proper universe must be examined and a representative sample must be chosen; the persons conducting the survey must be experts; the data must be properly gathered and accurately reported. It is essential that the sample design, the questionnaires and the manner of interviewing meet the standards of objective surveying and statistical techniques. Just as important, the survey must be conducted independently of the attorneys involved in the litigation. Id.

---

[1] Federal Judicial Center, Rochester, NY, 1994.

[2] *Ibid.*, p. 226.

[3] Strong, John, *McCormick on Evidence, 4th Ed.*, West Publishing Company, St. Paul, MN, 1992.

11

In that case, the Court found that the surveys *did not* provide a reliable basis for determining whether any implied messages were being communicated by the advertisements at issue therein. Assurance of the objectivity of the entire process: *Toys "R" Us, Inc. v. Canarsi Kiddie Shop, Inc.*, 559 F.Supp. 1189 (E. D. NY 1983), and *Pittsburgh Press Club, v. United States*, 579 F.2d 571 (3d Cir. 1978).

As clearly shown in the Buncher Report itself, none of these concerns have been addressed properly. For the same reasons the Court invalidated consumer surveys in the cases of *Johnson & Johnson–Merck Consumer Pharmaceuticals Co. v. Smithkline Beecham Corp.,* 1991 WL 206312 (S.D.N.Y. Oct. 1, 1991), *aff'd,* 960 F.2d 294 (2d Cir.1992) (the court discounted as too leading a survey's use of several open-ended questions), and *Berkshire Fashions, Inc. v. Sara Lee Corp.,* 725 F.Supp. 790, 797–98 (S.D.N.Y.), *aff'd,* 904 F.2d 33 (2d Cir.1990) (a clinical survey did not replicate consumer behavior in the marketplace), even the most rudimentary assessment of the Buncher report would show it is not valid. Most importantly, as the Court held in *American Express Travel Related Serv. v. Mastercard,* 776 F.Supp. 787, 789–90 (S.D.N.Y.1991), ***using anything other than the exact materials at issue***, the Buncher Report fails as a matter of law, because it does not utilize all of the alleged images at issue, regardless of the "similarity" of what he did use. Indeed, the Buncher report uses promotional materials from *different* clubs (Report pp. 54-63), and, in that portion used as the "survey," shows only three *images*, many ***not the actual promotional materials at issue*** (Report pp. 68-77). Critically, the Report does not show any of the materials for 10 Plaintiffs, thus, Buncher ***did not*** conduct a valid survey, and the nebulous nature of these concepts is simply not appropriate to show Plaintiffs are entitled to summary judgment on this element. Based on the foregoing, no Plaintiff is entitled to summary judgment on any aspect of the Lanham Act claims at issue.

**C. Plaintiffs Are Not Entitled to Summary Judgment on the § 540.08, "Right of Publicity" or Common Law Claims (COUNTS III and IV)**

Plaintiffs' summary judgment argument with respect to these two counts consists of no more than text reciting the legal elements of these misappropriation claims. Genuine issues of material fact exist with regard to these two counts, however. Plaintiffs' conclusory averments that the images were used without consent by anyone are wholly insufficient to support summary judgment. Plaintiffs have failed to show without dispute that the images were used in a manner to associate Plaintiffs specifically with Defendants' businesses, as required by Florida law. *See Epic Metals Corp. v. CONDEC, Inc.*, 867 F.Sup. 1009, 1016 (M.D. Fla. 1996)(internal citations omitted); *Tyne v. Time Warner Entertainment, Co.,* 901 So. 2d 802 (Fla. 2005). The images themselves do not identify Plaintiffs or offer any commentary purporting to be made on their behalf. Instead, the photographs are merely incidental to the posting. Thus, Plaintiffs are not entitled to summary judgment as a matter of law on these misappropriation counts. Neither would they be otherwise entitled to summary judgment with respect to damages under these counts, where entitlement is disputed. Use of one's name, likeness or photograph in a publication without more does not give rise to a cause of action for misappropriation. *Loft v. Fuller*, 408 So. 2d 619, 623 (Fla. 4th DCA 1981). The publication is not harmful simply because the publisher makes money through sales of the product. *Id*. at 622-23. In this regard, use of one's name and likeness is not actionable unless directly promoting a commercial product or service, which is separate and apart from the publication. *Tyne ex rel. Tyne v. Time Warner Entm't Co., L.P.*, 204 F. Supp. 2d 1338, 1341 (M.D. Fla. 2002). Invasion of privacy, appropriation requires the unauthorized use of a person's name or likeness to obtain some benefit. *State Farm & Ca. Co. v. Compupay, Inc.*, 654 So. 2d944, 948 (Fla 3rd DCA 1995). "Republication of facts already publicized elsewhere cannot provide a basis for an invasion of

privacy claim." *Heath v. Playboy Enterprises, Inc.*, 732 F. Supp. 1145, 1148 (S.D. Fla. 1990) citing to *Valentine v. C.B.S., Inc.*, 698 F.2d 430, 433 (11th Cir. 1983) (song lyrics did not disclose private facts but merely detailed events previously disclosed through public trial testimony); *Faloona v. Hustler Magazine, Inc.*, 799 F.2d 1000, 1006 (5th Cir. 1986), reh'g. denied, 802 F.2d 455 (5th Cir. 1986), cert. denied, 479 U.S. 1088, 107 S. Ct. 1295, 94 L. Ed. 2d 151 (1987) (since photographs printed in Hustler magazine had already been widely published elsewhere, Hustler revealed no private facts)(emphasis added); Jackson, 574 F. Supp. at 11 (citing Restatement (Second) of Torts, § 625D, Comment b); *Prosser & Keaton, The Law of Torts*, § 117 (5th Ed. 1984). "The prior publication of all facts published in the March 1988, issue of Playboy further evidences their public nature." *Heath v. Playboy,* at 1148. "Republication of these facts cannot be actionable as an invasion of privacy as a matter of law." *Id.*

Even if the Court accepts Plaintiffs' allegations that Defendants copied and republished Plaintiffs' photographs, the photographs were already widely published and, therefore, republication is not actionable as an invasion of privacy as a matter of law. All of the photographs alleged to have been used by Defendants were widely published, remain widely available online, were available prior to the "republication," and, thus, their use simply cannot be asserted as the basis for any "invasion of privacy," as a matter of law.

### D. Plaintiffs Are Not Entitled to Summary Judgment on Their Violation of Fla. Stat. § 812.014 and Fla. Stat. § 772.11: Civil theft and Common Law Conversion (COUNTS V and VI)

Contrary to Plaintiffs argument that civil theft only requires an intent to appropriate, as more fully detailed in Defendants' motion for summary judgment, civil theft requires a showing of "felonious" intent. The requisite showing of "felonious intent" is a high threshold to meet. *Ames v. Provident Life & Acc. Ins. Co.,* 942 F.Supp. 551, 560–61 (S.D. Fla. 1994). A person who

could have legitimately believed that he or she had rights to the property at issue lacks the requisite knowing felonious intent. *Irwin v. Miami-Dade County Pub. Sch.,* 06-23029-CIV, 2009 WL497648, at *8 (S.D. Fla. 2009), *aff'd,* 398 Fed. Appx. 503 (11th Cir. 2010). To maintain a cause of action under the civil theft statute, Plaintiffs must show by "clear and convincing evidence" an injury caused by the defendant's violation of one or more of the provisions of the criminal theft laws found in Fla. Stat. §§ 812.012-037 (West 2006). Fla. Stat. § 772.11. As a preliminary consideration, § 772.11(1), specifically states that, "before filing an action for damages under this section, the person claiming injury must make a written demand for $200 or the treble damage amount of the person liable for damages under this section." Defendants would assert that the phraseology used in the "cease and desist letter" does not comply with the "notice" requirements set forth in the statute. More critically, the predicate basis for the civil theft claims made by Plaintiffs is Sec. 812.014, which provides:

> (1) A person commits theft if he or she knowingly obtains or uses, or endeavors to permanently; (a) Deprive the other person of a right to the property or a benefit from the property; (b) Appropriate the property to his or her own use or to the use of any person not entitled to the use of the property.

Fla. Stat. § 812.014(1).

In order to establish a violation of section 812.014, Plaintiffs must show that Defendants "knowingly obtained or used, or endeavored to obtain or to use," Plaintiffs' "***property***" with the "felonious intent" to "appropriate the property to [Defendants'] own use or to the use of any person not entitled to the use of the property." *Palmer,* 106 F.Supp.2d at 1303; *see Ames,* 942 F.Supp. at 560 (holding that the plaintiff must show "felonious intent" to commit theft in order to establish a violation of section 812.014(1)). That is, "[t]heft is a specific intent crime, requiring actual knowledge on the part of the defendant." *Healy v.*

15

*Suntrust Serv. Corp.,* 569 So.2d 458, 460 (Fla.Dist.Ct.App.1990). See also *Almeida v. Amazon.com, Inc.*, 456 F.3d 1316 (11th Cir. 2006).

In this action, as shown in the Declaration of M. Franclemont, the images were available on Facebook and "shared" on Facebook, thus Plaintiffs simply have no "property" right in the nebulous concept of images widely available in the internet. Without establishing ownership of the photographs allegedly used, not just "images," the efforts to pursue a "civil theft" claim simply do not stand.

The elements of civil theft and conversion are separate and distinct claims. *Id. citing Border Collie Rescue, Inc. v. Ryan,* 418 F.Supp.2d 1330, 1341 (M.D. Fla. 2006). To maintain an action for conversion, Plaintiffs must show that Defendants committed an unauthorized act which deprived Plaintiffs of their property permanently or for an indefinite time period. *Border Collie Rescue, Inc.,* 418 F.Supp.2d at 1341 *citing Shelby Ins. Co. of Shelby, Ohio v. Crain Press, Inc.,* 481 So. 2d 501, 503 (Fla. 2d DCA 1985).

First, the record evidence shows that Defendants had no part in placing the images on Facebook, based on the agreement with third parties. Based on the foregoing, Plaintiffs have failed to establish claims for civil theft and conversion.

### E. Plaintiffs Are Not Entitled to Summary Judgment on Their Allegation of Unjust Enrichment (COUNT VII)

Assuming that unjust enrichment applies to the circumstances of this case, the Plaintiffs are not entitled to summary judgment because there is a genuine issue of material fact regarding whether the Defendants' accepted and retained a benefits knowingly under circumstances making it inequitable. *Jackson-Jester v. Aziz*, 48 So. 3d 88, 90-91 (Fla. 2d DCA 2010). Plaintiffs have failed to state a cause of action on which relief may be granted in for

Unjust Enrichment. Unjust enrichment requires the following elements: (1) Plaintiff has conferred a benefit on the defendant, who has knowledge thereof; (2) Defendant voluntarily accepts and retains the benefit conferred; and (3) the circumstances render the defendant's retention of the benefit inequitable unless the defendant pays to the plaintiff the value of the benefit. *Grove Isle Ass'n v. Grove Isle Assocs., LLLP,* 137 So.3d 1081, 1094 (Fla. 3d DCA 2014).

Under no circumstance can Plaintiffs allege their images were "stolen," and, even alternatively, allege that they have conferred a benefit on the Defendant, that Defendant was aware of the benefit conferred on them by Plaintiffs, and that Defendant voluntarily accepted and retained the benefit. This Count is a complete "non-starter," and Plaintiffs have failed to establish any right ti summary judgment on this claim.

The Defendants' good faith is also relevant to a consideration of equities of unjust enrichment. *See Wiand v. Waxenberg*, 611 F. Supp. 2d 1299, 1323 (M.D. Fla. 2009). Notably, in their brief argument in support of summary judgment, the Plaintiffs omitted this knowingly requirement. Evidence of a *knowing* acceptance, however, as repeatedly discussed above is clearly disputed. As such, the Plaintiffs are not entitled to summary judgment on this count either. Further, even if they were, the proper value of damages is not the value of work to the defendant but the reasonable value of the work in the market place. *See Moore v. Spanish River Land Co.*, 159 So. 673, 675 (Fla. 1935), *aff'd sub nom Town of Boca Raton v. Moore*, 165 So. 279 (Fla. 1936).

Aside from the fact that Plaintiffs' unjust enrichment claims fail because they have an adequate remedy at law, Plaintiffs have also failed to establish the elements of this claim. *Durden v. Citicorp Trust Bank, FSB,* 2009 WL 6499365 (M.D. Fla. Aug. 21, 2009). An unjust enrichment claim requires a showing that Plaintiffs conferred a benefit to Defendants

17

and that it would be inequitable for Defendants to not pay for said benefit. *Kowalski v Jackson Nat'l Life Ins. Co.,* 981 F.Supp.2d 1309, 1317 (S.D. Fla. 2013).

Here, there is no evidence that Plaintiffs individually conferred a benefit to Defendants. In fact, in this case, the images were posted by a third party, so these Defendants should not be the subject of any summary judgment on this claim.

**F. Plaintiffs Are Not Entitled to Damages or Fees on Summary Judgment**

Plaintiffs argue that they are entitled to summary judgment on the issue of damages, and attorneys' fees. Damages may not be based on speculation or conjecture, and instead must be proven with reasonable certainty. *Hyman v. Coregis Ins. Co.,* 2006 WL 786064 (M.D. Fla. March 28, 2006)(*citing Hyman v. Coregis Ins. Co.,* 712 So. 2d 1162 (Fla. 2d DCA 1998)). Plaintiffs Motion seeks a judgment in its favor on damages while presenting nothing other than opinion and speculation. The only basis asserted for damages in the Report of Martin Chamberlin. The Chamberlin Report provides no specific methodology, and simply lists his so-called qualifications, some "data reviewed," but no actual formula or any explanations of how Mr. Chamberlin arrived at his "fair market" value for the Plaintiffs, where he "attempts to recreate a negotiation process in which there would never be a willing seller." Mr. Chamberlin indicates that "to the extent available," he further considered such documents as modeling contracts and agreements, contractor 1099 forms, employee W-2 forms, earnings statements, releases and related records, but there is no indication in the Report as to whom he actually obtained this information for, or as to how he factored it into to the totally nebulous formula he describes as using to reach his conclusions.  Accordingly, summary judgment in Plaintiffs' favor on damages is inappropriate, since the analysis is purely speculative and certainly not decisive of the issue. There is nothing about Mr.

Chamberlin's efforts that even remotely approach the methodology used in cases involving a valid evaluation of damages: *Beastie Boys v. Monster Energy Co.,* 66 F. Supp. 3d 424, 465 (S.D.N.Y. 2014). Based on this, Plaintiffs are certainly not entitled to damages on a summary judgment. Additionally, recovery of attorneys' fees is only available when a defendant "acts in a malicious, fraudulent, deliberate, or willful manner." *Jackson v. Grupo Indus. Hotelero, S.A.,* No. 07-22046-CIV, 2009 WL 8634834, at *15 (S.D. Fla. Apr. 29, 2009) (citing *Burger King Corp. v. Pilgrim's Pride Corp.*, 15 F.3d 166, 168 (11th Cir.1994)). Defendants immediately complied with the demands made in the "cease and desist" letter. Under Section 35(a) of the Lanham Act, "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). The Eleventh Circuit has stated that "[s]uch an award is available in actions under section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) . . . ." *Montgomery v. Noga,* 168 F.3d 1282, 1304 (11th Cir. 1999) (citing Rickard v. Auto Publisher, Inc., 73 F.2d 450, 458 (11th Cir. 1984)). While Congress has not further defined "exceptional," the legislative history of the Act suggests that exceptional cases are those where the infringing party acts in a malicious, fraudulent, deliberate, or willful manner." See *Burger King Corp. v. Pilgrim's Pride Corp.,* 15 F.3d 166, 168 (11th Cir. 1994) "An 'exceptional' case may also be one in which 'evidence of fraud or bad faith exists.'" *Tobinick v. Novella,* 207 F. Supp. 3d 1332, 1341 (S.D. Fla. 2016) (quoting *Tire Kingdom, Inc. v. Morgan Tire & Auto, Inc.,* 253 F.3d 1332, 1335 (11th Cir. 2001)). Based on *Burger King* and *Tire Kingdom,* it is respectfully submitted that, that, in the Eleventh Circuit, '[b]ad faith or fraud [was] necessary for a case to be 'exceptional" under the Lanham Act." Id. (quoting *Cardinal Freight Carriers, Inc. v. Cardinal Logistics, Inc.,* 155 F. Supp. 2d 1352, 1354 (S.D. Fla. 2001)). It must also be stressed that the Defendants relied on third parties to create the promotional materials at issue, thus

19

placing an additional basis NOT to consider any award of Plaintiffs' attorneys' fees pursuant to the Lanham Act.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court deny the entry of summary judgment in Plaintiffs' favor on all Counts of the Complaint or grant Defendants such further relief as justice requires.

Date: <u>November 9, 2017</u>  /s/ Luke Lirot
Luke Lirot, Esquire
Florida Bar Number: 714836
Luke Charles Lirot, P.A.
2240 Belleair Road, Suite 190
Clearwater, FL  33764
Telephone: (727) 536-2100
Facsimile:  (727) 536-2110
E-mail: luke2@lirotlaw.com
*Attorney for Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 9, 2017, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all parties in this case.

/s/Luke Lirot
Luke Lirot, Esquire
Florida Bar Number 714836