**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CIELO JEAN GIBSON, et al.**
     **Plaintiffs,**

**v.**                                              **Case No.: 1:16-CV-24548-MGC**

**BTS NORTH, INC., et al.,**

     **Defendants,**
_____/

## PARTIES' SUPPLEMENTAL JOINT STATEMENT

The Parties, captioned above, and pursuant to this Court's Order (Doc. 13), hereby provide (1) the legal elements of the Plaintiffs' claims, and (2) the legal elements of the defenses raised by Defendants, and would state as follows:

## I.      INTRODUCTION

This action involves a Complaint which asserts a variety of claims made against 4 "Gentlemen's Clubs" in South Florida brought on behalf of 13 Plaintiffs that are either models or have some connection with entertainment, promotion or social media (hereinafter "models" or "Plaintiffs"). The claims asserted by each individual Plaintiff are:

**Count I**- Violation of the Lanham Act, 15 U.S.C. Sec. 1125(a): False Advertising;

**Count II**- Violation of the Lanham Act, 15 U.S.C. Sec. 1125(a): False Endorsement;

**Count III**- Violation of Fla. Sta. Sec. 540.08: Right of Publicity; Unauthorized Misappropriation of Name/Likeness;

**Count IV**- Violation of Common Law Right of Publicity: Unauthorized Misappropriation of Name or Likeness;

**Count V**- Violation of Fla. Sta. Sec. 812.014 and Fla. Stat Sec. 772.11: Civil Theft;

**Count VI**- Conversion; and

**Count VII**- Unjust Enrichment

The Parties' description of the elements of the claims and defenses related to these Counts is set forth below.

## II. LEGAL ELEMENTS OF PLAINITFFS' CLAIMS

As for **Count I**, Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), provides:

Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any … symbol, or device ... or any false designation of origin, false or misleading description of fact, or false or misleading misrepresentation of fact, which—

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services or commercial activities by another person ... shall be liable in a civil action by any person who believes that he or she is likely to be damaged by such act.

The Lanham Act, 15 U.S.C. § 1125(a) confers upon a plaintiff a cause of action against a defendant that uses such plaintiff's image in an advertisement, without authorization, to falsely claim that such plaintiff endorses the defendant's business.  See *Allen v. Nat'l Video, Inc.*, 610 F. Supp. 612, 626 (S.D.N.Y. 1985); see also *ETW Corp. v. Jireh Pub., Inc.*, 332 F.3d 915, 924 (6th Cir. 2003) (unfair competition and false advertising claim existed where Tiger Woods' image and likeness were used for commercial purposes without his authorization); *Seale v. Gramercy Pictures*, 949 F. Supp. 331, 340 (E.D. Pa. 1996).  Plaintiffs assert that standing is not limited to direct competitors of a defendant, but extends to anyone that can "plead (and ultimately prove) an injury to a commercial interest in sales or business reputation

proximately caused by the ... [defendant's] misrepresentations." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1395, 188 L. Ed. 2d 392 (2014). Plaintiffs assert that they have suffered an injury to a commercial interest in their business reputations proximately caused by Defendants' misrepresentations and Plaintiffs have satisfied all elements of a Lanham Act false advertising claim. To establish a violation of 15 U.S.C. § 1125(a) for false advertising, Plaintiffs must prove (1) Defendants' advertisements were false or misleading; (2) the advertisements deceived, or had the capacity to deceive, consumers; (3) the deception had a material effect on purchasing decisions; (4) the misrepresented product or service affects interstate commerce; and (5) Plaintiffs have been, or are likely to be, injured as a result of the false advertising. *Ameritox, Ltd. v. Millenium Labs., Inc.*, 889 F. Supp. 2d 1304, 1314 (M.D. Fla. 2012). The first element can be satisfied by proof an advertisement is either "literally false" or "true, but misleading." *Osmose, Inc. v. Viance,* LLC, 612 F.3d 1298, 1308 (11th Cir. 2010). Under both constructs, Plaintiffs proffer undisputed facts in support. A "literally false" message may be either explicit or "conveyed by necessary implication when, considering the advertisement in its entirety, the audience would recognize the claim as readily as if it had been explicitly stated." *Clorox Co. v. Proctor & Gamble Comm'l Co.*, 228 F.3d 24, 35 (1st Cir.2000). "When evaluating whether an advertising claim is literally false, the claim must always be analyzed in its full context." *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997) (citing *Castrol Inc. v. Pennzoil Co.*, 987 F.2d 939, 943, 946 (3d Cir.1993)). A "completely unsubstantiated advertising claim by the defendant is *per se* false without additional evidence from the plaintiff to that effect." *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharmaceuticals Co.*, 290 F.3d 578, 590 (3d Cir. 2002). Here, Plaintiffs assert that Defendants' advertisements necessarily conveyed or implied each

Plaintiff's association with endorsement of, and support for the Clubs.  No Plaintiff ever affiliated or associated with, nor would ever affiliate or associate with Booby Trap, or any of the activities hosted by Defendants.

Alternatively, even if not "literally false," Defendants' advertisements were misleading, as supported by evidence of deception in the form of consumer surveys, market research, expert testimony, or other evidence. *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1261 (11th Cir. 2004); *Select Portfolio Servicing, Inc. v. Evaluation Sols., L.L.C.*, No. 306CV582J33MMH, 2006 WL 2691784, at *3 (M.D. Fla. Sept. 20, 2006). Plaintiffs rely on the report of Dr. Martin Buncher to support this element.

**Count II** of the Complaint is brought under subsection (a)(1)(A) of Section 1125 of the Lanham Act for false association/false endorsement, which involves many of the same elements described above. The Lanham Act recognizes two distinct protectable interests: protection against unfair competition in the form of an action for false advertising and protection against false association. *Waits v. Frito–Lay, Inc.,* 978 F.2d 1093, at 1106-09 (9th Cir.1992), (*citing Smith v. Montoro,* 648 F.2d 602, 603 (9th Cir.1981)). To establish a claim under false endorsement Subsection (a)(1)(A) of the Lanham Act, a plaintiff must show "(1) that it had prior rights to the mark at issue and (2) that the defendant adopted a mark or name that was the same, or confusingly similar, to plaintiff's mark such that consumers would likely confuse the two." See *Suntree Tech., Inc. v. Ecosense Int'l, Inc.*, 693 F.3d 1338, 1346 (11th Cir. 2012). To show "proof of a valid trademark[,] a plaintiff need not have a registered mark." *Tana v. Dantanna's,* 611 F.3d 767, 773 (11th Cir. 2010). "[T]he use of another's unregistered, i.e., common law, trademark can constitute a violation of [the Lanham Act] where the alleged unregistered trademarks used by the plaintiff are so associated with its goods that the use of

the same or similar marks by another company constitutes a false representation that its goods came from the same source." *Id.* And, "the general principles qualifying a mark for registration under the Lanham Act are for the most part applicable in determining whether an unregistered mark is entitled to protection." *Two Pesos, Inc. v. Taco Cabana, Inc.,* 505 U.S. 763, 768 (1992). Marks that are "sufficiently 'distinctive,' are eligible for federal registration or protection as common law marks." *Id.* at 773. A mark is distinctive and eligible for protection if "it either (1) is inherently distinctive or (2) has acquired distinctiveness through secondary meaning." *Id.* at 769.

The Eleventh Circuit recognizes four categories of distinctiveness to determine if a mark is eligible for protection as a common law mark. *Tana*, 611 F.3d at 774 ("Our circuit recognizes four categories of distinctiveness, listed in ascending order of strength: '(1) genetic- marks that suggest the basic nature of the product or service; (2) descriptive- marks that identify the characteristic or quality of a product or service; (3) suggestive- marks that suggest characteristics of the product of service and require an effort of the imagination by the consumer in order to be understood as descriptive; and (4) arbitrary or fanciful- marks that bear no relationship to the product or service, and the strongest category of trademarks.'") (quoting *Gift of Learning Found., Inc. v. TGC, Inc.* 329 F.3d 792, 797-98 (11th Cir. 2003)).

Plaintiffs assert that As established above, Plaintiffs' images (in this case their actual identities) are, by definition, inherently distinctive or, by virtue of the Plaintiffs using their images (identities) to build a brand around themselves, have acquired a distinctiveness through secondary meaning. Each Plaintiff's brand- the reason her clients seek to hire her- is unique in that it is encompassed in her identity, i.e., her persona. Stated differently, it is because each Plaintiff's persona is inseparable from her brand that the use of the same or

similar images and likeness by Defendants constitutes a false representation by Defendants that their good or services, i.e. strip club activities, come from the source of each Plaintiff's brand. Defendants' use of each Plaintiff's persona is, on its face, a false statement that she has, in fact, endorsed Defendants' Clubs. Simply put, Defendants' unauthorized use and alteration of each Plaintiffs' image, likeness and identity violates Section 2 of the Lanham Act because each Plaintiff's rights to her persona rises to the level of common law trademark and therefore, each Plaintiff is entitled to protection under Section 2 of the Lanham Act. In this case, Plaintiffs have alleged sufficient facts to show that they have rights in their images and personas as common law marks and satisfied the factors necessary to establish "consumer confusion." Each Plaintiff is in the business of commercializing her identity and selling her images to reputable brands and companies who look to promote their products with beautiful models for profit. Plaintiffs assert that these elements for "false endorsement" under the Lanham Act are met.

Plaintiffs, in **Count III**, allege violations of Sec. 540.08 for the unauthorized publication of Plaintiffs' images. This section specifically contemplates the following elements:

540.08   Unauthorized publication of name or likeness.—

(1)   No person shall publish, print, display or otherwise publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of any natural person without the express written or oral consent to such use given by:
(a)   Such person; or
(b)   Any other person, firm or corporation authorized in writing by such person to license the commercial use of her or his name or likeness; or
(c)   If such person is deceased, any person, firm or corporation authorized in writing to license the commercial use of her or his name or likeness, or if no person, firm or corporation is so authorized, then by any one from among a class composed of her or his surviving spouse and surviving children.

(2)   In the event the consent required in subsection (1) is not obtained, the person whose name, portrait, photograph, or other likeness is so used, or any person, firm, or corporation authorized by such person in writing to license the commercial use of her or his name or likeness, or, if the person whose likeness is used is deceased, any person, firm, or corporation having the right to give such consent, as provided hereinabove, may bring an action to enjoin such unauthorized publication, printing, display or other public use, and to recover damages for any loss or injury sustained by reason thereof, including an amount which would have been a reasonable royalty, and punitive or exemplary damages.

The elements for a violation of Section 540.08, Florida Statutes, and common law misappropriate of likeness are identical, see *Lane v. MRA Holdings, LLC,* 242 F. Supp. 2d 1205, 1220 (M.D. Fla. 2002), and require proof of (1) use of an image or likeness of another, (2) for a commercial or advertising purpose, (3) without consent.   See Fla. Sta. Ann. § 540.08. Plaintiffs assert that the Defendants used each Plaintiff's image in advertisements for commercial purposes. No Plaintiff, nor anyone acting on her or his behalf, provided written or oral consent to Defendants' use. On these bases, Plaintiffs are entitled to all the remedies available under § 540.08, including damages and injunctive relief. See *Coton v. Televised Visual X-Ography, Inc.,* 740 F. Supp. 2d 1299, 1310 (M.D. Fla. 2010).

Plaintiffs, in **Count IV**, assert a Claim for Statutory or Common Law Invasions of Privacy- Misappropriation. The elements of this claim are based on many of the same theories as those in Count III. Additionally, Plaintiffs assert that the use of one's name and likeness is actionable in used in promoting a commercial product or service, which is separate and apart from the publication. *Tyne ex rel. Tyne v. Time Warner Entm't Co., L.P.,* 204 F. Supp. 2d 1338, 1341 (M.D. Fla. 2002). Invasion of privacy appropriation requires the unauthorized use of a person's name or likeness to obtain some benefit. *State Farm & Ca. Co. v. Compupay, Inc.,* 654 So. 2d944, 948 (Fla 3rd DCA 1995).  Plaintiffs assert they have met all necessary elements to

support this claim.

In **Count V,** the Plaintiffs assert claims for "civil theft" under Sec. 772.11, Florida Statutes for any violation of Sec. 812.014, Florida Statutes. To establish civil theft, Plaintiffs must prove an intent to appropriate another's property or services. See *Lajos v. duPont Pub., Inc.,* 888 F. Supp. 143, 146 (M.D. Fla. 1995); see also *Becil v. Bank of Am., N.A.*, No. 10-20377-CIV-COOKE, 2010 WL 3943001, at *3 (S.D. Fla. Oct. 5, 2010). "Property" under the theft statute is broadly defined as "anything of value" and includes "tangible or intangible personal property, including rights, privileges, interests, and claims," as well as "services." Fla. Stat. Ann. § 812.012. "Services" covers anything of value resulting from a person's physical or mental labor or skill, or from the use, possession, or presence of property, and includes, among other things, professional services. Fla. Stat. Ann. § 812.012(6). Theft of employment services and failing to pay to another party wages for work performed, for example, can give rise to a claim of civil theft. See *Circuitronix, LLC v. Kapoor,* No. 15CIV61446BLOOMVALLE, 2015 WL 6735538, at *4 (S.D. Fla. Nov. 4, 2015). Here, Defendants appropriated each Plaintiff's image through use of those images without consent and without compensation. Plaintiffs assert that the Defendants appropriated Plaintiffs' professional services and wages otherwise due to them for use of their modeling services. By such unlawful use, Defendants conscripted Plaintiffs into being involuntary spokes-models for their strip clubs and their full friction and full nudity activities that define Defendants. Defendants further acted with requisite intent to appropriate Plaintiffs' services and property without consent or compensation before the receipt of the demand letter.

Additionally, conversion is an unauthorized act that deprives another of his property permanently or for an indefinite time. *Star Fruit Co. v. Eagle Lake Growers, Inc.*, 160 Fla. 130, 33

So. 2d 858 (1948); see also *West Yellow Pine Co. v. Stephens,* 80 Fla. 298, 304, 86 So. 241, 243 (1920) ("[T]he essential elements of a conversion is [sic], a wrongful deprivation of property to the owner, and neither manucaption nor asportation is an essential element thereof."); *Quitman Naval Stores Co. v. Conway,* 63 Fla. 253, 58 So. 840 (1912); *King v. Saucier*, 356 So. 2d 930 (Fla. 2d DCA 1978). Where a person having a right to possession of property makes demand for its return and the property is not relinquished, a conversion has occurred. But while a demand and refusal constitute evidence that a conversion has occurred, it is unnecessary to prove a demand and refusal where the conversion can be otherwise shown. *Anderson v. Agnew,* 38 Fla. 30, 20 So. 766 (1896); see also *Goodrich v. Malowney,* 157 So. 2d 829, 832 (Fla. 2d DCA 1963) ("[t]he purpose of proving a demand for property by a plaintiff and a refusal by a defendant to return it in an action for conversion is to show the conversion. However, the generally accepted rule is that demand and refusal are unnecessary where the act complained of amounts to a conversion regardless of whether a demand is made."). Thus, the essence of conversion is not the possession of property by the wrongdoer, but rather such possession in conjunction with a present intent on the part of the wrongdoer to deprive the person entitled to possession of the property, which intent may be, but is not always, shown by demand and refusal. *Senfeld v. Bank of Nova Scotia Trust Co.*, 450 So. 2d 1157, 1161 (Fla. 3d DCA 1984).

Plaintiffs assert that Defendants converted Plaintiffs' images to their own use with intent to deprive Plaintiffs of the choice to determine where their images can appear and who can use them for what purpose.  Plaintiffs also alleged that they were and are the exclusive owners of all rights, title, and interest in their images, likenesses and/or identity stolen by Defendants. Conversion is also an appropriate cause of action even if the specific property "converted" has no actual value. 629 So.2d 903, 904 (Fla. 4th DCA 1993) (citing *Tourismart of Am., Inc. v,*

*Gonzales,* 498 So. 2d 469, 470 (Fla. 3d DCA 1986) (holding that airline tickets, which have almost no value as property considering they are mere pieces of paper, are capable of being converted because it is not the tickets, but the service the tickets represent which is "converted")).

In **Count VI,** Plaintiffs assert a claim for unlawful conversion. Conversion requires the following elements: (1) Defendant's unauthorized act; (2) Deprives plaintiff of his or her property permanently or for an indefinite time; and (3) The deprivation is inconsistent with plaintiff's ownership interest in the property. *Senfeld v. Bank of Nova Scotia Trust Co.*, 450 So. 2d 1157, 1160 (Fla. 3d DCA 1984). In the present case, Plaintiffs have alleged that they have a protectable interest in their images, and that Defendants' use of those images amounts to unlawful conversion. This claim is also related to the elements for civil theft

Finally, in **Count VII**, Plaintiffs assert a claim for "unjust enrichment." The doctrine of unjust enrichment applies when: "(1) the plaintiff conferred a benefit on the defendant, who had knowledge of the benefit; (2) the defendant voluntarily accepted and retained the benefit; and (3) under the circumstances, it would be inequitable for the defendant to retain the benefit without paying for it." *Kowalski v. Jackson Nat. Life Ins. Co.*, 981 F. Supp. 2d 1309, 1317 (S.D. Fla. 2013). Unjust enrichment applies to persons that reap a benefit from the unauthorized use of another's likeness. See, e.g., *Keller v. Elecs. Arts, Inc.*, No. C 09-1967 CW, 2010 WL 530108, at *10 (N.D. Cal. Feb. 8, 2010), aff'd sub nom. *In re NCAA Student-Athlete Name & Likeness Licensing Litig.*, 724 F.3d 1268 (9th Cir. 2013). Plaintiffs assert that the Defendants used Plaintiffs' images to promote their strip clubs, had knowledge of receipt of such a benefit by not having to compensate Plaintiffs or negotiate a release, voluntarily accepted and retained the benefit conferred by using and posting Plaintiffs' images in their

10

advertisements, and further retained an opportunity cost for not having to pay Plaintiffs the fair market value for use of the images. Under the circumstances, Plaintiffs assert that it would be inequitable for Defendants to retain the benefit of using Plaintiffs' images, each of which has intrinsic and extrinsic value, without adequate compensation, particularly as the acquisition of the rights to use an image comes only through an arms-length negotiation process in which each Plaintiff participates – an opportunity of which Defendants' unlawful conduct utterly deprived each Plaintiff.

## II. PLAINITFFS' DAMAGES AND OTHER RELIEF SOUGHT

The Plaintiffs have asserted the following damages for Plaintiffs on the basis of the claims set forth above. The elements of damages that Plaintiffs are seeking to recover are actual (or compensatory) damages and reasonable royalty under Fla. Sta. Ann. § 540.08, treble damages under Fla. Stat. Ann. § 772.11(1), and attorney's fees under the Lanham Act. The reasonable royalty from Defendants under Fla. Stat. Ann. § 540.08, is arrived at by approximating the fair market value of the use of Plaintiffs images.  Plaintiffs further assert that, asserting civil theft under Fla. Stat. Ann. § 772.11(1), Plaintiffs are further entitled to treble damages, as set forth below. Finally, Plaintiffs assert they have an entitlement to recover attorney's fees under the Lanham Act where, as alleged here, Defendants have acted "in a malicious, fraudulent, deliberate, or willful manner," *Jackson v. Grupo Indus. Hotelero, S.A.,* No. 07-22046-CIV, 2009 WL 8634834, at *15 (S.D. Fla. Apr. 29, 2009) (citation omitted). The specific damages set forth in Steve Chamberlin's Report are as follows:

| MODELS | Damages |
|---|---|
| Alicia Whitten | $30,000 |
| Ashley Vickers | $900,000 |
| Cielo Jean Gibson | $90,000 |
| Cora Skinner | $270,000 |
| Dessie Mitcheson | $180,000 |

| | |
|---|---|
| Devin Justine Takaguma | $45,000 |
| Eva Pepaj | $90,000 |
| Jessica Burciaga | $630,000 |
| Lina Posada | $90,000 |
| Marketa Kazdova | $60,000 |
| Paola Canas | $90,000 |
| Tina Quarles | $45,000 |
| Vivian Kindle | $150,000 |
| **SUB TOTAL** | **$2,670,000** |

Plaintiffs assert that they are entitled to treble damages on the basis of the "civil theft" claim, and further that Plaintiffs are entitled to all the remedies available under § 540.08, including injunctive relief.

### III. LEGAL ELEMENTS OF DEFENDANTS' DEFENSES

As a defense to the Lanham Act **Counts I and II**, the Defendants assert that there is nothing in any Exhibit (A through M) to support Plaintiffs' assertion that any lewd, sexually explicit, and/or lascivious language was used, or that there is any direct statement or indirect implication that Plaintiffs are "strippers," employees, and/or endorsers of Defendants' Gentlemen's Clubs. Contrary to these assertions, the content of the Exhibits is simply a photo of the Plaintiff depicted, the text of the promotion, and the date, if ascertainable, of the promotional post. No Plaintiff is identified by name or represented as being a performer at any Club.

Defendant assert that the effort to mischaracterize the Exhibits as lewd or somehow offensive is an exaggeration, there being nothing more than, at worst, some coarse humor and/or "double entendres." The Models' photographs are risqué, but show no nudity. The Defendants assert that the photos at issue have not been "doctored" or manipulated, and, to the extent that they present a sexually suggestive theme, they are "sexy" because the Plaintiffs posed for sexually suggestive photographs. Defendants further assert that the Exhibits do not

suggest anything about "endorsing lewd services," never say that any Plaintiff would be present or "appearing" at the Defendants' Clubs, or that any of Plaintiffs endorsed any specific Club. Defendants assert that the photographs simply call attention to a presumptively First Amendment protected and legal business. See *Redner v. Dean*, 29 F.3d 1495 (11ᵗʰ Cir, 1994). Defendants assert that there is nothing on the face of the Exhibits to support any claim for "false advertising" under § 1125(a)(1)(B), or "false endorsement" under § 1125(a)(1)(A), and that such assertions are based on surmise and speculation and that Plaintiffs cannot show any evidence of competitive injury, as the law requires. See *Kournikova v. General Media Communications Inc.*, 278 F. Supp. 2d 1111, 1117 (C.D. Cal. 2003). The court held that: (1) there was no evidence of competitive injury needed to make out any false advertising claim; (2) the publisher's conduct did not amount to a false endorsement; and (3) the false endorsement claim was barred by the First Amendment.

Defendants assert that the Plaintiffs' are simply not "recognizable celebrities." The Lanham Act, 15 U.S.C. § 1125(a) provides a cause of action against a defendant that uses such plaintiff's image in an advertisement, without authorization, to falsely claim that such plaintiff endorses the defendant's business, but ***there needs to be a recognizable brand to support such a claim.*** See *Allen v. Nat'l Video, Inc.*, 610 F. Supp. 612, 626 (S.D.N.Y. 1985); *see also ETW Corp. v. Jireh Pub., Inc.,* 332 F.3d 915, 924 (6th Cir. 2003) (unfair competition and false advertising claim existed where Tiger Woods' image and likeness used for commercial purposes without his authorization); *Seale v. Gramercy Pictures*, 949 F. Supp. 331, 340 (E.D. Pa. 1996). The Plaintiffs are seeking to expand the application of the Lanham Act to the generic use of Facebook photographs the Plaintiffs do not allege they own, for individuals that are simply not recognizable as "walking, talking trademarks," and for the simple use of

a "pretty face" (and other Darwinistically attractive attributes, politely summarized herein as just a "pretty face") to simply provide an attractive backdrop to the Booby Trap Clubs' Facebook pages.

The Defendants also challenge the "Buncher Report." Perhaps the most notable omission in this "Report" is that it never asks any survey participant if they recognize the girl in the image. Defendants assert that this casts extreme doubt on the validity and applicability of the entire "Report."

Plaintiffs claim to be seeking recovery under both aspects of Section 43(a), "False Advertising, and "False Endorsement," in Violation of 15 U.S.C. § 1125(a). Since the only use is an image, with no language, and no representations of any kind, Defendants assert that Plaintiffs fail to state any actual false advertising and fail to plead any evidence of competitive injury, as the law requires. To have standing to assert any claim under this line of cases requires a showing that: (1) the plaintiff competes with the defendant in some marketplace, *Halicki v. United Artists Communications, Inc.,* 812 F.2d 1213, 1214 (9th Cir.1987); (2) the plaintiff has alleged a discernibly competitive injury resulting from a misrepresentation in the marketplace (*Waits,* 978 F.2d at 1109); and (3) the misrepresentation implicates some purpose of the Lanham Act regarding the use of trademarks.

Plaintiffs do not "vie for the same dollars from the same consumers," further evidencing the lack of any competition between the "models" and the Clubs. Even if Plaintiffs could meet the first prong, they fail to articulate any competitive injury, simply because they cannot. Although Plaintiffs alleged that the "false association" with Defendant' Clubs has caused "irreparable damage to [her] reputation and brand," they omit any claim of specific losses due to competitive injury, see *Kournikova,* 278 F. Supp. at 119 (stating plaintiff might

have overcome the absence of any allegation regarding competitive injury by presenting evidence that she lost sales of videos, calendars, and the like as a result of the *Penthouse* photo spread at issue in that case.)

In addition, Defendants challenge that the use of Plaintiffs' likeness on the Defendant's social media is likely to cause confusion as to their association with and endorsement of Defendant's establishment. Consumer confusion exists when: (1) the defendant used the plaintiff's identity; and (2) the use suggests that plaintiff sponsored or approved the defendant's product. *See e.g., Waits,* 978 F.2d at 1110–11. When looking at the first prong, Plaintiffs assert that the exhibits are the Plaintiffs in question, but the Defendants ***never identified any of the photos by any Plaintiff's name, affiliations, status or distinction***. Plaintiffs' "identity" on the photographs is never established, and, the use of a "pretty face" does not a Lanham Act violation make. Other than pure speculation, there is no "suggestion" of any endorsement, no statement, and no language.

As to the second prong, to determine if the "use" of the photo suggests any Plaintiff sponsored or approved Defendant's product requires an examination using the following factors: (a) the relatedness of Plaintiff's fame or success to Defendant's product; (b) the similarity of the likeness used by Defendants to Plaintiffs; (c) evidence of actual confusion; (d) marketing channels used; (e) likely degree of purchaser care; (f) Defendant's intent in selecting Plaintiff; and (g) likelihood of expansion of the product lines. *Kournikova*, 278 F. Supp. at 1120; *citing Downing v. Abercrombie & Fitch,* 265 F.3d 994, 1007–08 (9th Cir.2001) (restating the factors set forth in *AMF, Inc. v. Sleekcraft Boats,* 599 F.2d 341 (9th Cir.1979). Defendants urge the Court to focus on the two factors Plaintiffs fail to meet: "A mark with extensive public recognition and renown, deserves and receives more legal protection than an

obscure or weak mark." *YKK Corp. v. Jungwoo Zipper Co.,* 213 F.Supp.2d 1195, 1200 (C.D.Cal.2002) (quoting *Kenner Parker Toys, Inc. v. Rose Art Indus., Inc.,* 963 F.2d 350, 353 (Fed.Cir.1992)). Although Plaintiffs contend that the females in the photos are "models" and the Complaint cites to their varying numbers of twitter and Instagram followers, their public recognition is limited, at best, rendering a lowered legal protection. Plaintiffs also fail to state that a "reasonable consumer" (not Buncher's minimally low data base) would be ***likely*** to conclude that the Plaintiffs endorsed Defendants' Clubs, like the magazine in the cited case. See *Waits,* 978 F.2d at 1110; 15 U.S.C. § 1125, (Normally, the likelihood of confusion centers on the probable reactions of prospective purchasers of the parties' goods. *American Int'l Group, Inc. v. London America Int'l Corp.,* 664 F.2d 348, 351 (2d Cir.1981); (Each case involved a specific arbitrary symbol that had been used over time and had become associated in the public mind with the plaintiffs finding it was likely that, the widely recognized Dallas Cowboy uniform used in an adult video would give the public confusion that Dallas Cowboys was affiliated with the video.) *Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.,* 604 F.2d 200, 205 (2d Cir.1979).

In contrast, the Plaintiffs are indistinguishable from generic "pretty faces." Again, since the most notable omission in the Buncher Report is that it never asks any survey participant if they recognize the girl in the image, under the law applicable to any Lanham Act claim, this omission casts extreme doubt on the validity and applicability of the entire "Report."

The decision in *Lexmark Int'l, Inc. v. Static Control Components, Inc.,* 134 S.Ct. 1377, 188 L. Ed. 2d 392, 82 USLW 4195 (2014), is illuminating, and held that "a plaintiff suing under § 1125(a) ordinarily must show economic or reputational injury flowing directly from the

deception wrought by the defendant's advertising; and that that occurs when deception of consumers causes them to withhold trade from the plaintiff." Other than bald allegations, Plaintiffs have submitted no actual evidence of any loss or "withhold of trade."

Obviously, this underscores the Defendants' arguments that a "pretty face" posing for a professional photograph (she does not allege she owns) simply can't show, under any circumstances, that the obscure use of her photo to promote obscure Clubs would deceive any consumer or result in any "loss of trade." Under *Miller's Ale House, Inc. v. Boynton Carolina Ale House, LLC*, 745 F. Supp. 2d 1359, 1376-78 (S.D. Fla. 2010), to state a claim for false advertising, a complaint must establish (1) that "the [advertisement] of the [defendant] w[as] false or misleading," (2) that "the [advertisement] deceived, or had the capacity to deceive, consumers," (3) that "the deception had a material effect on purchasing decisions," (4) that "the misrepresented product or service affects interstate commerce," and (5) that "the [plaintiff] has been — or is likely to be — injured as a result of the false advertising." (Citing *Osmose, Inc. v. Viance, LLC*, 612 F.3d 1298, 1308 (11th Cir. 2010)).

To be sure, there is simply nothing "false" or "misleading" in using a "pretty face" to advertise a business, other than Plaintiffs' concocted claims. The most important question in this case is whether a "pretty face" is the equivalent of a "mark." The strength of any mark is decisive in a Lanham Act claim. A mark with extensive public recognition and renown deserves and receives more legal protection than an obscure or weak mark. *YKK Corp. v. Jungwoo Zipper Co.,* 213 F.Supp.2d 1195, 1200 (C.D.Cal.2002) (quoting *Kenner Parker Toys, Inc. v. Rose Art Indus., Inc.,* 963 F.2d 350, 353 (Fed.Cir.1992)). See also *Downing v. Abercrombie & Fitch,* 265 F.3d 994, 1007–08 (9th Cir.2001) (restating the factors set forth in *AMF, Inc. v. Sleekcraft Boats,* 599 F.2d 341 (9th Cir.1979) to make them more applicable to the celebrity

case). "Although these are all factors that are appropriate for consideration in determining the likelihood of confusion, they are not necessarily of equal importance, nor do they necessarily apply to every case." *Id.* at 1008.*Kournikova v. Gen. Media Commc'ns Inc.*, 278 F. Supp. 2d 1111, 1120–21 (C.D. Cal. 2003). ***The categorization of a mark is a factual question***. *Donchez v. Coors Brewing Co.,* 392 F.3d 1211, 1216 (10th Cir.2004) (emphasis added, citation omitted).

No statements exist in any of the Exhibits that say that the "pretty face" will be present at the Club or endorse the Club, and it is beyond speculative to even think that the "pretty face" will deceive some consumer into thinking the "pretty face" will be present at any Club. The Survey results, as evidenced in the Buncher Report and explained in his expert opinions, establish nothing, because they bypass the "recognizable mark" requirement. The open ended questions used in the Buncher Report do not comport with the most rudimentary Federal "survey requirements" required by the *Reference Manual on Scientific Evidence*, which includes a lengthy discussion of the use of surveys in Court.  Defendants assert that the Buncher Report is flawed because the survey questions are not direct.

Most importantly, as the Court held in *American Express Travel Related Serv. v. Mastercard,* 776 F.Supp. 787, 789–90 (S.D.N.Y.1991), ***using anything other than the exact materials at issue***, the Buncher Report fails as a matter of law, because it does not utilize all of the alleged images at issue, regardless of the "similarity" of what he did use. Indeed, the Buncher report uses promotional materials from ***different*** clubs (Report pp. 54-63), and it shows only three ***images***, many ***not the actual promotional materials at issue*** (Report pp. 68-77). Critically, the Report does not show any of the materials for 10 Plaintiffs, thus, Buncher ***did not*** conduct a valid survey.

As it pertains to **Count III,** violations of Sec. 540.08 for the unauthorized publication of Plaintiffs' images, Defendants assert that this section specifically contemplates such "licensed" use issues:

> 540.08   Unauthorized publication of name or likeness.—
> ..
> (4)   The provisions of this section shall not apply to:
> …
> (b)   The use of such name, portrait, photograph, or other likeness in connection with the resale or other distribution of literary, musical, or artistic productions or other articles of merchandise or property *where such person has consented to the use of her or his name, portrait, photograph*, or likeness on or in connection with the initial sale or distribution thereof. (Emphasis added).

Plaintiffs have failed to show without dispute that the images were used in a manner to associate Plaintiffs specifically with Defendants' business, as required by Florida law. *See Epic Metals Corp. v. CONDEC, Inc.*, 867 F.Supp.2d 1009, 1016 (M.D. Fla. 1996)(internal citations omitted); *Tyne v. Time Warner Entertainment, Co.,* 901 So. 2d 802 (Fla. 2005). The images themselves do not identify Plaintiffs or offer any commentary purporting to be made on their behalf. Instead, the photographs are merely incidental to the posting. The Defendants assert that the Plaintiffs agreed to pose in the fashion in which they are depicted, and that any damages due for any alleged misappropriation would be subject to the defenses of third party responsibility, pursuant to *Fabre v. Marin,* 623 So.2d 1182 (Fla. 1993), and failure to mitigate under the DMCA.

As it pertains to **Count IV**, the claim for Statutory or Common Law Invasions of Privacy- Misappropriation Defendants assert that the use of one's name, likeness or photograph in a publication without more does not give rise to a cause of action for misappropriation. *Loft v. Fuller*, 408 So. 2d 619, 623 (Fla. 4th DCA 1981). The publication is not harmful simply because the publisher makes money through sales of the product. *Id.* at 622-23. Plaintiffs allege

that Defendants published the Plaintiffs' image, likeness or identity on their website and social media outlets, among others, in order to promote, advertise and market the Defendant's Club. Plaintiffs have failed to show without dispute that the images were used in a manner to associate Plaintiffs specifically with Defendants' business, as required by Florida law. *See Epic Metals Corp. v. CONDEC, Inc.*, 867 F.Sup. 1009, 1016 (M.D. Fla. 1996) (internal citations omitted); *Tyne v. Time Warner Entertainment, Co.*, 901 So. 2d 802 (Fla. 2005). The images themselves do not identify Plaintiffs or offer any commentary purporting to be made on their behalf. Instead, the photographs are merely incidental to the posting.

That said, the Defendants assert that the Plaintiffs' images are widely available on the internet. "Republication of facts already publicized elsewhere cannot provide a basis for an invasion of privacy claim." *Heath v. Playboy Enterprises, Inc.*, 732 F. Supp. 1145, 1148 (S.D. Fla. 1990) citing to *Valentine v. C.B.S., Inc.*, 698 F.2d 430, 433 (11th Cir. 1983) (song lyrics did not disclose private facts but merely detailed events previously disclosed through public trial testimony); *Faloona v. Hustler Magazine, Inc.*, 799 F.2d 1000, 1006 (5th Cir. 1986), reh'g. denied, 802 F.2d 455 (5th Cir. 1986), cert. denied, 479 U.S. 1088, 107 S. Ct. 1295, 94 L. Ed. 2d 151 (1987) (since photographs printed in Hustler magazine had already been widely published elsewhere, Hustler revealed no private facts)(emphasis added); Jackson, 574 F. Supp. at 11 (citing Restatement (Second) of Torts, § 625D, Comment b); *Prosser & Keaton, The Law of Torts*, § 117 (5th Ed. 1984). "The prior publication of all facts published in the March 1988, issue of Playboy further evidences their public nature." *Heath v. Playboy*, at 1148. "Republication of these facts cannot be actionable as an invasion of privacy as a matter of law." *Id.* All of the photographs alleged to have been used by Defendants were widely published, remain widely available online, and were available prior to the "republication," thus, their use simply cannot

be asserted as the basis for any "invasion of privacy," as a matter of law. Finally, raised as an affirmative defense, Defendants state that Plaintiffs' claims for violation of the common law right of publicity fail as a matter of law for the reason that Defendants did not use the names of the Plaintiffs as symbols for Plaintiffs' identity or persona, as required for violation of Plaintiffs right to publicity.  Further, Defendants assert that any use of photographs of Plaintiffs did not involve character, personality, or reputation of the Plaintiffs, or other factors shaping identity. Defendants also assert that Plaintiffs claims for damages for violation of the common law right of publicity fail as a matter of law for the reason that there has been no commercial harm or damages which accrued to Plaintiffs.

As it pertains to **Count V,** Plaintiffs' claim for "civil theft" under Sec. 772.11, for any violation of Sec. 812.014, Florida Statutes, the Defendants assert that to maintain a cause of action under the civil theft statute, Plaintiffs must show by "clear and convincing evidence" an injury caused by the defendant's violation of one or more of the provisions of the criminal theft laws found in Fla. Stat. §§ 812.012-037 (West 2006). Fla. Stat. § 772.11; *see Palmer v. Gotta Have It Golf Collectibles, Inc.,* 106 F.Supp.2d 1289, 1303 (S.D.Fla.2000) (stating that "a cause of action for civil theft `derives from two statutory sources: the criminal section setting forth the elements of theft, and the civil section granting private parties a cause of action for a violation of the criminal section'") (quoting *Ames v. Provident Life & Accident Ins. Co.,* 942 F.Supp. 551, 560 (S.D.Fla.1994)). As a preliminary consideration, § 772.11(1), specifically states that, "before filing an action for damages under this section, the person claiming injury must make a written demand for $200 or the treble damage amount of the person liable for damages under this section." Defendants would assert that the phraseology used in the "cease and desist letter" does not comply with the "notice" requirements set forth in the statute.

More critically, the predicate basis for the civil theft claims made by Plaintiffs is Sec. 812.014, which provides:

> (1) A person commits theft if he or she knowingly obtains or uses, or endeavors to obtain or to use, the property of another with intent to, either temporarily or permanently:
>
> (a) Deprive the other person of a right to the property or a benefit from the property.
>
> (b) Appropriate the property to his or her own use or to the use of any person not entitled to the use of the property.

Fla. Stat. § 812.014(1).

In order to establish a violation of section 812.014, Plaintiffs must show that Defendants "knowingly obtained or used, or endeavored to obtain or to use," Plaintiffs' "*property*" with the "felonious intent" to "appropriate the property to [Defendants'] own use or to the use of any person not entitled to the use of the property." *Palmer,* 106 F.Supp.2d at 1303; *see Ames,* 942 F.Supp.2d at 560 (holding that the plaintiff must show "felonious intent" to commit theft in order to establish a violation of section 812.014(1)). The critical point is, "[t]heft is a specific intent crime, requiring actual knowledge on the part of the defendant." *Healy v. Suntrust Serv. Corp.,* 569 So.2d 458, 460 (Fla.Dist.Ct.App.1990). See also *Almeida v. Amazon.com, Inc.,* 456 F.3d 1316 (11th Cir. 2006). Contrary to Plaintiffs argument that civil theft only requires an intent to appropriate, civil theft requires a showing of "felonious" intent. The requisite showing of "felonious intent" is a high threshold to meet. *Ames v. Provident Life & Acc. Ins. Co.,* 942 F.Supp. 551, 560–61 (S.D. Fla. 1994). A person who could have legitimately believed that he or she had rights to the property at issue lacks the requisite knowing felonious intent. *Irwin v. Miami-Dade County Pub. Sch.,* 06-23029-CIV, 2009 WL497648, at *8 (S.D. Fla. 2009), *aff'd,* 398 Fed. Appx. 503 (11th Cir. 2010). The civil theft statute additionally requires

actual knowledge on the part of the defendant because theft is a specific intent crime. *Almeida*, 456 F.3d at 1327 (citation omitted). In this case, the Plaintiffs have not presented any evidence, much less clear and convincing evidence, that the Defendants misappropriated their images with a felonious intent. The elements of civil theft and conversion are separate and distinct claims. *Id. citing Border Collie Rescue, Inc. v. Ryan,* 418 F.Supp.2d 1330, 1341 (M.D. Fla. 2006). To maintain an action for conversion, Plaintiffs must show that Defendants committed an unauthorized act which deprived Plaintiffs of their property permanently or for an indefinite time period. *Border Collie Rescue, Inc.,* 418 F.Supp.2d at 1341 *citing Shelby Ins. Co. of Shelby, Ohio v. Crain Press, Inc.,* 481 So.2d 501, 503 (Fla. 2d DCA 1985). First, the record evidence shows that Defendants believed that they were authorized to use the subject images, based on the agreement with third parties, thus, Defendants reasonably believed that Booby Trap(s) were authorized to use those images.

As it pertains to **Count VI**, Defendants would submit that conversion requires the following elements: (1) Defendant's unauthorized act; (2) Deprives plaintiff of his or her property permanently or for an indefinite time; and (3) The deprivation is inconsistent with plaintiff's ownership interest in the property. *Senfeld v. Bank of Nova Scotia Trust Co.*, 450 So. 2d 1157, 1160 (Fla. 3d DCA 1984). The Defendants assert that Plaintiffs cannot show that they were permanently, or for an indefinite time, *deprived* of property that they owned. To the extent they had any ownership interest in their images, they never lost such ownership. Conversion is a wrongful act which deprives another of his property permanently or for an indefinite time. *Star Fruit Co. v. Eagle Lake Growers, Inc.*, 160 Fla. 130, 33 So.2d 858 (1948); *Senfeld v. Bank of Nova Scotia Trust Co.*, 450 So.2d 1157, 1160 (Fla. 3d DCA 1984). Defendants assert that "The tort of conversion relates to interference with tangible rather than intangible

23

property" 1-1 Nimmer on Copyright § 1.01[B][1][i]. The "intellectual property" at issue in this action is not the same as a tangible, physical object, this, Defendants assert the tort of conversion does not apply to the facts of this case.

As it pertains to **Count VII,** unjust enrichment: "unjust enrichment" requires the following elements: (1) Plaintiff has conferred a benefit on the defendant, who has knowledge thereof; (2) Defendant voluntarily accepts and retains the benefit conferred; and (3) the circumstances render the defendant's retention of the benefit inequitable unless the defendant pays to the plaintiff the value of the benefit. *Grove Isle Ass'n v. Grove Isle Assocs., LLLP,* 137 So.3d 1081, 1094 (Fla. 3d DCA 2014). Defendants would assert that Plaintiffs cannot be said to have knowingly conferred a benefit on the Defendants, or that Defendants were aware of the benefit conferred on them by Plaintiffs, and that Defendants voluntarily accepted and retained the benefit. Assuming that unjust enrichment applies to the circumstances of this case, the Plaintiffs are not entitled to summary judgment because there is a genuine issue of material fact regarding whether the Defendants' accepted and retained a benefits knowingly under circumstances making it inequitable. *Jackson-Jester v. Aziz*, 48 So. 3d 88, 90-91 (Fla. 2d DCA 2010).

The Defendants' good faith is also relevant to a consideration of equities of unjust enrichment. *See Wiand v. Waxenberg*, 611 F. Supp. 2d 1299, 1323 (M.D. Fla. 2009). Notably, in their brief argument in support of summary judgment, the Plaintiffs omitted this knowingly requirement. Evidence of a *knowing* acceptance, however, as repeatedly discussed above is clearly disputed. Additionally, the proper value of damages is not the value of work to the defendant but the reasonable value of the work in the market place. *See Moore v. Spanish River Land Co.*, 159 So. 673, 675 (Fla. 1935), *aff'd sub nom Town of Boca Raton v. Moore*, 165 So. 279

(Fla. 1936). Defendants also assert that, aside from the fact that Plaintiffs' unjust enrichment claims fail because they have an adequate remedy at law, Plaintiffs have also failed to establish the elements of this claim. *Durden v. Citicorp Trust Bank, FSB*, 2009 WL 6499365 (M.D. Fla. Aug. 21, 2009). An unjust enrichment claim requires a showing that Plaintiffs conferred a benefit to Defendants and that it would be inequitable for Defendants to not pay for said benefit. *Kowalski v Jackson Nat'l Life Ins. Co.*, 981 F.Supp.2d 1309, 1317 (S.D. Fla. 2013).

Here, there is no evidence that Plaintiffs individually conferred a benefit to Defendants. Defendants assert that Plaintiffs were all compensated for the original taking and distribution of the images, which are owned by the entities that paid for those images. Accordingly, Plaintiffs have failed to establish that they have a right to further compensation.

## V. THE DEFENDANTS CHALLENGE PLAINTIFFS' EVIDENCE ON DAMAGES AND CHALLENGE ENTITLEMENT TO ATTORNEY'S FEES

Defendants assert that damages may not be based on speculation or conjecture, and instead must be proven with reasonable certainty. *Hyman v. Coregis Ins. Co.*, 2006 WL 786064 (M.D. Fla. March 28, 2006)(*citing Hyman v. Coregis Ins. Co.*, 712 So. 2d 1162 (Fla. 2d DCA 1998)). Plaintiffs have not shown that they are entitled to recover any actual (or compensatory) damages under the Lanham Act, since any assertions as to these issues are purely speculative and certainly not decisive of the issue. There is nothing about Mr. Chamberlin's efforts that even remotely approach the method used in cases involving a valid evaluation of damages*: Beastie Boys v. Monster Energy Co.*, 66 F. Supp. 3d 424, 465 (S.D.N.Y. 2014). Critically, the Chamberlin assessment of damages does not break out how damages were established or calculated, nor as to what claim they are related to.  Since Defendants

have asserted that the Buncher Study, prepared to test "consumer confusion" as related to the Lanham Act claim, is flawed as a matter of law, because it does not utilize all of the alleged images at issue, regardless of the "similarity" of what he did use, Chamberlin's assessment of damages not related to any specific Count is equally flawed. Indeed, the Buncher report uses promotional materials from ***different*** clubs (Report pp. 54-63), and it shows only three ***images***, many ***not the actual promotional materials at issue*** (Report pp. 68-77). Critically, the Report does not show any of the materials for 10 Plaintiffs, thus, Buncher ***did not*** conduct a valid survey.

Additionally, recovery of attorneys' fees is only available when a defendant "acts in a malicious, fraudulent, deliberate, or willful manner." *Jackson v. Grupo Indus. Hotelero, S.A.,* No. 07-22046-CIV, 2009 WL 8634834, at *15 (S.D. Fla. Apr. 29, 2009) (citing *Burger King Corp. v. Pilgrim's Pride Corp.*, 15 F.3d 166, 168 (11th Cir.1994)). Defendants immediately complied with the demands made in the "cease and desist" letter. Under Section 35(a) of the Lanham Act, "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). The Eleventh Circuit has stated that "[s]uch an award is available in actions under section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) . . . ." *Montgomery v. Noga,* 168 F.3d 1282, 1304 (11th Cir. 1999) (citing *Rickard v. Auto Publisher, Inc.,* 73 F.2d 450, 458 (11th Cir. 1984)). While Congress has not further defined "exceptional," the legislative history of the Act suggests that exceptional cases are those where the infringing party acts in a malicious, fraudulent, deliberate, or willful manner." See *Burger King Corp. v. Pilgrim's Pride Corp.,* 15 F.3d 166, 168 (11th Cir. 1994) "An 'exceptional' case may also be one in which 'evidence of fraud or bad faith exists.'" *Tobinick v. Novella,* 207 F. Supp. 3d 1332, 1341 (S.D. Fla. 2016) (quoting *Tire Kingdom, Inc. v. Morgan Tire & Auto, Inc.,* 253 F.3d 1332, 1335 (11th

Cir. 2001)). Based on *Burger King* and *Tire Kingdom,* it is respectfully submitted that, that, in the Eleventh Circuit, '[b]ad faith or fraud [was] necessary for a case to be 'exceptional" under the Lanham Act." Id. (quoting *Cardinal Freight Carriers, Inc. v. Cardinal Logistics, Inc.,* 155 F. Supp. 2d 1352, 1354 (S.D. Fla. 2001)). It must also be stressed that the Defendants relied on third parties to create the promotional materials at issue, thus placing an additional basis NOT to consider any award of Plaintiffs' attorneys' fees pursuant to the Lanham Act.

## VI. LEGAL ELEMENTS OF DEFENDANTS' AFFIRMATIVE DEFENSES

Defendants raised a number of affirmative defenses, some having an overarching character as it would pertain to all of the Plaintiffs' claims. The most salient of these are 1) Defendants assert that Plaintiffs' alleged injuries were caused, in whole or in part by, the negligence of a third party (i.e., the photographer who took the subject photograph) and liability should be apportioned to these photographers pursuant to *Fabre v. Marin,* 623 So.2d 1182 (Fla. 1993) and its progeny, and 2) Defendants state that Plaintiffs' alleged injuries were caused, in whole or in part, by the negligence of a third party (i.e., any graphic designers or others relied on by Defendants to produce any of the alleged "promotions") whom Defendants had no control over, and liability should be apportioned to these graphic designers or others pursuant to *Fabre v. Marin,* 623 So.2d 1182 (Fla. 1993) and its progeny; and 3) Defendants assert that Plaintiffs failed to mitigate any of the damages allegedly sustained by Plaintiffs because, once Plaintiffs' had knowledge of Defendants' alleged use of the subject photographs in the operative Complaint, the Plaintiffs failed to take any steps to minimize or mitigate any alleged unauthorized use of the subject photographs and never utilized the Digital Millennium Copyright Act ("DMCA") which has a "take down" form which results

in the removal of content from a website at the request of the owner of the image or the owner

of the copyright of the content. According to the DMCA website:

> "A DMCA Takedown is:
> "When content is removed from a website at the request of the owner of the content or the owner of the copyright of the content. It is a well established, accepted, internet standard followed by website owners and internet service providers.
> "Your right to process. Any owner of content has the right to process a takedown notice against a website owner and/or an Online Service Provider (e.g. ISP, hosting company etc.) if the content owner's property is found online without their permission."

As such, Defendants assert that any damages actually sustained by the Plaintiffs should

be reduced proportionally for failure to mitigate such loss.

*/s/ Ludmila Khomiak*
Ludmila Khomiak, Esq.
Florida Bar Number: 91757
THE CASAS LAW FIRM, P.C.
Brickell Bayview Center
80 S.W. 8th St., Suite 2000
Miami, FL 33130
Telephone #: 786-671-3244
Facsimile #: 786-671-3243
mila@casaslawfirm.com
Attorney for PLAINTIFFS
Date:    January 17, 2018

*/s/ Luke Lirot*
Luke Lirot, Esq.
Florida Bar Number: 714836
LAW OFFICES OF LUKE LIROT, P.A.
2240 Belleair Road, Suite 190
Clearwater, FL 33764
Telephone #: 727-536-2100
Facsimile #: 727-536-2110
luke2@lirotlaw.com
Attorney for DEFENDANTS
Date:    January 17, 2018