UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CIELO JEAN GIBSON, DESSIE
MITCHESON, IRINA VORONINA, JOHN
COULTER and MAYSA QUY,

Plaintiffs,

v.                                                    Case No: 8:16-cv-791-T-36AAS

RESORT AT PARADISE LAKES, LLC
and JERRY L. BUCHANAN,

Defendants.
_____/

## ORDER

This matter comes before the Court upon Defendants Resort at Paradise Lakes, LLC d/b/a

Paradise Lakes Resort d/b/a Paradise Lakes and Jerry Buchanan's ("Defendants") Motion for

Summary Judgment (Doc. 103), Plaintiffs' response in opposition (Doc. 112), Plaintiffs' Partial

Motion for Summary Judgment (Doc. 104), Defendants' response in opposition (Doc. 111),

Plaintiffs' objections to Defendants' undisputed material facts (Doc. 114)[1], and the Joint

Stipulation of Agreed Material Facts (Doc. 120). The Court, having considered the parties' oral

arguments, written submissions, including declarations, answers to interrogatories, depositions

and attachments thereto, and being fully advised in the premises, will now grant Defendants'

Motion for Summary Judgment and deny Plaintiffs' Partial Motion for Summary Judgment.

**I.       BACKGROUND AND STATEMENT OF FACTS[2]**

---

[1] Neither the Federal Rules of Civil Procedure nor the Local Rules of the Middle District of Florida permit a
separate filing of objections to material facts. Because Plaintiffs did not seek leave of Court prior to filing the
objections, the Court will not be consider them in this Order.

[2] The Court has determined the facts, which are undisputed unless otherwise noted, based on the parties'
submissions, including the Joint Stipulation of Agreed Material Facts, declarations and attachments thereto.

Exhibit _"A"_

Plaintiffs' action arises from allegations that Defendants misappropriated Plaintiffs' images for a commercial purpose. The Amended Complaint alleges claims for the following causes of action: Count I—False Advertising under the Lanham Act 15 U.S.C. §1125(a); Count II—Violation of Right to Publicity under F.S. §540.08; Count III—Common Law Right of Publicity; Count IV—Florida's Deceptive and Unfair Trade Practices Act under F.S. §501.204; Count V—Civil Theft; Count VI—Unjust Enrichment; Count VII—Conversion; Count VIII—Unfair Competition; Count IX—Fraudulent Misrepresentation; Count X—Negligence; Count XI—Respondeat Superior; and Count XII—False Endorsement under the Lanham Act 15 U.S.C. §1125(a). Doc. 31. The Court dismissed Counts IV, IX, X, and XI. Doc. 121.

### A.      Resort at Paradise Lakes

Since September 20, 2012, Defendant Buchanan has owned and operated a private resort named Paradise Lakes (hereinafter "Paradise Lakes" or the "resort"). (Dep. J. Buchanan, p. 12:20-25; 33:5-15 [Doc. 105, Ex. 12]). Doc. 120 at ¶ 7. Paradise Lakes is a 12-acre clothing optional resort located inside a 60-acre timeshare property privately owned by other parties. (Dep. J. Buchanan, p. 14:1-15:8; 49:19-22 [Doc. 105, Ex. 12].). *Id.* at ¶ 8. Resort at Paradise Lakes, LLC is a for-profit business that has a commercial purpose and advertises to increase the attendees at Paradise Lakes and membership which, in turn, increases revenues. (Dep. J. Buchanan, p. 59:1-60:11; 60:18-61:10 [Doc. 105, Ex. 12]; *see, e.g.*, Paradise Lakes Imagery [Doc. 105, Ex. 11].). *Id.* at ¶ 9.   Defendants reap a financial benefit from hosting activities which bring members and nonmembers onto the property to spend money. (Dep. J. Buchanan, p. 52:15-58:25 [Doc. 105, Ex. 12]). *Id.* at ¶ 10.

Since 2012, Resort at Paradise Lakes, LLC has marketed and promoted Paradise Lakes as a clothing optional resort featuring amenities and events. (Dep. J. Buchanan, p. 12:24-25; 30:11-

14; 40:3-10; 41:15- 42:12; 59:1-60:6 [Doc. 105, Ex. 12]). *Id.* at ¶ 11. Paradise Lakes posts advertisements on its social media accounts and its website. *Id.* Paradise Lakes has advertised its resort and the events in alternative lifestyle magazines to increase attendance and revenues; markets and promotes its events by email to its members, and has marketed and promoted the resort and its activities through the internet and various social media outlets. (Dep. J. Buchanan, pp. 40:3-10; 42:7-21; 40:11-16; 55:2-23; 46:14-47:4 48:16-50:5 [Doc. 105, Exs. 11, 12].). *Id.* at ¶¶ 12-14.

Defendants used one or more images of each Plaintiff in one or more ways to advertise and promote Paradise Lakes' activities and events. (Dep. J. Buchanan, p. 82:14-88:16 [Doc. 105, Ex. 12].). *Id.* at ¶ 5. Specifically, Paradise Lakes posted advertisements for its boutique which sold lingerie and costumes, and various activities including happy hours, lunch specials, and costume contests which included Plaintiffs' photographs on its social media pages. *See* Doc. 31, Exs. A-E.

During all relevant times, Buchanan was the owner and general manager of Paradise Lakes and had the final approval authority for all resort event advertisements. (Dep. J. Buchanan, p. 28:7-21; 38:12-24; 40:3-10; 42:7-21; 49:10-14; 50:18-24; 51:19-23 [Doc. 105, Ex. 12].). *Id.* at ¶ 17. Defendants' employees, Deb Bonham and Susan McCarl, are principally responsible for the preparation, design and approval of the advertisements during all relevant periods. *Id.* at ¶ 16.

Defendants knew they neither possessed nor had ever seen any releases executed by any of the Plaintiffs giving authority for Defendants to use the specific images at issue in this case. (Dep. J. Buchanan, p. 82:14-88:16; 88:23-89:1 [Doc. 105, Ex. 12].). *Id.* at ¶ 18. Defendants did not receive any releases or other proof that any other third party had any authority to use the specific subject images. (Dep. J. Buchanan, p. 82:14-88:16; 88:10-89:1 [Doc. 105, Ex. 12].). *Id.* at ¶ 19.

3

Defendants knew that not one Plaintiff had ever been employed by or contracted with Paradise

Lakes. (Dep. J. Buchanan, p. 82:14-88:16; 88:23-89:1 [Doc. 105, Ex. 12].). *Id.* at ¶ 21.

### B.    Plaintiffs' Backgrounds Generally

Plaintiffs are professional models who earn a living, or have done so in the past, by

promoting their images. Gibson Dec. [Doc. 105, Ex. 1 ¶¶ 2, 5-7]; Dep. C. Gibson, p. 12:3-22,

14:20-15:1 [Doc. 105, Ex. 2]; Mitcheson Dec. [Doc. 105, Ex. 3 ¶¶ 4-6]; Dep. D. Mitcheson, p.

12:17-19; 14:7-11. [Doc. 105, Ex. 4]; Voronina Dec. [Doc. 105, Ex. 5 ¶¶ 2-7]; Coulter Dec. [Doc.

105, Ex. 7 ¶¶ 3-6]; Dep. J. Coulter, p. 9:7-17; 12:15-16 [Doc. 105, Ex. 8]; Dep. M. Quy, p. 9:6-9,

23-25 [Doc. 105, Ex. 10].) Doc. 120 ¶ 1. Plaintiffs rely on their professional reputations for

modeling opportunities. (Gibson Dec. [Doc. 105, Ex. 1 ¶¶ 6-7]; Voronina Dec. [Doc. 105, Ex. 5 ¶

8]; Mitcheson Dec. [Doc. 105, Ex. 3 ¶¶ 5-6]; Dep. J. Coulter, p. 9:7-17; 12:15-16 [Doc. 105, Ex.

8]; Dep. M. Quy, p. 12:5-9; 16:24-17:3 [Doc. 105, Ex. 10].). *Id.* at ¶ 2.

No Plaintiff has ever been employed by, contracted with or otherwise given permission or

consent directly to Defendants in any way for the use of his or her image by Defendants to

advertise, promote, market or endorse Paradise Lakes. (Gibson Dec. [Doc. 105, Ex. 1 ¶¶ 11-15];

Dep. C. Gibson, p. 30:3-17; 72:2-14 [Doc. 105, Ex. 2]; Voronina Dec. [Doc. 105, Ex. 5 ¶¶ 16-17];

Mitcheson Dec. [Doc. 105, Ex. 3 ¶¶ 9, 13]; Dep. J. Coulter, p. 71:16-72:12 [Doc. 105, Ex. 8];

Coulter Dec. [Doc. 105, Ex. 7 ¶¶ 11, 14-16]; Dep. M. Quy, p. 24:15-20; 87:5-89:11 [Doc. 105, Ex.

10]; Dep. J. Buchanan, p. 82:14-88:16; 88:5-9 [Doc. 105, Ex. 12].). *Id.* at ¶ 3. Defendants did not,

at any time, seek or obtain permission or authority directly from Plaintiffs to use or alter any of

the Plaintiffs' images to advertise, promote, market or endorse Paradise Lakes. (Gibson Dec. [Doc.

105, Ex. 1 ¶ 14]; Voronina Dec. [Doc. 105, Ex. 5 ¶¶ 12, 13, 15-16]; Dep. I. Voronina, p. 37:24-

39:18; [Doc. 105, Ex. 6]; Mitcheson Dec. [Doc. 105, Ex. 3 ¶¶ 9-12]; Coulter Dec. [Doc. 105, Ex.

7 ¶¶ 11, 14-16]; Dep. J. Coulter, p. 71:16-72:12 [Doc. 105, Ex. 8]; Dep. M. Quy, p. 24:15-20; 87:5-89:11 [Doc. 105, Ex. 10]; Dep. J. Buchanan, p. 82:14-88:16; 88:23-89:1 [Doc. 105, Ex. 12].). *Id.* at ¶ 4.

Defendants did not pay or offer to pay Plaintiffs any compensation for the use of their images to advertise, promote, market or endorse Paradise Lakes or its events. (Gibson Dec. [Doc. 105, Ex. 1 ¶ 16]; Voronina Dec. [Doc. 105, Ex. 5 ¶¶ 16-17]; Mitcheson Dec. [Doc. 105, Ex. ¶ 14]; Coulter Dec. Doc. 105, Ex. 7 ¶¶ 14-15]; Dep. J. Coulter, p. 71:16-72:12 [Doc. 105, Ex. 8]; Dep. M. Quy, p. 87:5-89:11 [Doc. 105, Ex. 10]; Dep. J. Buchanan, p. 82:14-88:16 [Doc. 105, Ex. 12].). *Id.* at ¶ 6.

## C.   Plaintiffs' Specific Images and Claims

### *1.   Maysa Quy*

Plaintiff, Maysa Quy, identified the subject image attached to the Amended Complaint [Doc. 31 at 146; Ex. E] as a photograph taken of her for a Dream Girls International ("DGI") advertisement. (Dep. M. Quy, p. 48:22-25; 49:1-7 [Doc. 102; Ex. 1].). *Id.* ¶ 22. Quy was aware that DGI images of her were posted on non-DGI websites. (Dep. M. Quy, p. 52:6-53:1; 55:5-22 [Doc. 102; Ex. 1].). *Id.* ¶ 23. She does not know how Defendants obtained the subject image; she never spoke with Defendants or visited Paradise Lakes. (Dep. M. Quy, p. 56:2-15; 57:20-21 [Doc. 102; Ex. 1].). *Id.* ¶ 24. Quy does not know who posted the subject image. (Dep. M. Quy, p. 59:5-13 [Doc. 102, Ex. 1].). *Id.* ¶ 25. She is unaware whether anyone recognized her in the subject image used by Paradise Lakes. (Dep. M. Quy, p. 92:11-23 [Doc. 102, Ex. 1].). *Id.* ¶ 26. Quy's annual income generally exceeded $50,000 over the last five years, and exceeded $100,000 in 2016. (Dep. M. Quy, pp. 21:8-17; 22:11-17 (Doc. 102, Ex. 1]). *Id.* at ¶ 27.

2.      *Cielo Jean Gibson*

Plaintiff Cielo Jean Gibson identified the subject image attached to the Amended Complaint (Doc. 31 at 135, Ex. A) as a photograph taken by DGI. (Interrogatory Answer No. 9, Doc.102-3; Dep. C. Gibson, p. 23:6-13; 24:2-4; 38:2-39:7 [Doc. 102, Ex. 2, Ex. 3]). *Id.* at ¶ 28. She testified that DGI is a wholesaler of Halloween costumes and lingerie. (*See* Interrogatory Answer No. 9; and Dep. C. Gibson, p. 23:6-13; 24:2-4; 38:2-25-39:7 [Doc. 102, Ex. 2, Ex. 3]). *Id.* at ¶ 28. Gibson has never been to Paradise Lakes, and has never met or spoken with Buchanan. (Dep. C. Gibson, p. 78:1-5, 19-25 [Doc. 102; Ex. 2]). *Id.* at ¶ 29. Gibson knows neither whether Buchanan committed any acts in his individual capacity nor how Paradise Lakes obtained the subject images. (Dep. C. Gibson, p. 75:12-14, 79:1-8 [Doc. 102, Ex. 2]). *Id.* at ¶ 31. In the last five years, Gibson's income has fluctuated, but not by much. (Dep. C. Gibson, p. 14:13-21 [Doc. 102, Ex. 2]). *Id.* at ¶ 32.   She generally earned around $50,000 - $60,000 per year. (Dep. C. Gibson, p. 14:13-21 [Doc. 102, Ex. 3]).

3.      *John Coulter*

Plaintiff John Coulter identified the subject image attached to the Amended Complaint as a photograph taken as part of a DGI advertisement. ([Doc. 31 at 143, Exhibit D] and Dep. C. Sharff, p. 62:13-25 [Doc. 102, Ex. 5]). *Id.* at ¶ 33. Coulter has no knowledge as to DGI's relationship with Defendants, although he was aware that DGI sent CDs of photographs to its clients. (Dep. J. Coulter, p. 74:14-25; [Doc. 102, Ex. 4]). *Id.* at ¶ 34. Coulter had no personal knowledge as to whether Buchanan was involved in posting the subject image. (Dep. J. Coulter, p. 70:20-25; 71:1-15 [Doc. 102, Ex. 4]). *Id.* at ¶ 35. Coulter has never visited the Paradise Lakes Resort. (Dep. J. Coulter, p. 66:4-6 [Doc. 102, Ex. 4]). *Id.* at ¶ 37. Coulter visited the Paradise Lakes Resort website on two occasions in preparation for his deposition. (Dep. J. Coulter, p. 66:7-

12; [Doc. 102, Ex. 4]). *Id.* at ¶ 38. Coulter was unaware that Paradise Lakes had a boutique. (Dep. J. Coulter, pp. 67:21-25, 68:21-24 [Doc. 102, Ex. 4]). *Id.* at ¶ 39.  Coulter's income has stayed the same in 2015 and 2016. (Dep. J. Coulter, p. 30:18-25; 31:1-6 [Doc. 102, Ex. 4]). *Id.* at ¶ 36. He made about $70,000 in income in 2016. (Dep. J. Coulter, p. 33:21-24 [Doc. 102, Ex. 4]).

### a.      DGI Releases for Quy, Gibson and Coulter

On January 27, 2017, Christopher Scharff appeared as the corporate representative of DGI and produced signed releases from Quy, Gibson and Coulter which described the rights and licenses held by DGI with respect to specific photo shoots (hereinafter referred to as the "Releases"). (Dep. C. Scharff, p. 10:13-25; 11:1-14 and exhibits A through E; [Doc. 102, Ex. 5]). *Id.* at ¶ 41. Scharff testified that the Releases cover all photos taken on the day they were signed.[3] (Dep. C. Scharff, pp. 69:8-17; 97:10-22; [Doc. 102, Ex. 5]). *Id.* at ¶ 42.

The Releases state in pertinent part "I hereby waive any right to inspect…, and further waive any claim that I may have at any time to the *eventual use* to which such images may be applied." [Doc. 102, Ex. 5, Ex. A, D, E]. *Id.* at ¶ 43 (emphasis added). The Releases further state "I hereby release, discharge and agree to hold harmless Company, and any person or entity acting on its behalf or under its authority, including, without limitation… any of Company's customers." [Doc. 102, Ex. 5, Ex. A, D, E]. *Id.* at ¶ 44. Mr. Scharff testified that Paradise Lakes is DGI's customer, it purchased DGI's products, and he orally authorized Paradise Lakes to use DGI's images for promotional purposes. (Dep. C. Scharff, pp. 28:1-14; 64:20-25; 65:1-2; 71:6-12; and Exhibit F [Doc. 102, Ex. 5]). *Id.* at ¶ 45.

---

[3] The release in the record for Gibson covers 23 dates from March 18, 2013, through November 7, 2016. Doc. 102-5 at 131 - 153. The releases for Coulter include 8 dates (one undated and unsigned) from October 17, 2013, through January 12, 2016. *Id.* at 161-169. The release for Quy is for July 7, 2011. *Id.* at 178.

Buchanan appeared as the corporate representative of Paradise Lakes, and testified that Paradise Lakes purchased inventory from DGI. (Dep. J. Buchanan, p. 68:17-25 [Doc. 102, Ex. 6]). *Id.* at ¶ 46. Buchanan testified that he has done business with DGI for twenty years, and has met several owners of DGI over the years. (Dep. J. Buchanan, p. 70:7-24 [Doc. 102 Ex. 6]) *Id.* at ¶ 47. Although he does not recall when he met Schraff, he testified that it was either in Florida or Las Vegas. *Id.* Buchanan further testified that DGI provided Paradise Lakes with electronic images of its inventory, and Buchanan was under the impression that Paradise Lakes could use the images for Paradise Lakes' advertising. (Dep. J. Buchanan, p. 68:17-25; 69:1-3 [Doc. 102, Ex. 6]). *Id.* at ¶ 48. Buchanan testified that he believed Paradise Lakes had permission to use the subject images in advertising. (Dep. J. Buchanan, p. 69:4-18; 71:14-25; 72:1-3 [Doc. 102, Ex. 6]). *Id.* at ¶ 49.

    4.    *Irina Voronina*

Plaintiff Irina Voronina testified that the subject images attached to the Amended Complaint (Doc. 31 at 139-141, Ex. C) were taken by Leg Avenue[4] as part of an advertising campaign for Halloween costumes, consistent with her interrogatory answers. (Interrogatory Answer No. 9 [Doc. 102, Ex. 8]; Dep. I. Voronina, p. 54:4-18; 60:23-25; 61:1-4 [Doc. 102, Ex. 7]). *Id.* at ¶ 52. Voronina produced one year modeling contracts entered into with Leg Avenue for 2010 and 2011. [Doc. 102, Ex. 9]. *Id.* at ¶ 54. The contracts require the execution of a release for every photoshoot, which, in one instance, irrevocably assigns "to Leg Avenue, Inc. … and all persons or corporations acting with its permission…without restriction...the unrestricted rights to copyright, use, publish, sell, or distribute images of [Voronina] which it has had taken this day…existing now or in the future." [Doc. 102, Ex. 9]]. *Id.* at ¶ 55.

---

[4] The deposition transcript erroneously identifies that entity's name as "Lake Avenue" instead of Leg Avenue. *See, e.g.*, Doc. 102-13 at 64:16.

Voronina never visited the Paradise Lakes resort. (Dep. I. Voronina, p. 38:25-39:1 [Doc. 102, Ex. 7]). *Id.* at 50.  Voronina does not know Buchanan. (Dep. I. Voronina, p. 39:2-12 [Doc. 102, Ex. 7]). *Id.* at ¶ 51. Voronina experienced an increase in her income due to the fact that she no longer files two separate tax returns. (Dep. I. Voronina, p. 70:5-14 [Doc. 102, Ex. 7]). *Id.* at ¶ 53.  Her income in 2015 was approximately between $75,000 and $100,000. (Dep. I. Voronina, p. 71:8-17 [Doc. 102, Ex. 7]).

5.       *Dessie Mitcheson*

Plaintiff Dessie Mitcheson identified the subject image attached to the Amended Complaint (Doc. 31 at 137, Ex. B) as an image taken by J. Valentine. (Interrogatory Answer No. 9 [Doc. 102-9]; Dep. D. Mitcheson, pp. 72:1-22; 77:5-7 [Doc. 102, Ex. 11]). *Id.* at ¶ 56. In discovery, Defendants requested copies of any modeling contracts, agreements or other licenses showing that Mitcheson owned or had a license for the subject image. [Doc. 102, Ex. 10]. *Id.* at ¶ 59. Mitcheson produced no documents showing a license for the image. *Id.*

Mitcheson testified that she has never visited Paradise Lakes, never spoke with anyone from Paradise Lakes, and does not know Buchanan. (Dep. D. Mitcheson, pp. 76:24-77:1-4; 78:16-18; 111:11-12 [Doc. 102, Ex. 11]). *Id.* at ¶ 57. Mitcheson does not know how Paradise Lakes came into possession of the image, or who at Paradise Lakes would have posted the image on social media. (Dep. D. Mitcheson, pp. 111:13-25; 112:1-10 [Doc. 102, Ex. 11]). *Id.* at ¶ 58. Mitcheson also reported an increase in her income from 2012 to 2013, and was also hired for a cover shoot in 2014. (Dep. D. Mitcheson, p. 24:14-17; 101:3-4 [Doc. 102, Ex. 11]). *Id.* at ¶ 60.

6.       *Images at Issue*

| | Plaintiff | Advertisement | Date | Citation |
|---|---|---|---|---|

| 1. | C. Gibson wearing lingerie | "Lingerie Night-Club Reveal" | 10/25/13 | (Doc. 31 p. 135, Ex. A; Doc. 102-5 p. 209, Ex. I-6) |
|---|---|---|---|---|
| 2. | D. Mitcheson wearing Santa costume | "Happy hour/Thurs. Nite [sic] Football" | 12/5/13 | (Doc. 31 p. 137, Ex. B; Doc. 102-5 p. 212, Ex. I-3) |
| 3. | I. Voronina wearing pirate costume | "Midnight Costume Contest 11/1" | 10/31/14 | (Doc. 31 p. 139, Ex. C; Doc. 102-5 p. 214, Ex. I-5) |
| 4. | I. Voronina wearing pirate costume | "Boutique Open until 7pm" | 11/1/14 | Doc. 31 p. 140, Ex. C; Doc. 102-5 p. 210, Ex. I-1) |
| 5. | I. Voronina wearing toga costume | "Toga Party-Club Reveal" | 8/15/? | (Doc. 31 p. 141, Ex. C; Doc. 102-5 p. 213, Ex. I-4) |
| 6. | J. Coulter wearing chef costume | "Lunch Specials" | 12/27/13 | (Doc. 31 p. 141, Ex. D; Doc. 102-5 p. 211, Ex. I-2) |
| 7. | M. Quy wearing lingerie | "Lingerie Night - Club Reveal" | 11/8/13 | (Doc. 31 p. 146, Ex. E; Doc. 102-5 p. 215, Ex. I-7) |

## II.  LEGAL STANDARD

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The moving party bears the initial burden of stating the basis for its motion and identifying those portions of the record demonstrating the absence of genuine issues of material fact. *Celotex*, 477 U.S. at 323; *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259-60 (11th Cir. 2004). That burden can be discharged if the moving party can show the court that there is "an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.

When the moving party has discharged its burden, the nonmoving party must then designate specific facts showing that there is a genuine issue of material fact. *Id.* at 324. Issues of fact are "genuine only if a reasonable jury, considering the evidence present, could find for the nonmoving party," and a fact is "material" if it may affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). In determining whether a genuine issue of material fact exists, the court must consider all the evidence in the light most favorable to the nonmoving party. *Celotex*, 477 U.S. at 323. However, a party cannot defeat summary judgment by relying upon conclusory allegations. *See Hill v. Oil Dri Corp. of Ga.*, 198 Fed. App'x 852, 858 (11th Cir. 2006).

The standard of review for cross-motions for summary judgment does not differ from the standard applied when only one party files a motion, but simply requires a determination of whether either of the parties deserves judgment as a matter of law on the facts that are not disputed. *Am. Bankers Ins. Group v. United States*, 408 F.3d 1328, 1331 (11th Cir. 2005). The Court must consider each motion on its own merits, resolving all reasonable inferences against the party whose motion is under consideration. *Id.* The Eleventh Circuit has explained that "[c]ross-motions for summary judgment will not, in themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed." *United States v. Oakley*, 744 F.2d 1553, 1555 (11th Cir. 1984). Cross-motions may, however, be probative of the absence of a factual dispute where they reflect general agreement by the parties as to the controlling legal theories and material facts. *Id.* at 1555-56.

## III.     DISCUSSION

### A.     Plaintiffs' Lanham Act Claims

Plaintiffs bring claims for false advertising (Count I) and false endorsement (Count XII).

Section 43(a)(1) of the Lanham Act, which is codified at 15 U.S.C. § 1125(a)(1), states that:

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which ---
>
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship or approval of his or her goods, services, or commercial activities by another person, or
>
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1). "Section 1125(a) thus creates two distinct bases of liability: false association [endorsement], § 1125(a)(1)(A), and false advertising, § 1125(a)(1)(B)." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1384 (2014).

Plaintiffs argue that they are entitled to summary judgment on their false endorsement claim because their images are inherently distinctive, Plaintiffs used those images to create a brand for themselves and have acquired distinctiveness through secondary meaning. Specifically, they argue that their personas are inseparable from their brands, and Defendants' use of those personas in their advertisements is a false representation that Plaintiffs endorse Paradise Lakes' goods and services, i.e. "nudist and swinger activities." Doc. 104 at 19. They also argue that they have rights in their images and personas as common law marks and satisfy the factors necessary to establish consumer confusion.

Plaintiffs further contend that they are entitled to summary judgment in their favor on the false advertising claim. They argue that the Defendants' advertisements were literally false and misleading because they "necessarily conveyed or implied" that the Plaintiffs endorsed and supported Paradise Lakes and the nudist and swinger lifestyle. Doc. 104 p. 11.

12

Defendants argue that Plaintiffs have failed to establish that they have a protectable mark in their name and/or likeness. Doc. 103 pp.18-19.  They concede that the Plaintiffs may be recognized within the costume and lingerie modeling community, but contend that neither Plaintiffs' recognition nor notoriety rise to the level of celebrity, warranting a protectable mark. *Id.* According to the Defendants, the record evidence does not establish widespread recognition within or outside of the entertainment industry. Defendants submit that Plaintiffs' alleged "brands" lack the uniqueness and distinctiveness to warrant trademark protection. *Id.*

And they argue that Plaintiffs are not entitled to summary judgment in their favor on the Lanham Act claims because Plaintiffs have not proven the elements of false advertising or false endorsement. Specifically, they argue there is no evidence that the advertisements are false or misleading or deceived any customers, particularly because the advertisements did not identify the models by name, reference the models in any way, or imply any statements on their behalf. Doc. 111 p. 3. And they argue that Plaintiffs are not in competition with Defendants, and Plaintiffs have neither established any harm to their commercial interests nor have they identified anyone who viewed the images and recognized them in the photograph. *Id.* at 4. Defendants request summary judgment in their favor for all claims.

### 1.    *False Endorsement*

In order to prevail on a claim of false endorsement in a trademark infringement case, a plaintiff must show "(1) that it had trademark rights in the mark or name at issue and (2) that the other party had adopted a mark or name that was the same, or confusingly similar to its mark, such that consumers were likely to confuse the two." *Suntree Techs., Inc. v. EcoSense Int'l, Inc.*, 802 F. Supp. 2d 1273, 1346 (M.D. Fla. 2011), *aff'd*, 693 F.3d 1338 (11th Cir. 2012) (citation omitted); *see also Univ. of Ala. Bd. of Trs. v. New Life Art, Inc.*, 683 F.3d 1266, 1278 (11th Cir. 2012) ("[W]e

have never treated false endorsement and trademark infringement claims as distinct under the Lanham Act.") (citation omitted).

> a. **Trademark Rights in the Mark or Name at Issue**

To satisfy the first element of § 43(a)—proof of a valid trademark—a plaintiff does not need a registered mark. "[T]he use of another's unregistered, i.e., common law, trademark can constitute a violation of § 43(a) where the alleged unregistered trademarks used by the plaintiff are so associated with its goods that the use of the same or similar marks by another company constitutes a false representation that its goods came from the same source." *Tana v. Dantanna's*, 611 F.3d 767, 773 (11th Cir. 2010) (citation omitted).

The Eleventh Circuit recognizes four categories of distinctiveness:

> (1) generic—marks that suggest the basic nature of the product or service; (2) descriptive—marks that identify the characteristic or quality of a product or service; (3) suggestive—marks that suggest characteristics of the product or service and require an effort of the imagination by the consumer in order to be understood as descriptive; and (4) arbitrary or fanciful—marks that bear no relationship to the product or service, and the strongest category of trademarks.

*Id.* at 774 (quoting *Gift of Learning Found, Inc. v. TGC, Inc.*, 329 F.3d 792, 797-98 (11th Cir. 2003)). The third and fourth categories are distinctive enough to receive protection, the second can be, but the first is generally not enough. *Id.*

In false endorsement cases such as this one, "the term 'mark' applies to the celebrity's persona" and "the 'strength' of the mark refers to the level of recognition that the celebrity has among the segment of the public to whom the advertisement is directed" and " the term 'goods' concerns the reasons for or source of the celebrity's fame." *See Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1007 (9th Cir. 2001) (citing *White v. Samsung Elecs. Am. Inc.*, 971 F.2d 1395, 1400 (9th Cir. 1992). *See also ETW Corp. v. Jireh Pub., Inc.*, 332 F.3d 915, 924 (6th Cir. 2003) ("Courts

14

have recognized false endorsement claims under § 43(a) of the Lanham Act where a celebrity's image or persona is used in association with a product so as to imply that the celebrity endorses the product."). *See also Lancaster v. Bottle Club, LLC*, 8:17-CV-634-T-33JSS, 2017 WL 3008434, at *7 (M.D. Fla. July 14, 2017) (citing *Arnold v. Treadwell*, 642 F. Supp. 2d 723, 735 (E.D. Mich. 2009) (acknowledging that the Lanham Act is designed to protect commercial interests in identities)).

"A celebrity's persona is neither descriptive of a good or service nor "fanciful" within the meaning of trademark law." *Lemon v. Harlem Globetrotters Intern., Inc.*, 437 F. Supp. 2d 1089, 1094–95 (D. Ariz. 2006) (finding that "the persona of Meadowlark Lemon—*his image*, name and jersey number—does not describe a good or service sold in commerce…. Nor is it a merely fanciful phrase…[r]ather, Plaintiff's Lemon's persona is a uniquely distinguishing characteristic that calls to mind a specific person and his publicly known sports personality.") (emphasis added). *See also Waits v. Frito–Lay, Inc.*, 978 F.2d 1093, 1110 (9th Cir. 1992) *abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S.Ct. 1377 (2014) ("A false endorsement claim based on the unauthorized use of a celebrity's identity is a type of false association claim, for it alleges the misuse of a trademark, *i.e.*, a … uniquely distinguishing characteristic[ ] which is likely to confuse consumers as to the plaintiff's sponsorship or approval of the product.").

The inquiry in this case, then, is whether the use of Plaintiffs' personas are likely to confuse consumers as to Plaintiffs' sponsorship or approval of Paradise Lakes. *Lemon*, 437 F. Supp. 2d at 1094-1095 (district court never reached the issue of trademark validity and disposed of the case solely on the second element, likelihood of confusion). *See also Phelan Holdings, Inc. v. Rare Hosp. Mgt., Inc.*, 8:15-CV-2294-T-30TBM, 2017 WL 1135266, at *4 (M.D. Fla. Mar. 27, 2017),

*appeal dismissed*, 17-11852-JJ, 2017 WL 5013602 (11th Cir. July 27, 2017) (citing *Tana*, 611 F.3d at 775) (same). Therefore, under the law of false endorsement, likelihood of customer confusion is the determinative issue. *See Phelan Holdings, 2017 WL 1135266, at \*4.*

### b.      Likelihood of Confusion

Defendants assert that the element of confusion is crucial in establishing a claim under 15 U.S.C. 1125(a). Doc. 103 at 19. Defendants contend that Plaintiffs failed to either identify any consumers who recognized Plaintiffs from the images or provide evidence that consumers attended the events at Defendants' resort because of the subject images. *Id.* As previously noted, "the role of the court in reviewing a motion for summary judgment is to determine the ultimate question of whether, in light of the evidence as a whole, there is sufficient proof of a likelihood of confusion to warrant a trial of the issue." *Phelan Holdings*, 2017 WL 1135266, at \*4 (citing *Tana*, 611 F.3d at 775). The Court must now examine whether the use of Plaintiffs' images by Defendants has led to a likelihood of confusion to warrant a trial of the issue. *Id.*

In evaluating whether there is a likelihood of confusion between two marks, the Court must apply a multifactor test, evaluating the following: (1) strength of the mark alleged to have been infringed; (2) similarity of the infringed and infringing marks; (3) similarity between the goods and services offered under the two marks; (4) similarity of the actual sales methods used by the holders of the marks, such as their sales outlets and customer base; (5) similarity of advertising methods; (6) intent of the alleged infringer to misappropriate the proprietor's good will; and (7) the existence and extent of actual confusion in the consuming public. *Tana*, 611 F.3d at 774–75.

Although many of the factors are inapplicable in a celebrity endorsement case, the Court finds relevant factors to include: the level of recognition the Plaintiffs have among purchasers of Defendants' products and services, the similarity between the Plaintiffs' likeness and the likeness

16

used by Defendants, the level of actual consumer confusion regarding endorsement of the resort

and its events, Defendants' intention in selecting Plaintiffs' images, the quality of Defendants'

products, and the sophistication of the consumers. *See Bruce Lee Enterprises, LLC v. A.V.E.L.A.,*

*Inc.,* 10-CV-2333-KMW, 2013 WL 822173, at *20 (S.D.N.Y. Mar. 6, 2013) (applying the relevant

factors to its likelihood of confusion analysis in deciding summary judgment on a celebrity's false

endorsement claim).

(1)    First, Second and Third Factors Weigh in Plaintiffs' Favor

The Plaintiffs have shown that their images have been used by respectable companies and

commercial brands to promote their products and services for a number of years. Doc. 120 at ¶ 1-

3; Doc. 105 Ex. 7 at ¶ 3 (Coulter - 20+ years); Doc.105 Ex. 5 ¶2 (Voronina - 18+ years); Doc.105

Ex. 2, Dep. Gibson p.19:23 (Gibson 10+ years); Doc.105 Ex. 10, Quy Dep. p.67:6 (Quy - 5+

years); Doc.105 Ex. 3 ¶ 2 (Mitcheson - 4+ years). The Court concludes that this factor weighs in

Plaintiffs' favor because each Plaintiff is a reputable model with a track record for modeling work.

Regarding the second factor, "[s]imilarity of appearance is determined on the basis of the

total effect of the designation, rather than on a comparison of individual features." *Amstar Corp.*

*v. Domino's Pizza, Inc.*, 615 F.2d 252, 260–61 (5th Cir. 1980). A court "must also consider the

commercial impression created by the mark as a whole." *Id.* at 261 (collecting cases). "Stated

differently, [i]n evaluating the similarity of marks, [the court] must consider the overall impression

created by the marks, including a comparison of the appearance, sound and meaning of the marks,

as well as the manner in which they are displayed." *Wreal, LLC v. Amazon.com, Inc.*, No. 14–

21385–CIV, 2015 WL 12550912, at *4 (S.D. Fla. Aug. 31, 2015), *aff'd*, 840 F.3d 1244 (11th Cir.

2016) (internal citation and quotation omitted) (alterations in original). This factor weighs in favor

17

of the Plaintiffs because the subject images used by the Defendants include photographs of the Plaintiffs in costumes and lingerie.

Regarding the third factor, "[t]he greater the similarity between the products and services the greater the likelihood of confusion." *Ross Bicycles, Inc. v. Cycles USA, Inc.*, 765 F.2d 1502, 1507 (11th Cir. 1985) (citation omitted). The subject images are the same and promote the lingerie and costumes displayed, which clearly was the purpose of at least one of the advertisements. *See* Doc. 31 at 140, Ex. C. The third factor weighs strongly in favor of Plaintiffs.

(2)     Fourth and Fifth Factors are Neutral

The fourth factor considers "where, how, and to whom the parties' products are sold." *Frehling Enters., Inc. v. Int'l Select Grp., Inc.*, 192 F.3d 1330, 1339 (11th Cir. 1999). The fifth factor looks to the markets and marketing channels in those markets used to sell the goods or services, *e.g.*, websites and social media such as Instagram, Twitter, and Facebook. These factors weigh in neither parties' favor, as the parties are not in competition when it comes to the images. Plaintiffs do not sell lingerie and costumes, nor do they organize events, they were in the business of modeling and selling their images. Defendants were not selling Plaintiffs' images, they used them to promote their events and items available in the boutique. Although some of the Plaintiffs may have displayed their own images on social media and the internet generally to promote their modeling and other endeavors, *see* Doc.102-4 at 92:5-8; their professional images did not appear exclusively on those media outlets, so the factors do not weigh in their favor. Therefore the parties are neither competing in the same markets nor using similar marketing channels in those markets.

(3)     Sixth and Seventh Factors Weigh in Defendants' Favor

The evidence does not establish that Defendants' intent was to misappropriate the Plaintiffs' good will. "When analyzing an alleged infringer's intent, [the Court] must determine

18

whether the defendant 'adopted a plaintiff's mark with the intention of deriving a benefit from the plaintiff's business reputation.' " *Caliber Auto. Liquidators, Inc. v. Premier Chrysler, Jeep, Dodge, LLC*, 605 F.3d 931, 940 (11th Cir. 2010) (quoting *Frehling Enters.*, 192 F.3d at 1340). "If it can be shown that a defendant adopted a plaintiff's mark with the intention of deriving a benefit from the plaintiff's business reputation, this fact alone may be enough to justify the inference that there is confusing similarity." *Frehling Enters.*, 192 F.3d at 1340 (citation omitted).

Here, Buchanan testified that he received the images from vendors and believed they were the rightful owners of the images who were authorized to give him permission to use those images for advertising purposes. Doc. 102 Ex.6, Dep. J. Buchanan, pp. 68:17-25; 69:1-3. Therefore, Buchanan believed Paradise Lakes was authorized to use the subject images for advertising. *Id.* at pp. 69:4-18; 71:14-25; 72:1-3. And Buchanan's testimony is corroborated by other evidence in the record that Gibson, Coulter and Quy's images were taken by DGI for a catalogue and they signed releases permitting their future use. Doc. 102 Ex. 1, Dep. M. Quy, pp. 48:22-25; 49:1-7; Doc. 102 Ex. 3, Dep. C. Gibson, pp. 23:6-13; 24:2-4; 38:2-25; 39:1-7. DGI also acknowledged providing images to Paradise Lakes, one of its costume and lingerie merchandise customers, for promotional purposes. Doc. 102 Ex. 5, Dep. C. Scharff, pp. 28:1-14; 64:20-25; 65:1-2 and Exhibit F (DGI invoice to Defendants). In fact, each Plaintiff testified that they did not know how Defendants obtained the images. Doc.102 Ex. 1; Dep. M. Quy, pp. 56:2-15; Doc 102 Ex. 3; Dep. C. Gibson, p. 75:12-14; Doc. 102 Ex. 4, Dep. J. Coulter, pp. 70:20-25; 71:1-15; Doc. 102 Ex. 11, Dep. D. Mitcheson, p. 111:11-12; Doc. 102 Ex. 7, Dep. I. Voronina, p. 39:2-12. As such, the record is devoid of evidence that Defendants intended to derive a benefit from the Plaintiffs' business reputation and this factor weighs in favor of the Defendants.

The Eleventh Circuit has "routinely 'weighed' the likelihood-of-confusion factors on summary judgment" and has affirmed summary judgment where there was little evidence of actual confusion. *Tana,* 611 F.3d at 774, 775 n. 7 (citations omitted). "Although likelihood of confusion is a question of fact, it may be decided as a matter of law." *Id.* n. 7 (citing *Welding Servs.*, 509 F.3d at 1361; *Alliance Metals*, 222 F.3d at 907). The most persuasive evidence in assessing likelihood of confusion is actual confusion in the consuming public. *Tana,* 611 F.3d at 779 (citing *Alliance Metals*, 222 F.3d at 907).

To evaluate actual confusion, the Court considers "not only . . . the existence but also . . . the extent of such confusion." *Id.* (citing *Welding Servs.*, 509 F.3d at 1360). "[P]erhaps as important as . . . the number of instances of confusion are the kinds of persons confused and degree of confusion." *Caliber*, 605 F.3d at 936 (citations omitted) (alterations in *Caliber*). "Short-lived confusion or confusion of individuals casually acquainted with a business is worthy of little weight while confusion of actual customers of a business is worthy of substantial weight." *Id.* (citing *Safeway Stores, Inc. v. Safeway Discount Drugs, Inc.*, 675 F.2d 1160, 1167 (11th Cir. 1982); *Aronowitz v. Health–Chem Corp.*, 513 F.3d 1229, 1239–40 (11th Cir. 2008)).

Here, Defendants maintain that Plaintiffs failed to establish that any consumers recognized Plaintiffs from the images and/or attended the events at Defendants' resort because of the subject images. Doc. 103 p. 19. Plaintiffs maintain that retained expert Martin Buncher's Survey and Report shows the "astonishingly high rate of likely confusion or deception from the advertisements for both the set and control groups." Doc. 113 p. 14 (citing Doc. 105-9, Buncher Decl. at ¶¶ 1-22). Plaintiffs contend that Buncher's Survey tested for confusion or deception by conducting a communication survey. *Id.* According to the Plaintiffs, Buncher assessed the impact and effect of

the advertisements on the recipient, and measured the responses against empirical evidence to determine the actual or likelihood of confusion. *Id.* Doc. 105-9, Buncher Dec. at ¶¶ 1-22.

Buncher's Declaration states that in his expert opinion the advertisements were likely to cause confusion.[5] Doc. 105 Ex. 9, Buncher Dec. ¶ 24. He concludes that:

> [T]he manner of use of the models in the Paradise Lakes Resort advertising which I have examined will likely communicate to the large majority of those to whom it is exposed, that the models used are somehow affiliated with Defendant Paradise Lakes Resort, have contracted to perform at and/or participate in events at Paradise Lakes Report [sic], have been hired to promote, advertise, market or endorse its events and other activities offered at Paradise Lakes Resort, and/or that each Plaintiff depicted in the advertisements has attended or will attend each event and has participated in or intends to participate in the activities advertised.

*Id.*

But Buncher did not conduct a survey using the images in this case. Instead he conducted a communication survey and collected empirical evidence in similar Lanham Act cases involving trademark claims made by models against nudist and alleged "swinger" resorts and a strip club in the following cases: *Edmonson v. Caliente Resorts, LLC, et al.*, Case No. 8:15-cv-02762-SDM-TBM (the "Caliente Action"); *Timed Out, LLC, a California Company v. Midway Venture LLC d/b/a Pacers et al.*, Case No.: 37-2015-00021222-CU-NP-CTL (the "Pacers Action"); and *Edmonson v. Velvet Lifestyles, LLC et al.*, Case No.: 1:15-cv-24442-JAL. *Id.* at ¶¶ 8-16. And he admits that he only "studied" the use of the models in the advertisements at issue in this case, *id.* at ¶ 23; he needs more information regarding Paradise Lakes' patrons to "submit a final and more

---

[5]Defendants did not move to exclude Buncher's Declaration pursuant to Federal Rule of Civil Procedure 702 or *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). But they did file their Motion to Strike Plaintiff's Expert Martin Buncher's Declaration (Doc. 97) requesting that the Court prohibit his testimony at trial. The Court reserved ruling on the Motion at oral argument. Given the Court's ruling in this Order, the motion is now moot.

comprehensive report," *id.* at ¶ 24; and he considers his review of the advertisements a "first phase investigation." *Id.*

The Court assigns little weight to Buncher's Declaration as evidence of actual consumer confusion. *See Kournikova v. Gen. Media Commc'ns, Inc.*, 278 F. Supp. 2d 1111, 1126 (C.D. Cal. 2003) ("Because the survey . . . and expert report do not provide real evidence of actual confusion, Plaintiff raises no triable issue, and this critical factor weighs heavily in GMC's favor.").

The evidence establishing actual confusion is insufficient. Plaintiff does not point to any other evidence to show actual confusion. In addition, discovery in this case has ended such that Plaintiff is unable to overcome the lack of evidence as to actual confusion. The fact that Plaintiffs produced some evidence in the form of Buncher's Declaration based on consumer surveys is insufficient to create a genuine issue of material fact on the likelihood of confusion. *See Kournikova*, 278 F. Supp. 2d at 1125–26 (quoting *Mattel, Inc., v. MCA Records, Inc.*, 28 F.Supp.2d 1120, 1133 (C.D.Cal.1998) (" 'The mere presentation of a survey purporting to show confusion,' however, does not itself create a triable issue of fact".).

Plaintiffs' assertions regarding consumer confusion alone are insufficient to defeat summary judgment on this basis and are no substitute for relevant consumer affidavits and/or expert survey. *See Lemon,* 437 F. Supp. 2d at 1097 (citing *Newton*, 22 F.3d at 1462) (finding no likelihood of confusion where "there was no relevant evidence of actual confusion before the court on summary judgment"); *see also Scott Fetzer Co. v. House of Vacuums, Inc.*, 381 F.3d 477, 488 (5th Cir. 2004) (finding defective survey cannot raise issue of fact to overcome summary judgment); *Universal City Studios, Inc. v. Nintendo Co.*, 746 F.2d 112, 118 (2d Cir. 1984) (holding that "Universal's survey [was] so badly flawed that it cannot be used to demonstrate the existence of a question of fact on the likelihood of consumer confusion.").

This factor, "actual confusion in the consuming public, is the most persuasive evidence in assessing likelihood of confusion." *Phelan Holdings*, 2017 WL 1135266, at *7 (citing *Tana's*, 611 F.3d at 779). At most, Plaintiffs' evidence raises a possibility, as opposed to a likelihood, that consumers would be confused as to whether Plaintiffs endorsed Paradise Lakes. The mere possibility that consumers may be confused, however, is not sufficient to prevail on a false endorsement claim. *See Newton,* 22 F.3d at 1461-62 ("Mere possibility that a consumer may be misled by Appellees' use of the name 'Wood Newton' is not enough to establish a cause of action for unfair competition."). While some of the *Tana* factors weigh in Plaintiffs' favor, a number of factors, including the critical issue of actual confusion, weigh heavily in favor of Defendants.

The evidence does not demonstrate that a consumer who sees these advertisements is likely to recognize Plaintiffs, let alone cause confusion regarding whether they endorsed or sponsored Paradise Lakes or its events. An ordinary consumer would view Plaintiffs' images in the costumes and lingerie on the advertisements not as an indication of sponsorship or endorsement, but as a reminder of the themes of the events and the clothing sold at the boutique. *See Ji v. Bose Corp.,* 538 F. Supp. 2d 349, 353 (D. Mass. 2008); *Pirone*, 894 F.2d at 585; *Pelton v. Rexall Sundown, Inc.*, 99 CIV 4342 JSM, 2001 WL 327164, at *4 (S.D.N.Y. Apr. 4, 2001).

The Court finds two cases particularly persuasive on false endorsement claims. In *Ji v. Bose Corp.*, the defendant purchased and used plaintiff's photographs in advertising for its products. *Id.* at 350. Plaintiff alleged that defendant's use of the photographs constituted false endorsement. *Id.* The Court found that plaintiff provided no direct evidence that she enjoyed any fame whatsoever. *Id.* at 351-52. Although she had a modeling career and had appeared in three other advertisements for high-end electronics, it found that the target audience for defendant's products would certainly not recognize her personally from her previous works. *Id.* at 352. The

images in question were photographs of the plaintiff, but the advertisements appeared to focus more on the products which is what the defendant's average consumer was likely observing. *Id.* 352-53.

Relying on *Downing*, the court held that the plaintiff did not provide any evidence that any of defendant's consumers were actually confused by the use of her likeness or that defendant intended to confuse its consumers (even with plaintiff's likeness reproduced by defendant in similar marketing channels from her previous works). *Id.* at 352-53. Of the eight factors weighed, only two favored the plaintiff: similarity of likeness and similarity of marketing channels. *Id.* at 353. Although the Court recognized that the analysis was not "a simple matter of tallying factors on each side," the court noted that "the Plaintiff's favorable factors [were] far outweighed by the absence of any meaningful level of recognition or improper intent by Bose." *Id.* Therefore, the Court reasoned that Bose was entitled to summary judgment in its favor.

*In Pelton v. Rexall Sundown, Inc.*, the plaintiff sued the defendant for using her photograph on its packaging for dietary supplement products.  2001 WL 327164 at *2.  She alleged that the use of the photograph, which she initially took for Surfing Magazine, violated the Lanham Act. *Id.* The defendant purchased the photograph on a CD-ROM from a stock photography company. *Id.* The photograph at issue showed plaintiff sitting on a beach in a swimsuit with her arm over her face as if to shade her eyes from the sun. *Id.*

The court reasoned that because "plaintiff's name [did] not appear anywhere on the label, and the product [did] not appear in the photograph with her," the image in no way suggested that defendants attempted to capitalize on her fame in selling the supplements. *Id.* at *3. And, it noted that while the strength of her mark or name was a crucial factor in determining likelihood of consumer confusion, plaintiff's one appearance in a Sports Illustrated Swimsuit Issue and some

advertising work for other products did not create celebrity status. *Id*. The court held that there was simply no evidence that a consumer who saw the photograph would likely recognize the plaintiff, or believe that she endorsed or sponsored the defendant's products. *Id*. at *4. The court granted defendant's summary judgment.

Given the similarities between *Ji*, *Pelton*, and this case, the Court is persuaded that the factors do not weigh heavily in favor of Plaintiffs sufficient to establish a likelihood of consumer confusion.

### c.   Conclusion as to False Endorsement Claim

Based on the Court's analysis of the seven factors and Plaintiffs' failure to adduce sufficient evidence upon which a reasonable jury could find a likelihood of confusion between Plaintiffs' and Defendants' marks, there is no issue of material fact to preclude summary judgment in favor of Defendants. Accordingly, Defendants are entitled to judgment as a matter of law on Plaintiffs' false endorsement claims. And Plaintiffs Partial Motion for Summary Judgment on this basis is denied.

### 2.   *False Advertising*

In order to prove that a defendant engaged in false advertising, a plaintiff must prove an injury to a commercial interest in sales or business reputation proximately caused by the misrepresentations. *Duty Free Ams., Inc. v. Estee Lauder Cos., Inc.,* 797 F.3d 1248, 1277 (11th Cir. 2015) (quoting *Lexmark Int'l*, 134 S. Ct. at 1395). And, to prove the statements caused the requisite injury for false advertising, a plaintiff must show: (1) the advertisements of the opposing party were false or misleading; (2) the advertisements deceived, or had the capacity to deceive, consumers; (3) the deception had a material effect on purchasing decisions; (4) the misrepresented product or service affects interstate commerce; and (5) actual or likely injuries resulted from the

false advertising. *Hickson Corp. v. N. Crossarm Co., Inc.*, 357 F.3d 1256, 1260 (11th Cir. 2004); *Johnson & Johnson Vision Care, Inc. v. 1–800 Contacts, Inc.*, 299 F.3d 1242, 1247 (11th Cir. 2002).

### a.      False or misleading

An advertisement is "false" if it is literally false; an advertisement is "misleading" if it may literally be true (or is ambiguous) but implicitly conveys a false impression, is misleading in context, or is likely to deceive consumers. *Hickson Corp.*, 357 F.3d at 1261; *Swatch, S.A. v. New City, Inc.*, 454 F. Supp 2d 1245, 1252 (S.D. Fla. 2006). If the statement is literally false, no evidence of consumer deception is needed. *Johnson*, 299 F.3d at 1247. Stated differently, when an advertisement is literally false, a court may grant relief regardless of evidence of consumer reaction or confusion. *Border Collie Rescue, Inc. v. Ryan*, 418 F. Supp. 2d 1330, 1347 (M.D. Fla. 2006) (citing *Clorox Co. Puerto Rico v. Proctor & Gamble Commercial Co.*, 228 F.3d 24, 33 (1st Cir. 2000)).

If the court deems an advertisement to be true but misleading, then a plaintiff must present evidence of deception. *Id.* The court must analyze the message conveyed in full context and "view the face of the statement in its entirety, rather than examining the eyes, nose, and mouth separately and in isolation from each other," *Johnson.*, 299 F.3d at 1248 (citation omitted). But the Court may not *assume* context. *Id.*

Defendants maintain that Plaintiffs have failed to establish that the advertisements are false or misleading because the images do not identify Plaintiffs' names and/or imply, directly or indirectly, that Plaintiffs would appear at Paradise Lakes. Doc.103 p.19. Defendants further maintain that the postings do not endorse Paradise Lakes directly or indirectly. In response, Plaintiffs contend that the element of falsity under the Lanham Act has been established as a matter

of law because the images are "literally" false; they have been altered and are not a true representation or accurate depictions. Plaintiffs further maintain that the subject images imply that Plaintiffs are associated with Defendants' resort. In addition, Plaintiffs assert that Defendants have readily conceded that Plaintiffs have never worked for Defendants, agreed to work for Defendants, and/or agreed to promote Defendants' business.

With these standards in mind, the Court now examines the images. The images are not literally false just because the Defendants slightly altered the Plaintiffs' photographs to include them in the advertisements. The subject images do not identify Plaintiffs by name or indicate anything personally about the Plaintiffs. And the subject images do not imply, directly or indirectly, that Plaintiffs work at or would appear at Paradise Lakes. The images must be viewed in context. In these contexts, the Plaintiffs' images contribute to the theme of each advertisement and are not the subject of the advertisements. There is insufficient evidence to establish the advertisements are literally false and no genuine issue of material fact exists as to this element.

The Court will next examine if the subject images are misleading. Plaintiffs argue that the advertisements are misleading because they implied that Plaintiffs agreed to appear in the advertisements and endorse Paradise Lakes and the "nudist and swinger lifestyle activities" and would likely appear at or take part in the activities. Doc. 104 at 11.  The Defendants argue that the subject images were not misleading because some of the posted images advertise the costume and lingerie actually sold in the Paradise Lakes boutique. *See* Doc. 31 p. 140, Ex. C; Doc. 102-5 p. 210, Ex. I-1 (stating: "Are you little Ghouls all set for tonight? If you forgot anything-the Boutique is open until 7pm…."). And, Defendants argue, no language in the advertisements suggests that Plaintiffs would appear at the activities in anyway, as their images were not the subject of the advertisements, they merely appeared incidental to them.

27

The record is devoid of evidence demonstrating that the images are ambiguous, convey a false impression or are misleading in context.  But even assuming that Plaintiffs established that the advertisements are literally true but misleading, they must present evidence of deception in the form of consumer surveys, market research, expert testimony, or other evidence. *Hickson*, 357 F.3d at 1261. If an advertisement is not literally false, then the plaintiff must demonstrate that consumers were actually deceived. *Border Collie Rescue*, 418 F. Supp. 2d at 1347. As discussed below, Plaintiffs have not submitted sufficient consumer or market research showing "that a statistically significant part of the commercial audience holds the false belief allegedly communicated by the challenged advertisement." *Miller's Ale H., Inc. v. Boynton Carolina Ale H., LLC*, 745 F. Supp. 2d 1359, 1377 (S.D. Fla. 2010), *aff'd,* 702 F.3d 1312 (11th Cir. 2012) (quoting *Johnson & Johnson Merck Consumer Pharmaceuticals Co. v. Smithkline Beecham Corp.*, 960 F.2d 294, 298 (2d Cir.1992)). In view of this lack of evidence, the Plaintiffs have not produced sufficient evidence nor raised a genuine issue of material fact that Defendants' advertisements are misleading.

### b.     Deception or Capacity to Deceive Consumers

Given that the advertisements were not literally false, Plaintiffs must prove that the advertisements deceived consumers. Although the Eleventh Circuit in *Johnson & Johnson* declined to address whether the plaintiff must prove actual deception or simply a tendency to deceive, 299 F.3d at 1247 n. 3, cases in the Middle District of Florida have since required actual deception be shown to prove a claim for false advertisement. *See e.g., Border Collie Rescue*, 418 F. Supp. 2d at 1347 ("Since this claim is an 'implicit falsity' claim, plaintiffs must proffer evidence of actual deception."); *Intertape Polymer Corp. v. Inspired Techs., Inc.*, 725 F. Supp. 2d 1319,

1333 (M.D. Fla. 2010) ("If an advertisement is not literally false, then the plaintiff must demonstrate that consumers were actually deceived.").

"In order to prove deception, consumer survey research is often 'key' evidence but . . . if 'full-blown consumer surveys or market research' are not available, the plaintiff still must provide some sort of expert testimony or similar evidence." *Suntree Techs., Inc.*, 802 F. Supp. 2d at 1288 (citing *Hickson*, 357 F.3d at 1261; *Johnson*, 299 F.3d at 1247) (internal quotations and citation omitted); *Miller's Ale H., Inc.*, 745 F. Supp. 2d at 1377. *See also Border Collie Rescue*, 418 F. Supp. 2d at 1347; *Barn Light Elec.*, 2016 WL 7135076, at *10.

Plaintiffs also rely on Buncher's Declaration to prove consumer deception. Doc. 113 p. 14. The surveys referenced in Buncher's Declaration are insufficient to show that the advertisements are deceptive. Although Buncher's survey testimony appears to meet the minimum standards for admissibility under Federal Rule of Civil Procedure 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), as evidence of consumer confusion in a false advertising case, [6] it cannot under these facts prove deception in the images at issue in this case.

Buncher's testimony is insufficient to satisfy Plaintiffs' burden of establishing consumer deception for the images since it heavily relies on the surveys which used images that are neither the subject of this case nor in the record for the Court's review. And Buncher admits that he requires more information regarding the patrons at issue in this case to make a final determination. He also does not demonstrate how evidence of a survey involving a strip club can be extrapolated to demonstrate a likelihood of confusion in a clothing optional resort that also happens to sell the

---

[6] *See Edmonson v. Caliente Resorts, LLC, et al.*, Case No. 8:15-cv-02762-SDM-TBM, Doc. 153 at 25 (Aug. 31, 2017) (order denying Defendants' *Daubert* Motion to Exclude the Testimony and Opinions of Plaintiffs' Expert Survey Witness Martin M. Buncher and concluding that the survey's deficiencies went to the weight of Buncher's testimony, not its admissibility).

lingerie and costumes displayed in the advertisements.  *See Merial LLC v. Fidopharm, Inc.,* 1:13-CV-1207-SCJ, 2014 WL 11930586, at *18 (N.D. Ga. Sept. 5, 2014) (denying request for preliminary injunction and concluding that survey results based on a commercial were insufficient to establish consumer confusion for non-televised advertisements that were not literally false). Therefore, the Court assigns little weight to Buncher's Declaration as evidence of consumer deception.

Plaintiffs offer no other evidence to prove actual consumer deception, i.e. statements from Paradise Lakes' residents, members, or others who viewed the advertisements conveying an expectation that the models in the advertisements endorsed the activities or would be present at the resort, or some other similar evidence. *See c.f. Suchanek v. Sturm Foods, Inc.,* 311 F.R.D. 239, 245 (S.D. Ill. 2015) (concluding that a lack of a survey did not make expert's opinion inadmissible in the face of defendants' own market research, product testing, and numerous complaints received from defendants' customers about the product).  Nonetheless, even assuming Buncher's testimony was sufficient, the Court will next determine if the advertisements had a material effect on the purchasing decisions of consumers.

### c.      Materiality

The third element of a claim of false advertising under the Lanham Act is materiality, which the plaintiff is required to establish regardless of whether the advertisement is literally false or true but misleading. *Osmose, Inc. v. Viance, LLC,* 612 F.3d 1298, 1319 (11th Cir. 2010). To establish the materiality element, Plaintiffs must prove that the Defendants' deception is likely to influence the purchasing decision of consumers. *Id.* Plaintiffs may prove materiality with evidence that the Defendants misrepresented an inherent quality or characteristic of the product. *Id.*

Defendants contend that Plaintiffs have failed to establish that the advertisements and the alleged deception had a material effect on the purchasing decisions of any consumer. In response, Plaintiffs maintain that Buncher's Declaration, although relying on surveys done on consumers who did not view the subject images, establishes the necessary evidence. *See* Doc. 113 p. 14 (citing Doc. 105 Ex. 9, Buncher Dec.¶¶ 1-24).

Buncher's Declaration is insufficient to demonstrate that consumers were materially affected by the use of the models' photographs in Paradise Lakes' advertisements. Plaintiffs offer no evidence showing what consumers thought of the advertisements in this case and under these circumstances, i.e. whether the statements expressed in the advertisements were material to any consumers' decision or if any consumer perceived the advertisements as "endorsements" which impacted their decision to attend an event or make a purchase at the boutique.

They also have not established that Plaintiffs had such a reputation or notoriety that it would have influenced purchasing decisions. *See Osmose*, 612 F.3d 1298 (finding that, where an advertisement misrepresented a well-known company's role in the defendant's wood preservative product testing, the advertisement's "heavy reliance on [that company's] independence and reputation enhances the likelihood that misrepresentation would influence purchasing decisions"). And although Paradise Lakes used many of the images to promote events, it did also sell the products worn by the Plaintiffs at its boutique, i.e., costumes and lingerie.  Plaintiffs may have attempted to demonstrate that Defendants misrepresented the inherent quality or characteristic of those products or the events promoted in the advertisements in support of this element; but no such evidence is in the record.

Quite simply, Plaintiffs have not established that the advertisements, and alleged deception, had a material effect on the purchasing decisions of any consumer. Plaintiffs did not identify

anyone who recognized them from the images. *See Illinois Tool Works Inc. v. BG Products, Inc.*, 8:17-CV-420-T-30AAS, 2017 WL 3017214, at *14 (M.D. Fla. June 22, 2017), *report and recommendation adopted*, 8:17-CV-420-T-30AAS, 2017 WL 2986240 (M.D. Fla. July 13, 2017) (denying preliminary injunction on false advertising claim and concluding plaintiff had not demonstrated materiality where it alleged that multiple distributors and customers inquired about the advertisement, but presented evidence of only one customer who saw the ad who ultimately purchased plaintiff's, rather than defendant's, products).

In sum, Plaintiffs' expert failed to conduct a survey in this case in order to show actual consumers were confused or that the images affected their purchasing decisions. The advertisements did not state or mention the Plaintiffs by name or indicate that they were going to be present at any of the events or at Paradise Lakes generally. There is also no evidence that any consumers attended the events at Paradise Lakes or took any action, for that matter, because of the subject images.

### d.    Interstate Commerce

The parties do not dispute that the advertisements affected interstate commerce. But even if they did, Plaintiffs have satisfied this element because the record shows that Defendants advertised and marketed events at Paradise Lakes through email and the internet which affects interstate commerce. *See Planetary Motion, Inc. v. Techsplosion, Inc.,* 261 F.3d 1188, 1195 (11th Cir. 2001) (citation omitted) (noting that the nature of the internet indicates that establishing a typical home page on the Internet, for access to all users, would satisfy the Lanham Act's 'in commerce' requirement); *Shatel Corp. v. Mao Ta Lumber & Yacht Corp.*, 697 F.2d 1352, 1356 (11th Cir. 1983) ("Advertising that affects interstate commerce and solicitation of sales across state lines . . . is . . . commerce within the meaning of Lanham Act.").

    e.    **Injury**

Plaintiffs argue that they suffered damages because they were not compensated for the unauthorized use of their images. Doc. 103 at 22. Defendants argue that Plaintiffs were compensated for the images when they were initially photographed. Doc. 103 at 20. Therefore, Defendants argue that Plaintiffs suffered no damages and otherwise base their damages calculation on nothing but opinion and speculation. Doc. 111 at 11.

Plaintiffs retained Stephen Chamberlin, a former talent agency director and current owner and director of Rumblestorm Management, a worldwide sourcing and management company for models, as their expert. Doc. 105-14 at 8-9. He testified to a range of damages, in the aggregate, from a fair market value of $325,000 to a high end value of $975,000. *Id*. at § I, ¶¶ 7, 8. Defendants do not challenge the admissibility of Chamberlin's testimony.

The Court takes issue with certain statements in Chamberlin's Declaration, i.e. that he considers it a "fact" that Paradise Lakes' use of the images in its advertisements "implies and presumes" that the Plaintiffs endorsed the advertisements and understood and supported the "consumer experience" being advertised and would take part or be present at Paradise Lakes' parties and events. *Id*. at § III, ¶ 4. That "fact" is actually an issue for the Court or the jury to determine. The Court also notes that in *Edmonson v. Caliente Resorts, LLC et al.*, the court granted in part Defendants' *Daubert* Motion to Exclude the Opinion and Testimony of Plaintiffs' Expert Damages Witness Stephen Chamberlin, noting that his high-end damages calculation employing a "3X multiplier" was problematic as it was speculative, unsupported and unreliable, and therefore would not be submitted to the jury. Case No.: 8:15-cv-02672-SDM-TBM, Doc. 153 at 15-16 (Aug. 31, 2017). The Court agrees that the 3X multiplier is speculative.

Although the parties did not adequately brief this issue in their motions and responses; at a minimum, Chamberlin's testimony establishes a value for the use of Plaintiffs' photographs in the advertisements beyond what they were initially paid for the photographs. The record establishes, and all the Plaintiffs admit, that they were paid for the photographs. And the DGI releases and Leg Avenue, Inc. contract show that the Plaintiffs, except Mitcheson, bargained for the later use of their photographs by the respective companies. Chamberlin's calculation adds a "substantial premium" for the work based on "embarrassment of affiliation with Paradise Lakes." *Id.* at § IV. ¶ 8. Defendants have not offered an alternative calculation of damages.

Plaintiffs have met their burden to establish damages in this case. But their failure to satisfy the other elements is fatal to their false advertising claim.

### 3.   *Conclusion as to Plaintiffs' False Advertising Claim*

Viewing the facts in the light most favorable to Defendants, Plaintiffs have not satisfied every element of their false advertisement claim and their Partial Motion for Summary Judgment is denied. Viewing the facts in the light most favorable to Plaintiffs, there are no triable issues of fact for their false advertising claim, and Plaintiffs' failure to establish each element is fatal. As such, Defendants' Motion for Summary Judgment on this basis will be granted.

### B.   **Remaining State Law Claims**

The Court has disposed of all federal claims and only state law claims remain.[7] The resolution of these claims will require analysis of Florida law. The Supreme Court has advised that "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point toward declining to exercise jurisdiction over the remaining state-law

---

[7] Count II—Violation of Right to Publicity under F.S. §540.08; Count III—Common Law Right of Publicity; Count V—Civil Theft; Count VI—Unjust Enrichment; Count VII—Conversion, Count VIII – Unfair Competition.

claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n. 7 (1988). Therefore, the Court will decline to exercise its supplemental jurisdiction over these remaining claims. *See* 28 U.S.C. § 1367(c)(3) ("district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . (3) the district court has dismissed all claims over which it has original jurisdiction."). These claims will be dismissed without prejudice to being refiled in an appropriate state court.

**IV.    Conclusion**

For the reasons stated above, it is hereby **ORDERED AND ADJUDGED**:

1.    Defendants' Motion for Summary Judgment (Doc. 103) is **GRANTED** as to Plaintiffs' False Advertising Claim (Count I) and False Endorsement Claim (Count XII); and

2.    Plaintiffs' Partial Motion for Summary Judgment (Doc. 104) is **DENIED**; and

3.    The Clerk is directed to enter judgment in favor of Defendants Resort At Paradise Lakes, LLC and Jerry Buchanan on Counts I (False Advertising) and XII (False Endorsement); and

4.    The remaining state law claims in Counts II, III and V through VIII are dismissed without prejudice to being refiled in an appropriate state court because the Court declines to exercise supplemental jurisdiction over them; and

5.    The Clerk is directed to terminate all pending motions and close this file.

**DONE AND ORDERED** in Tampa, Florida on February 2, 2018.


Charlene Edwards Honeywell
United States District Judge

35

Copies to:
Counsel of Record and Unrepresented Parties, if any